**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STADIUM CAPITAL LLC, on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CO-DIAGNOSTICS, INC., DWIGHT H. EGAN, and BRIAN L. BROWN, <br><br> Defendants. | Case No.: 22-cv-6978-AS <br><br> CLASS ACTION <br><br> JURY TRIAL DEMANDED |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT**

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox
Donald R. Hall
Jason A. Uris
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

*Lead Counsel for Lead Plaintiff and the*
*Proposed Class*

November 21, 2023

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ...................................................................................................... ii

I.      INTRODUCTION ...................................................................................................... 1

II.     ARGUMENT .............................................................................................................. 2

        A.     Defendants Made False and Misleading Statements In Violation of
               10(b) ............................................................................................................... 2

               1.      The Statements Were Misleading and Omitted That Demand
                       Had Already Plummeted ...................................................................... 4

               2.      The Statements Were Not Opinions, and Even if They Were,
                       Defendants Knew of Contrary Information ......................................... 7

                       a)      The Statements Were Not Opinions ......................................... 7

                       b)      Even If The Statements Are Opinions, They Are
                               Actionable ............................................................................... 11

        B.     Defendants Failed to Analyze the Potential Impact of the Expiration
               of Government Funding in Violation of Item 303 ........................................ 13

        C.     Plaintiff Has Plead a Strong Inference of Scienter .................................... 16

III.    CONCLUSION ......................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abramson v. Newlink Genetics Corp.*,
965 F.3d 165 (2d Cir. 2020)...................................................................................... 9, 11

*Abuhamdan v. Blyth, Inc.*,
9 F. Supp. 3d 175 (D. Conn. 2014)................................................................................ 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 554 (2007)......................................................................................................... 5

*Citiline Holdings, Inc. v. iStar Fin. Inc.*,
701 F. Supp. 2d 506 (S.D.N.Y. 2010)........................................................................... 17

*City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*,
875 F. Supp. 2d 359 (S.D.N.Y. 2012)........................................................................... 17

*City of Warwick Mun. Emps. Pension Fund v. Rackspace Hosting, Inc.*,
No. 17 Civ. 3501 (JFK), 2019 WL 452051 (S.D.N.Y. Feb. 5, 2019)............................ 16

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)........................................................................................... 15

*Finger v. Pearson PLC*,
No. 17 Civ. 1422 (RJS), 2019 WL 10632904 (S.D.N.Y. Sept. 16, 2019)..................... 18

*Freudenberg v. E\*Trade Fin. Corp.*,
712 F. Supp. 2d 171 (S.D.N.Y. 2010)........................................................................... 20

*Gauquie v. Albany Molecular Research, Inc.*,
No. 14 CV 6637 (FB) (SMG), 2016 WL 4007591 (E.D.N.Y. July 26, 2016)................ 17

*Gov't of Guam Ret. Fund v. Invacare Corp.*,
No. 1:13CV1165, 2014 WL 6982233 (N.D. Ohio Dec. 9, 2014).................................... 7

*In re America Serv. Grp., Inc.*,
No. 3:06-0323, 2009 WL 1348163 (M.D. Tenn. Mar. 31, 2009).................................... 20

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
324 F. Supp. 2d 474 (S.D.N.Y. 2004)........................................................................... 17

*In re Avon Sec. Litig.*,
No. 19 Civ. 01420 (CM), 2019 WL 6115349 (S.D.N.Y. Nov. 18, 2019) ...................... 17

*In re BHP Billiton Ltd. Sec. Litig.*,
  276 F. Supp. 3d 65 (S.D.N.Y. 2017)..................................................................6

*In re Bristol-Myers Squibb Sec. Litig.*,
  No. Civ.A. 00-1990(SRC), 2005 WL 2007004 (D.N.J. Aug. 17, 2005) ....................... 8, 10, 11

*In re Complete Mgmt. Inc. Sec. Litig.*,
  153 F. Supp. 2d 314 (S.D.N.Y. 2001)..................................................................18

*In re Coty Inc. Sec. Litig.*,
  No. 14-cv-919 (RJS), 2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016)......................................12

*In re Ferroglobe PLC Sec. Litig.*,
  No. 1:19-CV-00629 (RA), 2020 WL 6585715 (S.D.N.Y. Nov. 10, 2020) ............................12

*In re Nokia Corp. Sec. Litig.*,
  No. 19-CV-3509, 2021 WL 1199030 (S.D.N.Y. Mar. 29, 2021)................................................9

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  187 F.R.D. 133 (S.D.N.Y. 1999) ....................................................................12

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017) ................................................................ 5, 8, 10, 11

*In re Questcor Sec. Litig.*,
  No. SA CV 12–01623 DMG (FMOx), 2013 WL 5486762 (C.D. Cal. Oct. 1, 2013)...............20

*In re Salix Pharms., Ltd.*,
  No. 14-CV-8925 (KMW), 2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016) ..............................17

*In re Signet Jewelers Ltd. Sec. Litig.*,
  No. 16 Civ. 6728 (CM), 2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018) ...................................9

*In re Supercom Inc. Sec. Litig.*,
  No. 15 Civ. 9650 (PGG), 2018 WL 492644 (S.D.N.Y. Oct. 10, 2018)...................................17

*In re ViroPharma Inc. Sec. Litig.*,
  No. 12-2714, 2014 WL 2011317 (E.D. Pa. May 15, 2014)......................................................20

*In re Vivendi Universal, S.A. Sec. Litig.*,
  765 F. Supp. 2d 512 (S.D.N.Y. 2011) *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*,
  838 F.3d 223 (2d Cir. 2016)........................................................................... 11, 12

*In re Wells Fargo & Co. Sec. Litig.*,
  No. 1:20-CV-04494-GHW, 2021 WL 4482102 (S.D.N.Y. Sept. 30, 2021)...................... 10, 11

*In re Williams Sec. Litig.*,
  339 F. Supp. 2d 1206 (N.D. Okla. 2003)..............................................................10

*Indiana Pub. Ret. Sys. v. Pluralsight, Inc.*,
  45 F.4th 1236 (10th Cir. 2022) ................................................................. 5, 11

*Labul v. XPO Logistics*,
  No. 3:18-CV-2062 (SRU), 2021 WL 1056828 (D. Conn. Mar. 19, 2021)
  *aff'd sub nom. Loc. #817 IBT Pension Fund v. XPO Logistics, Inc.*,
  No. 21-986, 2022 WL 2358414 (2d Cir. June 30, 2022) ........................................ 19

