**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| STADIUM CAPITAL LLC, on behalf of itself and all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>CO-DIAGNOSTICS, INC., DWIGHT H. EGAN, and BRIAN L. BROWN,<br><br>      Defendants. | Case No.: 1:22-cv-06978-AS<br><br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**
**THE CONSOLIDATED AMENDED COMPLAINT**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Tel. 212-589-4200
Fax. 212-589-4201

*Attorneys for Defendants*

In retrospect, spring of 2022 was an inflection point, as attitudes and policies began a fundamental shift away from the intense precautions and testing protocols that had characterized the pandemic's first two years. But in May and June 2022 this was not yet clear—test sales had spiked and dropped before with new variants, but demand had remained strong over time. Based solely on the disappointing 2Q22 results reported August 11, 2022 (and with the benefit of 16 more months of sales history), Plaintiff now claims Defendants must have recognized this shift in demand and known earlier in 2Q22 that sales for the quarter would be way down, and that this rendered each of the challenged statements misleading. No facts support this fraud-by-hindsight.

***Plaintiff must plead particularized facts showing falsity and scienter.*** Citing an unpublished district-court decision in an employment-discrimination case, Plaintiff claims it "need not 'establish' anything at the pleading stage" and must only meet Rule 8's "plausibility standard." Opp. (Dkt. #37), at 5. Not so. The Reform Act requires securities fraud plaintiffs to plead *with particularity* both a false or misleading statement (or Item 303 violation) and a strong inference of scienter. 15 U.S.C. §§ 78u-4(b); *W. VA Inv. Mgmt. Bd. v. Doral Fin. Corp.*, 344 F. App'x 717, 721 (2d Cir. 2009) ("PSLRA requires … more than mere plausibility."). Plaintiff cannot do either.

***Plaintiff does not demonstrate any statement was false or misleading.*** Plaintiff's claims all rest on the same flawed assumption: that because 2Q22 revenue ended up much lower than 1Q22 revenue and year-over-year, Logix test sales must have been "down significantly by the start of the Class Period" and Defendants must have known it reflected reduced demand. Opp. 5. This is pure speculation, based on simplistic and wrong assumptions about quarterly sales patterns— i.e., that revenue of $5 million or less in the first half of 2Q22 would have clearly indicated that demand for the full quarter would be down. Opp. 4. But COVID test sales have always been volatile, varying enormously month-to-month as new variants suddenly emerged and subsided.

1

There has never been a "normal" pattern for comparison; slow-starting quarters have ended with huge revenue in the final weeks, and vice versa. Plaintiff cannot plead any factual support[1] for its falsity theory because there is none: sales in 2Q22 were not "down significantly" from any (non-existent) norm, and they did not create any expectation as to how the full quarter would turn out.

What Defendants did see by the start of the class period—and disclosed to investors—was that these "sizable fluctuations in order patterns . . . not cleanly captured in a particular quarter," decreased mask mandates, new variants, low vaccination rates, and other developments were making it impossible to predict sales through the rest of the year. AC ¶¶ 44-45; MTD (Dkt. #33), at 6-7. This was not "an admission" that demand was already significantly down,[2] but an appropriate acknowledgment that changing conditions were making it impossible to predict near-term sales, even as Defendants "remain[ed] very confident about the long-term … demand for our products." AC ¶ 45. They truthfully explained that they viewed this as a matter of timing rather than long-term demand and believed there would be "some level of demand" for the rest of the year. *Id.* ¶¶ 46-51. Ultimately, that level proved lower than Defendants and many experts expected, but this lack of clairvoyance cannot substitute for the particularized facts Plaintiff must plead. *See, e.g.*, *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 812-13 (2d Cir. 1996) ("unsupported general claim of the existence of confidential company sales reports that revealed the larger decline in sales is insufficient").

Each of the challenged statements—describing Q1 results, sharing Defendants' views on current market conditions, and expressing optimism about long-term demand—was true and not

---

[1] This dearth of factual support is clear from Plaintiff's chart (Dkt. #37-1), which identifies only a few paragraphs (alleging speculation, not particularized facts) as "plausibly alleging" falsity.

[2] Plaintiff incorrectly equates "sizeable fluctuations" to "significantly reduced… demand," but in that case it warned of precisely the allegedly fraudulently omitted "fact" (i.e., reduced demand).

misleading; nearly all were opinions, subject to *Omnicare*, and many were also protected forward-looking statements and/or puffery. MTD 9-14. Plaintiff argues they were "factual" statements, not opinions or protected forward-looking statements, because they "concerned then-present demand" and the "then-present ability to forecast" (Opp. 7), but it is the nature of the statement, not its subject, that matters. These statements expressed Defendants' subjective views on matters open to interpretation and thus were opinions. *E.g.*, AC ¶ 46 (interpreting sales data as showing "not necessarily a demand issue . . . more of just timing"); ¶ 51 (sharing view that "experts tell us . . . [COVID] is gonna be with us until the end of time, and so . . . I think we're gonna have continued demand"). Regardless, no facts suggest any challenged statement (fact or opinion) was false or misleading—that Defendants did not genuinely believe it, or that any particular, contemporaneous fact rendered it false or misleading at the time. The mere fact that the Company actively monitored sales data (as one would expect) says nothing about what the data showed on May 12 or June 15, or how Defendants understood it; and the bare assertion that sales (must have) "already plummeted" by the start of the class period—and that this necessarily rendered all challenged statements misleading—does not make it so. The Reform Act requires far more.

