**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STADIUM CAPITAL LLC, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CO-DIAGNOSTICS, INC., DWIGHT H. EGAN, and BRIAN L. BROWN,<br><br>Defendants. | Case No.: 22-cv-6978-AS<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION TO CERTIFY THE CLASS, APPOINT CLASS REPRESENTATIVE, AND APPOINT CLASS COUNSEL**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ..................................................................................................... iii

I.      PRELIMINARY STATEMENT ................................................................................... 1

II.     SUMMARY OF THE ALLEGED FRAUD ................................................................. 2

III.    Procedural History ....................................................................................................... 3

IV.     ARGUMENT ................................................................................................................ 3

        A.      Legal Standard for Class Certification ............................................................. 4

        B.      This Case Meets the Requirements of Rule 23(a) ............................................ 5

                1.      The Class is Numerous ........................................................................... 5

                2.      Questions of Law and Fact Are Common to the Class ............................ 6

                3.      Plaintiff's Claims Are Typical of the Class ............................................ 7

                4.      Plaintiff Will Fairly and Adequately Protect the Interests of the
                        Class ....................................................................................................... 8

        C.      This Case Meets the Requirements of Rule 23(b)(3) ...................................... 10

                1.      Common Questions of Law and Fact Predominate ............................... 10

                        a.      Plaintiff Is Entitled to the Fraud-on-the-Market
                                Presumption of Reliance Pursuant to *Basic* .............................. 11

                                i.      The *Cammer* Factors Weigh in Favor of Market
                                        Efficiency .......................................................................... 12

                                ii.     The *Krogman* Factors Support Market Efficiency ............. 16

                        b.      The Presumption of Reliance Also Applies to Co-Dx
                                Options ........................................................................................ 16

                        c.      Plaintiff's Damages Methodology is Consistent with Its
                                Theory of Liability and is Capable of Measuring
                                Damages on a Classwide Basis .................................................... 17

                2.      A Class Action Is Superior to Alternative Methods for
                        Resolving This Dispute .......................................................................... 18

D.      The Proposed Class Satisfies the Requirement of Ascertainability...................... 20

V.      CONCLUSION................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................. 5, 9, 10, 19

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds*,
   568 U.S. 455 (2013) ...................................................................................... 5, 7

*Annunziato v. Collecto, Inc.*,
   293 F.R.D. 329 (E.D.N.Y. 2013) ......................................................................... 8

*Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*,
   955 F.3d 254 (2d Cir. 2020) ................................................................................ 4

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ............................................................................... 10, 11, 16

*Billhofer v. Flamel Techs., S.A.*,
   281 F.R.D. 150 (S.D.N.Y. 2012) ........................................................................ 11

*Brecher v. Republic of Argentina*,
   806 F.3d 22 (2d Cir. 2015) .................................................................................. 5

*Califano v. Yamasaki*,
   442 U.S. 682 (1979) ......................................................................................... 20

*Cammer v. Bloom*,
   711 F. Supp. 1264 (D.N.J. 1989) ............................................................ 12, 13, 14

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
   310 F.R.D. 69 (S.D.N.Y. 2015) ............................................................... 11, 12, 18

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ........................................................................................... 17

*Dandong v. Pinnacle Performance Ltd.*,
   No. 10 Civ. 8086 JMF, 2013 WL 5658790 (S.D.N.Y. Oct. 17, 2013) ...................... 4

*Deutschman v. Beneficial Corp.*,
   841 F.2d 502 (3d Cir. 1988) ............................................................................... 16

*Dodona I, LLC v. Goldman, Sachs & Co.*,
   296 F.R.D. 261 (S.D.N.Y. 2014) ......................................................................... 18

*Erica P. John Fund v. Halliburton Co.*,
    131 S. Ct. 2179 (2011) ............................................................................................ 5, 11

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    134 S. Ct. 2398 (2014) .............................................................................................. 11

*In re Barrick Gold Secs. Litig.*,
    314 F.R.D. 91 (S.D.N.Y. 2016)............................................................................ 11, 18

*In re Enron Corp.,Sec.*,
    529 F. Supp. 2d 644 (S.D. Tex. 2006) ..................................................................... 17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    245 F.R.D. 147 (S.D.N.Y. 2007)................................................................................. 7

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009).................................................................................... 7, 9

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .................................... 6

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,
    No. Civ. A. 05-1151 SRC, 2013 WL 396117 (D.N.J. Jan. 30, 2013)........................................ 17

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
    310 F.R.D. 230 (S.D.N.Y. 2015)................................................................................. 8

*In re Nassau County Strip Search Cases*,
    461 F.3d 219 (2d Cir. 2006)..................................................................................... 6

*In re NYSE Specialists Sec. Litig.*,
    260 F.R.D. 55 (S.D.N.Y. 2009)............................................................................. 6, 7

*In re Petrobras,Sec.*,
    862 F.3d 250 (2d Cir. 2017).................................................................................. 8, 20

*In re Pfizer Inc. Sec. Litig.*,
    282 F.R.D. 38 (S.D.N.Y. 2012)................................................................................. 11

*In re Priceline.com Inc. Sec. Litig.*,
    236 F.R.D. 89 (D. Conn. 2006)................................................................................. 16

*In re Salomon Analyst Metromedia Litig.*,
    544 F.3d 474 (2d Cir. 2008)..................................................................................... 5

*In re SCOR Holding (Switzerland) AG Litig.*,
    537 F. Supp. 2d 556 (S.D.N.Y. 2008)...................................................................... 4, 20

iv

*In re Vivendi Universal, S.A.*,
  242 F.R.D. 76 (S.D.N.Y. 2007)..................................................................................... 4, 6

