# EXHIBIT A

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of New York

| | )
| :--- | :--- |
| Stadium Capital LLC, et al. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  22-cv-6978-AS |
| Co-Diagnostics, Inc., Dwight H. Egan, and Brian L. Brown | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:           Lambert Global, LLC, c/o The Corporation Trust Company
The Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801

*(Name of person to whom this subpoena is directed)*

✔ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: Kaplan Fox & Kilsheimer LLP 800 Third Ave., 38th Floor New York, NY 10022 (212) 687-1980 | Date and Time: 05/24/2024 10:00 am |
| :--- | :--- |

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
| :--- | :--- |
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      04/24/2024

CLERK OF COURT

                                                    OR

_____                    /s/ Jason A. Uris
   *Signature of Clerk or Deputy Clerk*                *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Lead Plaintiff Stadium Capital LLC _____ , who issues or requests this subpoena, are:

 Jason A. Uris, Kaplan Fox & Kilsheimer LLP, 800 Third Ave., 38th Floor, New York, NY 10022, (212) 687-1980, juris@kaplanfox.com

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 22-cv-6978-AS

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

| Print | Save As... | Add Attachment | Reset |

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STADIUM CAPITAL LLC, on behalf of itself and all others similarly situated,<br><br>            Plaintiff,<br><br>      v.<br><br>CO-DIAGNOSTICS, INC., DWIGHT H. EGAN, and BRIAN L. BROWN,<br><br>            Defendants. | Case No.: 22-cv-6978-AS<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

**SCHEDULE A TO SUBPOENA TO LAMBERT GLOBAL, LLC**

## I.    DEFINITIONS

1.    "All," "any," and "each" shall be construed, as set forth in Local Civil Rule 26.3(d)(1), as encompassing any and all.

2.    "And" and "or" shall be construed, as set forth in Local Civil Rule 26.3(d)(2), either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

3.    "Co-Diagnostics" or the "Company" means Co-Diagnostics, Inc., and its predecessors, successors, subsidiaries, divisions, current or former Employees, current or former officers (including but not limited to Dwight H. Egan, Brian L. Brown, and Reed Benson), current or former directors (including but not limited to Eugene Durenard, James Nelson, Richard Serbin, and Ted Murphy), agents (including, but not limited to, attorneys, accountants, or consultants), all joint ventures, limited or general partnerships, or other entities operated or controlled by Co-Diagnostics.

4.    "Communication" or "Communications," as defined in Local Civil Rule 26.3(c)(1), means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).  For the avoidance of doubt, these terms refer to and include any oral, written, or electronic utterance, notation, or statement of any nature whatsoever, draft or final, potential or actual, by and to whomever made or attempted to be made, including, but not limited to, correspondence, memoranda, conversations, dialogues, discussions, interviews, consultations, agreements, electronic messages (including email, text messages, instant messages, Company intranet, electronic bulletin board or Internet site posting) and other understandings between two or more persons. The term "communication" includes, but is not limited to, any exchange of information by any means of transmission, including, but not limited to, face-to-face conversations, mail, email, telegram, overnight delivery, telephone, facsimile or telex.

5.  "Complaint" means the Consolidated Class Action Complaint for Violations of the Federal Securities Laws (ECF No. 31).

6.  "Concerning," as defined in Local Civil Rule 26.3(c)(7), means relating to, referring to, describing, evidencing, or constituting.

7.  "Correspondence" means any letter, memorandum, note, e-mail, facsimile, text message, chat logs generated through chat-based collaboration platforms, such as Microsoft Teams or Slack, instant message, internet message board posting, smartphone message, or any other writing containing a Communication from one person or persons to another person or persons.

8.  "COVID-19 Test Funding Programs" means any public or government funding programs and initiatives to increase access to COVID-19 diagnostic testing, including but not limited to, the Families First Coronavirus Response Act, the Paycheck Protection Program and Health Care Enhancement Act, and the Health Resources and Services Administration COVID-19 Uninsured Program.

