**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

STADIUM CAPITAL LLC, on behalf of itself
and all others similarly situated,

　　　　　　　　　　　　Plaintiff,

　　　v.

CO-DIAGNOSTICS, INC., DWIGHT H. EGAN,
and BRIAN L. BROWN,

　　　　　　　　　　　　Defendants.

---

Case No.: 1:22-cv-06978-AS

**ORAL ARGUMENT REQUESTED**

<br>

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO REMOVE STADIUM CAPITOL AS LEAD PLAINTIFF AND CLASS REPRESENTATIVE AND TO DECERTIFY THE CLASS

<br>

**BAKER & HOSTETLER LLP**

45 Rockefeller Plaza
New York, New York 10111
Phone: (212) 589-4200

*Attorneys for Defendants*

## TABLE OF CONTENTS

I.       PRELIMINARY STATEMENT.......................................................................... 1

II.      STATEMENT OF RELEVANT FACTS ............................................................. 3

III.     LEGAL STANDARD ......................................................................................... 10

IV.      ARGUMENT ...................................................................................................... 11

         A.    Plaintiff Does Not Satisfy The Adequacy Requirement Of Rule 23(a)(4). .......... 11

         B.    Plaintiff's Alarming Lack Of Knowledge Of Facts Central To This Case Renders
               It An Inadequate Lead Plaintiff And Class Representative.................................. 11

         C.    Plaintiff Is Unwilling To Actively Control This Litigation On Behalf Of The
               Class. ................................................................................................................... 14

         D.    Plaintiff's Personal Attributes Demonstrate That He Is An Inadequate Class
               Representative. .................................................................................................... 19

V.       CONCLUSION................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Barclays Bank PLC Sec. Litig.*,
2016 WL 3235290 (S.D.N.Y. June 9, 2016) ...........................................................................18

*Bosch v. Credit Suisse Grp. AG*,
2022 WL 4285377 (E.D.N.Y. Sept. 12, 2022) .......................................................................15

*Boucher v. Syracuse Univ.*,
164 F.3d 113 (2d Cir. 1999)...................................................................................................10

*Catzin v. Thank You & Good Luck Corp.*,
2016 WL 11779675 (S.D.N.Y. Oct. 3, 2016)....................................................................14, 20

*City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*,
844 F. Supp. 2d 498 (S.D.N.Y. 2012).....................................................................................15

*Cobell v. Norton*,
213 F.R.D. 43 (D.D.C. 2003)..................................................................................................11

*Friedman-Katz v. Lindt & Sprungli (USA), Inc.*,
270 F.R.D. 150 (S.D.N.Y. 2010) ............................................................................................20

*Gordon v. Sonar Cap. Mgmt. LLC*,
92 F. Supp. 3d 193 (S.D.N.Y. 2015).......................................................................................18

*Greenspan v. Brassler*,
78 F.R.D. 130 (S.D.N.Y. 1978) .........................................................................................12, 17

*Iron Workers Loc. No. 25 Pension Fund v. Credit-Based Asset Servicing &
Securitization, LLC*,
616 F. Supp. 2d 461 (S.D.N.Y. 2009)......................................................................................11

*In re Kosmos Energy Ltd. Sec. Litig.*,
299 F.R.D. 133 (N.D. Tex. 2014) ...........................................................................................13

*Kyoei Fire & Marine Ins. Co. v. M/V Mar. Antalya*,
248 F.R.D. 126 (S.D.N.Y. 2007) ..............................................................................................6

*Mazzei v. Money Store*,
829 F.3d 260 (2d Cir. 2016)....................................................................................................11

*Nayani v. LifeStance Health Grp., Inc.*,
641 F. Supp. 3d 57 (S.D.N.Y. 2022).......................................................................................12

*In re NYSE Specialists Sec. Litig.*,
　240 F.R.D. 128 (S.D.N.Y. 2007) .................................................................................10

*Ogden v. AmeriCredit Corp.*,
　225 F.R.D. 529 (N.D. Tex. 2005) ...............................................................................15

*Passman v. Peloton Interactive, Inc.*,
　671 F. Supp. 3d 417 (S.D.N.Y. 2023)........................................................................12

*Reilly v. Natwest Mkts. Grp. Inc.*,
　181 F.3d 253 (2d Cir. 1999)........................................................................................5

*Russell v. Forster & Garbus, LLP*,
　2020 WL 1244804 (E.D.N.Y. Mar. 16, 2020)........................................12, 13, 18, 19

*Savino v. Comput. Credit, Inc.*,
　164 F.3d 81 (2d Cir. 1998)........................................................................................20

*Scott v. New York City Dist. Council of Carpenters Pension Plan*,
　224 F.R.D. 353 (S.D.N.Y. 2004) ...............................................................................12

*Shiring v. Tier Techs., Inc.*,
　244 F.R.D. 307 (E.D. Va. 2007) ................................................................................13

*In re Term Commodities Cotton Futures Litig.*,
　2022 WL 485005 (S.D.N.Y. Feb. 17, 2022).............................................................15

*Vollmer v. Publishers Clearing House*,
　248 F.3d 698 (7th Cir. 2001) .....................................................................................19

*Weisman v. Darneille*,
　78 F.R.D. 669 (S.D.N.Y. 1978) .................................................................................13

**Statutes**

Exchange Act of 1934 §§ 10(b) and 20(a)...................................................................................3

**Rules**

Fed. R. Civ. P. Rule 23 *et seq.* ............................................................................. *passim*

Fed. R. Civ. P. Rule 30(b)(6).....................................................................................................4

iii

## I.    PRELIMINARY STATEMENT

It is a rare case where a class representative's "ignorance" of the litigation and abdication of responsibilities is so egregious as to warrant their removal and decertification of the class—unfortunately, this is that case.

