**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STADIUM CAPITAL LLC, on behalf of itself and all others similarly situated,<br><br>            Plaintiff,<br><br>      v.<br><br>CO-DIAGNOSTICS, INC., DWIGHT H. EGAN, and BRIAN L. BROWN,<br><br>            Defendants. | Case No.: 22-cv-6978-AS<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO REMOVE STADIUM CAPITAL AS LEAD PLAINTIFF AND CLASS REPRESENTATIVE AND TO DECERTIFY THE CLASS**

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox
Donald R. Hall
Jason A. Uris
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

*Lead Counsel for Lead Plaintiff and the Class*

January 17, 2025

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................... ii

I.    INTRODUCTION ...................................................................................................... 1

II.   ARGUMENT ............................................................................................................. 2

      A.    Stadium Capital is an Adequate Class Representative ......................................... 2

            1.    Stadium Capital Has Sufficient Knowledge ................................................ 3

            2.    Stadium Has Kept Informed of Case Developments and is Willing
                  and Capable of Fulfilling its Duties as Class Representative ................... 10

            3.    Defendants' Attacks on Mr. Zicherman's Moral Character Are
                  Unfounded and Unbecoming .................................................................... 18

III.  CONCLUSION ........................................................................................................ 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997)......................................................................................................... 2

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000)............................................................................................ 3, 6

*Borum v. Brentwood Vill., LLC*,
  Civ. No. 16-1723 (RC), 2019 WL 2437686 (D.D.C. June 11, 2019)....................................... 14

*Casale v. Kelly*,
  257 F.R.D. 396 (S.D.N.Y. 2009) ................................................................................. 12, 19

*Catzin v. Thank You & Good Luck Corp.*,
  No. 15-cv-7109 (KBF), 2016 WL 11779675 (S.D.N.Y. Oct. 3, 2016) ................................. 9, 20

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
  No. 12 Civ. 0256 (LAK) (AJP), 2017 WL 3608298 (S.D.N.Y. Aug. 22, 2017)........................ 10

*Cromer Fin. Ltd. v. Berger*,
  205 F.R.D. 113 (S.D.N.Y. 2001) ....................................................................... 3, 6, 17, 20

*Cruden v. Bank of New York*,
  Nos. 85 Civ. 4170 (JFK), *et al.*, 1988 WL 9514 (S.D.N.Y. Feb. 1, 1988) .............................. 20

*Downie v. Carelink, Inc.*,
  No. 16-CV-5868 (JPO), 2018 WL 3585282 (S.D.N.Y. July 26, 2018).................................... 18

*Friedman-Katz v. Lindt & Sprungli (USA), Inc.*,
  270 F.R.D. 150 (S.D.N.Y. 2010) ..................................................................................... 20

*German v. Federal Home Loan Mortg. Corp.*,
  168 F.R.D. 145 (S.D.N.Y. 1996) ..................................................................................... 18

*Gordon v. Sonar Cap. Mgmt. LLC*,
  92 F. Supp. 3d 193 (S.D.N.Y. 2015)................................................................................. 18

*Haw. Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.*,
  338 F.R.D. 205 (S.D.N.Y. 2021) ........................................................................... 2, 3, 4, 7

*Hua Mui v. Union of Needletrades, Indus. and Textile Employees, AFL-CIO*,
  No. 97 Civ. 7270 (HB), 1999 WL 4918 (S.D.N.Y. Jan. 5, 1999)........................................... 19

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   312 F.R.D. 332 (S.D.N.Y. 2015) ............................................................................... 2, 5, 10

*In re Omnicom Grp., Inc. Sec. Litig.*,
   No. 02 Civ. 4483 (RCC), 2007 WL 1280640 (S.D.N.Y. Apr. 30, 2007) .............................. 5, 6

*In re Pfizer Inc. Sec. Litig.*,
   282 F.R.D. 38 (S.D.N.Y. 2012) ......................................................................................... 2

*In re Risk Mgmt. Alts., Inc., Fair Debt Collection Practices Litig.*,
   208 F.R.D. 493 (S.D.N.Y. 2002) ....................................................................................... 5

*In re Term Commodities Cotton Futures Litig.*,
   Nos. 12-CV-5126 (ALC)(KNF), *et al.*, 2022 WL 485005 (S.D.N.Y. Feb. 17, 2022).............. 18

*Jacobs v. Verizon Commc'ns Inc.*,
   No. 16 Civ. 01082 (PGG) (RWL), 2020 WL 4601243 (S.D.N.Y. June 1, 2020)..................... 17

*Kronfeld v. Trans World Airlines, Inc.*,
   104 F.R.D. 50 (S.D.N.Y. 1984) ....................................................................................... 20

*Lapin v. Goldman Sachs & Co.*,
   254 F.R.D. 168 (S.D.N.Y. 2008) ....................................................................................... 4

*McCrobie v. Palisades Acquisition XVI, LLC*,
   No. 15-CV-18-LJV-MJR, 2023 WL 5317844 (W.D.N.Y. Aug. 18, 2023)...................... *passim*

*Nayani v. LifeStance Health Grp., Inc.*,
   641 F. Supp. 3d 57 (S.D.N.Y. 2022)................................................................................. 10

*Passman v. Peloton Interactive, Inc.*,
   671 F. Supp. 3d 417 (S.D.N.Y. 2023) ................................................................................ 9

*Russell v. Forster & Garbus, LLP*,
   No. 17-CV-4274(JS)(AYS), 2020 WL 1244804 (E.D.N.Y. Mar. 16, 2020)...................... 9, 18

*Savino v. Computer Credit, Inc.*,
   164 F.3d 81 (2d Cir. 1998)............................................................................................... 20

*Scott v. New York City District Council of Carpenters Pension Plan*,
   224 F.R.D. 353 (S.D.N.Y. 2004) ....................................................................................... 9

*Staley v. FSR Int'l Hotel Inc.*,
   No. 22-cv-6781 (JSR), 2024 WL 3534450 (S.D.N.Y. July 25, 2024)....................................... 3

*Stinson v. City of New York*,
   282 F.R.D. 360 (S.D.N.Y. 2012) ....................................................................................... 3

