**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| STADIUM CAPITAL LLC, on behalf of itself and all others similarly situated,<br><br>                       Plaintiff,<br><br>    v.<br><br>CO-DIAGNOSTICS, INC., DWIGHT H. EGAN, and BRIAN L. BROWN,<br><br><br>                    Defendants. | Case No.: 1:22-cv-06978-AS<br><br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF**
**THEIR MOTION TO REMOVE STADIUM CAPITAL AS LEAD PLAINTIFF AND**
**CLASS REPRESENTATIVE AND TO DECERTIFY THE CLASS**

**BAKER & HOSTETLER LLP**

45 Rockefeller Plaza
New York, New York 10111
Phone: (212) 589-4200

The law sets a high bar for finding a class representative inadequate, but this is the unusual case where that high bar for removal is met. As detailed in Defendants' Motion (ECF No. 78), Mr. Zicherman's testimony and conduct at Stadium's 30(b)(6) deposition demonstrated such an egregious lack of knowledge, unwillingness to control the litigation, and lack of credibility that Stadium cannot be an adequate class representative.

Plaintiff's Opposition (ECF No. 83) seeks to deflect attention from this inadequacy by asserting (somewhat contradictorily) (i) that Zicherman's deposition testimony and conduct were not as bad as they sound, when viewed in context, and (ii) that Zicherman's poor conduct at the deposition was an excusable response to defense counsel's "harassing" insistence that he answer questions. Plaintiff is wrong on both counts: the full transcript and videorecording show that Zicherman was consistently unprepared, uncooperative, and displayed a remarkable lack of knowledge about the case, requiring defense counsel to seek clarity on many vague and nonresponsive answers in an attempt to get meaningful testimony. We invite the Court to review Zicherman's testimony in context and judge for itself.

Equally as troublesome as Zicherman's misconduct is his ceding control of the litigation to his lawyers—a practice outlawed by the Reform Act. In his own words, Zicherman's participation in this action has been limited to two things: he "filed a class action suit" and "appear[ed]" at deposition, "nothing else." Zicherman Dep. 109:19-110:2. Congress enacted the Reform Act to prevent precisely this kind of lawyer-driven litigation, and Rule 23(a)(4) guards against class representatives, like Stadium, who are unable or unwilling to perform their duties and abdicate control to counsel. Stadium is a manifestly inadequate class representative, and the Court should grant Defendants' Motion, remove Stadium as class representative, and decertify the class.

## I.    Plaintiff's Ignorance Of Facts Central To This Case Renders It Inadequate.

Plaintiff concedes that Zicherman is a sophisticated financial advisor with several decades

of experience on Wall Street, and Zicherman even touted his superior knowledge on the record. Yet, he was willfully uninformed regarding the basics of Stadium's case.

As an initial matter, Plaintiff's failure to review any version of the complaint in this action speaks volumes regarding his inadequacy. The Opposition asserts that Zicherman *did* "review[] a draft of the initial complaint," citing three things: (i) his certification of Stadium's initial complaint (ECF No. 1, at 16); (ii) a snippet of deposition testimony where he stated, "You want to know if I've seen th[e] complaint, the answer is yes." (Opposition at 6, quoting Zicherman Dep. 27:2-3); and (iii) a statement in Zicherman's declaration (ECF No. 84), submitted with the Opposition, that he "received documents filed with the Court including . . . the complaint filed in the action." None of these demonstrates that Zicherman reviewed the complaint, and Plaintiff's disingenuous insistence to the contrary itself illustrates Stadium's inadequacy. While Zicherman certified under penalty of perjury that he had "reviewed" the initial complaint, at deposition he testified that he had *not* done so. *See* Zicherman Dep. 109:19-110:2 (testifying that he did nothing more than file the lawsuit and appear at deposition); 124:22-24 ("Q. Did you review drafts of the amended complaint? A. No."). As for the testimony Plaintiff cites, in context it is clear that this was not about the complaint at all, but about Defendants' Notice of Deposition to Stadium: defense counsel introduced the exhibit and asked Zicherman what he understood it to be; he said "[t]he entire complaint"; she referred him to the list of topics attached to the Notice of Deposition and asked if he had seen them before; he responded "You want to know if I've seen this complaint, the answer is yes" (referring to the Notice of Deposition); defense counsel then explained that "the document you're looking at is not a complaint," and he said, "Okay. Well what are we calling it? What is this document?" *Id.* 25:7-27:16; *see also id.* 112:19-21 (admitting he had not reviewed any filings).[1]

---

[1] Zicherman understands the general nature and purpose of a complaint. *See* Dep. 20:24-21:8.

2

Nowhere in this exchange did Zicherman say he had reviewed the initial complaint—only that he had reviewed the document directly in front of him (the Notice of Deposition), which he mistook for the complaint, demonstrating a disturbing level of confusion about the foundational document in his case. As for his carefully worded declaration in opposition to this Motion, Zicherman retreats from his certification to state only that he "received" the complaint. *See* ECF No. 84, ¶ 4 ("I have received documents filed with the Court including . . . the complaint[.]"). In light of all this, Zicherman's certification submitted with the complaint looks much more like perjury than evidence of his having reviewed it. His willingness to sign that certification with respect to a complaint he either did not know was true or did not care was untrue demonstrates all the inadequacy factors—lack of knowledge, lack of involvement, and lack of credibility. *See, e.g.*, *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 145 (S.D.N.Y. 2007) (integrity issues militate against appointing lead plaintiff).