*Lematta v. Casper Sleep, Inc.*,
  No. 20-CV-2744 (MKB), 2022 WL 4637795 (E.D.N.Y. Sept. 30, 2022) ........................... 7, 14

*Lipow v. Net1 UEPS Techs., Inc.*,
  131 F. Supp. 3d 144 (S.D.N.Y. 2015) .......................................................... 15

*Litwin v. Blackstone Grp., L.P.*,
  634 F.3d 706 (2d Cir. 2011) .................................................................... 2

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) .................................................................. 13

*Martin v. Quartermain*,
  732 F. App'x 37 (2d Cir. 2018) ................................................................ 10

*McKenna v. SMART Techs. Inc.*,
  No. 11 Civ. 7673(KBF), 2012 WL 3589655 (S.D.N.Y. Aug. 21, 2012) ............................. 16

*Meyer v. Jinkosolar Holdings Co.*,
  761 F.3d 245 (2d Cir. 2014) .................................................................... 2

*Moab Partners, L.P. v. Macquarie Infrastructure Corp.*,
  No. 21-2524, 2022 WL 17815767 (2d Cir. Dec. 20, 2022) ................................. 13, 14, 19

*Mulligan v. Impax Lab'ys, Inc.*,
  36 F. Supp. 3d 942 (N.D. Cal. 2014) ........................................................... 7

*Nguyen v. Maxpoint Interactive, Inc.*,
  234 F. Supp. 3d 540 (S.D.N.Y. 2017) .......................................................... 16

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) ................................................................... 16

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015) ...................................................................... 7, 10, 11

*Operating Local 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*,
  595 F.3d 86 (2d Cir. 2010) ..................................................................... 2

*Plymouth Cnty. Ret. Ass'n v. Array Techs., Inc.*,
  No. 21 Civ. 4390 (VM), 2023 WL 3569068 (S.D.N.Y. May 19, 2023) ................................... 16

*Richman v. Goldman Sachs Grp., Inc.*,
  868 F. Supp. 2d 261 (S.D.N.Y. 2012) ..................................................................................... 17

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004) .................................................................................................... 13

*Roofer's Pension Fund v. Papa*,
  No. 16-2805, 2018 WL 3601229 (D.N.J. July 27, 2018) ........................................................... 9

*S.E.C. v. Yorkville Advisors, LLC*,
  305 F. Supp. 3d 486 (S.D.N.Y. 2018) ..................................................................................... 18

*Schiro v. Cemex, S.A.B. de C.V.*,
  396 F. Supp. 3d 283 (S.D.N.Y. 2019) ..................................................................................... 18

*Schoenhaut v. Am. Sensors, Inc.*,
  986 F. Supp. 785 (S.D.N.Y. 1997) .......................................................................................... 12

*Siegel v. Bos. Beer Co., Inc.*,
  No. 21cv7693 (DLC), 2022 WL 17417111 (S.D.N.Y. Dec. 5, 2022) ....................................... 12

*Solomon v. Sprint Corp.*,
  No. 1:19-cv-05272 (MKV), 2022 WL 889897 (S.D.N.Y. Mar. 25, 2022) ......................... 2, 6, 7

*Steamfitters Loc. 449 Pension Plan v. Skechers U.S.A., Inc.*,
  412 F. Supp. 3d 353 (S.D.N.Y. 2019) ....................................................................................... 9

*Stewart v. City of New York*,
  No. 11 Civ. 6935(CM), 2012 WL 2849779 (S.D.N.Y. July 10, 2012) ............................... 5, 15

*Stratte-McClure v. Morgan Stanley*,
  776 F.3d 94 (2d Cir. 2015) ...................................................................................................... 14

*Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
  367 F. Supp. 3d 16 (S.D.N.Y. 2019) ......................................................................... 2, 7, 9, 18

*Tongue v. Sanofi*,
  816 F.3d 199 (2d Cir. 2016) .................................................................................................... 11

*United States v. Litvak*,
  808 F.3d 160 (2d Cir. 2015) ...................................................................................................... 2

*Villare v. Abiomed, Inc.*,
  No. 19 Civ. 7319 (ER), 2021 WL 4311749 (S.D.N.Y. Sept. 21, 2021) ................................... 18

## I.    INTRODUCTION

This is a straightforward case of securities fraud.  As Defendants admit, during the Class Period (May 12, 2022 through the close of the market on August 11, 2022), sale of the Logix Smart™ COVID-19 Test (the "Logix Test") was the company's core operation and sole source of material revenue, and Defendants actively monitored the "daily influx" of demand—the single-most important issue to Co-Dx and its investors. Despite actively monitoring this data, which showed a massive drop in sales midway through Q2 2022 (the point in the quarter at which Defendants had historically provided guidance), Defendants continued to make positive statements about demand for the Logix Test, specifically assuring investors about ongoing demand while making clear to investors that their decision to stop providing guidance was solely due to factors affecting their ability to accurately *forecast* demand going forward.  In fact, Defendants continued to make positive statements concerning Co-Dx's revenue growth, Adjusted EBITDA, and demand for the Logix Test up until *two weeks* before the end of Q2 2022, a quarter in which Co-Dx's revenue dropped over *81% year over year*.

Faced with no way to meaningfully address their admitted access to, and monitoring of, current sales data, Defendants resort to mischaracterizing their statements as opinions that only spoke of their "confidence in the Company's products and long-term prospects."  To that end, Defendants' submit various materials outside the four corners of the complaint in order to make premature arguments based on purported "evidence of good faith", effectively moving for summary judgment.  When viewed in context, however, it is evident that the alleged statements were statements regarding then-present demand for the Logix Test (and the Company's then-present ability to forecast demand), and the Company's revenue growth and Adjusted EBITDA that were made misleading by Defendants' failure to disclose that demand had plummeted by the time the statements were made.  Defendants' motion to dismiss should be denied in its entirety.