**Co-Diagnostics did not violate Item 303.** This claim too is based on a simplistic, incorrect assumption: that because the Company sold tests to some U.S. customers, the expiration of federal COVID funding must have reasonably been expected to have a material negative impact on revenue. Again, no factual pleadings support this; to the contrary, half the Company's revenue at the time was from sales abroad, where Congressional funding could not have any effect. MTD 14-17. Plaintiff points to Mr. Egan's statements (i) in March 2022, that he thought the expiration of federal funding would have some impact, and (ii) on August 11, that reduced "public funding" (broadly) was one of several factors the Company, in retrospect, believed contributed to its

3

disappointing 2Q results, but neither statement bears on the central question—whether on May 12 it was reasonably likely that the expiration of federal funding would have a material impact. It was not. As Mr. Egan explained: "the government has not been the big driver of what we've done for the last 2.5 years…. [w]e have serviced more private oriented market and an international market." Ex. 6, at 9-10. Plaintiff argues this "in no way means that government funding didn't contribute to such sales" (Opp. 15), but it is Plaintiff's burden to plead particularized facts indicating it was reasonably expected to have a material impact. *See* MTD 16-17; *Abuhamdan v. Blyth, Inc.*, 9 F. Supp. 3d 175, 206 (D. Conn. 2014). Plaintiff cannot do so.

***Plaintiff cannot plead a strong inference of scienter.*** Plaintiff implicitly concedes Defendants had no motive, relying entirely on circumstantial evidence of recklessness to plead scienter. But where no motive is shown, "the circumstantial evidence … must be correspondingly greater[.]" *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 355 (2d Cir. 2022). Moreover, recklessness in this context is "a state of mind *approximating actual intent,* and *not merely a heightened form of negligence.*" *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009) (emphasis in original). Plaintiff cannot meet this high bar. The fact that Mr. Egan and Mr. Brown maintained (and increased, through newly-vested RSUs) their stock holdings during the class period, rather than sell at allegedly inflated prices, raises a compelling good-faith inference that cuts strongly against scienter in *Tellabs*' holistic analysis. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 325 (2007); *In re MELA Sciences, Inc. Sec. Lit.*, 2012 WL 4466604, at *6 (S.D.N.Y. Sep. 19, 2012) (holding stock negated scienter even if plaintiff did not rely on sales for motive). Likewise, the Company's class-period repurchases of at least $489,000 of shares (Opp. 19) makes no sense in the context of the alleged fraud and raises a non-culpable inference.[3]

---

[3] That courts found repurchases post-corrective disclosure, or with insider sales, not to cut against scienter (Opp. 20), cannot undermine the good-faith inference from class-period repurchases here.

Against this, Plaintiff offers only the hindsight assertion that, in light of the magnitude of the 2Q22 revenue drop, Defendants must have known the statements on May 12 and June 15 were misleading (and the 1Q22 10-Q violated Item 303), because the Logix test is a core operation and Mr. Egan later "admitted" the Company keeps "a close eye" on Logix test sales. AC ¶¶ 65-75. This is insufficient: even assuming the Company kept a close eye on sales, no "specific factual allegations link[] Defendants to the alleged fraud."[4] *Villare v. Abiomed, Inc.*, 2021 WL 4311749, at *24 (S.D.N.Y. Sept. 21, 2021). Plaintiff fails to identify any sales reports or documents Mr. Egan or Mr. Brown reviewed at any time that contained information contrary to their challenged statement. *See Nandkumar v. AstraZeneca PLC*, 2023 WL 3477164, at *3 (2d Cir. May 16, 2023) ("Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information."). Absent such particularized facts, the 2Q revenue drop and core operations doctrine cannot support a strong inference of scienter. *See Finger v. Pearson PLC*, 2019 WL 10632904, at *14 (S.D.N.Y. Sept. 16, 2019). Nor was the end of federal funding a "red flag"; it was not reasonably expected at the time to materially impact revenue, and Plaintiff's unsupported claim that Defendants sought to deceive investors by omitting it from the 10-Q makes no sense given the extensive media coverage of Congress's decision. Because the non-culpable inferences are far more compelling, Plaintiff cannot plead scienter.[5]

*Conclusion.* The MTD clearly identified each of these deficiencies, yet Plaintiff declined to amend its pleadings to timely respond to these arguments under FRCP 15(a)(1). Under this Court's Individual Rule 8(G), the Court should dismiss the AC in its entirety *with prejudice*.

---

[4] By contrast, Plaintiff's cases all involved particularized facts showing actual knowledge or intent.
[5] Plaintiff fails to plead a §10(b) claim or control, so its §20(a) claim also fails. MTD 20.

5

Dated: December 13, 2023                    Respectfully submitted,


                                           **BAKER & HOSTETLER LLP**


                                           By:    */s/ Douglas W. Greene*
                                                  Douglas W. Greene (*pro hac vice*)
                                                  dgreene@bakerlaw.com
                                                  Genevieve G. York-Erwin
                                                  gyorkerwin@bakerlaw.com
                                                  Zachary R. Taylor
                                                  ztaylor@bakerlaw.com
                                                  45 Rockefeller Plaza
                                                  New York, NY 10111
                                                  Telephone: 212.589.4200

                                                  *Attorneys for Defendants*