*In re Winstar Commc'ns Sec. Litig.*,
  290 F.R.D. 437 (S.D.N.Y. 2013)................................................................................. 13, 14

*In re Xcelera.com Sec. Litig.*,
  430 F.3d 503 (1st Cir. 2005) ............................................................................................ 13

*In re: Petrobras Sec. Litig.*,
  312 F.R.D. 354 (S.D.N.Y. 2016)......................................................................................... 8

*Fogarazzo v. Lehman Bros. Inc.,*
  263 F.R.D. 90, 96 (S.D.N.Y. 2009)..................................................................................... 5

*Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-*
  *Medco Managed Care, L.L.C.,*
  504 F.3d 229, 244-45 (2d Cir. 2007)................................................................................... 6

*Johnson v. Nextel Commc'ns Inc.*,
  780 F.3d 128 (2d Cir. 2015)............................................................................................... 6

*Katz v. Image Innovations Holdings, Inc.*,
  No. 06 Civ. 3707 (JGK), 2010 WL 2926196 (S.D.N.Y. July 22, 2010).............................. 4, 19

*Krogman v. Sterritt*,
  202 F.R.D. 467 (N.D. Tex. 2001) .................................................................................. 12, 16

*Madden v. Midland Funding, LLC*,
  237 F. Supp. 3d 130 (S.D.N.Y. 2017)................................................................................. 8

*McIntire v. China MediaExpress Holdings, Inc.*,
  38 F. Supp. 3d 415 (S.D.N.Y. 2014)......................................................................... 12, 13, 16

*Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*,
  772 F.3d 111 (2d Cir. 2014)............................................................................................... 6

*Pearlstein v. Blackberry Ltd.*,
  No. 13 Civ 7060 (CM), 2021 WL 253453 (S.D.N.Y. Jan. 26, 2021) ...................................... 7

*Penn. Ave. Funds v. Inyx Inc.*,
  No. 08 Civ. 2732544 (PKC), 2011 WL 2732544 (S.D.N.Y. July 5, 2011) ............................... 8

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ....................................................................................................... 19

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015)............................................................................................. 17

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) .................................................................................... 8

*Strougo v. Barclays PLC*,
    312 F.R.D. 307 (S.D.N.Y. 2016) ........................................................................ 12

*Sykes v. Mel Harris & Assocs., LLC*,
    285 F.R.D. 279 (S.D.N.Y. 2012) .......................................................................... 9

*Sykes v. Mel S. Harris & Assocs. LLC*,
    780 F.3d 70 (2d Cir. 2015) ............................................................................ 9, 17

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*,
    No. 05 Civ. 1898, 2006 WL 2161887 (S.D.N.Y. Aug. 1, 2006) .............................. 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ............................................................................................ 4

*Tsereteli v. Residential Asset Securitization Tr. 2006–A8*,
    283 F.R.D. 199 (S.D.N.Y. 2012) .......................................................................... 8

*UFCW Local 1776 v. Eli Lilly and Co.*,
    620 F.3d 121 (2d Cir. 2010) ................................................................................ 10

*Waggoner v. Barclays PLC*,
    875 F.3d 79 (2d Cir. 2017) ................................................................................. 18

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ....................................................................................... 5, 7

**Rules**

Fed. R. Civ. P. 23 .............................................................................................. *passim*

**Regulations**

17 C.F.R. § 239.13 ................................................................................................ 14

**Other Authorities**

The Fraud-on-the-Market Theory and the Indicators of Common Stocks' Efficiency,
    19 J. Corp. L. 285 (1994) .................................................................................. 12

Lead Plaintiff Stadium Capital LLC ("Plaintiff") respectfully submits this memorandum of law in support of its motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), requesting that the Court: (1) certify the Class (defined below); (2) appoint Plaintiff as Class Representative; and (3) appoint Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") as Class Counsel.

## I.    PRELIMINARY STATEMENT

This is a securities fraud class action brought against Defendants Co-Diagnostics, Inc. ("Co-Dx" or the "Company"); Dwight H. Egan, the Company's Chief Executive Officer, President and Chairman of the Board; and Brian L. Brown, the Company's Chief Financial Officer and Secretary (collectively, "Defendants") for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the U.S. Securities and Exchange Commission ("SEC"), during the proposed Class Period.

Plaintiff seeks certification of a class, pursuant to Rule 23, consisting of all persons and entities who purchased the publicly traded securities of Co-Dx[1] during the period May 12, 2022, through the close of the market on August 11, 2022 (4:00 p.m. ET), inclusive (the "Class Period"), and were damaged thereby (the Class"). ¶ 1.[2] Excluded from the Class are: Defendants and Defendants' immediate family members, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any Defendant, and the legal representatives, agents, affiliates, heirs, successors-in-interest, or assigns of any such excluded party.

As detailed below, this action satisfies all the requirements for class certification under

---

[1] The Class includes investors that purchased or otherwise acquired Co-Dx common stock or call options, or sold Co-Dx put options.

[2] All references to "¶_" are to paragraphs of the Consolidated Amended Class Action Complaint ("Consolidated Amended Complaint") (ECF No. 31), unless otherwise indicated.

Rule 23(a): numerosity; commonality; typicality; and adequacy of representation. Fed. R. Civ. P. 23(a). Further, this action satisfies the requirements for certification under Rule 23(b)(3): predominance of common questions of law or fact; and superiority of a class over other available methods for adjudication. Fed. R. Civ. P. 23(b)(3). For these reasons, as further described below, Plaintiff's motion for class certification should be granted.