9.  "Document" or "Documents," as defined in Local Civil Rule 26.3(c)(2) and Fed. R. Civ. P. 34(a)(1)(A), refers to documents or Electronically Stored Information or ESI—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form. A draft or non-identical copy is a separate document within the meaning of this term.

10.  "Electronically Stored Information" or "ESI" is defined herein to include the following:

(a)    all items covered by Fed. R. Civ. P. 34(a)(1)(A);

(b)    information or data that is generated, received, processed, and recorded by

3

computers and other electronic devices, including metadata (*e.g.*, author, recipient, file creation date, file modification date, etc.);

(c)    files, information, or data saved on backup tapes or hard drives;

(d)    internal or external websites;

(e)    output resulting from the use of any software program, including, without limitation, word processing Documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, instant messenger (or similar programs), bulletin board programs, operating systems, source code, PDF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside regardless of whether said electronic data exists in an active file, a deleted file, or file fragment; and

(f)    activity listings of electronic mail receipts and transmittals; and any and all items stored on computer memories, hard disks, USB flash drives, CD-ROM, magnetic tape, microfiche, or on any other media for digital data storage, or transmittal, such as, but not limited to, personal digital assistants (*e.g.*, iPads), hand-held wireless devices (*e.g.*, iPhones or BlackBerry smartphones), or similar devices, and file folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all Documents requested herein.

11.    "Employee" or "Employees" means, without limitation, current and former officers, executives, managers, supervisors, department heads, secretaries, clerical staff, messengers, agents, attorneys, representatives, or any person acting or authorized to act on behalf of You or any of Your divisions, subsidiaries or entities, individually or collectively.

12. "File" includes hard copy and electronically stored and computerized documents including current, archived, deleted, and overwritten electronically stored and computerized documents, including email and all attachments.

13. "Identify" shall have the same meanings as Local Civil Rule 26.3(c)(3) and 26.3(c)(4).

14. "Lambert," "You," "Your," or "Yours" means and refers to the company, Lambert Global, LLC, and any other persons or entities under its direct or indirect control or purporting to act on its behalf. These defined terms include parents, subsidiaries, affiliates, predecessor entities, successor entities, divisions, departments, groups, acquired entities, related entities, current and former officers and employees, and any other person acting or purporting to act on the entity's behalf or under its direct or indirect control.

15. "Meeting" or "Meetings" means the contemporaneous presence of any persons for any purpose, whether in person or by teleconferencing, video conferencing or otherwise, and whether or not such presence was by chance or prearranged, and whether or not the meeting was formal or informal or occurred in connection with some other activity. "Meeting" also includes presentations and conferences.

16. "Person" or "Persons," as defined in Local Civil Rule 26.3, means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

17. "Price" or "Pricing" shall mean actual, proposed, suggested, or recommended monetary values or rates, as well as price increases or decreases, retail prices, wholesale prices, transfer prices, exchange prices, markups, profit margins, discounts, rebates, promotions, or promotional allowances, and all related costs or charges.

18.    "Relevant Time Period" means January 1, 2020 through December 31, 2022, inclusive.

19.    "Refer" or "relate" or "referring" or "relating" shall include the terms describing, evidencing, constituting, comprising, consisting of, containing, discussing, mentioning, pertaining to, reflecting upon and representing.

20.    "Representative" means any person who has worked or is working for You (as defined above), or has acted or is now acting on Your behalf including, without limitation, any agent, official, director, employee, trustee, officer, attorney, attorney-in-fact, consultant, accountant, servant, limited partner, general partner, investigator, investment advisor, analyst, broker, broker-dealer, or dealer.

## II.    INSTRUCTIONS

1.    In responding to these requests, all Documents shall be produced in accordance with Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules.

2.    In responding to these requests, You shall produce responsive documents and ESI that are in Your actual or constructive possession, custody or control, or in the actual or constructive possession, custody or control of Your predecessors, successors, parents, subsidiaries, divisions, or affiliates, or any of Your respective partners, directors, officers, managing agents, agents, employees, attorneys, accountants, or other representatives. A document or ESI is within Your control if You have the ability or right to secure the document or ESI or a copy of the document or ESI from another person having possession or custody of the document or ESI.