As the Court may recall, Defendants filed a Notice of Non-Opposition and Reservation of Rights in September (ECF 68), rather than opposing Plaintiff's motion for class certification, because at that time fact discovery was ongoing and Defendants had not yet had the opportunity to depose Lead Plaintiff Stadium Capital ("Plaintiff" or "Stadium"). Stadium's 30(b)(6) deposition finally took place on November 15, 2024, and it demonstrated beyond a shadow of a doubt several surprising and important truths: Stadium's sole owner, operator, and corporate representative, Mr. Joseph Zicherman, knows almost nothing about this litigation, has never reviewed any filings (including the complaint he certified), has no interest in or willingness to actively participate in or control the litigation, is relying entirely on counsel to do so, and displayed such incivility and lack of credibility that he is plainly unfit to represent the interests of an absent class. In short, it is now apparent that Stadium is not an adequate class representative under Rule 23(a)(4), and the Court should grant this Motion to Remove Stadium as Class Representative and Decertify the Class.

As detailed below, courts have a continuing duty to monitor whether lead plaintiffs and class representatives are protecting the interest of the class, and to take action if they are not. This is particularly critical in the securities context, since Congress intended for the Private Securities Litigation Reform Act of 1995 ("Reform Act") to curtail lawyer-driven litigation by requiring lead plaintiffs to take an active role in securities class actions. Accordingly, courts require that lead plaintiffs and class representatives: (1) have knowledge of the issues and facts central to their case; (2) vigorously pursue the litigation and not abdicate control to their counsel; and (3) act with upstanding character. Here, Plaintiff fails on all three counts.

1

**First**, Plaintiff knows almost nothing about the issues and facts central to its case. At Plaintiff's 30(b)(6) deposition, Mr. Zicherman displayed a remarkable lack of knowledge about the litigation: among other things, he does not understand what misrepresentations form the basis of Stadium's claims; does not know who the individual defendants are; and is unclear as to what class he has been appointed to represent. While courts do not require a plaintiff to have perfect knowledge, Stadium's ignorance of the central facts here is so extreme that removal and decertification is necessary under well-established case law.

**Second**, Stadium has demonstrated an unwillingness to take an active role in this litigation, completely abdicating control to its lawyers. At Plaintiff's 30(b)(6) deposition, Mr. Zicherman told defense counsel no less than 25 times to "ask my lawyer" for answers to questions he could not answer himself, despite those topics having been identified in the 30(b)(6) deposition notice. When asked what he has done to control this litigation, Zicherman identified only two things: (1) he authorized filing of the complaint (though he admits he never reviewed it), and (2) he appeared for the 30(b)(6) deposition (though with minimal preparation and unable to address most of the noticed topics). This has been the extent of his engagement, perhaps because, as Zicherman testified, he does not have time to serve as class representative. Stadium is fundamentally inadequate.

**Third**, Plaintiff's conduct has raised serious character concerns. Zicherman admitted that he had never reviewed the complaint, despite certifying under oath earlier in the case that he had. He also refused to appear for an in-person deposition purportedly due to an injury, but then testified at the deposition that the real reason for his refusal to appear in-person was that he had another more important engagement. Mr. Zicherman also repeatedly reacted inappropriately to basic questions—cursing on multiple occasions during the deposition, including testifying that he was "about to fucking lose it" when he was simply asked to identify the judge in this case.

As demonstrated below, Stadium is the quintessential example of an inadequate class representative. Accordingly, Defendants respectfully ask that the Court grant their Motion to Remove Lead Plaintiff as Class Representative and Decertify the Class.

## II.      STATEMENT OF RELEVANT FACTS

Plaintiff commenced this action on August 16, 2022, asserting claims under Sections 10(b) and 20(a) of the Exchange Act of 1934 against Co-Diagnostics, Inc., Dwight Egan, and Brian Brown ("Defendants"). *See* Compl., ECF 1. On October 17, 2022, Plaintiff moved for appointment as lead plaintiff; no other investor contested that motion or sought to be appointed instead. ECF Nos. 15-19. The Court granted Stadium's motion on August 9, 2023, appointing Stadium as Lead Plaintiff and Kaplan Fox as Lead Plaintiff's Counsel. ECF 21. Plaintiff filed an amended complaint (nearly identical to the original) on September 21, 2023. ECF 31.

The amended complaint challenges statements made by Defendants on two different occasions: (i) in connection with Co-Diagnostics 1Q22 earnings release on May 12, 2022, and (ii) at an investor conference on June 15, 2022. *See id.* ¶¶ 53, 54, 51. Plaintiff claimed that statements on these dates describing Co-Diagnostics' 1Q22 financial results, announcing its decision not to provide quarterly guidance on May 12, 2022 in light of changing market conditions and significant uncertainty, and expressing optimism about the Company's prospects and long-term demand for its products were misleading in light of the disappointing 2Q22 results announced on August 11, 2022. *See id.* ¶¶ 43-56. Defendants moved to dismiss all claims, arguing, among other things, that Plaintiff had failed to meet the Reform Act's heightened pleading standards for alleging that any challenged statement was false or misleading, or a strong inference of scienter. The Court granted in part and denied in part that motion: it dismissed Plaintiff's claims with respect to some of the May 12 statements and all of the June 15 statements made at the investor conference in June 2022, finding they were insufficiently alleged to have been false or misleading, but the Court allowed

3

the claims to proceed with respect to three of the May 12, 2022 statements. *See* Feb. 5, 2024 Order, ECF 42, at 7; Apr. 19, 2024 Memo-Endorsed Letter, ECF 53 (dismissing Item 303 claim). The parties propounded discovery requests based on the remaining statements and issues, and on August 2, 2024, Defendants sent notice of a 30(b)(6) deposition to Plaintiff. *See* Declaration of Douglas W. Greene ("Greene Decl.") ¶ 2, Ex. A (Notice).