*Weisman v. Darneille*,
    78 F.R.D. 669 (S.D.N.Y. 1978) ............................................................................................... 10

*Yi Xiang v. Inovalon Holdings, Inc.*,
    327 F.R.D. 510 (S.D.N.Y. 2018) .......................................................................................... 5, 10

**Rules**

Fed. R. Civ. P. 23(a)(4) .................................................................................................................. 2

## I.    INTRODUCTION

After previously having six weeks to consider Plaintiff's motion for class certification and supporting expert report and deciding not to oppose, Defendants now resort to grossly mischaracterizing and selectively quoting the testimony of Lead Plaintiff and Class Representative Stadium Capital LLC's ("Stadium") corporate representative, Mr. Joseph Zicherman, in support of their misguided Motion to Remove Stadium Capital as Lead Plaintiff and Class Representative and to Decertify the Class.  ECF Nos. 77-79 (the "Motion").  Mr. Zicherman, the sole owner of Stadium, is 82 years old and a well-respected former professional on Wall Street.  He was a partner and Managing Director of Morgan Stanley and worked there for 20 years.  He has a pristine disciplinary record, and in his over 50 years in the industry has never been subject to any disciplinary action. Unfortunately, although Mr. Zicherman arrived on time for his deposition prepared to answer questions related to the facts and issues relevant to this litigation and Stadium's involvement and duties in the case, defense counsel repeatedly peppered Mr. Zicherman with irrelevant questions, often using legalese that nonlawyers are not expected to understand, and frequently asked Mr. Zicherman the same questions over and over when she apparently did not like his answers.

Nonetheless, despite understandably feeling harassed, patronized, and provoked by defense counsel throughout the deposition, Mr. Zicherman did his best to answer defense counsel's vague and ambiguous questions.  Most importantly, Mr. Zicherman's testimony demonstrates that Stadium has the appropriate level of knowledge concerning the core issues central to the claims in this case, has kept informed of the progress of the litigation, and is willing and capable of fulfilling its duties as class representative.

As set forth below, while Defendants have gone to great effort to pull out every possible snippet from Stadium's 30(b)(6) deposition that they believe could conceivably support their

Motion, nearly every snippet is a mischaracterization of Mr. Zicherman's actual testimony. In fact, Stadium even explicitly clarified many of the snippets cited by Defendants. While defense counsel was admittedly successful at times in frustrating and provoking the witness, when viewed in context, a holistic view of Stadium's testimony confirms that it is an adequate class representative and Defendants' Motion should be denied.

## II.    ARGUMENT

### A.    Stadium Capital is an Adequate Class Representative

"Courts rarely deny class certification on the basis of the inadequacy of class representatives, doing so 'only in flagrant cases, where the putative class representatives display an alarming unfamiliarity with the suit, display an unwillingness to learn about the facts underlying their claims, or are so lacking in credibility that they are likely to harm their case.'" *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 51 (S.D.N.Y. 2012) (internal citation omitted); *see also Haw. Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.*, 338 F.R.D. 205, 212 (S.D.N.Y. 2021) ("denial of class certification on the grounds of inadequacy should only occur in the most extreme instances."). A class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "To defeat certification, a conflict between named parties and the class they seek to represent must be fundamental." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 344 (S.D.N.Y. 2015) (internal citation omitted) (finding "[a]ny conflict that may exist is not fundamental" where "'all members of the proposed class allege claims arising from the same wrongful conduct that are based on the same legal theories as Plaintiff's claims' and therefore 'none of Plaintiff's interests are antagonistic to those of the proposed class.'"). There is simply no such conflict here. Stadium is

an adequate Class Representative.

### 1. Stadium Capital Has Sufficient Knowledge

Defendants first argue that Stadium has insufficient knowledge regarding the facts and issues in this case. ECF No. 78 ("Mem.") at 5-7, 11-14. As an initial matter, as the Second Circuit has recognized, "the Supreme Court [has] expressly disapproved of attacks on the adequacy of a class representative based on the representative's ignorance." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 61 (2d Cir. 2000) (internal citation omitted). Thus, courts routinely reject similar attempts to defeat adequacy. Under the Second Circuit's test set forth in *Baffa*, "a representative's lack of knowledge should not be disqualifying unless it demonstrates that the representative is truly 'unwilling or unable to pursue the litigation on behalf of the class.'" *AMC*, 338 F.R.D. at 212-13 (quoting *Baffa*, 222 F.3d at 62); *Staley v. FSR Int'l Hotel Inc.*, No. 22-cv-6781 (JSR), 2024 WL 3534450, at *7 (S.D.N.Y. July 25, 2024) (rejecting defendants' arguments that class representatives each "lack an understanding of the nature of this lawsuit, the claims made on their behalf, the bases for them, or the defendants they have filed claims against or the bases for suing those parties", finding that "Defendants' argument on this front imposes far too high of a burden of legal savviness on the individual class members."); *Stinson v. City of New York*, 282 F.R.D. 360, 372-73 (S.D.N.Y. 2012) (plaintiffs adequate even where Defendants contended they "demonstrated incompetency concerning basic issues such as the number of class representatives in the case, the advantages of pursuing the putative plaintiffs' as a class [sic], Plaintiffs' duties as class representatives, the procedural posture and goals of the litigation and the general facts of the case"); *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 124 (S.D.N.Y. 2001) (adequacy demonstrated where named plaintiffs "showed that they [were] more than sufficiently aware of the essential facts and issues in th[e] case").