Moreover, even if Zicherman did review some version of the complaint, his testimony demonstrates an unacceptable lack of knowledge regarding the substance of Stadium's claims. The only challenged statements Zicherman identified as allegedly false or misleading—those made at an investor conference in June 2022—were dismissed by this Court almost a year ago. When asked if Stadium relied on any other statements, Zicherman said "No, of course not." Zicherman Dep. 146:12-19. Plaintiff's counsel attempted to rehabilitate this testimony on cross examination with leading questions that invoked Plaintiff's general reliance on Co-Diagnostics' stock price, but this obviously lawyer-driven testimony cannot mask Plaintiff's severe lack of knowledge, and Zicherman's obvious willingness to follow counsel's lead in all things only further highlights his dubious credibility.

## II.    Plaintiff's Failure To Meaningfully Participate In The Discovery Process Likewise Proves Its Inadequacy.

Zicherman's lack of participation in the discovery process similarly demonstrates Stadium's unwillingness to actively control the litigation, to the detriment of the class as well as Defendants. At deposition, Zicherman could not answer even basic questions regarding documents requested and produced in this case; this resulted in a confusing record and serious doubts as to whether Plaintiff has complied with its discovery obligations. *See* Zicherman Dep. 35:24-36:10 (punting to defense counsel regarding all discovery-related questions). Zicherman testified that he provided counsel with the transaction history related to his Co-Diagnostics' securities, but he could not say whether Stadium produced any other documents or emails in this case. *See id.* 36:15-37:2; *id.* 205:23-206:3 (testifying he did not know whether he gave his counsel access to collect his emails). This perhaps explains why, despite numerous meet-and-confers and pleas by Defendants, Plaintiff has produced only five documents in response to 61 document requests.

Plaintiff also showed up for the 30(b)(6) deposition unprepared and unwilling to testify pursuant to standard procedural rules.[2] *See id.* 91:17-18 (A. "You think I have nothing else to do in my life but this?"); 153:6-7 ("I can be here until 2:30 and that's it."). The Opposition suggests some impropriety in defense counsel's insistence that Zicherman close his Bloomberg trading terminal during his deposition, not eat during the proceeding, and be available to testify for a full seven hours. Opposition at 11-13. But these are the same rules of deposition decorum that apply to all deponents, and Zicherman's unwillingness to abide by them constitutes an abdication of his duties and shows a clear lack of respect for the judicial process. *Compare* Fed. R. Civ. P. 30 *with*

---

[2] Plaintiff argues it did not have sufficient notice of the 30(b)(6) deposition, but it had three months' notice regarding the topics, and the deposition was adjourned to accommodate mediation and avoid conflicts with seven depositions *Plaintiff scheduled* in a three-week period. Moreover, Defendants accommodated Plaintiff's request for a remote deposition. *See* ECF No. 79-3.

Zicherman Dep. 9:20-10:25; 10:5-11:25; 153:6-7; 159:17- 23; 198:22-199:5; 201:23-202:7. This is not the conduct of an adequate class representative.

Plaintiff also offloaded responsibility to counsel for responses to important factual questions squarely within the noticed 30(b)(6) topics. *See generally* Zicherman Dep. (responding "ask my lawyer" approximately 27 times). The noticed topics were provided three months in advance of the deposition (*see* ECF Nos. 79-1, 79-2), allowing Zicherman ample time to prepare, yet he could not speak to many of these topics at the deposition. *See, e.g.*, Zicherman Dep. 35:4-12, 40:5-25 (did not recognize Defendants' document requests or Plaintiff's responses, and had no knowledge of the responses provided on Plaintiff's behalf); 47:13-48:17, 51:17-53:11 (same regarding Defendants' interrogatories and Plaintiff's responses); 208:2-6 (unfamiliar with the five documents Stadium produced, and did not know how they were collected); *see also Bigsby v. Barclays Cap. Real Est., Inc.,* 329 F.R.D. 78, 80–81 (S.D.N.Y. 2019) (corporate representative is obligated to educate himself on noticed 30(b)(6) topics so he can testify fully and completely).

Finally, Plaintiff's attempts to justify Zicherman's inflammatory conduct as a justifiable response to "harassment" or "legalese" fall flat. Plaintiff was questioned with straightforward non-harassing questions in layman's terms, yet his responses were often rude and condescending. *See, e.g.*, Dep. 97:10-98:23 ("Q. Who is the judge? . . . A. I'm going to get out of here, ma'am, this is nonsense. . . . I'm about to fucking lose it. . . ."); 174:2-16 ("Q. So the lower book value is an indicator that a stock may be overvalued by the market? A. You got to pay attention to what I'm saying, honest to God. Book value is meaningless I just said. . . . [W]hen I answer in English, I expect you to understand in English. . . .").

Defendants respectfully ask that the Court grant their Motion to Remove Stadium Capital as Lead Plaintiff and Class Representative and Decertify the Class.

Dated: January 21, 2025

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:  /s/ Douglas W. Greene
     Douglas W. Greene (*pro hac vice*)
     dgreene@bakerlaw.com
     Genevieve G. York-Erwin
     gyorkerwin@bakerlaw.com
     Erica Barrow
     ebarrow@bakerlaw.com
     45 Rockefeller Plaza
     New York, NY 10111
     Telephone: 212.589.4200

     Marissa A. Peirsol (*pro hac vice*)
     mpeirsol@bakerlaw.com
     200 S. Civic Center Dr.
     Columbus, OH 43215
     Telephone: 614.462.2656

*Attorneys for Defendants*