## II.    ARGUMENT

"Second Circuit law is clear that once a corporation chooses to speak on an issue, 'there is a duty to tell the whole truth.'" *Solomon v. Sprint Corp.*, No. 1:19-cv-05272 (MKV), 2022 WL 889897, at *6 (S.D.N.Y. Mar. 25, 2022) (quoting *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014)).  "[L]iterally accurate statements can, 'through their context and manner of presentation, [become] devices which mislead investors.'" *Operating Local 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 92 (2d Cir. 2010) (internal citation omitted).  As such, a Section 10(b) claim exists where a company does not disclose information "necessary to prevent existing disclosures from being misleading." *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715-716 (2d Cir. 2011).  "Such misleading statements are actionable if there is a 'substantial likelihood that a reasonable investor would find the . . . [omitted information] important in making an investment decision.'" *Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.,* 367 F. Supp. 3d 16, 30 (S.D.N.Y. 2019) (quoting *United States v. Litvak*, 808 F.3d 160, 175 (2d Cir. 2015)).

### A.    Defendants Made False and Misleading Statements In Violation of 10(b)

As alleged, having informed investors prior to the Class Period of their active monitoring of Logix Test sales (¶66)[1], Defendants frequently touted demand for their Logix Test and in Q2 2021 began a practice of offering revenue guidance for the upcoming quarter, typically approximately halfway through the current quarter. ¶37.  In the final earnings release before the start of the Class Period, Defendant Egan continued to tout "persist[ent]" demand for the Logix Test and provided revenue guidance in the range of $21.0 to $22.0 million for Q1 2022.  ¶38.

With this backdrop, the Class Period starts on May 12, 2022 when Defendants announced record earnings and made numerous misleading statements concerning ongoing sales of their

---

[1] "¶_" refers to paragraphs of the Amended Consolidated Complaint, ECF No. 31 ("Complaint").

Logix Test.  On that date, Defendants announced that, while they "remain very confident about the long-term potential of our business and the demand for our products", they had decided to stop providing quarterly guidance based on various factors that "restricted[] near term visibility", and thereby purportedly affected their ability to "accurately forecast" Logix Test sales through the balance of the year.  ¶¶44-45.  Importantly, none of the cited factors suggested to the market that testing may be reduced going forward.  In fact, each of the cited factors ("decreased mask mandates", "continued emergence and spread of new variants", and "persistently low vaccination rates") were factors that a reasonable person would have understood to be suggestive of *more COVID-19 infection*, thereby requiring *more testing*, going forward.  *Id*.  As illustrated by an analyst's question on the May 12, 2022 earnings call, that is what the market understood Defendants to be suggesting: "I just want to be clear on the guidance. ***I mean based on all the factors you laid out, it sounds like you don't expect demand for COVID-19 testing go away in 2022***. You're just not sure the timing of when you will get the orders . . . ." ¶47.  Defendant Brown answered emphatically: "***Yes, you're absolutely right***." *Id*.

On that same earnings call, Defendants were asked point blank whether they were seeing a decline in demand: "So with the Logix Smart detection test, ***are you already seeing a decline in customer orders***? Or are you refraining from providing a guidance mainly because it's tough to like predict the environment moving forward?"  ¶46.  Defendant Brown reassured investors about continued demand for the Logix Test, stating that only their ability to ***forecast*** demand moving forward was compromised: "Brown: . . . ***It's not necessarily a demand issue that we're seeing***. It's more of just timing of being able to accurately forecast what's coming in." *Id*.

On June 15, 2022, *just two weeks before the close of Q2 2022*, Defendants continued to mislead the market when Defendants Egan and Brown presented at an investor conference and

3

again reassured investors regarding continued demand for COVID testing products throughout 2022 and 2023 (¶51) and touted the Company's "***13.5% increase in revenue quarter, over quarter, year over year***" from Q1 2021 to 2022 (¶53) and ability to "take on a significant amount of additional expenses but still continue to maintain our Adjusted EBITDA", which according to Brown was intended to, "from a financial perspective[,] really show[] the strength of what we've done and what we've built here at Co-diagnostics." ¶54. In response to a question "[regarding the Logix Test] that you're selling now, [d]o you think there will be demand for covid type testing for at least the next year or two?", Egan stated that "[because] the experts tell us that covid testing is gonna be – and you know, the covid virus is gonna be with us until the end of time . . . ***I think we're gonna have continued demand . . .***"). ¶51.

### 1. The Statements Were Misleading and Omitted That Demand Had Already Plummeted

Defendants' positive statements about the demand for their Logix Test (¶¶46-47, 51) and about the Company's prospects, including continuing year-over-year revenue growth and ability to maintain its Adjusted EBITDA (¶¶53-54, 44-45) were materially false and misleading and lacked a reasonable basis because they failed to disclose that demand for their Logix Test had already plummeted at the time each of the alleged statements were made. ¶¶48, 52, 55. Specifically, Co-Dx's Q2 2022 revenue for the ***entire quarter*** was just $5mm, which represented a ***81.55% decrease*** from $27.4mm the prior year, and a ***77.97% decrease*** from $22.7mm the prior quarter. ¶48. Although on a motion to dismiss all reasonable inferences must be drawn in Plaintiff's favor, even if the Court were to draw all inferences in *Defendants' favor*, that is to say, even if Co-Dx had generated *100% of its Q2 2022 revenue by May 12, 2022* (the start of the Class Period and approximately half-way through the quarter), which is highly unlikely, it *still*

4

would have represented a significant falloff in demand.[2]  *Id*.; *see Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  Moreover, Defendants admit that they actively monitored the demand for their Logix Test.  ¶66 ("***we keep a close eye on*** [distributor inventory and demand] ***every day***" and "are also, of course, able to monitor the ***daily influx of demand*** for our tests . . . .").

Defendants assert that "no facts establish when or how much Logix test orders were down at any point during the second quarter (or how that compared to usual order patterns), much less what, if anything, any Defendant knew about it at any time."  MTD Br. at 9; *see also id*. at 13-14 (arguing no "particular Defendant knew [what] the order data meant"). As an initial matter, Plaintiff need not "establish" anything at the pleading stage.  *Stewart v. City of New York*, No. 11 Civ. 6935(CM), 2012 WL 2849779, at *6 (S.D.N.Y. July 10, 2012) ("a plaintiff need not establish a prima facie case at the pleading stage, [rather,] he must plead facts that render his claim facially plausible.").  More importantly, however, Plaintiff *has* plead facts that far exceed the plausibility standard and arguably "establish" that (1) the Logix test orders were down *significantly* by the start of the Class Period (¶48), and (2) Defendants were aware of it through their *admitted monitoring* of the daily influx of demand (¶66).  *See, e.g., Indiana Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236, 1264 (10th Cir. 2022) (rejecting argument that that plaintiff insufficiently alleged that defendants "*knew* that the projects were unlikely to meet forecasts" because the "[company]'s number of quota-bearing sales representatives is a single objectively verifiable data point that [defendant] considered part of its key business metric, that [defendant] repeatedly represented he monitored, and that he regularly reported to investors and analysts.") (citing *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1145-46 (9th Cir. 2017) (knowledge of falsity was adequately pleaded where "executives themselves told investors they had real-time