## II.   SUMMARY OF THE ALLEGED FRAUD

Co-Dx purports to develop, manufacture and sell reagents used for (and that comprise) its proprietary diagnostic polymerase chain reaction ("PCR") tests that function via the detection and/or analysis of nucleic acid molecules (DNA or RNA). In 2019, Co-Dx made approximately $215,000 in revenue.  Shortly following the onset of the COVID-19 pandemic, on January 23, 2020, Co-Dx announced that it had developed a COVID-19 diagnostics test intended to address the potential need for detection of the virus. ¶ 3. Upon commencing sales of its Logix Smart™ COVID-19 Test in late February and March of 2020, the test immediately became Co-Dx's sole material source of revenue, and Co-Dx made $74.5 million in revenue in 2020 and $97.9 million in revenue in 2021.  ¶ 36.

Defendants have admitted on conference calls with investors and analysts that they are "able to monitor the daily influx of demand for [their] tests" and that it was something they "ke[pt] a close eye on every day."  ¶¶ 5, 66.  However, despite tracking this information daily, during the Class Period Defendants repeatedly touted its Logix Smart™ COVID-19 Test, reassuring investors about the demand for the product and failed to disclose material adverse facts about the Company at the time Defendants' statements were made because at the time Co-Dx was already experiencing a significant falloff in demand for its Logix Smart™ COVID19 Test.  ¶¶ 6, 44-46. Contrary to Defendants' representations, at the time of their Class Period statements (1) demand for its Logix Smart™ COVID-19 Test had already plummeted, and (2) as a result, Defendants' positive

2

statements about the demand for its Logix Smart™ COVID19 Test lacked a reasonable basis. ¶ 48.

On August 11, 2022, after the market closed, the Company disclosed its financial results for the quarter ended June 30, 2022, in which the Company disclosed revenue of just $5.0 million, down from $27.4 million during the prior year period.  ¶¶ 7, 56. The Company primarily attributed the decrease to lower demand of its Logix Smart™ COVID-19 Test.  *Id*.  On this news, the price of Co-Dx's common stock declined $1.98, or 30.65%, from a closing price of $6.46 per share on August 11, 2022, to close at $4.48 per share on August 12, 2022.  ¶¶ 8, 58.

## III.    PROCEDURAL HISTORY

On August 16, 2022, Plaintiff filed the initial complaint. ECF No. 1. On August 9, 2023, an order was entered consolidating a related action (*Lee v. Co-Diagnostics, Inc.*, Case No. 1:22-cv-07988-MKV) and appointing Stadium Capital LLC as Lead Plaintiff.  ECF No. 21. On September 21, 2023, Plaintiff filed the Consolidated Amended Complaint. ECF NO. 31. On October 20, 2023, Defendants moved to dismiss the Consolidated Amended Complaint. (ECF Nos. 32-34) and filed a supporting Request for Full Context Review and/or Judicial Notice ("RJN") (ECF No. 35). On November 21, 2023, Plaintiff filed its oppositions to Defendants' motion to dismiss (ECF Nos. 37-39) and supporting RJN (ECF No. 39). On December 13, 2023, Defendants filed their replies in further support of their motion to dismiss and supporting RJN. ECF Nos. 40-41. On February 5, 2024, the Court denied Defendants' motion to dismiss in part. ECF No. 42. Discovery has commenced and the Court has set deadlines for fact depositions to be completed by November 15, 2024, expert depositions to be completed by February 7, 2025, and post-discovery summary judgment motions to be fully briefed by May 30, 2025.  ECF No. 49.

## IV.    ARGUMENT

The Supreme Court has repeatedly recognized the importance of class actions in redressing

3

wrongs committed under the federal securities laws. *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313-14, 320 (2007) ("This Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions . . . ."). Likewise, "[c]ourts have consistently held that claims alleging violations of Sections 10(b) and 20(a) of the Exchange Act are especially amenable to class certification." *Katz v. Image Innovations Holdings, Inc.*, No. 06 Civ. 3707 (JGK), 2010 WL 2926196, at *3 (S.D.N.Y. July 22, 2010). Indeed, courts in this Circuit have overwhelmingly found securities fraud actions appropriate for class treatment. *See, e.g., Dandong v. Pinnacle Performance Ltd.*, No. 10 Civ. 8086 JMF, 2013 WL 5658790, at *13 (S.D.N.Y. Oct. 17, 2013) ("Courts have held that class actions are particularly appropriate in federal securities actions"); s*ee also In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 91-92 (S.D.N.Y. 2007) (collecting cases).

By providing a single forum to litigate the same or similar claims, class actions afford an indispensable mechanism for the conservation of judicial resources. *See, e.g., In re SCOR Holding (Switzerland) AG Litig.*, 537 F. Supp. 2d 556, 579 (S.D.N.Y. 2008) ("Litigating each case separately would be wasteful, and result in delay and an inefficient expenditure of judicial resources" and "risk disparate results among those seeking redress.").

## A.    Legal Standard for Class Certification

To certify a class under Rule 23 of the Federal Rules of Civil Procedure, the named plaintiff must demonstrate: (1) that the class is so numerous that joinder is impracticable, (2) that at least one question of law or fact is common to the class, (3) that the class representatives' claims are typical of the class wide claims, and (4) that the class representatives will be able to fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a); *Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*, 955 F.3d 254, 260 (2d Cir. 2020), *cert. granted sub nom.*, 2020 WL 7296815 (Dec. 11, 2020). A plaintiff must also show that the action falls within one of the

subcategories of Rule 23(b). *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 478 (2d Cir. 2008). Here, Plaintiff seeks certification under Rule 23(b)(3), which requires a showing that (1) common questions of fact and law predominate over any individual questions, and (2) a class action is superior to other available methods for adjudicating the controversy. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). Finally, the Second Circuit has also "recognized an implied requirement of ascertainability in Rule 23," which demands that a class be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015).