3.    You are required to produce for inspection and copying original documents and ESI as they are kept in the usual course of business in their original folders, binders, covers, and containers or facsimile thereof, or, with respect to ESI, in their native format as explained in more detail below. In the case of documents that were already produced pursuant to federal, state or

6

local governmental or administrative investigations, those documents may be produced in the same manner as they were previously produced by You. If the original is not in Your custody, You are required to provide a copy thereof, and all non-identical copies which differ from the original or from the other copies produced for any reason, including, without limitation, the making of notes thereon.

4.      All documents that are stored in electronic or computer format shall be produced on a computer diskette or external drive where possible. Documents stored in electronic form or format of any kind are to be produced in their original native format, including all "metadata" or other electronic components of the information relating to or comprising such documents in their entirety, including all information concerning the date(s) the document was created, modified, or distributed, and the author(s) and recipient(s) of the document. Documents stored in electronic form shall not be converted to any different form. Documents maintained in searchable electronic form shall be produced in the same form, unless otherwise agreed upon. See attached Exhibit A (ESI Production Protocol).

5.      A copy of a Document that varies in any way whatsoever from the original or from any other copy of the Document – whether by reasons of metadata that differs in any respect, or by reason of any handwritten or other notation or any omission – shall constitute a separate Document and must be produced, whether or not the original of such Document is within Your possession, custody or control. Accordingly, all prior versions and all drafts of all Documents must be produced.

6.      Documents and ESI shall be produced in such fashion as to identify in whose possession and in what location that document was located, including the physical location and

7

the electronic location, if applicable, and with an indication of the company, division, department or individual from whose files the document is being produced.

7.      Your response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons. Where you are objecting to a request, You must state whether any responsive materials are being withheld on the basis of that objection. Where You are objecting to only part of the request, You must state with specificity which part of the request You are objecting to, and permit inspection of the rest.

8.      If a document, ESI or information is withheld pursuant to a claim of privilege (including work product), as to each such withheld document or information state the following:

      (a)      The privilege claimed;

      (b)      A precise statement of the facts upon which said claim of privilege is based, including sufficient information to evaluate the nature or validity of the privilege claimed;

      (c)      The following information describing each purportedly privileged document: (i) the name(s) of the author(s); (ii) the name(s) of the sender(s); (iii) the name(s) of the person(s) to whom the document and copies, if any, were sent; (iv) the job title of each individual identified in (i), (ii), and (iii) above; (v) the date of such communication; (vi) a brief description of the nature (e.g., letter, memorandum, etc.) and subject matter of the document; and (vii) the nature of the privilege;

(d)     A precise description of the place where each copy of that document is kept, including the title or description of the file in which said document may be found and the location of such file.

9.     If a portion of any document or ESI responsive to these requests is withheld under claim of privilege, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

10.     You are to produce each document requested herein in its entirety, with attachments and enclosures without deletion or excision (except as qualified by Instructions 6, 7, and 8 above) regardless of whether You consider the entire document to be relevant or responsive to the requests. All pages now stapled or fastened together should be produced, stapled or fastened together, and each document that You cannot legibly copy should be produced in its original form. Documents not otherwise responsive to any of the discovery requests herein must be produced if such documents mention, discuss, refer to, or explain the documents which are called for by these requests, or if such documents are attached to documents called for by these requests and constitute routing slips, transmittal memoranda, or letters, comments, evaluations or similar materials. Whenever a document or group of documents is removed from a file folder, binder, file drawer, file box, notebook, or other cover or container, a copy of the label of such cover or other container must be attached to the document or group of documents.

11.     Whenever a document or ESI is not produced in full or is produced in redacted form, so indicate on the document and state with particularity the reason or reasons it is not being produced in full, and describe to the best of Your knowledge, information and belief, and with as much particularity as possible, those portions of the document which are not being produced.