On July 26, 2024, Plaintiff moved for class certification pursuant to the case schedule. *See* ECF 56. Following the Court's denial of the parties' joint request to extend certain case deadlines, including the remainder of the class certification briefing, on September 6, 2024, Defendants submitted a Notice of Non-Opposition and Reservation of Rights in response to the class certification motion. *See* ECF Nos. 67-68. The Notice stated that, in light of the incomplete factual record at that time, Defendants did not oppose Plaintiff's motion for class certification but they "specifically reserved all rights and remedies, including . . . their rights . . . to later move pursuant to [Rule] 23(c)(1)(C) to decertify the putative class . . . for failure to satisfy any of the elements necessary to maintain this action as a class action under [Rule] 23." ECF 68, at 1-2. Defendants explained that despite diligent discovery efforts and an extensive, ongoing meet-and-confer process, they had received only five documents from Plaintiff in response to Defendants' 61 document requests, and the parties had not yet agreed to a date for the noticed Rule 30(b)(6) deposition. *Id.* 2-3. On November 12, 2024, the Court granted Plaintiff's motion to certify the class, appointing Stadium as class representative and Kaplan Fox as class counsel. ECF 73.

On October 28, 2024, Defendants re-noticed the 30(b)(6) deposition of Plaintiff for an in-person deposition at defense counsel's offices in Manhattan (where Zicherman was located during his deposition). *See* Greene Decl. ¶ 3, Ex. B (Am. Notice). Defendants ultimately accommodated Plaintiff's request for a remote deposition because Plaintiff's counsel indicated "[the] corporate

representative ha[d] an ankle injury and would strongly prefer[ed] to avoid traveling to an in-person deposition." *See* Greene Decl. ¶ 4, Ex. C (Nov. 7, 2024 Uris Email). The notice of deposition to Stadium listed twenty-two topics detailing the intended scope of the corporate deposition. Mr. Zicherman was designated as the corporate representative and was deposed remotely on November 15, 2024.

Mr. Zicherman is a sophisticated financial advisor with several decades of experience on Wall Street. *See* Zicherman Dep. 136:2 ("I'm doing this for 50 years."). During his time as a partner at Morgan Stanley, he started its high-net worth practice, providing financial advice and services for several celebrity clients. *See*, *e.g.*, Zicherman Dep. 60:13-22; 68:22-70:9. He previously obtained a FINRA securities license in series 7 and 63. *See* Zicherman Dep. 64:9-13. Despite this extensive professional history and experience, Mr. Zicherman was unprofessional and inflammatory throughout the 30(b)(6) deposition, demonstrating both a notable lack of knowledge about the case and clear disrespect for the integrity of the judicial process. For example:

***Lack of Knowledge***

- Zicherman repeatedly could not answer basic questions within the scope of the 30(b)(6) topics, and instead told defense counsel to "ask my lawyer" roughly 27 times in the just over three hours on the record. *See generally* Zicherman Dep.[1]

- Zicherman testified that he does not know who the individual defendants are (*id.* at 125:17-19) and does not know where the case was filed (*id.* at 97:2-9 ("Where was the

---

[1] Defendants reserve all rights and remedies with respect to Plaintiff's plainly inadequate preparation for and lack of knowledge at the 30(b)(6) deposition regarding the topics identified in the deposition notice. *See Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 268 (2d Cir. 1999) ("Under Rule 30(b)(6), when a party seeking to depose a corporation announces the subject matter of the proposed deposition, the corporation must produce someone familiar with that subject."); *Kyoei Fire & Marine Ins. Co. v. M/V Mar. Antalya*, 248 F.R.D. 126, 153 (S.D.N.Y. 2007) (sanctions warranted where corporate representative unable to answer certain questions noticed).

5

case brought?... I have no idea where it was filed. See my lawyer.")).

• When asked which judge was presiding over this case, Zicherman had an intensely

agitated response, ultimately testifying that he did not have "the slightest idea":

> Q. **Who is the judge?** …  A. I'm going to get out of here ma'am, this is nonsense. MR. URIS: Joe, you got to, you can answer if you recall. THE WITNESS: **I'm about to fucking lose it, I'm going to completely lose it.** Who is the judge? . . . Listen, I'm telling you, everybody, if you want to end the proceedings, we can end it right now and you can haul my ass into court. Be my guest. But shame on you for asking who the judge is. Shame on you. You know what, I'm trying to represent my  profession respectfully, why don't you do the same? Why don't you ask me questions that are specific and to the point, and I'll be happy to answer them. **But don't ask me who the judge is or what state it was filed in, because I don't have the slightest idea and you know I don't have the slightest idea.** . . . I'm not answering it, I'm not answering it.

*Id.* at 97:10-98:23 (emphasis added).[2]

• Zicherman testified he was unaware if a motion to dismiss, motion for class certification,

or any other motions, had been filed, and that he has not reviewed any filings in this action.

*Id.* at 101:19-102:13; 106:12-16.

• Zicherman testified he does not know when he purchased Co-Diagnostics stock, does not

know why he sold it, and does not know how much Stadium claims to have been damaged

as a result of any alleged misconduct conduct. *Id.* at 141:13-15; 196:12-19; 122:11-123:19.