Despite Defendants' hyperbolic assertions to the contrary, Mr. Zicherman's testimony

unquestionably demonstrates that his knowledge of the facts and issues in this case meets, and in fact exceeds, what is expected of a class representative in a complex securities fraud class action. He understands the nature of the claims at issue and the facts of the case, understands class actions, understands his obligations as a class representative, and is in frequent communication with counsel regarding key events in the case.[1]   *See, e.g., AMC*, 338 F.R.D. at 213 ("In this complex securities litigation, [lead plaintiff] is expected to rely heavily on the expertise of its counsel, who . . . are experienced in securities class actions and competent to litigate this case. [The deponent] attempted to answer questions as best he could. He showed an understanding of the basic facts that gave rise to this action as well the basic nature of the claims in the case, and otherwise indicated that [plaintiff] relies on its legal representatives to understand the case in greater detail. Most importantly, he evinced an understanding of how a class action works, the fact that [plaintiff] is a representative of this class action and [plaintiff]'s duties in that role, and affirmed [plaintiff]'s willingness to carry out those duties."); *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 177 (S.D.N.Y. 2008) (rejecting that "Plaintiff is an inadequate lead plaintiff because 'he has no understanding of his obligations as class representative, is not in the habit of supervising his counsel, and has never participated in any decisions related to the litigation'").

Ignoring Mr. Zicherman's extensive testimony regarding the facts and issues in this case[2], Defendants absurdly argue that "Plaintiff lacks any understanding of the facts and issues underlying his claims". Mem. at 13. To the contrary, for example, when asked vaguely "How

---

[1] *See, e.g.,* Stadium Capital 30(b)(6) Dep. Tr., dated Nov. 15, 2024 ("Dep. Tr.") at 78:11-79:4; 86:16-23; 87:7-24; 89:3-9; 117:4-6; 124:11-17; 146:13-16; 188:22-189:18; 192:18-193:12; 194:8-23; 195:15-19; 197:3-8; 198:19-21; 200:3-9; 203:14-205:5; 211:17-23; 212:7-14; 213:15-19; 214:9-14; 214:20-24; 215:2-6; Zicherman Declaration in Support of Opposition to Defendants' Motion ("Zicherman Decl."), ¶¶4-6.

[2] *See* Dep. Tr. at 78:11-79:4; 86:16-23; 89:3-9; 124:11-17; 146:13-16; 188:22-189:18; 192:18-193:12; 194:8-23; 195:15-19; 197:3-8; 198:19-21; 200:3-9; 203:14-205:5; 211:17-23; 212:7-14.

4

were you cheated?", Mr. Zicherman answered "I was cheated because I listened, I looked at a transcript of a big conference that led me to believe that the condition of the business was better than what was ultimately the case." Dep. Tr. at 124:11-17; *see also* 146:13-16 ("when someone comes [to] a conference and it's the CEO, you rely upon, you presume they're telling you the truth."). In fact, when asked about how the "hidden truth" could have been disclosed earlier, which calls for legal conclusions, Mr. Zicherman explained: "You want to know how it could have been disclosed earlier. The first thing is they did not -- they could have – there's a way to go about it that's time-honored and very traditional on Wall Street where you, you make a statement publicly that your sales are light or your earnings are light or business is slowing down or orders are slowing down or your biggest customer dropped dead or something or other. There are many, many disclaimers that you can make to adjust your expectations. But this company did not do that." *Id*. at 204:14-205:5. Mr. Zicherman's understanding of the facts and issues in the case far exceeds what is required. *See Yi Xiang v. Inovalon Holdings, Inc.*, 327 F.R.D. 510, 525 (S.D.N.Y. 2018) ("Although Lead Plaintiff's representative 'might not have known or understood every detail about the instant litigation,' it is clear that [Lead Plaintiff] is 'not so ignorant of the facts of this case that it is 'unable or unwilling' to protect the interests of the class.'") (internal citation omitted); *In re Facebook*, 312 F.R.D. at 345 ("Plaintiffs need not demonstrate 'a deep understanding of this litigation' to meet the adequacy requirement.") (internal citation omitted); *In re Risk Mgmt. Alts., Inc., Fair Debt Collection Practices Litig.*, 208 F.R.D. 493, 506 (S.D.N.Y. 2002) (a plaintiff who "is not a lawyer ... is not expected to have a full legal comprehension of all [his] claims"); *In re Omnicom Grp., Inc. Sec. Litig.*, No. 02 Civ. 4483 (RCC), 2007 WL 1280640, at *6 (S.D.N.Y. Apr. 30, 2007) (referring to the "unmistakably lenient [knowledge] requirements"). Moreover, "in 'complex securities litigation, named

plaintiffs are not expected to possess expert knowledge of the details of the case and must be expected to rely on expert counsel.'" *In re Omnicom,* 2007 WL 1280640, at *6 (S.D.N.Y. Apr. 30, 2007) (quoting *Baffa,* 222 F.3d at 61); *McCrobie v. Palisades Acquisition XVI, LLC*, No. 15-CV-18-LJV-MJR, 2023 WL 5317844, at *11 (W.D.N.Y. Aug. 18, 2023) ("In fact, '[t]he bar for showing sufficient knowledge is quite low,' and 'plaintiffs are entitled to rely on their counsel for the legal underpinnings of their claims.'") (internal citation omitted).

Defendants further argue that Mr. Zicherman has insufficient knowledge because "he has not seen or reviewed any filings in this case, including the complaint." Mem. at 12. To the contrary, as set forth in Stadium Capital's PSLRA Certification, Mr. Zicherman reviewed a draft of the initial complaint. ECF No. 1 at 16; *see also* Dep. Tr. at 27:2-3 ("You want to know if I've seen th[e] complaint, the answer is yes."); Zicherman Decl., ¶4. Defendants also disingenuously assert that Mr. Zicherman's testimony that he did not "review drafts of the *amended* complaint" (Dep. Tr. at 124:18-24) (emphasis added) and that Stadium Capital did not "review[] any other filings in this case" (*id.* at 112:19-21) were an "admission" that Stadium's Certification "was not true", but Defendants fail to establish whether Mr. Zicherman, a nonlawyer, even knew what defense counsel was referring to with these questions. *See also* Mem. at 3 (conceding the amended complaint is "nearly identical to the original"). More importantly, Mr. Zicherman clarified at the deposition that he has been sent various documents related to this litigation and developments in this litigation but does not recall specifically which documents he's received or reviewed. Dep. Tr. at 213:21-214:8; *see also* Zicherman Decl. ¶¶4-5 (it has been his practice in this case to have phone calls with Lead Counsel to discuss important documents or key events); *see Cromer*, 205 F.R.D. at 125 ("The 'contradictions' to which [Defendants] point[] were due largely to the repeated questioning about distant events that [neither plaintiff] was able to recall

6

in detail."). In any event, any failure to review the amended complaint is not disqualifying. *See AMC*, 338 F.R.D. at 213 ("despite the deponent's failure to read the Second Amended Complaint and his inability to answer some important questions about the case, the Court does not find that he is 'unwilling or unable to pursue the litigation on behalf of the class.'").