---

[2] Upon commencing sales of the Logix Test, Co-Dx had exceeded $20.0 million in revenue *every single quarter* dating back to Q2 2020.  ¶36.

access to, and knowledge of, sales information .... [and] repeatedly described the state of [the company's] sales pipeline to analysts and investors")).  Nor does Defendants' suggestion that "no facts establish" how Logix Test orders "compared to usual order patterns" (MTD Br. at 9) hold water because on May 12, 2022 Defendants disclosed that they were "experiencing sizable fluctuations in order patterns", an admission that by the start of the Class Period demand for the Logix Test *was not* in line with "usual order patterns."  ¶45; MTD Br. at 9.

Moreover, contrary to Defendants' assertions, Defendants had not "caution[ed] about its short-term prospects" (MTD Br. at 9), rather Defendants had simply cautioned that certain factors (which suggested the need for *more testing* going forward) had impacted their near-term "***visibility***" (a neutral statement), while they continued to positively portray their prospects and reassure investors of continued demand for the Logix Test.  ¶¶44-46; *see, e.g., Sprint*, 2022 WL 889897, at *6 (Even if these statements "taken in a vacuum should [have] give[n] an investor pause", which here, they did not, "they do not defeat the clear impression generated by the company's other statements about the strength of the business overall. [Defendants]'s failure to correct specific statements regarding its growth, both on a backward and forward-looking basis to the extent they were specific projection, plausibly could mislead the market."); *In re BHP Billiton Ltd. Sec. Litig.*, 276 F. Supp. 3d 65, 79 (S.D.N.Y. 2017) ("While certain statements, 'viewed in isolation, may be mere puffery,' when the statements are 'made repeatedly in an effort to reassure the investing public' about matters particularly important to the company and investors, those statements may become material to investors.").

Exacerbated by Defendants' historical and repeated reassuring investors of demand (¶¶37-38), the May 12, 2022 statements (¶¶44-47) were misleading because they failed to disclose that the "sizeable fluctuations in order patterns" they had experienced were ***negative***

(*i.e.*, they were the massive drop in demand that had occurred by the start of the Class Period). Having reassured investors that "***it's not necessarily a demand issue***" Defendants were required to disclose that demand had plummeted. *Sprint*, 2022 WL 889897, at *6 ("the misstatements about sales were sufficient to overcome a motion to dismiss because they 'may have been misleading by what they failed to mention.'") (citing *Lexmark*, 367 F. Supp. 3d at 31). And any suggestion that the June 15 statements were not misleading is even more absurd, given the quarter ended just two weeks later. ¶55. *See, e.g.*, *Lematta v. Casper Sleep, Inc.*, No. 20-CV-2744 (MKB), 2022 WL 4637795, at *9 (E.D.N.Y. Sept. 30, 2022) (by choosing "to speak about the potential path to growth and profitability . . . [defendant was obligated to disclose] that major cuts to employee payroll and benefits influenced its profit prospects.") (internal citation omitted).

### 2. The Statements Were Not Opinions, and Even if They Were, Defendants Knew of Contrary Information

#### a) The Statements Were Not Opinions

Viewed in context, it is evident that the challenged statements concerned then-present demand for the Logix Test (and the Company's then-present ability to forecast demand), and the Company's revenue growth and Adjusted EBITDA. In a desperate attempt to fall under the *Omnicare* analysis for opinion statements (which leads to the same result), Defendants splice apart the challenged statements, focusing on individual phrases to make them sound like opinions. But Defendants cannot selectively quote and remove the statements from the context in which they were made in an attempt to hide their factual nature. *See Mulligan v. Impax Lab'ys, Inc.*, 36 F. Supp. 3d 942, 966 (N.D. Cal. 2014) (the "Court may not assess the statements listed in the [complaint] in a vacuum, 'plucking the statements out of their context to determine whether the words, taken per se, are sufficiently 'vague' so as to constitute puffery.'"); *Gov't of Guam Ret. Fund v. Invacare Corp.*, No. 1:13CV1165, 2014 WL 6982233, at *4 (N.D. Ohio Dec.

7

9, 2014) ("merely because Defendants couch some of their statements with terms like 'our belief' or 'we believe' or 'our highest priority' or 'in my opinion,' the Court is not swayed.").

Perhaps most clearly, on the May 12 earnings call with investors, Defendant Brown was asked point blank whether Co-Dx was "already seeing a decline in customer orders" to which he responded "It's not necessarily a demand issue that we're seeing.  It's more of just timing of being able to accurately forecast what's coming in."  ¶46.  This statement was not an opinion, and Defendants have made no meaningful argument as to how it could be.  It was a clear statement of then-existing fact implying that Co-Dx *was not* "already seeing a decline in customer orders", but rather, decided to stop providing guidance because of their reduced forecasting ability.  ¶¶44-46.  *In re Bristol-Myers Squibb Sec. Litig.*, No. Civ.A. 00-1990(SRC), 2005 WL 2007004, at *24 (D.N.J. Aug. 17, 2005) (the nature of what "the data indicate" . . . clearly reference historical facts); *Quality Sys.*, 865 F.3d at 1144 (defendants' statements "about the current and past state of [defendant]'s pipeline went beyond 'feel good' optimistic statements . . . [r]ather, they provided a concrete description of the past and present state of the pipeline").

Similarly, Defendants' May 12 statements concerning their diminished forecasting ability (which were couched in their same historical strong confidence about the long-term potential of their business and "the demand for our products") were not opinions.  ¶¶44-46; s*ee also* ¶45 ("we are experiencing sizable fluctuations in order patterns from our customers [which made it] difficult to predict with an expected level of precision the cumulative impact of these and other factors"); ¶44 (similar); ¶¶37-38.  Rather, they were statements that "these and other factors" that were then-existing had purportedly reduced their ability to forecast **Logix Test sales**.  *Bristol-Myers*, 2005 WL 2007004, at *24 (even if statement "ha[s] an air of opinion to it, because the statement as a whole refers to what 'the data indicate,'" it is actionable).  But Defendants failed

to disclose that those same factors had also *already* caused Logix Test sales to plummet.