While courts must conduct a "rigorous analysis" to determine whether the elements of Rule 23 have been satisfied, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011), Rule 23 is not a "license to engage in free-ranging merits inquiries at the class certification stage." *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id*. Accordingly, while it is appropriate to consider whether a securities market was efficient to support a presumption of reliance, it is not appropriate to delve into merits issues such as scienter, materiality, or loss causation. *Erica P. John Fund v. Halliburton Co*., 131 S. Ct. 2179, 2186 (2011) ("*Halliburton I*"); *see also Amgen*, 568 U.S. at 465-466.

### B. This Case Meets the Requirements of Rule 23(a)

#### 1. The Class is Numerous

Rule 23(a)(1) requires the proposed class to be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). "Impracticable does not mean impossible; joinder may merely be difficult or inconvenient, rendering use of a class action the most efficient method to resolve plaintiffs' claims." *Fogarazzo v. Lehman Bros. Inc*., 263 F.R.D. 90, 96 (S.D.N.Y. 2009)

(citing *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007)). Numerosity is presumed for classes larger than forty members in the Second Circuit. *See Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014). "[I]n securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Vivendi Universal, S.A.*, 242 F.R.D. at 83 (collecting cases).

During the Class Period, Co-Dx had approximately 34 million shares of common stock outstanding. *See* Declaration of Jason A. Uris in Support of Lead Plaintiff's Motion for Class Certification and Appointment of Class Representative and Class Counsel ("Uris Decl."), Ex. A (Expert Report of Chad Coffman, CFA, dated July 26, 2024 ("Coffman Rep."), at Ex. 12). The average weekly trading volume for Co-Dx common stock during the Class Period was 2.78 million shares. Coffman Rep., ¶¶ 25, 28. Based on these facts, Plaintiff believes the Class Members likely number in the thousands—vastly exceeding the 40-member presumptive threshold—and reside in many states. Joinder is therefore impracticable, and numerosity is satisfied.

### 2.    Questions of Law and Fact Are Common to the Class

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23 requires at least one "issue[ ] whose resolution will affect all or a significant number of the putative class members." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137-38 (2d Cir. 2015). "[A]n issue is common to the class when it is susceptible to generalized, class-wide proof." *In re Nassau County Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006). "Even a single common legal or factual question will suffice." *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 70 (S.D.N.Y. 2009). Thus, "[t]he commonality requirement, particularly in securities fraud litigation, is generally considered a low hurdle easily surmounted." *In re Marsh*

*& McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *9 (S.D.N.Y. Dec. 23, 2009). The proposed Class satisfies the Rule 23(a) commonality requirement.

The Complaint alleges that Defendants made a series of false or misleading statements and omissions to the investing public, which injured each Class member who acquired publicly traded securities of Co-Dx during the Class Period. Common questions thus include: (a) whether Defendants misrepresented or omitted material information; (b) whether Defendants knew or recklessly disregarded that their statements and omissions were false and misleading; (c) whether the prices of the publicly traded securities of Co-Dx were artificially inflated during the Class Period; and (d) the extent of damages sustained by Class Members and the appropriate measure of damages.[3] These questions are susceptible to generalized, class-wide proof and will "generate common *answers* apt to drive resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (emphasis in original). The commonality requirement is therefore satisfied. *See, e.g., Pearlstein v. Blackberry Ltd.*, No. 13 Civ. 7060 (CM), 2021 WL 253453, at *7 (S.D.N.Y. Jan. 26, 2021) (commonality satisfied by common issues including whether defendants made misrepresentations, whether the misrepresentations were material, and whether they acted with scienter); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 F.R.D. 147, 158 (S.D.N.Y. 2007), *order aff'd in relevant part*, 574 F.3d 29 (2d Cir. 2009) (same); *see also, Amgen*, 568 U.S. at 473 (observing in securities class action that "market efficiency, publicity, and materiality can all be proved on a classwide basis.").

### 3. Plaintiff's Claims Are Typical of the Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims and defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement is

---

[3] Additionally, Plaintiff's Section 20(a) claim for control person liability requires proof at trial of an additional element of "control" over the violation by Defendants, which is likewise common to the Class. *See, e.g., In re NYSE Specialists*, 260 F.R.D. at 75.

"not demanding." *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 236 (S.D.N.Y. 2015) (quoting *Tsereteli v. Residential Asset Securitization Tr. 2006–A8*, 283 F.R.D. 199, 208 (S.D.N.Y. 2012)). It "does not require factual identity between the named plaintiffs and the class members, only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *MF Glob. Holdings*, 310 F.R.D. at 238 (quoting *Penn. Ave. Funds v. Inyx Inc.*, No. 08 Civ. 2732544 (PKC), 2011 WL 2732544, at *4 (S.D.N.Y. July 5, 2011)). Nor does typicality "require that damages be identical among class members." *Madden v. Midland Funding, LLC*, 237 F. Supp. 3d 130, 157 (S.D.N.Y. 2017) (citing *Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 337 (E.D.N.Y. 2013)). Thus, "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

Here, the claims asserted by Plaintiff are typical of, if not identical to, the claims of the other Class Members. Plaintiff and the Class allege that Defendants violated Sections 10(b) and 20(a) of the Exchange Act by making statements that misrepresented or omitted material facts. Because the claims of Plaintiff and the Class (1) involve the publicly traded securities of Co-Dx, (2) are based upon the same facts and legal theories, and (3) will be proven with the same evidence, Plaintiff satisfies the typicality requirement. *In re: Petrobras Sec. Litig.*, 312 F.R.D. 354, 360 (S.D.N.Y. 2016) (plaintiff was typical because class claims were based on the same alleged misrepresentations), *aff'd in relevant part*, 862 F.3d 250 (2d Cir. 2017).