12.     If a document responsive to these requests was at any time in Your possession, custody, or control, but is no longer available for production, as to each such document, state the following information:

    (a)     Whether the document is missing or lost;

    (b)     Whether it has been destroyed;

    (c)     Whether the document has been transferred or delivered to another person and, if so, at whose request;

    (d)     Whether the document has been otherwise disposed of; and

    (e)     A precise statement of the circumstances surrounding the disposition of the document and the date of its disposition.

13.     If in responding to these requests, You claim any ambiguity in interpreting a request or a definition or instruction applicable thereto, such claim shall not be utilized by You as a basis for refusing to produce responsive documents, but set forth as part of Your response the language deemed to be ambiguous and the interpretation chosen or used in responding to the request.

14.     Whenever necessary to bring within the scope of a request a response that might otherwise be construed to be outside of its scope:

    (a)     The use of a verb in any tense shall be construed as the use of the verb in all other tenses;

    (b)     The use of the word in its singular form shall be deemed to include within its use the plural form as well, and vice versa;

    (c)     The use of the words "any," "all," or "each" shall each be construed as encompassing any and all;

10

(d)     The words "and" and "or" shall be construed either conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

(e)     The word "including" shall be construed to mean without limitation.

15.    Plaintiffs' First Set of Requests for Production of Documents to Lambert are continuing in nature and requires supplemental responses to the extent required by Rule 26(e).

## III.    DOCUMENTS REQUESTED

**REQUEST NO. 1:** All Documents and Communications relating to your retention by any Defendant(s).

**REQUEST NO. 2:** All Documents and Communications concerning Co-Diagnostics's sale (or potential sale) of[1], demand for, revenue attributable to, or inventory levels of the Logix Smart™ COVID-19 detection test.

**REQUEST NO. 3:** All Documents and Communications concerning Defendants' monitoring, tracking, or analysis of sales of, demand for, revenue attributable to, or inventory levels of the Logix Smart™ COVID-19 detection test, or review of any such data or information.

**REQUEST NO. 4:** All Documents concerning any factors, trends, or uncertainties that could (or did) impact demand for, or sales of, the Logix Smart™ COVID-19 detection test, including but not limited to any COVID-19 Test Funding Programs.

**REQUEST NO. 5:** To the extent not produced in response to the preceding Requests all Documents concerning Defendants' forecasting of demand for, or sales of, the Logix Smart™ COVID-19 detection test.

**REQUEST NO. 6:** To the extent not produced in response to the preceding Requests, all documents relating to Co-Diagnostics' response or strategy for responding to lower sales of, or demand for, the Logix Smart™ COVID-19 detection test.

**REQUEST NO. 7:** All Documents concerning revenue guidance provided by the Company, and the basis for such guidance, on any earnings calls or in any press releases.

**REQUEST NO. 8:** All Documents and Communications with Defendants concerning demand for COVID-19 diagnostic testing.

---

[1] For the avoidance of doubt, Plaintiff is *not* seeking documents or communications related to customer service issues (i.e., shipping issues or delivery issues), replacement requests, small validation orders, marketing, or other documents or communications solely seeking technical advice related to the Logix Smart™ test.

**REQUEST NO. 9:** All Documents concerning Defendants' decision to stop providing quarterly guidance, which was announced on May 12, 2022.

**REQUEST NO. 10:** All Documents and Communications relating to conference call, investor conference, press release, interview, presentation or other public statement made by any Defendant concerning Co-Diagnostics's sale (or potential sale) of, demand for, revenue attributable to, or inventory levels of the Logix Smart™ COVID-19 detection test, or any COVID-19 Test Funding Programs, including but not limited to the statements referenced in ¶¶44-46.

**REQUEST NO. 11:** All Documents concerning Co-Diagnostics's public disclosure of the falloff of sales of the Logix Smart™ COVID-19 detection test to investors on August 11, 2022, including but not limited to any Documents concerning the drop in Co-Diagnostics's stock price after that disclosure.

**REQUEST NO. 12:** All Documents concerning the $30 million share repurchase program announced in March 2022, including but not limited to, the reasons for its initiation, its approval, and the company's repurchase of shares under the program.