• Zicherman testified that he believes the claims in this action are about statements made at

an investor conference in June 2022. *Id.* at 78:14-16 ("A. Why [is Stadium] suing?

---

[2] Contemporaneously with the filing of this motion, Defendants are providing Chambers and opposing counsel with a FTP link that includes the entire video recording of Zicherman's testimony on Stadium's behalf ("Media Unit"). For ease of reference, Defendants have provided timestamps to some of the most egregious examples of Zicherman's conduct as well as a separate video clip containing just the cited excerpts, in the order cited in this motion ("Consolidated Clip"). This particular excerpt can be found at Consolidated Clip at 0:00-1:45, or Media Unit No. 2 at 40:15-42:01. Greene Decl. ¶ 7, Ex. J.

Because management of Co-Diagnostics spoke at a conference. . . ."); *id.* at 195:6-19 ("A. There was a time when I bought the stock based upon their presentation at the conference."). When asked if Stadium relied on any statements other than those at that June 2022 investor conference, Zicherman said "No, of course not." *Id.* at 146:12-19.

### *Lack of Participation in Managing the Litigation*

- Zicherman certified under oath that he reviewed the complaint, but testified at deposition that he never reviewed the amended complaint or any prior iterations. *Compare* Zicherman Certification, ECF 18-2, *with* Zicherman Dep. at 124:18-24 ("Q: Did you review drafts of the amended complaint? A. No.").

- Zicherman testified that he also has not reviewed any of the other filings in this case. *Id.* at 112:18-21 ("Q. Has Stadium Capital reviewed any other filings in this case? A. No."). He had not seen the Chad Coffman's report in support of class certification until defense counsel showed it to him at deposition, nor was he aware that any expert report had been submitted on behalf of Stadium in connection with this lawsuit. *Id.* at 107:13-108:7.

- Nor had Mr. Zicherman seen any discovery in this case, from either side, prior to the 30(b)(6) deposition. He testified that he had not reviewed Plaintiff's or Defendants' document requests and interrogatories, and had not seen any responses and objections to the same. *Id.* at 34:20-35:12; 43:3-19; *see also id.* at 51:19-53:11 (admitting he did not participate in responding to Defendants' interrogatories).

- Zicherman testified that he did not collect documents related to this case, nor did he instruct anyone at Stadium to collect documents. *Id.* at 39:2-17 (admitting same).

- Zicherman also testified that he does not know what his attorneys did to collect

7

documents.[3] *Id.* at 205:23-26:3 (Q. Did you give Mr. Uris access to your email? . . . I don't, I don't know the answer to that."); *id.* at 206:24-207:5 (Q. Do you know that this document was given to defendants in the discovery phase of this case? A. I don't know. You're asking me how a document was collected. I don't know the answer to that.").

- Zicherman testified that he has met with counsel "infrequently"—meeting perhaps three times over the three years this action has been pending. *Id.* at 116:21-117:19.

- Zicherman stated that his preparation for his corporate deposition (for which he had a duty to be informed on each of 22 noticed topics) consisted of speaking with his attorney for just 20 minutes each on two occasions and scanning a few documents. *Id.* at 29:25-31:16.

- Zicherman contradicted his counsel's representation that Zicherman was requesting a remote deposition for medical reasons, instead testifying that he had a prior engagement that was more important to him to attend. *Id.* at 110:10-18 ("Q. Why did you request a remote deposition despite being requested for an in-person deposition in New York? A. Why, because I have something to do later that requires -- is more important to me, to me, than -- and I need to be logistically closer to the Bronx.").

- Despite the remote deposition accommodation, during the deposition Zicherman insisted that he was only available for a few hours and would not sit for the full allotted time. *Id.* at 153:6-7 ("THE WITNESS: I can be here until 2:30 and that's it.").

- When asked what Stadium has done to control the litigation, Zicherman said he "appeare[d] here today," "filed a class action suit" and "nothing else." *Id.* 109:19-110:2.

***Lack of Respect for Judicial Process***

---

[3] Plaintiff produced only five documents in this case, one of which was an email contained in another document already produced. Greene Decl. ¶ 5.

- Zicherman was condescending and non-cooperative throughout the deposition. *See, e.g., id.* at 46:22-47:7 (telling female defense counsel: "Hey do me a favor hon, listen."); 174:2-16 (Q. So the lower book value is an indicator that a stock may be overvalued by the market? A. You got to pay attention to what I'm saying, honest to God. Book value is meaningless I just said. Meaningless. If you don't mention book value again we can be much more efficient. . . . [W]hen I answer in English, I expect you to understand in English . . . .");[4] *id.* at 190:9-15 (Q. You were sharing articles regarding monkeypox, correct? MR. URIS: Objection, he's already testified about that. A. I can't, I can't, I can't. I just can't. I can't do this. This is terrible.").

- Despite numerous reminders to not interrupt questioning, Zicherman continued to do so dozens of times. *See, e.g., id.* at 202:5-7. ("Q. So I need to ask the question in full before you cut me off, and we've done this over a dozen times.").

- When asked not to speak over defense counsel, Zicherman testified sarcastically that he had to "use all of [his] restraint to have decorum." *Id.* at 120:23-121:9.

- Zicherman insisted, over defense counsel's objection, on having his Bloomberg terminal open to check stock prices while actively being deposed under oath in this litigation. *Id.* at 9:20-10:25; 10:5-11:25.[5]

- Zicherman was asked to turn his phone on silent, yet his phone rang during the deposition, causing disruption. *Id.* at 199:3-5.

- Despite the court reporter's request to refrain from doing so, Zicherman ate during the deposition, obscuring the record and violating customary decorum.[6] *See id.* at 159:17-23.