Defendants also assert that Mr. Zicherman "demonstrated a total lack of knowledge as to the class he is supposed to represent." Mem. at 12. To the contrary, when asked why Stadium filed a class action complaint, Mr. Zicherman testified "[w]ell, I think, I think, there have to be a lot of other people that are as offended as I am, and got blindsided like I did. So I'm basically representing a class here. . . . I was very offended by the way that this was handled and I chose to file a class-action suit, and I will represent the class, that's all." Dep. Tr. at 86:16-23, 87:11-14; *id*. at 87:22-24 ("**A.** What is the class? What is the class, the class is a group of aggrieved holders."). Despite being aware that Mr. Zicherman is not a lawyer and is unfamiliar with legal terms, defense counsel pushed on, re-asking the same question multiple times. Dep. Tr. at 88:18-89:9 ("**Q.** So is the answer you don't know? **A.** The answer is that I don't have the slightest idea what you're talking about, and I'm trying to explain that to you and you don't seem to want to accept that. But I don't know what you mean by, What is the class. **Q.** You just responded about what a class is, so my question for you was, what was the class in this particular case that you've initiated as a class action. **A.** I told you they're a bunch of aggrieved holders of Co-Diagnostics."); *see also* Zicherman Decl., ¶6. Mr. Zicherman's repeated answers were sufficient. *McCrobie*, 2023 WL 5317844, at *12-13 (plaintiff had sufficient knowledge where he "accurately described a class action as a lawsuit 'against a company or individuals where one person represents a large group of people going after ... the defendants[ ] for ... wrongdoing.'" (ellipses in original); "explaining that [he] commenced this action to 'seek justice for everyone

7

that was wronged' when 'things weren't done properly'").

Defendants' assertion that "Plaintiff also is completely unaware of who the named defendants are in this case, let alone how they were involved in the purported wrongs he alleges" is also wrong.  Mem. at 13.  In fact, Mr. Zicherman testified to the exact opposite: "**Q.** Why is Stadium Capital suing ***Co-Diagnostics, Inc., Dwight Egan and Brian Brown***? **A.** Why are they suing? Because ***management of Co-Diagnostics*** spoke at a conference . . . I thought they would be saying wonderful things at the conference, and they did say wonderful things at the conference.  But then the earnings came out . . . and it was completely dissimilar to what they said at the conference.  And ***I didn't feel that they told the truth at the conference***.  And the stock went way down and cost a lot of people a lot of money.").   Dep. Tr. at 78:11-79:4 (emphasis added).  Plaintiff understands that he is suing Co-Diagnostics and its executives that made allegedly false and misleading statements.  That Mr. Zicherman *later* answered "No" to the questions "Do you know who Dwight Egan is?" and "Do you know who Brian Brown is?" directly after being asked whether he "know[s] anyone that works at Co-Diagnostics?" or whether "anyone who works at Co-Diagnostics provide[d] Stadium Capital information related to this case?" is not surprising.  *Id*. at 125:7-19.  In any event, the inability to identify Defendants by name is not disqualifying.  *See, e.g.*, *McCrobie*, 2023 WL 5317844, at *12.

Defendants' further claim that Stadium "does not know why he sold [the stock]" blatantly misrepresents the testimony.   As Mr. Zicherman clearly testified repeatedly throughout the deposition, "**A.** I remember why I sold the stock, because I sold the stock because – because they reported earnings that were completely dissimilar with what they said at the conference."  Dep. Tr. at 197:3-8; 195:15-19 ("I sold the stock subsequently after they proved that they were, that the comments that they made were completely fabricated."); 198:19-21 ("The earnings were

nothing similar to anything that they spoke about at the conference."); 200:3-9 (similar).

Finally, Defendants disingenuously splice Mr. Zicherman's testimony to assert that he "simpl[y] believ[es] that he made a bad deal" (Mem. at 14) when he testified to the opposite: "I understand that people win and lose" (Dep. Tr. at 79:5-6) but rather "the earnings came out . . . and it was completely dissimilar to what they said at the conference.  And I didn't feel that they told the truth at the conference.  And the stock went way down and cost a lot of people a lot of money."  Dep. Tr. at 78:21-79:4; *see also id.* at 211:17-23 (testifying that he would not have purchased the stock if he had known that defendants made misleading statements on May 12, 2022 which artificially inflated the stock price).

The cases cited by Defendants do not countenance otherwise.  *Scott v. New York City District Council of Carpenters Pension Plan*, 224 F.R.D. 353, 356-57 (S.D.N.Y. 2004) (finding two putative class representatives inadequate because, for example, one did not know for sure whether the lawsuit was a class action; had met with counsel only once in three years prior to deposition; had health problems precluding participation in the case; admitted he would never question counsel's advice; and the other did not even know what a class action is);  *Russell v. Forster & Garbus, LLP*, No. 17-CV-4274(JS)(AYS), 2020 WL 1244804, at *2, *4 (E.D.N.Y. Mar. 16, 2020) ("Plaintiff's . . . wife, who is not a party to this action. . . gave authorization to initiate this action on Plaintiff's behalf", "Plaintiff did not speak with his attorney [for the first time] for nearly a year and a half after this action was filed", and "Plaintiff did not know his responsibilities as a class representative nor did he know whether [counsel] ever explained those responsibilities to him");  *Passman v. Peloton Interactive, Inc.*, 671 F. Supp. 3d 417, 448 (S.D.N.Y. 2023) (plaintiff with "lengthy criminal history" "did not understand what representing a class involve[d].");  *Catzin v. Thank You & Good Luck Corp.*, No. 15-cv-7109 (KBF), 2016

9

WL 11779675, at *5 (S.D.N.Y. Oct. 3, 2016) (plaintiff "does not know what it means to be a plaintiff in [the] case, does not know what a class action is, and does not understand that she is seeking to represent others in this case."); *Nayani v. LifeStance Health Grp., Inc.*, 641 F. Supp. 3d 57, 63-64 (S.D.N.Y. 2022) (noting that plaintiff's "failure to correct the misspelling [of her name in her own certification and declaration] prior to filing indicates a certain lack of care or diligence on her part."); *Weisman v. Darneille*, 78 F.R.D. 669, 670 (S.D.N.Y. 1978) ("Plaintiff [was] a felon convicted of violating Section 10(b), the very statute he invokes here").