Defendants appear to admit that Brown's June 15 statements touting the Company's revenue growth and Adjusted EBITDA from Q1 2021 to 2022 (which according to Brown was intended to "from a financial perspective really show[] the strength of what we've done and what we've built here at Co-diagnostics") were "true ***statements of fact***", and therefore not opinions. MTD Br. at 11-12; ¶¶53-54.  But again, it was misleading to tout these financial metrics, just two weeks before the end of the quarter, while aware that the Company's sales of the Logix Test had already plummeted because "[e]ven if 'literally true,' affirmative statements may be rendered false by what they fail to disclose." *Lexmark*, 367 F. Supp. 3d at 30-31 (S.D.N.Y. 2019); *In re Signet Jewelers Ltd. Sec. Litig.*, No. 16 Civ. 6728 (CM), 2018 WL 6167889, at *12 (S.D.N.Y. Nov. 26, 2018) (statements concerning defendant's credit portfolio, including that it was "strong", "robust" and "consistent" not puffery where defendant failed to disclose "additional fact necessary to make the statements already contained therein not misleading."); *Roofer's Pension Fund v. Papa*, No. 16-2805, 2018 WL 3601229, at *13 (D.N.J. July 27, 2018) ("By putting the issue of organic growth 'in play,' Defendants 'acquire[d] a duty to disclose information relating to that topic.'"). None of Defendants' cited cases are similar to the facts here. *In re Nokia Corp. Sec. Litig.*, No. 19-cv-3509, 2021 WL 1199030, at *17 (S.D.N.Y. Mar. 29, 2021) (statements that integration of company was "complete" and "successful" and the cultural integration "went beautifully"); *Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 173-74 (2d Cir. 2020) (statements that Phase 2 results were "encouraging," "an improvement," or suggestive of drug's "efficacy" where court found "the Phase 2 results arguably did show improvement"); *Steamfitters Loc. 449 Pension Plan v. Skechers U.S.A., Inc.*, 412 F. Supp. 3d 353, 366 (S.D.N.Y. 2019) ($20 million revenue vulnerability was already disclosed months

9

before earnings release).

Finally, Defendant Egan's June 15 statement in response to a specific question regarding the Logix Test and continued demand "for at least the next year or two" that "*I think we're gonna have continued demand*" is actionable.  ¶51.  While "[t]aken out of context, the phrase[s] Defendants extract from [this] statement indeed sound[] forward-looking", "the statement is actually somewhat of a hybrid: It is a present expression of forward-looking expectations." *Bristol-Myers*, 2005 WL 2007004, at *25.  By referring to "continued demand", a reasonable investor would have understood Egan to be stating that current demand was in line with historic demand.  *In re Wells Fargo & Co. Sec. Litig.*, No. 1:20-CV-04494-GHW, 2021 WL 4482102, at *24 (S.D.N.Y. Sept. 30, 2021) ("As the Supreme Court explained, 'some sentences that begin with opinion words like 'I believe' contain embedded statements of fact.'") (quoting *Omnicare*, 575 U.S. at 185); *Bristol-Myers*, 2005 WL 2007004, at *24-25 ("referenc[ing] historical facts" "changes the meaning, from a simple expression of future possibility, to one expressing a current, certain and present possibility.").  But at the time of this statement Egan was aware that Logix Test sales were on track for just $5 million in Q2 2022 (down from $22.7 million in Q1 2022, the last level of demand disclosed by defendants).  ¶¶52, 36, 66.[3]  *See In re Williams Sec. Litig.*, 339 F. Supp. 2d 1206, 1228 (N.D. Okla. 2003) (statements that company would "continue to perform" and "deliver on our promises" were "neither puffery nor immaterial") (citations omitted)); *Quality Sys.*, 865 F.3d at 1144 (statement that sales were "unchanged, or even growing, compared to previous quarters" not puffery).  *Martin v. Quartermain*, cited by Defendants, is not to the contrary.  732 F. App'x 37, 42, n.3 (2d Cir. 2018) (alleged undisclosed information was third party's "preliminary doubts about those estimates").

---

[3] In fact, Defendants have requested judicial notice of a document showing that the market's revenue consensus for Q2 2022 *as of July 12, 2022* was $19.0 million.  Greene Ex. 6 at 1.

**b)      Even If The Statements Are Opinions, They Are Actionable**

Even if Defendants' statements are considered opinions (they should not), they are actionable under *Omnicare*. "By increasing the ability of plaintiffs to plead material omissions with respect to statements of opinion . . . *Omnicare* reduced the significance of district courts' classification of statements as those of fact or opinion." *Abramson* 965 F.3d at 176. Opinion statements may be actionable even if "[although] sincerely held and otherwise true as a matter of fact . . . the speaker omits information whose omission makes the statement misleading to a reasonable investor." *Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016).

Each of the alleged statements were made misleading by Defendants' failure to disclose that Logix Test sales had plummeted. *Wells Fargo*, 2021 WL 4482102, at *24 ("A reasonable investor 'expects not just that [the speaker] believes the opinion (however irrationally), but that it fairly aligns with the information in the issuer's possession at the time.'") (quoting *Omnicare*, 575 U.S. at 188-89); *Quality Sys.*, 865 F.3d at 1143 ("even 'general statements of optimism, when taken in context, may form a basis for a securities … claim' when those statements address specific aspects of a company's operation that the speaker knows to be performing poorly."); *Pluralsight*, 45 F.4th at 1262 (10th Cir. 2022) ("even if [defendant] was reasonably optimistic that billings growth in the second quarter would be unaffected, that does not render the number of quota-bearing sales representatives in January 2019 immaterial.").

For the same reason, the safe harbor for forward-looking statements does not apply. MTD Br. at 12-13; *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 569 (S.D.N.Y. 2011), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) ("the safe harbor does not protect statements which are misleading about historical and present facts at the time they are made, and whose misleading nature can be verified at the time they are made, simply because the statements are couched as predictions of future events."); *Bristol-Myers*,

11

2005 WL 2007004, at *37 ("A forward-looking statement carries various testable factual assertions . . . [including whether] the speaker knows of no uncontested facts that contradict the opinion.").