### 4.     Plaintiff Will Fairly and Adequately Protect the Interests of the Class

The adequacy requirement of Rule 23(a)(4) demands that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy entails

inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. "The conflict that will prevent a plaintiff from meeting the Rule 23(a)(4) prerequisite must be fundamental, and speculative conflict should be disregarded at the class certification stage." *Sykes v. Mel Harris & Assocs., LLC*, 285 F.R.D. 279, 287 (S.D.N.Y. 2012), *aff'd sub nom*. 780 F.3d 70 (2d Cir. 2015).

Plaintiff's interests are neither antagonistic to, nor in conflict with, the interests of other Class Members. To the contrary, Plaintiff acquired publicly traded securities of Co-Dx during the Class Period and sustained damages because of the same alleged material misrepresentations and omissions as other Class Members. ¶ 12; ECF No. 1 at 16-17 (Stadium Capital's certification). Further, Plaintiff has demonstrated a willingness and ability to take an active role in (and control of) the litigation to protect the interests of the absent Class Members. ECF No. 1 at 16-17. Plaintiff understands the requirements and responsibilities of serving as a class representative in a securities class action under the Private Securities Litigation Reform Act of 1995 and shall provide testimony at deposition and trial, if necessary. *Id*. In short, Plaintiff has vigorously prosecuted the claims of other Class Members and will continue to do so.

Plaintiff is also adequate because it retained Kaplan Fox, a firm with extensive experience in securities class actions and complex litigation. *See* Kaplan Fox firm resume, attached to the Uris Decl. at Ex. B. Plaintiff's chosen counsel has zealously and competently represented the interests of the Class Members and will continue to do so. For example, Kaplan Fox has vigorously prosecuted this action since 2022, filing two complaints (ECF Nos. 1, 31), prevailed on

Defendants' motion to dismiss after extensive briefing (ECF Nos. 32-35, 37-39, 40-41), zealously pursued discovery from Defendants and nonparties, assisted Plaintiff in responding to Defendants' discovery requests, and has regularly updated Plaintiff on the developments in the litigation.

## C.    This Case Meets the Requirements of Rule 23(b)(3)

In addition to meeting Rule 23(a)'s requirements, a class action must also satisfy at least one of the three conditions imposed by Rule 23(b). Here, Plaintiff moves for class certification under Rule 23(b)(3), which authorizes certification where: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This action satisfies Rule 23(b)(3).

### 1.    Common Questions of Law and Fact Predominate

As the Supreme Court has held, "[p]redominance is a test readily met in certain cases alleging . . . securities [claims]." *Amchem*, 521 U.S. at 625; *see, generally, Basic Inc. v. Levinson*, 485 U.S. 224 (1988). "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *See UFCW Local 1776 v. Eli Lilly and Co.*, 620 F.3d 121, 131 (2d Cir. 2010). Indeed, as detailed in the above analysis of Plaintiff's allegations under Rule 23(a)(2), there are an overwhelming number of questions of law and fact common to Plaintiff and the proposed Class. The predominance standard of Rule 23(b)(3) is therefore satisfied as these numerous common questions predominate over any perceived or potential individual issues. *Amchem*, 521 U.S. at 625. Moreover, as described further below, common questions also predominate in this action because the Class is entitled to a presumption of reliance in accordance with *Basic*, 485 U.S. 224. Therefore, individual reliance issues will not predominate over issues common to the class.

*See In re Barrick Gold Secs. Litig.*, 314 F.R.D. 91, 101 (S.D.N.Y. 2016) ("plaintiffs can meet their burden of proving predominance by establishing their entitlement to the *Basic* presumption"); *see also In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 40-41 (S.D.N.Y. 2012).

### a. Plaintiff Is Entitled to the Fraud-on-the-Market Presumption of Reliance Pursuant to *Basic*

Under the fraud-on-the market presumption, reliance on material statements and omissions is presumed if the stock traded in an efficient market. *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2407-2408 (2014) ("*Halliburton II*"); *Basic*, 485 U.S. at 247. This is because an efficient market rapidly reacts to new information about a listed company or its prospects, causing the price of its securities to rise or fall as investors trade upon the news. By purchasing a security at the price set by an efficient market, an investor is constructively relying upon all of the public information about the company.[4] *Basic*, 485 U.S. at 241-42; *accord Halliburton I*, 131 S. Ct. at 2185. Thus, proof sufficient to support a finding of an efficient market is all that is required to entitle a class of investors to the presumption of reliance. *See, e.g., Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 77 (S.D.N.Y. 2015) (proof of price impact not necessary under *Halliburton II* to invoke presumption at class certification).