**REQUEST NO. 13:** All Documents and Communications with any Co-Diagnostics investors, securities analysts, financial analysts, financial publications, news reporters, journalists, and/or investment bankers concerning Co-Diagnostics's sale (or potential sale) of, demand for, revenue attributable to, or inventory levels of the Logix Smart™ COVID-19 detection test, or any COVID-19 Test Funding Programs.

**REQUEST NO. 14:** All Documents or Communications concerning any meetings with Co-Diagnostics concerning the sale of the Logix Smart™ COVID-19 detection test, demand for such test, or any COVID-19 Test Funding Programs.

**REQUEST NO. 15:** All Documents concerning You or Your Employees diaries, appointment calendars, cellular phone records, and text messages, concerning Communications with Co-Diagnostics concerning its sale (or potential sale) of, demand for, revenue attributable to, or inventory levels of the Logix Smart™ COVID-19 detection test or any COVID-19 Test Funding Programs.

**REQUEST NO. 16:** All research or analyst reports concerning the sale of the Logix Smart™ COVID-19 detection test, demand for such test, or any COVID-19 Test Funding Programs.

**REQUEST NO. 17:** Documents sufficient to identify by name and title each of Your employees involved in Your relationship with Co-Diagnostics and the reporting relationships between these employees and Lambert and between Lambert and Co-Diagnostics.

Dated: April 24, 2024                     **KAPLAN FOX & KILSHEIMER LLP**

                                          */s/    Jason A. Uris*

                                          Frederic S. Fox

12

Donald R. Hall
Jason A. Uris
800 Third Avenue, 38th Floor
New York, NY 10022
Tel: (212) 687-1980
Fax: (212) 687-7714
E-mail: ffox@kaplanfox.com
E-mail: dhall@kaplanfox.com
E-mail: juris@kaplanfox.com

*Lead Counsel for Lead Plaintiff and the
Proposed Class*

13

**EXHIBIT A**

**ESI PRODUCTION PROTOCOL**

**I.   PRODUCTION FORMAT**

**A.   General Provisions**

**1.   Metadata Fields and Processing**

Each of the Metadata fields set forth in Appendix A which can be extracted from a Document shall be produced for that Document. The producing party is not obligated to populate manually any of the fields in Appendix A if such fields cannot be electronically extracted from a Document, with the exception of the following, which shall be populated by the producing party:

a.   BEGBATES

b.   BEGATTACH

c.   ENDBATES

d.   ENDATTACH

e.   CUSTODIAN (IF APPLICABLE)

f.   PAGE COUNT

**2.   Text Files**

For each Document, a single text file shall be provided along with the image (or native) files and Metadata. The text file name shall be the same as the Bates Number of the first page of the Document. File names shall not have any special characters or embedded spaces. Electronic text must be extracted directly from the native electronic file unless the document was redacted, an image file, or a physical file—in which case a text file created using OCR will be produced in lieu of extracted text.

1

### 3. Load Files

All Documents shall be produced in electronic format, with files suitable for loading into a Concordance-compatible litigation support review database. All productions will include both image and Metadata Load Files, with the Load File in the format described in Appendix B.

### B. Electronically Stored Information

### 1. Family Relationships.

Parent-Child Relationships: Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved to the extent reasonably practicable. For example, if a Party is producing a hard copy printout of an email with its attachments, the attachments should be processed in order behind the e-mail to the extent reasonably practicable. The child-document(s) should be consecutively produced immediately after the parent-document. Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

Family relationships for all ESI documents (e.g., the association between an attachment and its parent e-mail) must be preserved by assigning sequential Bates numbers to all items within the parent-child group, and identifying those Bates numbers in the relevant ESI metadata. For example, if the producing party is producing an e-mail with attachments, the attachments must be processed and assigned Bates numbers in sequential order, following consecutively behind the parent e-mail.