---

[4] Consolidated Clip at 1:46-2:15, or Media Unit No. 4 at 19:37-20:07. Greene Decl. ¶ 7, Ex. J.
[5] Consolidated Clip at 2:16-3:57, or Media Unit No. 1 at 5:28-7:10. Greene Decl. ¶ 7, Ex. J.
[6] Consolidated Clip at 3:58-4:59, or Media Unit No. 4 at 0.27-1:29. Greene Decl. ¶ 7, Ex. J.

### III.    LEGAL STANDARD

There is a two-step process to bringing a securities class action: (1) appointment of lead plaintiff and counsel pursuant to the Reform Act, and (2) certification of the class, including the class representative, pursuant to Rule 23. Both removal of the lead plaintiff as the class representative and decertification of the class is proper if at any point in the litigation defendants demonstrate that the named plaintiff does not meet the criteria for Rule 23(a). *See* Fed. R. Civ. P. 23(c)(1)(C) ("[An] order that grants or denies class certification may be altered or amended before final judgment."); *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999) ("[C]ourts are required to reassess their ruling as the case develops."). Indeed, courts have a continuing "duty to monitor" whether lead plaintiffs and class representatives satisfy Rule 23(a)(4). *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 135–36 (S.D.N.Y. 2007) (courts have continuing "duty to monitor whether lead plaintiffs are capable of adequately protecting the interests of the class").

Rule 23(a)(4) requires that the class representative "fairly and adequately represent the interests of the class" since class members will be bound by the action prosecuted in their absence by the class representative. *See* Fed. R. Civ. P. 23(a)(4). This concern is further heightened in securities class actions, where the Reform Act requires a class representative "to act like a 'real' client, carefully choosing counsel and monitoring counsel's performance." *Iron Workers Loc. No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*, 616 F. Supp. 2d 461, 464 (S.D.N.Y. 2009). "Whether a representative party will fairly and adequately protect the interests of class members is a question of fact that depends on the individual circumstances of each case, and is committed to the sound discretion of the district court." *Cobell v. Norton*, 213 F.R.D. 43, 45 (D.D.C. 2003). In opposing a motion to remove lead plaintiff or decertify the class, the plaintiff retains "the burden to demonstrate that [Rule 23's] requirements [a]re satisfied." *Mazzei v. Money Store*, 829 F.3d 260, 266 (2d Cir. 2016).

10

## IV.    ARGUMENT

The deposition testimony and conduct of Stadium's corporate representative  conclusively demonstrates that Stadium is not an adequate class representative and the class must be decertified.

### A.  Plaintiff Does Not Satisfy The Adequacy Requirement Of Rule 23(a)(4).

Under Rule 23, a class representative must have adequate knowledge of and involvement in the case to represent and protect the interests of the class. Fed. R. Civ. P. Rule 23. Numerous factors can bear on this adequacy determination, but, in practice, courts tend to deny certification on adequacy grounds for three reasons: (1) the class representative lacks knowledge central to their case; (2) evidence demonstrates they are unwilling or unable to actively participate in the litigation; or (3) their personal attributes—including their honesty and character—are called into question. Here, each of these factors shows Stadium is an inadequate lead plaintiff and class representative.

### B.  Plaintiff's Alarming Lack Of Knowledge Of Facts Central To This Case Renders It An Inadequate Lead Plaintiff And Class Representative.

A class representative is not required to understand complex legal theories or litigation strategy, but—at a minimum—they must demonstrate knowledge on issues "central to the plaintiff's case." *Scott v. New York City Dist. Council of Carpenters Pension Plan*, 224 F.R.D. 353, 356 (S.D.N.Y. 2004). "Knowledge of issues central to the case . . . is crucial since not even the presence of competent class counsel can make up for an utter lack of familiarity with the action on the part of named plaintiffs." *Id.* Accordingly, while challenges to certification based on a plaintiff's general "ignorance" are disfavored, courts will find a class representative inadequate where—as here—plaintiff has shown a lack of basic knowledge about their case. *See, e.g., Scott*, 224 F.R.D. at 356 (Rule 23(a)(4) not satisfied where plaintiff testified to being unaware of important allegations in complaint).

One such crucial, foundational knowledge base is the complaint. Courts in this circuit (and

most others) require, at a minimum, that the class representative have reviewed the operative complaint and have an awareness of the facts underlying the claims. For example, in *Russell v. Forster & Garbus, LLP*, 2020 WL 1244804, at *5 (E.D.N.Y. Mar. 16, 2020), the court held that the named plaintiff was an inadequate class representative where (as here) he had not seen the complaint prior to his deposition and could not articulate facts underlying his claims. *Id.*; *see also Passman v. Peloton Interactive, Inc.,* 671 F. Supp. 3d 417, 448 (S.D.N.Y. 2023) (finding plaintiff an inadequate fiduciary for the interests of the absent class members due to "his demonstrated lack of understanding of the case and of his role and responsibilities"); *Nayani v. LifeStance Health Grp., Inc.*, 641 F. Supp. 3d 57, 63 (S.D.N.Y. 2022); *Greenspan v. Brassler*, 78 F.R.D. 130, 133-34 (S.D.N.Y. 1978) (plaintiffs inadequate where they had "limited personal knowledge of the facts underlying [the] suit" and could not identify any individual defendant).