> **2.     Stadium Has Kept Informed of Case Developments and is Willing and Capable of Fulfilling its Duties as Class Representative**

As reflected in Stadium's deposition testimony and the Zicherman Decl., Stadium is familiar with the case and willing and capable of fulfilling its duties as class representative. *See City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, No. 12 Civ. 0256 (LAK) (AJP), 2017 WL 3608298, at *9-10 (S.D.N.Y. Aug. 22, 2017) (collecting cases and holding declaration and deposition testimony sufficient to show adequacy). As such, Defendants' claim that "plaintiff is unwilling to actively control this litigation" is belied by the facts. Mem. at 14. Stadium has reviewed and approved the complaint filed in this action (Dep. Tr. at 27:2-3; Zicherman Decl., ¶4; ECF No. 1 at 16), received regular updates on the litigation (Zicherman Decl., ¶¶4-5; Dep. Tr. at 212:7-15; 213:15-19; 213:21-214:14; 116:21-117:9), allowed for and facilitated the search and production of responsive discovery (Zicherman Decl., ¶4; Dep. Tr. at 36:15-17; 37:3-38:23; 213:15-19; 214:20-215:6), and made available a witness for a Rule 30(b)(6) deposition. This is more than enough to establish adequacy. *MetLife,* 2017 WL 3608298, at *9-10; *In re Facebook, Inc.*, 312 F.R.D. at 345-46; *Inovalon Holdings*, 327 F.R.D. at 524-25 (rejecting Defendants' attacks on plaintiff, including that it did not review court papers in the case prior to their filing, reviewed only certain court papers to prepare for its deposition, reviewed only certain disclosure

documents referenced in the complaint, could only remember one of Plaintiff's claims at issue, met its attorneys of record for the first time one day prior to its deposition, and spoke with them for the first time after the suit was filed, finding that plaintiff was adequate because it "is monitoring the progress of the litigation, regularly confers with counsel concerning the litigation, and is familiar with the allegations in the [complaint].").

Moreover, many of Defendants' attacks with respect Plaintiff's dedication to pursuing the class's interests are, again, mischaracterizations or selective quotations of Mr. Zicherman's testimony, or are simply untrue. First, Defendants insinuate that Plaintiff requested a remote deposition "purportedly for medical reasons, then acknowledged at deposition that [the request] was purely for his own convenience." Mem. at 15 (mischaracterizing accommodation request as stating "Plaintiff was unavailable to attend his deposition as noticed"). Whether Defendants want to accept it or not, Mr. Zicherman does have an ankle injury. Dep. Tr. at 21:16-18 ("**Q.** do you have a medical condition that relates to your ankle? **A.** I do."); ECF No. 81 at 2. As such, Plaintiff requested the accommodation of a remote deposition because "Plaintiff's corporate representative has an ankle injury and would strongly prefer to avoid traveling to an in-person deposition." Declaration of Douglas W. Greene ("Greene Decl."), ECF No. 79, Ex. C at Page 2-3 of 5. That Mr. Zicherman also later testified there were "a variety of reasons why [he's] staying home" including that he "h[as] been sick for the past 10 days" and he had a meeting in the Bronx later that day, is irrelevant. Dep. Tr. at 110:25-112:15.

Defendants also fault Plaintiff for "communicat[ing] an unwillingness to stay at the deposition for [a full 7 hours of record testimony]" and for "refus[ing] to refrain from using the internet throughout his deposition." Mem. at 15. Defendants fail to mention that on October 28, 2024 they unilaterally noticed Plaintiff's deposition for the last day of the fact deposition period,

11

providing just 2.5 weeks advance notice.  Greene Decl., Ex. C at Page 2 of 5.  Despite making no effort to coordinate with Plaintiff's counsel on a date for Plaintiff's deposition, Stadium and Lead Counsel made themselves available on Defendants' requested date and time.  *Id*.  Although defense counsel completed their questioning in approximately 3 hours and 14 minutes on the record, throughout the deposition defense counsel showed a complete lack of respect for Mr. Zicherman's time, repeatedly indicating she was entitled to a full seven hours of testimony, and refusing to indicate, as a courtesy, how much time she thought she would need for her questioning despite being made aware that Mr. Zicherman had a meeting to go to at 3 p.m.  *See, e.g.*, Dep. Tr. at 92:11-13 (aware that Mr. Zicherman felt she was asking irrelevant questions to waste time, inquiring about his client list at Morgan Stanley, which he left in 1998, quizzing him on who the Judge is in the case[3], and continually provoking[4] and harassing him—asking "do you have the time to dedicate to be the lead plaintiff in this case?"); 104:18-20 (insinuating to Mr. Zicherman, a nonlawyer, that he would be required to sit for 7 hours of testimony: "today you are testifying, and you've agreed to testify for the full seven hours"); 151:24-152:2 ("Are you saying the witness is unavailable to testify for the full seven hours?"); 150:20-151:5 ("**Mr. Uris:** Do you know approximately how much longer your questioning is going to be? **Ms. Barrow:** I still have a decent amount. **Mr. Uris:** Do you have a time estimate? **Ms. Barrow:** No, unfortunately, I don't[.]"); 185:2 (indicating to Mr. Zicherman that she still "ha[s] plenty more" despite completing her questioning approximately 30 minutes later).  Moreover, Mr. Zicherman

---

[3] *See Casale v. Kelly*, 257 F.R.D. 396, 412–13 (S.D.N.Y. 2009) ("the fact that [plaintiff] did not know my name is only interesting to defendants' counsel.").