Defendants' cases are nothing like the facts here. *In re Coty Inc. Sec. Litig.*, No. 14-cv-919 (RJS), 2016 WL 1271065, at *6 (S.D.N.Y. Mar. 29, 2016) (drop in sales began "merely two weeks before the Registration Statement became effective" and citing *Schoenhaut v. Am. Sensors, Inc.*, 986 F. Supp. 785, 791 (S.D.N.Y. 1997) which held that alleged omission of sales data for the first 26 days of the quarter did not render the Prospectus' general assertion of "continued strong demand" materially misleading because "[e]ven though [] sales may have declined 11 percent when compared to the average number of units shipped per month in the previous *unreported* quarter . . . they nonetheless represented a 193 percent increase over the reported average monthly sales for the [preceding] quarter . . . ."); *Siegel v. Bos. Beer Co., Inc.*, No. 21cv7693 (DLC), 2022 WL 17417111, at *7 (S.D.N.Y. Dec. 5, 2022) (complaint "offer[ed] no facts or figures to support the FAC's characterizations" that "industry trends . . . did not demonstrate 'a lot of growth' in the demand for hard seltzer at bars and restaurants"); *In re Ferroglobe PLC Sec. Litig.*, No. 1:19-CV-00629 (RA), 2020 WL 6585715, at *9 (S.D.N.Y. Nov. 10, 2020) (finding that "[a] discussion of *third-party* estimates of *global demand* for [aluminum only] over a four-year time horizon would not mislead any reasonable investor about [Defendant's] quarterly sales figures [for silicon metals].").   Here, the misleading nature of Defendants' statements "can be verified at the time they are made," because by the time of the statements Co-Dx had already experienced "sizable fluctuations in order patterns" (¶45) (*i.e.*, significantly reduced levels of demand). *In re Vivendi*, 765 F. Supp. 2d at 569; *see also In re Oxford Health Plans, Inc. Sec. Litig.*, 187 F.R.D. 133, 141 (S.D.N.Y. 1999) ("[P]laintiffs point

12

out that they are not relying on the falsity of Oxford's financial projections and estimates, but rather the defendants' failure to disclose historical and existing material facts about Oxford's computer problems and the impact of those problems on the reliability of the financial statements. The safe harbor and bespeaks caution doctrines do not apply to these omissions.").

Nor can Defendants escape liability through their boilerplate warnings that the Company's "future success will depend, in part, on the continued market for COVID-19 tests", which failed to disclose that demand for the Logix Test had already plummeted.  MTD Br. at 4-5, 15. "Cautionary words about future risk cannot insulate from liability the failure to disclose that the risk has transpired." *Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) (refusing to apply safe harbor to omissions concerning existing operational difficulties).

Finally, Plaintiff does not allege "fraud-by-hindsight."  MTD Br. at 10.  Plaintiff alleges Defendants misrepresented then-existing facts that were indisputably in their possession at the time of the alleged statements.  ¶48 ("Even if Co-Dx had generated 100% of its Q2 2022 revenue by [the start of the Class Period] . . . it still would have represented a significant falloff in demand"); s*ee Lormand v. US Unwired, Inc.*, 565 F.3d 228, 254-55 (5th Cir. 2009) ("Contrary to the defendants' argument, the plaintiff's partial reliance on alleged facts dating from the post-class period does not amount to 'fraud by hindsight'; that is, it does not 'infer[ ] earlier knowledge based only on the situation that later came to pass.'") (brackets in original).

B.    **Defendants Failed to Analyze the Potential Impact of the Expiration of Government Funding in Violation of Item 303**

"Item 303 requires that a company disclose certain information 'where a trend, demand, commitment, *event or uncertainty* is both presently known to management and reasonably likely to have material effects on the registrant's financial conditions or results of operations.'" *Moab Partners, L.P. v. Macquarie Infrastructure Corp.*, No. 21-2524, 2022 WL 17815767, at *2 (2d

Cir. Dec. 20, 2022) (internal citation omitted).  In violation of Item 303, Defendants' Q1 2022 10-Q MD&A failed to disclose (let alone provide the required "discussion and analysis" of) the uncertainty caused by the exhaustion of federal funding for COVID-19 testing by the end of March 2022.  ¶¶50, 48, 70-74.  By May 12, 2022 this uncertainty was reasonably likely to have (and already had) a material effect on Co-Dx's revenues.  *Id*.; *see Casper*, 2022 WL 4637795, at *13 (allegations supported "Plaintiff's claim that Defendants knew about these materially adverse trends and risks, and therefore [they] should have disclosed them."); *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 105 (2d Cir. 2015) ("Item 303 'requires not only a 'discussion' but also an "analysis" . . . and that disclosure is 'necessary to an understanding of a company's performance, and the extent to which reported financial information is indicative of future results.'").

Defendants do not dispute that they had knowledge of the uncertainty caused by the expiration of federal funding, but instead baselessly argue that "[n]o factual pleadings" support Plaintiff's allegations that the expiration was reasonably likely to have (and did have) a material unfavorable impact on Co-Dx's revenues.  MTD Br. at 16.  But as Defendants concede, ***over 50%*** of their Logix test sales were attributable to the United States.  *Id*.  As such, "it would not have been 'objectively reasonable' for Defendants to determine that [the expiration of federal funding] would not likely have a material effect on [their] financial condition or operations." *Moab*, 2022 WL 17815767, at *3; *see also* Greene Ex. 5[4] (3/24/22 Tr.), at 13 (admitting the expiration "would have an impact on us").  Moreover, their assertion that Co-Dx's "customer base was diverse" is misleading.  MTD Br. at 16; Greene Ex. 3 at 10 ("Two customers together accounted for approximately 48% of total revenue [for 2021]"); Greene Ex. 8 at 9 ("Three

---

[4] "Greene Ex. __" refers to exhibits to the Green Declaration (ECF No. 34).

14

customers together accounted for approximately 54% . . . of total revenue [for Q1 2022]").