At all relevant times, Co-Dx common stock was listed and actively traded on the NASDAQ, which is considered by most courts to be presumptively efficient. *See, e.g., Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 159 (S.D.N.Y. 2012) (noting that where "a security is listed on the NYSE, AMEX, NASDAQ, or a similar national market, the market for that security is

---

[4] When a company publishes false information about its business (or fails to disclose negative information), the price of its securities traded in an efficient market will be higher than if a truthful disclosure had been made. An investor that purchases at the inflated price is constructively relying upon the false information, whether that investor personally read or knew anything about the falsehoods. *Basic*, 485 U.S. at 241-42 ("Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements").

presumed to be efficient") (quoting *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, No. 05 Civ. 1898, 2006 WL 2161887, at *8 (S.D.N.Y. Aug. 1, 2006), *aff'd*, 546 F.3d 196 (2d Cir. 2008)).

While the Second Circuit has not adopted a specific test to analyze market efficiency, courts in the Second Circuit have looked to the five factors set forth in *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989) (the "*Cammer* factors"). *See McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 431 (S.D.N.Y. 2014). The *Cammer* factors are: (1) the stock's average trading volume; (2) the number of analysts that followed and reported on the stock; (3) the number of market makers; (4) eligibility to file an S-3 Registration Statement; and (5) the reaction of the stock price to unexpected news events. *Cammer*, 711 F. Supp. at 1286-87. In addition to the five *Cammer* factors, courts often consider three factors from *Krogman v. Sterritt*, 202 F.R.D. 467, 478 (N.D. Tex. 2001) (the "*Krogman* factors"), which assess: 1) the company's market capitalization, 2) the stock's float, and 3) the typical bid-ask spread. *See Strougo v. Barclays PLC*, 312 F.R.D. 307, 315–16 (S.D.N.Y. 2016) (applying the *Krogman* factors). Another relevant factor to market efficiency in the academic literature is institutional ownership. *See, e.g., B. Barber et. al.*, The Fraud-on-the-Market Theory and the Indicators of Common Stocks' Efficiency, 19 J. Corp. L. 285, 302 (1994). Courts have used all these factors as "an analytical tool rather than as a checklist" to evaluate market efficiency. *Carpenters*, 310 F.R.D. at 83.

Every one of these factors supports a finding that Co-Dx common stock and options traded in an efficient market during the Class Period.

i.       **The *Cammer* Factors Weigh in Favor of Market Efficiency**

***Average Trading Volume.*** An average weekly trading volume for a security that meets or exceeds the benchmark of one to two percent of a company's total outstanding shares is widely

12

recognized as a sign of an efficient market. *McIntire*, 38 F. Supp. 3d at 431 (referencing one to two percent benchmark); *Cammer*, 711 F. Supp. At 1293 ("Turnover measured by average weekly trading of 2% or more of the outstanding shares would justify a strong presumption that the market for the security is an efficient one; 1% would justify a substantial presumption.").

Here, the average trading volume for Co-Dx common stock strongly supports finding market efficiency. During the Class Period, the average weekly trading volumes for Co-Dx common stock vastly exceeded the 2% threshold, with average weekly trading of approximately 2.78 million shares, or 8.21% of all Co-Dx common stock outstanding. Coffman Rep. ¶ 28. This heavy trading volume justifies a strong presumption that Co-Dx stock traded in an efficient market. *Id*. at ¶¶ 26-30.

***Analyst Coverage.*** The existence of numerous analysts that followed Co-Dx during the Class Period is another indicator of an efficient market, as it indicates that new information is rapidly being disseminated to and acted upon by investors. Indeed, the presence of even a single analyst can support an efficient market. *In re Xcelera.com Sec. Litig*., 430 F.3d 503, 514-15 (1st Cir. 2005); *see also In re Winstar Commc'ns Sec. Litig*., 290 F.R.D. 437, 446 (S.D.N.Y. 2013) (market efficient where three analysts followed security).

Here, analysts from at least 8 different firms covered Co-Dx throughout the Class Period, issuing at least 25 reports, which strongly supports market efficiency. Coffman Rep. ¶ 33. This additional information, as well as the substantial public dissemination of news and other information regarding Co-Dx fostered the efficiency of the market for Co-Dx throughout the Class Period. *Id*., at ¶¶ 31-36.

***Presence of Market Makers.*** Market makers are financial intermediaries who trade in a particular security, standing ready to buy and sell with individual investors, institutions, and other

market makers. Coffman Rep. ¶ 37. The more market makers a security has, the more traders there are and the more efficient the market will be in responding to new information about the issuer, thereby incorporating that information into the market price. *Cammer*, 711 F. Supp. at 1286-87.

During the Class Period there were at least 35 market makers for Co-Dx common stock. *See* Coffman Rep. ¶ 41; *see also Cammer*, 711 F. Supp. at 1293 (more than ten market makers justifies "substantial presumption" that market for security is efficient). Moreover, 116 institutional investors reported owning Co-Dx's common stock during the Class Period and held a substantial portion of the public float *Id*., at ¶ 71. Furthermore, the fact that Co-Dx common stock traded on the NASDAQ, with continuous public price and volume reporting, renders the number of market makers less significant than it was in the context of the over-the-counter market discussed in *Cammer*. Coffman Report, ¶¶ 39-40. The NASDAQ is one of the largest, most liquid and efficient security exchanges in the world. *Id.*; *Cammer,* 711 F. Supp. at 1292 (internal citation omitted).  Accordingly, this factor supports finding an efficient market during the Class Period.

***Eligibility to File an S-3 Registration Statement.*** A company is eligible to file a Form S-3 registration statement if it has filed SEC reports for twelve straight months and possesses a float of at least $75 million. 17 C.F.R. § 239.13. "The ability to file this form indicates that the company is easily able to issue new securities." *Winstar*, 290 F.R.D. at 447. Co-Dx satisfied the conditions for S-3 registration eligibility throughout the Class Period, further supporting a conclusion of market efficiency. Coffman Rep. ¶ 44.