Email Threading: The Parties may use email thread suppression to avoid review and production of information contained within an existing email thread in another document being

2

reviewed and produced, but under no circumstances will email thread suppression eliminate (a) the ability of a requesting Party to identify every custodian who had a copy of a produced document or email, or (b) remove from a production any unique branches and/or attachments contained within an email thread.

**2.      Documents Produced in Native Format.**

Certain file types—for example, spreadsheet-application files such as Microsoft Excel spreadsheets, presentation files such as Microsoft PowerPoint Documents, and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi) —can lose significant information and meaning when produced as an image. The producing party shall produce these files in Native format. Notwithstanding the foregoing, if any Microsoft PowerPoint documents are produced with redactions, such documents will be produced as redacted TIFF images in lieu of producing in Native format.  Any Document in Native Format shall be produced with a Bates-numbered TIFF image slip-sheet stating the Document has been produced in Native Format.

**3.      Documents Produced as TIFF or JPEG Images.**

All Documents except those described in Section B(2), above, will be produced in TIFF or JPEG format, according to the following protocol:

a.      All other Documents, other than those to be produced in Native Format, shall be produced as single-page Group IV TIFF images using at least 300 DPI print setting.

b.      If a receiving party is unable to accurately review a document produced in TIFF format, the receiving party may request that such document be produced in a different format. The producing party in its reasonable discretion may reproduce such document in color format or in native format.

d.      Each image (whether JPEG or TIFF) shall have a unique file name, which is the Bates Number of the Document.

e.      Each image shall be branded with its corresponding Bates Number using a consistent font type and size. The producing party shall make reasonable efforts to avoid obscuring any part of the underlying image with the Bates Number.

### 4.      De-duplication

De-duplication: A producing Party may de-duplicate any file globally (i.e., across Document Custodians (i.e., families should not be broken due to de-duplication). The producing Party will make a reasonable effort to identify all custodians who were in possession of any de-duplicated documents through an appropriate load file such as Duplicate Custodian or Custodian All/Other. Additionally, all BCC recipients whose names would have been included in the BCC metadata field, to the extent such metadata exists, but are excluded because of horizontal/global de-duplication, must be identified in the BCC metadata field specified in Appendix A to the extent such metadata exists. In the event of rolling productions of documents or ESI items, the producing Party will, as needed, supplement the load files with updated duplicate custodian information, as well as BCC information to the extent such metadata exists. Duplicate custodian information may be provided by a metadata "overlay" and will be provided by a producing Party after the Party has substantially completed its production of ESI.

Duplicate electronic documents shall be identified by a commercially accepted industry standard (e.g., MD5 or SHA-1 hash values) for binary file content. All electronic documents bearing an identical value are a duplicate group. The producing Party shall use reasonable efforts to produce only one document image or native file for duplicate ESI documents within the duplicate group to the extent practicable.

4

Duplicate messaging files shall be identified by a commercially accepted industry standard (e.g., MD5 hash values) for the email family, which includes the parent and email attachments. Duplicate messaging materials will be identified at a family level, including message and attachments. Email families bearing an identical value are considered a duplicate group. The producing Party shall use reasonable efforts to produce only one document image or native file for duplicate emails within the duplicate group to the extent practicable. In the event that emails with the same Internet Message ID ("IntMsgID") values do not successfully de-duplicate based on MD5 or SHA-1 Hash values, the parties shall, upon request by the producing party, meet and confer to discuss why the MD5 or SHA-1Hash values are not the same and whether the producing party may de-duplicate based on Internet Message ID values.   Hard copy documents containing handwritten notes will not be considered as duplicative of any other document.

### C.   **Paper Documents**

#### 1.   **TIFF or JPEG Images.**

Paper Documents shall be scanned as single page, Group IV compression TIFF images using a print setting of at least 300 DPI. Each image shall have a unique file name—i.e., the Bates Number of the Document—and shall be branded with its corresponding Bates Number using a consistent font type and size.

#### 2.   **Database Load Files / Cross-Reference Files.**

Paper Documents shall be provided with: (a) a delimited Metadata file (.dat) and (b) an image load file (.opt), as detailed in Appendix B.