Here, Plaintiff's lack of knowledge regarding basic issues central to the case permeates Mr. Zicherman's testimony. First, by his own account, he has not seen or reviewed any filings in this case, including the complaint. In seeking Stadium's appointment as lead plaintiff, Zicherman certified under penalty of perjury that he had reviewed the complaint against Co-Diagnostic and the individual defendants (ECF 18-2), yet at deposition, he admitted that was not true—he has never seen or reviewed the complaint or amended complaint (or any other important filings) in this case. Zicherman Dep. 124:22-24 ("Q. Did you review drafts of the amended complaint? A. No."); *see also id.* 25:7-15 (confusing the notice for his deposition with the complaint); *id.* at 112:19-21 (admitting he had not reviewed any filings); *Weisman v. Darneille*, 78 F.R.D. 669, 671 (S.D.N.Y. 1978) (denying certification in similar circumstances). Zicherman also demonstrated a total lack of knowledge as to the class he is supposed to represent, testifying:

> Q. And what's the class in this case? A. **I don't know what the hell you're talking about. What are you talking about? What is the class? Third grade, okay, next.** I

12

don't know what you're talking about. I know you're wasting time, but I understand that, but what are you talking about? How does this have any relevance to Co-Diagnostics, what is the class? Q. . . . **What is the class in this case?** A. **Okay, and I'm not responding. Talk to my attorney. Next case, next question.**

Zicherman Dep. 87:25-88:17 (emphasis added); *see also Russell*, 2020 WL 1244804, at *3 (holding plaintiff inadequate in similar circumstances).

Plaintiff also is completely unaware of who the named defendants are in this case, let alone how they were involved in the purported wrongs he alleges. Zicherman Dep. 125:14-19 ("Q. Do you know who Dwight Egan is? A. No. Q. Do you know who Brian Brown is? A. No."); *see also In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. 133, 145 (N.D. Tex. 2014) (plaintiff inadequate because he did not recognize the names of all defendants); *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 316 (E.D. Va. 2007) (denying certification where plaintiff did not know "the positions held [] by all of the named defendants, [and] could not explain why those defendants were selected").

And, perhaps most importantly, Plaintiff lacks any understanding of the facts and issues underlying his claims. When asked about the same, Zicherman vaguely referenced statements allegedly made at a June 2022 investor's conference (Dep. 84:20-25; 78:11-79:13), but the only June statements ever at issue in this lawsuit were dismissed by the Court almost a year ago, have not been part of discovery, and are no longer at issue in this case. He did not mention any of the May 12, 2022 statements (the only ones still at issue in the litigation), and even as to the dismissed June statements, he did not know the substance of the alleged misrepresentations:

> Q. When you saw that they made statements at a conference, what were the statements that they made, they as in Co-Diagnostics? A. The statements that they made were nothing like the earnings that they reported thereafter. They were very euphoric and very glowing and represented a lot of euphoria and promise. Q. **What were the statements of euphoria?** A. **I don't remember exactly.** But if you get a -- my lawyer will get a copy of the transcript and you can read it. You'll probably go out and buy it. . . . Q. Did you rely upon anything else? A. No, of course not.

Dep. 145:15-146:19 (objections omitted); *see also Catzin v. Thank You & Good Luck Corp.*, 2016

13

WL 11779675, at *5 (S.D.N.Y. Oct. 3, 2016) ("failure to remember basic details about her alleged claims" and "incorrect assertions regarding the nature of this lawsuit" made plaintiff inadequate).

In short, Zicherman's "knowledge" of Stadium's claims is limited to the general, simplistic belief that he made a bad deal:

> A. Why [is Stadium] suing? . . . I didn't feel that they told the truth at the conference. And the stock went way down and cost a lot of people a lot of money. Now, quite frankly, I understand that people win and lose, but let's just say it cost me a lot of money.

Zicherman Dep. 78:14-79:2. Rule 23(a)(4) requires more: while a plaintiff is not "expected to know all of the legal minutia," he is expected to "at least have an understanding of why all of the individuals or companies are defendants" and must know more than "money was lost" to support the allegation in his complaint. *Ogden v. AmeriCredit Corp.*, 225 F.R.D. 529, 534-35 (N.D. Tex. 2005) ("[C]lass representatives need not be legal scholars . . . [but they] do need to know more than they were involved in a bad business deal."). Stadium's testimony proves it lacks the level of knowledge necessary to adequately represent the interests of the class in this case. For this reason alone, the Court should grant Defendants' motion.

**C. Plaintiff Is Unwilling To Actively Control This Litigation On Behalf Of The Class.**

Rule 23(a)(4) further mandates that the lead plaintiff demonstrate a willingness to take "an active role in and control" the litigation. Again, this requirement is especially important in the securities class action context, given the Reform Act's emphatic command that plaintiffs—not their counsel—direct such cases. *See Bosch v. Credit Suisse Grp. AG*, 2022 WL 4285377, at *2 (E.D.N.Y. Sept. 12, 2022) ("By enacting the [Reform Act], Congress intended to 'increase the likelihood that parties with significant holdings . . . will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel.'"); *City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 844 F. Supp. 2d 498, 500 (S.D.N.Y. 2012) (Reform Act enacted to

"curtail the champertous vice of 'lawyer-driven' securities litigation"). Moreover, this duty cannot be delegated: plaintiffs that abdicate control to their counsel and do not actively manage or participate in the litigation are inadequate class representatives. Thus, in *In re Term Commodities Cotton Futures Litig.*, 2022 WL 485005, at \*7 (S.D.N.Y. Feb. 17, 2022), the court found one of the plaintiffs to be an inadequate class representative because he "had all but abdicated his responsibilities in this action" when he "made little attempt to oversee class counsel and familiarize himself with the issues in the case;" "did not know the name of the Plaintiff's expert or the content of his report"; "was not familiar with the briefing in the various motions made before this Court;" "had not read the previous opinions of this Court;" "had not reviewed any of the documents produced in this case besides his own;" and "appeared to be unsure whether he had reviewed any of the various iterations of the complaint."