[4] *See, e.g.,* Dep. Tr. at 120:23-121:14 ("**Q.** "Again, we need to not talk over each other, okay? **A.** You know, some of your questions are so inciteful, that's with a C-I-T-E, I'm sure you know that, they engender my response.  I apologize once again for being abrupt, but when you're asking me how much I think the lawyer should be paid, you know, I have to use all of my restraint to remember that I need to have good decorum.  **Q.** You have a problem restraining yourself to have good decorum? **A.** No. Do you have problems with yourself?").

never "refused to refrain from using the internet throughout his deposition", but rather, when asked if he had any other windows open on his PC, he testified that he had a "Bloomberg screen" open (Dep. Tr. at 15:20-21) and could not close it "[b]ecause I have an active business going on . . ." (*id.* at 10:9-13). He testified that he was not corresponding with anyone (*id.* at 12:7-10) nor planning on it (*id.* at 13:3-5), rather he was "sitting at [his] desk and I can give you 102 percent of my effort." *Id.* at 11:8-9. And, contrary to Defendants' suggestion, he specifically testified that he was "not actively checking [his Bloomberg screen]", and "will answer your questions thoughtfully and accurately". *Id.* at 13:23-14:5.[5]

Defendants further argue that Plaintiff "continually relied on his attorney to provide key facts". Mem. at 16. But again, Defendants ignore that Mr. Zicherman specifically clarified that when he said "ask my lawyer" he simply meant that he did not recall (but expected his attorneys would know the answer). *See, e.g.,* Dep. Tr. at 103:20-105:14 (defense counsel being dismissive of Mr. Zicherman's clarification); 79:9-18 ("**Q.** What was the conference that you're referring to? **A.** I don't remember the name of it. Long time ago. My lawyer will know the name. **Q.** I really need to get the testimony from you. **A.** Yeah, no, you have to understand something, if I remember I'll tell you."); 123:18-19 ("It's understood if I'm saying ask my lawyer, I don't know the answer."). Moreover, that Mr. Zicherman did not recall the exact date he first purchased the stock, or the exact amount of money he lost off the top of his head (*see* Mem. at 16-17), does not

---

[5] Defendants also argue that "Plaintiff demonstrated an . . . unwillingness to answer questions and consistently punted to his attorney for information on the 30(b)(6) topics", but only cite to questions that were *outside the scope* of the 30(b)(6) topics. Mem. at 16 (referring to questions about Mr. Zicherman's client list at Morgan Stanley even though he had already testified that Stadium Capital does not have any clients, and questions regarding what court an unrelated case was filed in). Similarly, while Defendants claim to reserve all rights with respect to "Plaintiff's plainly inadequate preparation for and lack of knowledge at the 30(b)(6) deposition" (Mem. at 5), they fail to identify any specific topics for which they were unable to obtain sufficient information.

mean he "does not know" that information (which in any event, would not make him inadequate). *See* Dep. Tr. at 140:21-25 (testifying that $70,655.50 is the amount he lost); 146:20-24 (same); 142:16-143:3 (confirming the date he first purchased the stock).[6]

Additionally, Defendants' assertion that "Plaintiff has rarely communicated with class counsel" is wrong.  Mem. at 17; *see* Dep. Tr. at 212:7-14 (testifying that he has had multiple conversations concerning multiple aspects of this litigation with Lead Counsel since he was appointed lead plaintiff); 214:9-14 (does not recall specifically how many conversations over the past year); Zicherman Decl., ¶¶4-5.  Indeed, Defendants blatantly misrepresent his testimony responding to defense counsel's leading question "***Over the last year*** would you say [you've met with counsel] around three times" (emphasis added) to which Mr. Zicherman responded "Roughly", to incorrectly assert that he testified that he has met with counsel "perhaps three times over the ***three years*** this action has been pending."  Mem. at 8; Dep. Tr. at 117:7-9.

Similarly, Defendants misleadingly assert that "Plaintiff admitted that he did not participate in and knows nothing about discovery in this action" (Mem. at 18), but ignore Mr. Zicherman's testimony in response to the question "in connection with [defendants' document requests] did you collect any documents?" explaining that he "gave my attorney the logistics to gather the documents.  And he did that." Dep. Tr. at 36:12-17.  Despite this clear testimony, as defense counsel consistently did throughout the deposition, she refused to accept Mr. Zicherman's answer.  Indeed, it is exactly this type of harassing questioning and refusal to accept Mr. Zicherman's testimony that pervaded the entire deposition and set the tone from the start:

---

[6] Nor does that fact that Mr. Zicherman did not recall what expert reports had been submitted make Stadium inadequate. *See, e.g.*, *Borum v. Brentwood Vill., LLC*, Civ. No. 16-1723 (RC), 2019 WL 2437686, at *9 (D.D.C. June 11, 2019) (rejecting argument that plaintiff was inadequate where she "did not know how the class was defined, what the next steps in the litigation were, how many people were in the class, or what experts Plaintiffs may have retained to speak on the class's behalf.").

**Q.** So you never collected documents? . . . Can you describe what you collected, then, or where you collected documents? **A.** Once again, I'm explaining here that I gave him the information and he gathered the documents. **Q.** Okay. . . . So you're stating that Mr. Uris collected the documents, but I'm asking you if you specifically collected any documents. **A.** You can't be asking me that, because I've already said no three times. **Q.** So you have not collected -- **A.** I said to you -- **Q.** -- documents in connection with this case? **A.** Listen, I gave him the information and dates and he went back and got the information. . . . **Q.** -- what I'm asking is whether or not you specifically collected any documents in connection with this lawsuit. **A.** I'm telling you that I gave him the logistics [to collect documents]. **Q.** So you gave him logistics? **A.** Listen, I did not collect anything. I gave him the information, you can't go over the same question ten times.

Dep. Tr. at 37:3-38:23 (objections omitted); s*ee also* 214:20-24; 213:15-19; 215:2-6; 205:15-19 (further explaining Stadium's document collection).