Grasping at straws, Defendants argue that Plaintiff has not "plead any facts showing the magnitude of the alleged revenue impact from reduced federal funding" because Egan did not identify the expiration of government funding "individually as material". MTD Br. at 16. Again, Plaintiff need not "show[] the magnitude" at the pleading stage. *Stewart*, 2012 WL 2849779, at *6; *see infra* at 5. Moreover, this argument ignores that, in Egan's own words, of the three identified factors that "contributed" to lower sales of the Logix Test (*see* MTD Br. at 16), the reduction of government funding was one of two "***primary***" factors. ¶56. As one of two primary factors that caused revenues to decline nearly ***82%***, there is no reasonable dispute as to whether the impact was material. *See ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 204 (2d Cir. 2009) (noting that a "five percent numerical threshold is a good starting place for assessing . . . materiality"). Nor does Egan's statement that government "has not been the big driver of what we've done . . ." indicate otherwise. MTD Br. at 16. Leaving aside the accuracy of Egan's statement, what Egan actually said was that "[t]he government has not been, in many respects, has not been the big driver of what we've done . . . [a]nd we haven't been a company that's come out and said, yes, the government just bought a whole big boatload of our tests." Greene Ex. 6 (8/11/22 Tr.), at 9-10. Egan did not state that government *funding* was not a "big driver" for Co-Dx; indeed, even if most of Co-Dx's sales serviced a "more private oriented market", that in no way means that government funding didn't contribute to such sales. *Id*.; *compare* Greene Ex. 5 (3/24/22 Tr.), at 13 (admitting the funding "certainly . . . enhance[s] sales" and its expiration "would have an impact on us").

Defendants' cited cases are inapposite. *Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 170 (S.D.N.Y. 2015) (no duty to disclose "material risk of regulatory scrutiny and

15

invalidation of the contract" where both the commencement of a regulatory investigation and the outcome of any such investigation would have been "merely speculative"); *Plymouth Cnty. Ret. Ass'n v. Array Techs., Inc.*, No. 21 Civ. 4390 (VM), 2023 WL 3569068, at *19 (S.D.N.Y. May 19, 2023) (defendants had *already* "made disclosures . . . that COVID-19 was affecting [defendant]'s 'suppliers and vendors in India' as well as causing 'disruptions to ports and other shipping infrastructure.'"); *City of Warwick Mun. Emps. Pension Fund v. Rackspace Hosting, Inc.*, No. 17 Civ. 3501 (JFK), 2019 WL 452051, at *8 (S.D.N.Y. Feb. 5, 2019) (plaintiff "failed to sufficiently allege that it was 'reasonably likely' that [the expiration of a customer's contract] would have had a material effect on [defendant]'s financial condition . . . in light of the totality of [defendant]'s activity"); *Abuhamdan v. Blyth, Inc.*, 9 F. Supp. 3d 175, 206 (D. Conn. 2014) (no allegations of how much sales had declined, just that sales "began to slow beginning in June 2012"). Defendants' citation to *Nguyen v. MaxPoint Interactive, Inc.* actually supports Plaintiff because, contrary to Defendants' argument, Plaintiff does not allege that the expiration of government funding was a "trend", "but rather [a] material event[] that would have warranted disclosure alone." 234 F. Supp. 3d 540, 546-47 (S.D.N.Y. 2017); ¶50 ("Defendants . . . failed to disclose . . . the ***uncertainty*** caused by the exhaustion of federal funding. . ." (*i.e.*, a ***material event***)); *see also McKenna v. SMART Techs. Inc.*, No. 11 Civ. 7673(KBF), 2012 WL 3589655, at *1, 6 (S.D.N.Y. Aug. 21, 2012) (alleged knowledge prior to IPO of uncertainties around continued federal funding affecting product demand should have been specifically disclosed).

### C. Plaintiff Has Plead a Strong Inference of Scienter

"[S]ecurities fraud claims typically have sufficed to state a claim based on recklessness when they have specifically alleged defendants' knowledge of facts or access to information contradicting their public statements." *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000). As alleged, Defendants admitted that they "ke[pt] a close eye on [demand] every day" and that they

were able to monitor the "daily influx" of demand. ¶66. This admission alone supports a strong inference of scienter. *In re Salix Pharms., Ltd.*, No. 14-CV-8925 (KMW), 2016 WL 1629341, at *14 (S.D.N.Y. Apr. 22, 2016) (finding scienter where CFO stated that "we have visibility in the inventories because we know what we ship, we know what pulls through, we know what returns are."); *Citiline Holdings, Inc. v. iStar Fin. Inc.*, 701 F. Supp. 2d 506, 516 (S.D.N.Y. 2010) (defendants "told the investing public that they monitored the value of their portfolio on a nearly real-time basis"); *Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 283 (S.D.N.Y. 2012) (defendant "monitored the status of Goldman's subprime assets"); *Gauquie v. Albany Molecular Research, Inc.*, No. 14 CV 6637 (FB) (SMG), 2016 WL 4007591, at *2 (E.D.N.Y. July 26, 2016) ("Actively communicating with the public about [an] issue demonstrates defendants' sensitivity to it.").

The inference of scienter is even further buttressed by Plaintiff's "core operations" allegations. The Second Circuit has "endorsed the idea behind the core operations doctrine as enhancing, if not independently supporting, an inference of scienter." *City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 371 (S.D.N.Y. 2012). The doctrine holds that "[k]nowledge . . . can be imputed to key officers who should have known of facts relating to the core operations of their company that would have led them to the realization that the company's . . . statements were false when issued." *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 490 (S.D.N.Y. 2004); *see also In re Avon Sec. Litig.*, No. 19 Civ. 01420 (CM), 2019 WL 6115349, at *20 (S.D.N.Y. Nov. 18, 2019) (similar); *In re Supercom Inc. Sec. Litig.*, No. 15 Civ. 9650 (PGG), 2018 WL 4926442, at *31 (S.D.N.Y. Oct. 10, 2018) ("a court may infer 'that a company and its senior executives have knowledge of' . . . 'events affecting a significant source of income.'") (citation and quotation marks omitted). Here,

Defendants do not dispute that the Logix Test was the Company's core operation and was its *sole* source of material revenue. ¶¶67-69; *see Lexmark*, 367 F. Supp. 3d at 38 ("the importance of EMEA channel inventory [which accounted for approximately 29% of defendant]'s business moves the needle in Plaintiffs' favor.").

Additionally, Defendants' knowledge of the impending expiration of government funding was a red flag that should have alerted Defendants to the decrease in demand for the Logix Test. ¶¶70-74, 39-42.  *See S.E.C. v. Yorkville Advisors, LLC*, 305 F. Supp. 3d 486, 511 (S.D.N.Y. 2018) ("Actual knowledge of or conscious disregard of numerous red flags can establish scienter."); *compare* MTD Br. at 2 (arguing that the Complaint does not plead any red flags).