***Price Reaction to Unexpected Information.***  Evidence that the price of a security regularly reacts to unexpected news about the issuer is strong evidence of an efficient market. *Cammer*, 711 F. Supp. at 1291. "[O]ne of the most convincing ways to demonstrate [market] efficiency would be to illustrate, over time, a cause-and-effect relationship between company disclosures and

resulting movements in stock price." *Id*. at 1287. Mr. Coffman performed an event study that examines the movement of Co-Dx common stock in reaction to news about the Company. Coffman Rep., ¶¶ 45-64.  The event study, which controlled for market and industry factors, investigated whether Co-Dx common stock reacted to earnings announcements in a manner significantly different from how the stock moved on days with no Co-Dx-related news. *Id*. at ¶ 48.

To analyze cause-and-effect, Mr. Coffman examined the price response of Co-Dx common stock to the ten earnings announcements during the Analysis Period. *Id*. at ¶ 55.[5]  He tested how the stock price reacted to the May 13, 2021 earnings release when Co-Dx announced positive results for the fiscal quarter and year ending March 31, 2021. *Id*. at ¶ 56. In response, Co-Dx common stock increased by 18.16%, compared with a predicted increase of 0.55%. *Id*. Co-Dx's stock price reacted by a statistically significant amount at the 99% confidence level. *See id*. This is strong evidence that Co-Dx's common stock reacted rapidly to this news. *Id*. In fact, of the ten occasions when Co-Dx announced earnings during the Analysis Period, seven resulted in statistically significant price movements above the 99% confidence level, and eight resulted in statistically significant price movements above the 95% confidence level. *Id*. at ¶ 57.

Mr. Coffman also compared the results of his tests with the 207 days during the Analysis Period when there was no news, analyst reports, or SEC filings issued about Co-Dx. *Id*. at ¶ 59. During these 207 days, there were 16 statistically significant price movements. *Id*. Therefore, during the Analysis Period there was a statistically significant price reaction at the 95% confidence level or greater on 80% of the earnings announcements, but when compared to days with no Co-Dx-related news, Mr. Coffman observed only 7.73% of the days having statistically significant

---

[5] The Analysis Period is from May 13, 2021 through August 11, 2023. *Id*. at ¶ 25, n. 30. Mr. Coffman selected this period to capture one full calendar year before and after the Class Period to enhance the power of his statistical tests. *Id*.

reactions. *Id*. Furthermore, on the days with no coverage, the average change in Co-Dx's stock price was only 2.59% compared to 12.18% on days when Co-Dx announced its earnings. *Id*. at ¶ 60. This is strong evidence that the change in Co-Dx's stock price was in direct response to the company-specific news, which proves that the market for its stock was efficient. *Id*.

### ii. The *Krogman* Factors Support Market Efficiency

The Coffman Report further found that Co-Dx's market capitalization, which averaged $191 million during the Class Period, low bid-ask spread, substantial public float and institutional ownership of Co-Dx shares, absence of autocorrelation, and considerable trading in Co-Dx common stock options during the Class Period all support finding that Co-Dx common stock traded in an efficient market during the Class Period. *Id.* at ¶¶ 65-76.

In sum, the market for Co-Dx common stock was efficient throughout the Class Period. Accordingly, Class Members are entitled to a presumption that they relied upon the false and misleading statements and omissions on which this action is based. *Basic*, 485 U.S. at 247. Because Class Members will not have to individually prove reliance, common issues will predominate, and this action should proceed as a class action. *Id*.

### b. The Presumption of Reliance Also Applies to Co-Dx Options

Since "[t]he market price for options is directly responsive . . . to changes in the market price of the underlying stock, and to information affecting that price," purchasers of call options and sellers of put options are likewise entitled to the presumption of reliance. *McIntire*, 38 F. Supp. 3d at 433-34 (applying the fraud-on-the-market presumption to options traders because the market for the company's stock was efficient and there were no special circumstances that would preclude applying the presumption to options traders) (quoting *Deutschman v. Beneficial Corp.,* 841 F.2d 502, 504 (3d Cir. 1988)); *see also In re Priceline.com Inc. Sec. Litig.*, 236 F.R.D. 89, 99 (D. Conn. 2006) ("Option traders . . . may use the

fraud-on-the-market presumption of reliance absent special circumstances compelling a different result."); *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, No. Civ. A. 05-1151 SRC, 2013 WL 396117, at *12 (D.N.J. Jan. 30, 2013) ("insofar as the alleged Rule 10b–5 violations are predicated on put or call options transactions, the trading of Merck stock on the efficient NYSE suffices to establish that the options also traded on an efficient market."); *In re Enron Corp. Sec.*, 529 F. Supp. 2d 644, 754 (S.D. Tex. 2006) ("[E]vidence applying the . . . factors to the stock, is sufficient to trigger the fraud-on-the-market presumption for . . . § 10(b) claims based on the options."). The academic literature is in accord. *See* Coffman Rep., ¶ 12 n. 13 (academic literature supports the conclusion that an option price is driven by the price of the underlying stock, and if the stock price changes, the option price would also change). Here, the market for Co-Dx common stock was efficient during the Class Period and there are no special circumstances that would preclude applying the fraud-on-the-market presumption to options traders.