**APPENDIX A: REQUESTED METADATA FIELDS**

| FIELD NAME | EXAMPLE / FORMAT | DESCRIPTION |
|---|---|---|
| BEGBATES | US00000001 (Unique ID) | The Bates Number associated with the first page of the Document. |
| ENDBATES | US00000003 (Unique ID) | The Bates Number associated with the last page of the Document. |
| BEGATTACH | US00000001 (Unique ID Parent-Child Relationships) | The Bates Number associated with the first page of the parent Document. |
| ENDATTACH | US00000008 (Unique ID Parent-Child Relationships) | The Bates Number associated with the last page of the last attachment in the Document family. |
| SENTDATE | MM/DD/YYYY | The date the email was sent. |
| SENTTIME | HH:MM | The time the email was sent. |
| CREATEDATE | MM/DD/YYYY | The date the Document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date on which the Document was last modified. |
| LASTMODTIME | HH:MM | The time when the Document was last modified |
| RECEIVEDDATE | MM/DD/YYYY | The date the Document was received. |
| RECEIVEDTIME | HH:MM | The time the Document was received. |
| DOCTITLE | Resume.docx | The Document's extracted document title. |
| EMAILSUBJECT | Re: Vacation | Subject line extracted from an email. |
| AUTHOR | jsmith | The author of the Document from entered Metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and email of the email's author. If only the author's email address is given, then just list the email address. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the recipient(s) of an email. If only the email address is given, then just list the email address. |

| FIELD NAME | EXAMPLE / FORMAT | DESCRIPTION |
|---|---|---|
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the copyee(s) of an email. If only the email address is given, then just list the email address. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the blind copyee(s) of an email. If only the email address is given, then just list the email address. |
| CUSTODIAN | Joe Smith | The Document's custodian or source. |
| DupCust, CustodianOther, or CustodianAll | All | All custodians who were in possession of a de-duplicated document besides the individual identified in the "Custodian" field. |
| PAGE COUNT | Numeric | The number of pages of each document |
| ATTACH COUNT | Numeric | Number of attachments to an email |
| FILEEXT | XLS | The Document's file extension |
| FILE_NAME | Document Name.xls | The Document's file name. |
|  |  |  |
| HASH | 9CE469B8DFAD1058C3B1E745 001158EA | The MD5 or SHA Hash value or "deduplication key" assigned to the Document. |
| NATIVELINK | D:\NATIVES\US00000001.xls | The full path to a native copy of the Document. |
| TEXTPATH | D:\TEXT\US00000001.xls | The full path to the extracted text/OCR document. |

**APPENDIX B: REQUESTED LOAD FILE FORMAT FOR ESI**

1.    **Delimited Text File.**

A delimited text file (DAT File) containing the fields listed in A should be provided. The delimiters for the file should be Concordance defaults:

- Comma – ASCII character 20 ( )

- Quote – ASCII character 254 (þ)

- Newline – ASCII character 174 (®)

2.    **Image Cross-Reference File (Opticon Load File).**

The Opticon cross-reference file is a comma delimited file consisting of six fields per line.

There must be a line in the cross-reference file for every image in the database. The format for the file is as follows: ImageID Bates Number of the Document), VolumeLabel (the name of the volume), ImageFilePath (the full path to the image file), DocumentBreak (if this field contains the letter "Y," then this is the first page of a Document; if this field is blank, then this page is not the first page of a Document), FolderBreak (please leave empty), BoxBreak (please leave empty) and PageCount (the number of pages in the Document). Sample Data is as follows :

PROD00000001, VOL001,E:\100\ PROD00000001.TIF,Y,,2

PROD00000002, VOL001,E:\100\ MT00000002.TIF,,,,

PROD00000003, VOL001,E:\100\ MT00000003.TIF,Y,,,4

PROD00000004, VOL001,E:\100\ MT00000004.TIF,,,,

PROD00000005, VOL001,E:\100\ MT00000005.TIF,,,,

PROD00000006, VOL001,E:\100\ MT00000006.TIF,,,,

8