The same is true here. Even putting aside Zicherman's lack of knowledge about facts central to Plaintiff's case, his testimony clearly demonstrates a lack of dedication to vigorously pursuing the class's interests and managing class counsel in this matter. For example:

- Through counsel, Plaintiff requested a remote rather than in-person deposition purportedly for medical reasons, then acknowledged at deposition that this was purely for his own convenience. *Compare* Greene Decl. ¶ 4, Ex. C (Uris Email indicating Plaintiff was unavailable to attend his deposition as noticed due to an ankle injury), *with* Zicherman Dep. 112:7-18 (testifying he was well enough to attend a meeting in the Bronx later that day, and this was the reason he wanted to appear remotely).

- Plaintiff communicated an unwillingness to stay at the deposition for the time allotted by the Rules and refused to refrain from using the internet throughout his deposition. *Id.* 152:4-7 (class counsel: "I think the witness would certainly be unavailable to testify

15

for the full 7 seven hours today"); *id.* 9:25-14:20 (plaintiff testifying he was "happy to cooperate" only if he could simultaneously use his computer to monitor investments).

- Plaintiff demonstrated an inability or unwillingness to answer questions and consistently punted to his attorney for information on the 30(b)(6) topics. *Id.* at 91:17-18 (A. "You think I have nothing else to do in my life but this?"); *id.* at 69:14-22 ("A. Next question, please. Talk to my lawyer, he'll tell you my client list. Q. Was Peter Guber a client of yours, Mr. -- A. I'm trying to tell you talk to my lawyer, I'm not answering this. This is wasting time and you know it and I know it.").

- Indeed, he continually relied on his attorney to provide key facts—including those surrounding *Plaintiff's own* purchase of Co-Diagnostic shares:

> Q. **When did you first purchase Co-Diagnostics?** A. **You have to ask my lawyer.** He has my records, I don't know. Q. Well, we're looking at the records right now. A.  I don't know.

Dep. 141:13-19 (emphasis added). Plaintiff also could not explain when or why he sold his Co-Diagnostics stock when he did. *See id.* 196:12-19 ("A. That you have to ask my attorney, I don't remember. These are the little specifics that I don't remember. Q. I think you're the best person to answer this question. Why – A. I hear you, but I don't remember." (objection omitted)).

- Nor does Plaintiff know how much money he lost or the damages he allegedly suffered:

> Q. **Do you have a large financial stake in the proposed class action?** A. That's a relative question, for me it's large, yes. Q. And how so? A. How so, it's many dollars. Q. About how many dollars? A. **No idea. Ask my lawyer, he has all of my records.** Q. You mentioned that it's large to you. So what is your understanding of what large is? A. It's not large necessarily to me, it certainly is a large amount related to the investment. Q. Okay. **And what's that amount?** A. **Ask my lawyer, please.** Q. **You still have to respond.** A. **Ask my lawyer, please.**

*Id.* at 122:19-123:14 (emphasis added); *see also id.* at 82:15-17 ("Q. And what are your

16

losses? A. I would have to check that with my attorney."); *Greenspan*, 78 F.R.D. at 133 (plaintiffs inadequate where they "appear[ed] to place undue emphasis on their counsel's ability to conduct the litigation" and had "limited personal knowledge of the facts underlying [their] suit").

- Plaintiff does not monitor the case—for example, testifying:

> Q. Okay, can you tell me what has happened in this case? A. Are you asking me a new question? Q. I am. A. You want to know what's happened in this case, I filed a class-action suit and I'm the lead plaintiff. Q. What else has happened? A. Lead plaintiff in this case. Q. What else has happened? A. What else has happened? Q. Correct. A. In this case? I'm being deposed right now. Q. **Were any motions filed?** . . . A. **Ask my lawyer, please.** Q. **Do you know if any motions were filed?** A. I do not. **Ask my lawyer, please.** Q. **Was a motion to dismiss filed?** A. **Ask my lawyer, please.** Q. Do you know whether or not a motion to dismiss – A. Ask my lawyer, please. . . . Q. Do you know whether or not a motion to dismiss was filed in this case, Zicherman? A. Ask my lawyer, please. Q. **I'm sorry, but asking your lawyer isn't an appropriate response.** A. **No, you don't understand what I'm saying. Ask my lawyer, please.** . . . Q. **Was a motion for class certification filed?** A. I don't recall. **Ask my lawyer, please**. Q. **Any appeals?** A. I don't recall. **Ask my lawyer, please.**

*Id.* at 100:6-102:13 (attorney comments omitted and emphasis added);[7] *see also Gordon v. Sonar Cap. Mgmt. LLC*, 92 F. Supp. 3d 193, 200 (S.D.N.Y. 2015) (plaintiff's "difficulties with recollection and lack of familiarity with the litigation indicate that he is wholly dependent on counsel to make crucial decisions affecting the interests of absent class members" and thus an inadequate class representative).

- Other than a brief, limited preparation for deposition, Plaintiff has rarely communicated with class counsel. *See* Zicherman Dep. at 29:25-31:16, 116:21-117:19; *compare In re Barclays Bank PLC Sec. Litig.*, 2016 WL 3235290, at *7 (S.D.N.Y. June 9, 2016)

---

[7] Consolidated Clip at 5:00-6:28, or Media Unit No. 2 at 43:13-44:42. Greene Decl. ¶ 7, Ex. J.