Defendants' assertion that Mr. Zicherman "admitted he did not review Defendant's interrogatories and had no knowledge regarding Plaintiff's responses" again misrepresents his testimony. Mem. at 18. While Mr. Zicherman testified that he "d[id] not recognize [Defendants' Interrogatories] offhand" (Dep. Tr. at 47:13-22), he specifically testified that, with respect to defendants' interrogatories "[m]y lawyer has asked me questions and I've given him answers." *Id.* at 45:14-16; *see also* 42:2-4 (with respect to Plaintiff's Responses and Objections to Defendants' Document Requests, "I gave my attorney information, who then prepared the document"); 117:4-6 (testifying that he meets with counsel "[w]henever needed. When there's something occurring, then we have a communication of some form."); Zicherman Decl., ¶5.

Finally, contrary to Defendants' assertion, Plaintiff did not "admit[] that he does not have the time to act as lead plaintiff in this case", but rather testified to the exact opposite. *See* Dep. Tr. at 93:25-94:2 ("I got the time"); 94:16-17 ("I have the time."). Rather, after being berated by defense counsel with questions outside the scope of the 30(b)(6), and after defense counsel suggested to Mr. Zicherman that he would need to testify for a full seven hours, defense counsel

15

attempted to provoke Mr. Zicherman: "**Q.** I'm asking you today if you have the time, because you just mentioned you don't have the time.  I'm just seeking some clarity as to whether or not you have the time to devote to being lead plaintiff in this case."  *Id.* at 92:19-24. Again, it is no surprise that Mr. Zicherman, let alone any corporate representative being deposed, would react negatively to defense counsel's continual harassment:

> **A.** . . . I'll tell you something. I'm trying to help you out to get answers about your issue with Co-Diagnostics. Where the case was filed on another completely different case, all you're doing is wasting time, and you know it and I know it. So I'm trying to really be a good guy and help you out here, but that's going to end. I have plenty of time to do things that matter in this world. Midafternoon today, I got to go up to the Bronx Museum so I can go take care of children that need money. But [your repeated questions unrelated to this case] is not something I have time for. That I have time for. Now, you want to try and resume here a little bit and try and ask me some questions that matter, I'll give you very concise answers and we can move on, okay, but don't ask me if I have time. I'm here on time today and if you have the time, I got the time. **Q.** I'll ask one more time. Do you have the time to act as the lead plaintiff in this case? **Mr. Uris**: Objection, vague. **A.** Ask my lawyer. **Q.** I'm asking you, today, while you sit -- **A.** I know, I'm telling you the answer. **Q.** -- for today's testimony, but you can respond any way you can, but you do have to respond to the question and not defer to counsel. **A.** Okay, do I have the time, I have the time.

*Id*. at 93:2-94:17.

Importantly, a class representative is not inadequate even where he "was not able to answer some questions during his deposition . . . ." *McCrobie*, 2023 WL 5317844, at *13 (noting that class representative "repeatedly explained that he is unfamiliar with legal terminology, did not want to misspeak, and therefore would need to consult with his attorneys to answer those questions.").  Here, Mr. Zicherman (and Lead Counsel) repeatedly explained to defense counsel that Mr. Zicherman is not a lawyer, and their questions were not presented in a way that he could understand. Dep. Tr. at 35:18-20 ("What do you mean? When you say discovery, what are we referring to here?"); 43:25 ("And an interrogatory is what?"); 45:14-46:7 ("**A.** . . . My lawyer has asked me questions and I've given him answers. . . . **Q.** Just to clarify, did you provide

16

information to your attorney in response to an interrogatory or not? **A.** I don't know what, if I knew what you were talking about . . . Let's try English. **Mr. Uris:** Erica, I think the issue is you're using legal terms that the witness is not familiar with."); 46:23-47:3 ("I'm trying to help you here get the answer to the question, but I'm not an attorney and if you would talk in English I would be happy to answer it in English."); 86:24-89:9 (in response to defense counsel's badgering for more detail regarding the class explaining "I don't have the slightest idea what you're talking about, and I'm trying to explain that to you and you don't seem to want to accept that.") . Mr. Zicherman sought to provide accurate answers and continually did his best to answer Defendants' vague and unclear questions only to be repeatedly berated and asked the same questions over and over.  *See also, e.g.*, *id.* at 36:15-17; 37:3-38:23; 52:24-54:6; 57:17-58:16; 75:13-77:12; 83:15-84:25; 163:20-166:9; 169:13-170:3; 172:18-182:16; 188:22-194:23; 202:23-205:7. Indeed, "that lack of legal knowledge is likely true of many—if not most—class action plaintiffs . . . and [plaintiff]'s reliance on his lawyers does not undermine his adequacy because he still is personally interested and involved in the litigation." *McCrobie*, 2023 WL 5317844, at *13 (internal citations omitted); *Cromer*, 205 F.R.D. at 124 ("While the named plaintiffs were not wholly familiar with American legal terminology or concepts, their deposition testimony showed that they are more than sufficiently aware of the essential facts and issues in this case. In complex actions such as this one . . . it is unfair to expect plaintiffs, even when they are 'sophisticated,' to have an expertise in United States law. The plaintiffs are entitled to rely in that regard 'on the expertise of counsel.'") (internal citation omitted); *see also Jacobs v. Verizon Commc'ns Inc.*, No. 16 Civ. 01082 (PGG) (RWL), 2020 WL 4601243, at *12 (S.D.N.Y. June 1, 2020), *report and recommendation adopted*, No. 16 Civ. 1082 (PGG), 2020 WL 5796165 (S.D.N.Y. Sept. 29, 2020) (even where "Plaintiff's answers, in isolation, certainly do not evince

17

the type of care or vigilance that a class representative should have in order 'to exercise independent control over the attorney[] . . . taking Plaintiff's testimony in total, her demonstration of interest and engagement in the litigation is considerable, and the Court finds her to be adequate . . . .").