Finally, the magnitude of the decrease in revenue (***nearly 82%*** year-over-year) "suggests more than a careless mistake or trivial miscalculation by [Co-Dx] and its executives." *Lexmark*, 367 F. Supp. at, 38; *see also In re Complete Mgmt. Inc. Sec. Litig.*, 153 F. Supp. 2d 314, 327 (S.D.N.Y. 2001) ("[T]he magnitude of the write-off rendered 'less credible' the proposition that defendants there were somehow surprised by their sudden reversal of fortune" and further supported strong inference of scienter).

Moreover, unlike Defendants' cited cases, Plaintiff does not rely solely on Defendants' "high-level role[s]" to support a strong inference of scienter. MTD Br. at 18-19; *Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 307 (S.D.N.Y. 2019) ("Defendants did not hold their positions when the alleged bribes were paid"); *Villare v. Abiomed, Inc.*, No. 19 Civ. 7319 (ER), 2021 WL 4311749, at *22-23 (S.D.N.Y. Sept. 21, 2021) ("generic allegations" of access to "raw data" insufficient to support inference of scienter concerning "problems related to market penetration and growth"); *Finger v. Pearson PLC*, No. 17 Civ. 1422 (RJS), 2019 WL 10632904, at *13 (S.D.N.Y. Sept. 16, 2019) (no allegations of access to contrary information).

As to the Item 303 claim, Egan's pre-Class Period admission that the government funding "enhance[d] sales" and that, therefore, its expiration "would have an impact on us" (*infra* at 14-15) is "strong circumstantial evidence of conscious recklessness 'at least as strong as any opposing inference.'" *Moab*, 2022 WL 17815767, at *4; *see also* ¶50 (government funding "***was one of the primary reasons*** for lower sales of their Logix [Test]"). In *XPO*, cited by Defendants, plaintiffs "failed to allege 'actual knowledge' of a trend". *Labul v. XPO Logistics*, No. 3:18-cv-2062 (SRU), 2021 WL 1056828, at *20 (D. Conn. Mar. 19, 2021), *aff'd sub nom. Loc. #817 IBT Pension Fund v. XPO Logistics, Inc.*, No. 21-986, 2022 WL 2358414 (2d Cir. June 30, 2022).

Defendants' remaining arguments regarding their purported "non-fraudulent inferences" do not make Plaintiff's overwhelming scienter allegations any less compelling and actually *support* Plaintiff.[5] MTD Br. at 17-18. In mid-March the Company announced a $30 million share repurchase program, which was "aligned with [their] commitment to return value to [their] shareholders." Greene Ex. 1 at 7. After purchasing no shares in March and April 2022, in May 2022 Co-Dx purchased approximately $2.11 million of shares at an average price per share of $4.86. Uris Ex. A (2Q 2022 10-Q) at 23. Once the Class Period started on May 12, 2022, Co-Dx's stock price began to rise consistently through the end of the Class Period. Perhaps recognizing the inflated value of the stock, Co-Dx greatly reduced its repurchase rate in June 2022, purchasing only approximately $489,000 of shares at an average price per share of $4.98. Then, in July 2022, with Co-Dx's stock price continuing to rise, Co-Dx completely halted its repurchase program, purchasing ***zero shares***. Uris Ex. B (3Q 2022 10-Q) at 22. In fact, it wasn't until ***after the Class Period***, when the share price dropped over 30%, that Co-Dx resumed

---

[5] Defendants' purported "non-fraudulent inferences" rely on documents outside the four corners of the Complaint and therefore need not be considered by the Court. *See generally* Pltf's Opp. to RJN. However, to the extent the Court considers these arguments, Plaintiff requests that the Court take judicial notice of the Exhibits attached to the Uris Declaration ("Uris Ex. __").

repurchasing shares when it purchased approximately ***$7.4 million*** of shares at an average price per share of $3.82. In September 2022, Co-Dx repurchased another approximately ***$3 million*** of shares at an average price per share of $3.17. *Id.* If anything, these facts support an inference that Defendants were aware that Co-Dx's stock price was inflated during the Class Period. *See In re America Serv. Grp., Inc.*, No. 3:06-0323, 2009 WL 1348163 at *57 (M.D. Tenn. Mar. 31, 2009) (repurchase after publication of negative articles did not give rise to favorable inference for defendants); *In re ViroPharma Inc. Sec. Litig.*, No. 12-2714, 2014 WL 2011317, at *10 n.23 (E.D. Pa. May 15, 2014) ("There are many inferences that a Court could draw from a stock repurchase."); *In re Questcor Sec. Litig.*, No. SA CV 12–01623 DMG (FMOx), 2013 WL 5486762, at *18 (C.D. Cal. Oct. 1, 2013) (repurchase plan irrelevant to scienter).

Nor does Egan's and Brown's purported increased stock ownership rebut the strong inference of scienter. MTD Br. at 17-18. Egan's and Brown's transactions both represented the vesting of restricted stock units ("RSUs") which vest every 6 months (at a price of $0.00 to the awardee). Greene Decl., Exs. 9, 10. In fact, these transactions show that Egan and Brown ***benefitted*** from the inflated stock price at the time of vesting, as they each simultaneously sold shares (at an inflated price of $4.99) to cover tax withholding obligations in connection with the vesting of RSUs. *See, e.g.*, *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 201 (S.D.N.Y. 2010) ("[defendant] acquired shares at no cost to him, which does not demonstrate lack of scienter"). Defendants' cited cases concerning insider sales are inapposite, because unlike those cases, Plaintiff has not relied on insider sales to plead a *motive and opportunity* theory of scienter. MTD Br. at 17-18.

## III.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied in its entirety. If any portion of the motion is granted, Plaintiff respectfully requests leave to amend.

Dated: November 21, 2023

**KAPLAN FOX & KILSHEIMER LLP**

_/s/    Jason A. Uris_

Frederic S. Fox
Donald R. Hall
Jason A. Uris
800 Third Avenue, 38th Floor
New York, NY 10022
Tel: (212) 687-1980
Fax: (212) 687-7714
E-mail: ffox@kaplanfox.com
E-mail: dhall@kaplanfox.com
E-mail: juris@kaplanfox.com

_Lead Counsel for Lead Plaintiff and the
Proposed Class_

21