        **c.**        **Plaintiff's Damages Methodology is Consistent with Its Theory of Liability and is Capable of Measuring Damages on a Classwide Basis**

In accordance with *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), "damages questions should be considered at the certification stage when weighing predominance issues." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 408 (2d Cir. 2015). However, "Comcast [ ] did not hold that a class cannot be certified under Rule 23(b)(3) simply because damages cannot be measured on a classwide basis." *Id.* at 407-408. Rather, "[a]ll that is required at class certification is that the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 88 (2d Cir. 2015).

While not necessary for certification, damages related to the Class's claims can be calculated using a common methodology. Here, Plaintiff asserts claims under Section 10(b) of the Exchange Act for investor losses sustained in connection with the purchase or sale of securities

17

due to Defendants' allegedly fraudulent misrepresentations and omissions. In accordance with this liability theory, Mr. Coffman found that Class Members' out-of-pocket damages may be calculated using economic analyses, including an event study, to determine the amount of artificial inflation in Co-Dx's stock and option prices during the Class Period caused by the alleged fraud, and removed by the alleged corrective events and disclosures. Coffman Rep. ¶¶ 77-82. This methodology has been widely accepted at class certification in securities litigation. *See, e.g., Waggoner v. Barclays PLC*, 875 F.3d 79, 106 (2d Cir. 2017) (upholding certification where damages model "focused on the decline in stock price following the [corrective] disclosure . . . and then isolate[ed] company-specific events from market and industry events."); *Carpenters*, 310 F.R.D. at 99 (certifying class where damages methodology was based on calculation of share price inflation caused by the allegedly false statements and removed by corrective disclosures); *In re Barrick Gold Sec. Litig.*, 314 F.R.D. at 105-106 (certifying class where "plaintiffs' actual theory of damages (out-of-pocket damages) is entirely consistent with their theory of Section 10(b) liability and would be measurable on a class-wide basis."); *see also Dodona I, LLC v. Goldman, Sachs & Co.*, 296 F.R.D. 261, 271 (S.D.N.Y. 2014) (when there is a "class-wide methodology for calculation of damages, any necessary individualized inquiries are a far cry from the scope of individualized issues of proof that would defeat a finding of predominance under Rule 23(b)(3)"). Thus, Plaintiff's damages methodology amply satisfies class certification requirements.

### 2. A Class Action Is Superior to Alternative Methods for Resolving This Dispute

Rule 23(b)(3) requires that a class action also be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) provides four factors for courts to consider in evaluating the superiority requirement: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B)

18

the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. *Id*. Courts have found the superiority requirement met where: (a) many in the class of investors likely suffered only small losses, making it impracticable to proceed with their claims as individuals; (b) use of the class vehicle will achieve judicial economy, as well as prevent inconsistent judgments; and (c) there are no other actions against the company involving the same claims, and the court foresees no particular difficulties with adjudicating the class action. *See, e.g., Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (class action mechanism allows plaintiffs to pool claims that would otherwise be uneconomical to litigate individually); *see also Amchem*, 521 U.S. at 617.

There can be no dispute that in this case that a class action is superior to any other available method of adjudication. Defendants' alleged violations of the federal securities laws caused economic injury to many geographically dispersed investors, making the cost of pursuing individual claims plainly impracticable. Resolving the claims in this case on a classwide basis promotes judicial economy because the alternative is thousands of separate individual actions, which offer no practical recourse for most Class Members and would burden the judicial system. *See, e.g., Katz*, 2010 WL 2926196, at *6 ("[A]s a general rule, securities fraud cases easily satisfy the superiority requirement because most violations of federal securities laws . . . inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible."). Finally, there is no reason to expect any difficulty in the management of this case as a class action. As discussed above, all proposed Class Members were subject to the same alleged misstatements and omissions made by Defendants, thus requiring the same proof to establish Exchange Act violations.

The alternatives to a class action are either to foreclose recourse for thousands of stock purchasers or to permit a multiplicity of suits throughout the United States, which would result in the inefficient administration of justice and the risk of inconsistent judgments. *See In re SCOR*, 537 F. Supp. 2d at 579 ("Litigating each case separately would be wasteful, and result in delay and an inefficient expenditure of judicial resources" and "risk disparate results among those seeking redress."). This is precisely the "evil that Rule 23 was designed to prevent." *Califano v. Yamasaki*, 442 U.S. 682, 690, 701 (1979).

### D.    The Proposed Class Satisfies the Requirement of Ascertainability

"The ascertainability requirement, as defined in this Circuit, asks district courts to consider whether a proposed class is defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d 250, 269 (2d Cir. 2017). Where, as here, the class is defined based on "securities purchases identified by subject matter, timing, and location," which "are clearly objective" criteria, and is further limited to domestic transactions bounded by a definite class period, the requirement of ascertainability is met. *Petrobras*, 862 F.3d at 269–70.

### V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) certify this action as a class action pursuant to Rule 23(a) and (b)(3); (2) certify Lead Plaintiff as a representative of the proposed Class; and (3) appoint Kaplan Fox as Class Counsel.

Dated: July 26, 2024

**KAPLAN FOX & KILSHEIMER LLP**

*/s/ Jason A. Uris*

Frederic S. Fox
Donald R. Hall
Jason A. Uris
Chang Hahn
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

20

*ffox@kaplanfox.com*
*dhall@kaplanfox.com*
*juris@kaplanfox.com*
*chahn@kaplanfox.com*

*Lead Counsel for Lead Plaintiff and the Class*

21

## **CERTIFICATE OF SERVICE**

I, Jason A. Uris, hereby certify that, on July 26, 2024, I caused the foregoing to be served on all counsel of record by filing the same with the Court using the CM/ECF system which will send electronic notices of the filing to all counsel of record.

*/s/ Jason A. Uris*

Jason A. Uris

22