17

(plaintiff was adequate because "he [had] reviewed the filings, [had] sufficient familiarity with the facts and legal theories underlying the case, [and had] been in regular contact with his lawyers over the last four years"), *with Russell*, 2020 WL 1244804, at *5 (plaintiff was inadequate; he must do more than prepare for and show up for deposition).

- Plaintiff admitted that he did not participate in and knows nothing about discovery in this action. *See* Zicherman Dep. at 205:23-207:5 ("Q. Did you give Mr. Uris access to your email? A. I don't, I don't know the answer to that. Q. So how did he get this email? . . . A. I probably gave, I don't know, I really don't know. I really don't know. I don't even know what, how -- I don't know. I don't know. Q. Do you know that this document was given to defendants in the discovery phase of this case? A. I don't know. You're asking me how a document was collected. I don't know the answer to that."); *id.* 47:13-48:17 (admitting he did not review Defendant's interrogatories and had no knowledge regarding Plaintiff's responses).

- Plaintiff even tacitly admitted he does not have time to act as lead plaintiff in this case: "Q. I'll ask one more time. **Do you have the time to act as the lead plaintiff in this case?** . . . A. **Ask my lawyer.**" *Id.* at 94:3-7 (objection omitted and emphasis added); *see also id.* at 92: 11-16 ("Q. Okay. So do you have the time to dedicate to be the lead plaintiff in this case? . . . A. Do I have -- talk to my lawyer.") (objection omitted).

Zicherman's deposition testimony on behalf of Stadium demonstrates that he does not have an "interest in vigorously pursuing the claims of the class" and "lacks a fundamental understanding of this case and the role he plays." *Russell*, 2020 WL 1244804, at *5. Accordingly, Stadium cannot meet Rule 23's requirements and must be removed as class representative and the class decertified.

18

**D. Plaintiff's Personal Attributes Demonstrate That He Is An Inadequate Class Representative.**

Finally, in determining whether the adequacy requirement is satisfied, courts also consider whether the plaintiff "is of sufficient moral character to represent a class." *Catzin*, 2016 WL 11779675, at \*4; *see also Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) (under Rule 23(a)(4), courts may consider "the honesty and trustworthiness of the named plaintiff").

Here, Mr. Zicherman's testimony and conduct as Stadium's corporate representative have demonstrated an incivility and lack of credibility that make Stadium manifestly unfit to serve as class representative. *See, e.g.*, *Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150 (S.D.N.Y. 2010) (plaintiff inadequate because he "gave false testimony under oath and lacked the honesty and credibility required to be a class representative"). For example, as detailed above, Plaintiff certified under penalty of perjury that he had reviewed the complaint when he sought appointment as lead plaintiff (ECF 18-2), but at deposition, Zicherman admitted this was not true— he has never reviewed any of the filings in this action. Zicherman Dep. 124:22-24 ("Q. Did you review drafts of the amended complaint? A. No."). Plaintiff also represented, through counsel, that Zicherman could not attend the 30(b)(6) deposition in person, as noticed, due to an ankle injury, yet when questioned at deposition, he testified that he was unwilling to appear in person because he was sick—a new excuse not given at the time of the request—and because he had another, more important engagement later that day. Notably, his illness was not preventing him from attending that later event even though it required further travel than the in-person deposition.

> Q. **Why did you request a remote deposition despite being requested for an in-person deposition in New York?** . . . A. **Why, because I have something to do later that requires -- is more important to me, to me, than -- and I need to be logistically closer to the Bronx**. . . . Q. Okay. **So you're not sick for that?** A. **No, I'm not sick for that.**

Zicherman Dep. at 110:10-18 (emphasis added).

Plaintiff's demeanor during his deposition likewise reflects poorly on his credibility. He consistently reacted dismissively—often also with sarcasm, hostility, and/or condescension—to straightforward questions seeking uncomplicated, uncontroversial information: "Q. **Who is the judge?** . . . A. I'm going to get out of here, ma'am, this is nonsense. . . . WITNESS: **I'm about to fucking lose it, I'm going to completely lose it.**" *Id.* at [97:10-18] (attorney objections/comments omitted); *see also id.* at 215:11-217:14 (apparently referring to defense counsel as a "dumbshit").[8]

This is not the behavior of an adequate class representative. Plaintiff's conduct at the 30(b)(6) deposition raises serious questions about his credibility and demonstrates that he lacks the personal attributes necessary to adequately represent the interests of the absent class. For this reason too, Plaintiff should be removed as class representative and the class decertified.

## V.    CONCLUSION

As detailed above, Stadium's alarming lack of knowledge regarding this case, its extreme reliance on counsel and unwillingness to vigorously pursue the class claims, and Zicherman's questionable credibility, all render Plaintiff an inadequate representative under Rule 23(a)(4). Defendants respectfully ask that the Court grant their Motion to Remove Stadium as Lead Plaintiff and Class Representative and Decertify the Class.

Dated: December 27, 2024

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:   */s/ Douglas W. Greene*
      Douglas W. Greene (*pro hac vice*)
      dgreene@bakerlaw.com
      Genevieve G. York-Erwin
      gyorkerwin@bakerlaw.com
      Erica Barrow
      ebarrow@bakerlaw.com

---

[8] Consolidated Clip at 6:29-7:53, or Media Unit No. 5 at 13:17-14:41. Greene Decl. ¶ 7, Ex. J.

45 Rockefeller Plaza
New York, NY 10111
Telephone: 212.589.4200

Marissa A. Peirsol (*pro hac vice*)
mpeirsol@bakerlaw.com
200 S. Civic Center Dr.
Columbus, OH 43215
Telephone: 614.462.2656

*Attorneys for Defendants*

21