The cases cited by Defendants are inapposite. *Gordon v. Sonar Cap. Mgmt. LLC*, 92 F. Supp. 3d 193, 199-200 (S.D.N.Y. 2015) ("[plaintiff] had from the outset consulted with his longtime family attorney and cousin by marriage . . . regarding th[e] action," that attorney had a fee sharing agreement with co-lead counsel and had a "somewhat murky role in th[e] case", and "[plaintiff] could not recall having spoken with [his family attorney] at any time during the prior two weeks," despite having done so the prior day and "could not, without conferring with counsel, recall which of the putative classes he seeks to represent."); *Russell*, 2020 WL 1244804, at *4 (*see infra* at 9); *In re Term Commodities Cotton Futures Litig.*, Nos. 12-CV-5126 (ALC)(KNF), 2022 WL 485005, at *7 (S.D.N.Y. Feb. 17, 2022) (plaintiff "appeared to be unsure whether he had reviewed the any of the various iterations of the complaint . . . whether his attorney had appeared before this Court . . . and just whom he seeks to represent in this action").

**3.    Defendants' Attacks on Mr. Zicherman's Moral Character Are Unfounded and Unbecoming**

"Courts have occasionally found plaintiffs to be inadequate in light of serious credibility issues and inconsistencies going to the heart of their claims, but courts will not find a representative inadequate unless such 'attacks on [her] credibility ... are so sharp as to jeopardize the interests of absent class members.'" *Downie v. Carelink, Inc.*, No. 16-CV-5868 (JPO), 2018 WL 3585282, at *7 (S.D.N.Y. July 26, 2018) (internal citations omitted); *see also German v. Federal Home Loan Mortg. Corp.*, 168 F.R.D. 145, 154 (S.D.N.Y. 1996) ("[t]o defeat class representation, any allegations concerning the representative's adequacy must be relevant to the

18

claims in the litigation, such that the problems 'could become the focus of cross-examination and unique defenses at trial, to the detriment of the class.' Plaintiffs' testimony or credibility that is subject to attack must be 'on an issue critical to one of their ... causes of action.'") (internal citations omitted) (ellipses in original); *Hua Mui v. Union of Needletrades, Indus. and Textile Employees, AFL-CIO,* No. 97 Civ. 7270 (HB), 1999 WL 4918, at *4 (S.D.N.Y. Jan. 5, 1999) (despite "general" credibility problems, finding plaintiff was adequate where the credibility issues "[did] not specifically relate to ... the duty of fair representation central to this lawsuit"). Even if the Court were to take Defendants' mischaracterizations of Plaintiff's testimony at face value, Defendants have not cited a single case that would support a finding of inadequacy based on Stadium's moral character or credibility or even remotely resemble the facts here.

Mr. Zicherman is a well-respected former professional on Wall Street. He has a pristine disciplinary record, and in his over 50 years in the industry has never been subject to any disciplinary action. Dep. Tr. at 71:10-72:3; 87:3-14. From the very start of the deposition defense counsel patronized Mr. Zicherman, repeatedly asking him the same questions in a condescending manner and often using legalese not typically understood by nonlawyers. While Mr. Zicherman occasionally responded with language that he perhaps should not have used, on the whole, he was agreeable and answered Defendants' questions. *McCrobie*, 2023 WL 5317844, at *12 ("a holistic view of [plaintiff]'s testimony confirms that [plaintiff] is an adequate representative who understands his responsibilities and the general contours of this litigation."); *see also Casale,* 257 F.R.D. at 412 ("Frankly put, defendants' assault on named plaintiffs' capability to represent the interests of similarly situated individuals is disrespectful and blatantly self-serving.").

As explained above, Defendants' efforts to mischaracterize and selectively quote Mr.

Zicherman's testimony in an effort to tacitly suggest he gave false testimony should be thoroughly rejected.  *See, e.g.*, Mem. at 7, 12, 19; *Cromer*, 205 F.R.D. at 125 ("The 'contradictions' to which [Defendants] point[] were due largely to the repeated questioning about distant events that [neither plaintiff] was able to recall in detail. Any 'inconsistencies' in response to the multitude of questions that they were asked do not, when the depositions are considered as a whole, present a fair basis to argue that [plaintiff] lied during their depositions or should be disqualified from serving as class representatives because their credibility at trial will be seriously undercut by their deposition testimony."); *Cruden v. Bank of New York*, Nos. 85 Civ. 4170 (JFK), *et al.*, 1988 WL 9514, at *5 (S.D.N.Y. Feb. 1, 1988) (similar); *Kronfeld v. Trans World Airlines, Inc.,* 104 F.R.D. 50, 52 (S.D.N.Y. 1984) (similar).[7]

Indeed, Defendants' cases involved far more serious conduct.  *Catzin*, 2016 WL 11779675, at *5 (in case alleging various wage-related claims, in addition to other severe, fundamental deficiencies, plaintiff "was fired . . . for allegedly stealing money from the cash register"); *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) (upholding finding that the plaintiffs' "differing accounts about the letters that form the very basis for his lawsuit surely would create serious concerns as to his credibility at any trial"); *Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 159 (S.D.N.Y. 2010) (court found that plaintiff "purposely gave false testimony under oath" and "that her attorneys . . .  knew that these statements were false, failed to correct them, and likely also encouraged the testimony.").

## III.    CONCLUSION

For the foregoing reasons, Defendants' motion to remove Stadium Capital as Lead Plaintiff and Class Representative and to Decertify the Class should be denied in its entirety.

---

[7] Similarly, contrary to Defendants' suggestion, Plaintiff explicitly clarified for defense counsel that he *did not* refer to her as a "dumbshit".  Mem. at 20; Dep. Tr. at 216:8-217-9.

Dated: January 17, 2025                    KAPLAN FOX & KILSHEIMER LLP

                                           /s/ Jason A. Uris
                                           Frederic S. Fox
                                           Donald R. Hall
                                           Jason A. Uris
                                           800 Third Avenue, 38th Floor
                                           New York, NY 10022
                                           Tel: (212) 687-1980
                                           Fax: (212) 687-7714
                                           E-mail: ffox@kaplanfox.com
                                           E-mail: dhall@kaplanfox.com
                                           E-mail: juris@kaplanfox.com

                                           *Lead Counsel for Lead Plaintiff and the
                                           Class*

21