# **Exhibit 28**

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

STADIUM CAPITAL LLC, on      )
behalf of itself and         )
all others similarly         )
situated,                    )
              Plaintiff,     )Case No.
                             )22-cv-6978-AS
         vs.                 )
                             )
CO-DIAGNOSTICS, INC.,        )
DWIGHT H. EGAN, and          )
BRIAN L. BROWN,              )
              Defendants.    )
_____

REMOTE VIDEOTAPED DEPOSITION OF

VINITA JUNEJA, Ph.D.

Greenwich, Connecticut

Friday, February 7, 2025

Reported By:

CATHI IRISH, RPR, CRR, CLVS

Page 2

February 7, 2025
9:05 a.m.

Remote videotaped deposition of VINITA JUNEJA, Ph.D., with all participants appearing via videoconference, before Cathi Irish, a Registered Professional Reporter, Certified Realtime Reporter, and Notary Public of the State of New York.

Page 3

APPEARANCES:

KAPLAN FOX & KILSHEIMER LLP
Attorneys for Plaintiff
    800 Third Avenue
    38th Floor
    New York, New York 10022
BY:  JASON A. URIS, ESQ.

BAKER & HOSTETLER LLP
Attorneys for Defendants
    45 Rockefeller Plaza
    New York, New York 10111
BY:  GENEVIEVE G. YORK-ERWIN, ESQ.

ALSO PRESENT:
    CHRISTOPHER HANLON, videographer
    IVELINA VELIKOVA

Page 4

THE VIDEOGRAPHER:  Good morning. We are going on the record.  The date today is February 7, 2025.  The time is 9:05 a.m. Eastern time.          09:05:02AM
    This is media unit number 1 of the video recorded deposition of Dr. Vinita Juneja, taken in the matter of Stadium Capital LLC, et al., versus Co-Diagnostics, Incorporated, et al.,   09:05:17AM filed in the U.S. District Court for the Southern District of New York. This is case number 22-cv-6978.
    My name is Christopher Hanlon. I'm a certified legal videographer.    09:05:33AM Our court reporter today is Cathi Irish, and we're with Veritext New York.
    I will just note that I cannot go off the video record unless all          09:05:42AM parties agree.
    At this time I would ask counsel to please state your appearances for the record starting with the noticing attorney, please.                09:05:51AM

Page 5

MR. URIS:  Jason Uris from Kaplan Fox & Kilsheimer on behalf of lead plaintiff in the class.
    MS. YORK-ERWIN:  Genevieve          09:06:01AM York-Erwin from Baker Hostetler on behalf of the defendants, and Ivelina Velikova from National Economic Research Associates is also here just listening in today.                 09:06:11AM
    THE VIDEOGRAPHER:  Thank you, Counsel.
    I would ask our court reporter to please administer the oath and we can proceed.                    09:06:16AM
VINITA  JUNEJA,  Ph.D., called as a witness, having been duly sworn by a Notary Public, was examined and testified as follows:
EXAMINATION                  09:06:18AM
BY MR. URIS:
    Q.  Dr. Juneja, thank you for making yourself available to provide testimony today.  Can you please state your full name for the record?                 09:06:46AM

2 (Pages 2 - 5)

Page 6

JUNEJA

A. Vinita Juneja.

Q. You may be familiar with these but I would like to go over some ground rules before we get started. Do you understand that you took an oath under penalty of perjury to tell the truth today?    09:06:59AM

A. Yes.

Q. Are you aware of any reason why you cannot testify truthfully today?    09:07:08AM

A. No.

Q. And in order for us to have a clean record, if you could please let me finish my questions before answering and also you need to answer audibly so the court reporter can hear you so that means no nodding or shaking your head. Does that work for you?    09:07:19AM

A. Yes.    09:07:30AM

Q. Throughout today's deposition, defendants' counsel may object to the form of some of my questions but even when counsel does so you must still answer truthfully. Do you understand?    09:07:39AM

Page 7

JUNEJA

A. Yes.

Q. If you need a break, please just let me know. However, if a question is pending, I would like for you to finish answering the question before we take a break. Does that work for you?    09:07:47AM

A. Yes.

Q. If I ask a question and you answer it, I'll assume you understood the question but if you don't understand a question or if it's unclear, please just let me know and I'll try to clarify it.    09:07:56AM

    Is there anyone in the room with you today?    09:08:13AM

A. No.

Q. Do you expect that to change over the course of the day?

A. No.

Q. You understand that you cannot communicate with defendants' counsel during the time you're providing testimony on the record?    09:08:23AM

A. Yes.

Q. Have you ever been a party to a    09:08:34AM

Page 8

JUNEJA

lawsuit before?

A. No.

    MR. URIS: I'm going to introduce an exhibit.    09:08:52AM

    (Exhibit 1, expert report of Vinita Juneja, Ph.D., marked for identification.)

BY MR. URIS:

Q. Exhibit 1 should be available if you refresh Exhibit Share.    09:09:38AM

A. Yes.

Q. Do you recognize this document?

A. (Witness perusing document.) Yes.    09:10:02AM

Q. What is it?

A. This is a report I submitted in this matter on November 20, 2024.

Q. If you could turn to page 14 of the report, is that your signature towards the bottom of the page?    09:10:46AM

A. Yes.

Q. Are the contents of this report true to the best of your knowledge?

A. Yes.    09:11:00AM

Page 9

JUNEJA

Q. Are there any changes to this report?

A. No.

    MR. URIS: I'm going to introduce another exhibit.    09:11:16AM

    (Exhibit 2, reply report, marked for identification.)

BY MR. URIS:

Q. Exhibit 2 should be available. Do you recognize this document?    09:11:35AM

A. Let me just take a look at it. (Witness perusing document.) Yes.

Q. And what is it?    09:12:26AM

A. This is a report that I submitted in this matter in January of this year.

Q. If you could turn to page 27 of the report, is that your signature on page 27?    09:12:41AM

A. Yes.

Q. Are the contents of this report true to the best of your knowledge?

A. Yes.

Q. Are there any changes to this    09:12:58AM

3 (Pages 6 - 9)

Page 10

JUNEJA

report?

A. No.

Q. Do your November 20, 2024 report and January 10, 2025 report express all your opinions in this case?    09:13:21AM

A. I may have further opinions based on my attending Mr. Coffman's deposition, but they reflect my opinions to date.

Q. Have you performed any work in this case subsequent to your submission of your January 10, 2025 report?    09:14:34AM

A. I have prepared for and attended Mr. Coffman's deposition and prepared for and attended my deposition.    09:14:57AM

Q. What did you do to prepare for Mr. Coffman's deposition?

A. I reviewed his work and discussed some of it with counsel.

Q. Did you discuss some of it with anyone other than counsel?    09:15:20AM

A. Yes, with my team.

Q. When you say your team, who are you referring to?

A. I'm referring to the colleagues    09:15:45AM

Page 11

JUNEJA

that work with me on this matter at NERA.

Q. And how did you prepare for today's deposition?

A. I reviewed some of the documents in this matter, including my reports and Mr. Coffman's reports and discussed some matters with my team and with counsel.    09:16:06AM

Q. How many conversations or meetings did you have with counsel to prepare for today's deposition?    09:16:47AM

A. I think we had one.

Q. Do you recall when that meeting was?

A. It was a couple of days ago.    09:17:04AM

Q. Do you recall how long it was?

A. I think it was an hour.

Q. Do you recall who was present?

A. It was Ms. Erwin, Ms. York-Erwin, and my colleagues, Ivelina Velikova and David Tabak and myself.    09:17:25AM

Q. Anyone else?

A. No.

Q. Did you bring anything with you today that you might use or review during    09:18:17AM

Page 12

JUNEJA

this deposition or during the breaks in the deposition?

A. I have copies of the two reports that you just submitted as exhibits and Mr. Coffman's reports.    09:18:26AM

Q. Are there any notes or markings on the copies that you have?

A. No.

Q. Do you recall when you were retained in this matter?    09:18:41AM

A. I think it was late October of 2024.

Q. And who retained you?

A. The firm of -- Ms. York-Erwin's firm.    09:19:08AM

Q. Do you recall the name of her firm?

A. Baker Hostetler.

Q. And for what purpose were you retained?    09:19:38AM

A. I was retained to work on this matter as an expert and to submit a report.

Q. If you turn to your November 20,    09:20:23AM

Page 13

JUNEJA

2024 report to paragraph 3.

A. I'm just going to look at my paper copies if that's okay with you so I don't have to go back and forth on the screen. Okay.    09:20:42AM

Q. With respect to this report, is paragraph 3 an accurate description of the purpose for which you were retained?

A. With respect to paragraph 3, that's an accurate description of what I was asked to do in connection with this report.    09:21:27AM

Q. How many hours have you personally spent on this matter?    09:22:17AM

A. I'll have to look that up.

Q. Do you have a general sense of how many hours or approximately how many hours?

A. I work on a lot of different things at the same time so I'm not sure, but I would guess somewhere between 150 or maybe a little more than that.    09:22:33AM

Q. On this engagement are you working with NERA Economic Consulting?    09:23:10AM

4 (Pages 10 - 13)

Page 14

JUNEJA

A. Yes.

Q. Are you a partner at NERA Economic Consulting?

A. We have slightly different titles 09:23:22AM but essentially, yes.

Q. What is your title there?

A. Senior managing director.

Q. How long have you been a senior managing director at NERA? 09:23:36AM

A. I'm not sure because I'd have to look at my CV which I can tell you.

Our titles have changed over time but I've been the equivalent of that since 2000. 09:23:52AM

Q. And NERA staff have assisted you with your work in this case?

A. Yes.

Q. Have you ever been previously retained on behalf of any of the 09:24:27AM defendants in this case?

A. No.

Q. Do you know whether NERA has ever been previously retained on behalf of any of the defendants in this case? 09:24:42AM

Page 15

JUNEJA

A. I don't think other than this engagement.

Q. Does Appendix 2 to your November 2024 report show all the materials you 09:25:32AM considered in connection with that report?

A. Yes. It should but to the extent that it doesn't, then there may be some citations or references within the report.

Q. On the first -- I guess it's one 09:25:59AM page, on Appendix 2 but right below Appendix 2 it says Materials Relied Upon. Is there any distinction between materials relied upon as opposed to materials considered? 09:26:15AM

A. I don't -- I think that's a difficult question because different people interpret it differently, but these are sort of all the materials that we reviewed carefully, you know. Sometimes, 09:26:32AM and I don't know if this is true in this case, but sometimes counsel may send you a bunch of stuff and you kind of look at something and go no, no, I don't need this or whatever, so that's what I relied upon. 09:26:45AM

Page 16

JUNEJA

I'm talking about things that we looked at and considered carefully and incorporated in our work.

Q. Are there any other materials 09:26:55AM that you considered carefully in drafting this report that are not included in Appendix 2?

A. No.

Q. How are the materials in Appendix 09:27:30AM 2 selected?

A. Well, if you're talking about how do we figure out what to list, we look at all the things that we have reviewed and analyzed and incorporated in our work. 09:27:53AM

Q. Other than any documents that may have been sent to you by defendants' counsel, did you rely on any information from defendants' counsel?

A. I don't think so. I mean there's 09:28:45AM obviously there are discussions that we have with them explaining the case to us and things like that so in that sense, yes. We rely upon conversations that we have with them. But I think that as we 09:28:58AM

Page 17

JUNEJA

draft a report, we try to cite to anything that's based on any kind of factual evidence or analysis, so if there are things where we're not relying upon a 09:29:15AM document but relying upon a discussion with counsel, we would cite to them in the report.

Q. If you go down to item number 7 in Appendix 2. 09:29:39AM

A. Yes.

Q. Which is Co-Diagnostics, Inc. SEC Form 10-Ks and 10-Qs from 2019 to 2022 from FactSet Research Systems, Inc. Did you consider each of the 10-Ks and 10-Qs 09:30:07AM that were available from FactSet Research Systems, Inc. from 2019 to 2022?

A. Well, by you, I would include the team, so we had access to those things and they were there as a reference as we're 09:30:26AM doing our analysis. I looked at some of them but not all of them.

Q. I guess from here is there any way for us to tell which specific documents you relied on? 09:31:06AM

5 (Pages 14 - 17)

Page 18

JUNEJA

MS. YORK-ERWIN:  Objection, form.

BY MR. URIS:

Q.  With respect to this item.

A.  Well, we would have had copies of all those things as a reference and the team would have reviewed them as we needed them in drafting the report.  If there's something that's specifically reviewing or relying upon something within each one of those filings, then it would be footnoted within the report.

Q.  With respect to item number 8, did you rely on each of Co-Diagnostics, Inc.'s press releases and earnings call transcripts from 2020 to 2022 that were available on FactSet Research Systems, Inc.?

A.  Again, we had those in the materials we collected to rely upon and to consider for the report.  Members of my team reviewed all of those.  I asked -- I discussed the items with my team and reviewed specific ones within the set.

Q.  With respect to item 9, did you

Page 19

JUNEJA

rely upon all of the news stories regarding or relating to Co-Diagnostics, Inc. from 2020 to 2022 that were available on Dow Jones Factiva?

A.  Again, my team would have reviewed all of those and there's specific ones that we're citing within the report and specific ones that I personally reviewed.

Q.  And does the same answer hold true for items 10 and 11?

A.  Yes.

Q.  Referring to your January 10 report, does Appendix 2 to your January 10 report show all the materials you considered in connection with that report?

A.  Intended to, yes.  And again to the extent that it's not listed, it should be cited or referred to within the report or sourced within the report.  And in addition, we relied upon things that would have been in the November report.

Q.  And with respect to items 11 through 14 in Appendix 2 here, does the

Page 20

JUNEJA

same explanation hold true that your team would have reviewed all of the available reports and to the extent that there are specific ones cited in the report, you would have reviewed those?

MS. YORK-ERWIN:  Objection, form.

THE WITNESS:  My team would have reviewed all the materials listed here but I would have reviewed not just the ones specifically listed but others as well.

BY MR. URIS:

Q.  Have you talked to any Co-Diagnostics employee or former employee about this case?

A.  No, I have not.

Q.  Did anyone from your staff talk to any Co-Diagnostics employee or former employee about this case?

A.  Not that I'm aware.

Q.  Have you talked to anyone other than defense counsel or your staff about this case?

A.  No.  I mean I think I told my

Page 21

JUNEJA

husband the general industry that this case was on but that's it.

Q.  Are you an expert in economics?

A.  Yes.

Q.  Have you met with or communicated with any other testifying expert retained on behalf of defendants in this case?

A.  No.

Q.  Have you read the expert report of Dr. Thomas C. Tsai served in this case on November 20, 2024?

A.  Yes.

Q.  And when did you read that report?

A.  I think it would have been prior to filing my January report but I'm not sure when.

Q.  Did you see a draft of that report before it was filed or served?

A.  No, I didn't.

Q.  Prior to this case, have you ever filed an expert report on behalf of a party to litigation?

A.  Yes.

6 (Pages 18 - 21)

Page 22

JUNEJA

Q. Do you recall approximately in how many cases?

A. It's not something I've kept count of so I don't know.    09:40:21AM

Q. Do you think it's more than 10?

A. Yes, it's definitely more than 10.

Q. More than 20?

A. Yes.    09:40:39AM

Q. More than 50?

A. I think so.

Q. Did you also testify at deposition in the cases in which you've submitted expert reports?    09:41:44AM

A. Not most of them but some of them.

Q. Have you testified at trial in any of those cases?

A. Yes.    09:42:00AM

Q. Do you recall how many of those cases?

A. I testified at trial four or five times. I can't remember now if that includes -- there's one time I testified    09:42:18AM

Page 23

JUNEJA

at an evidentiary hearing in a trial as opposed to the trial itself. I'm not sure all of those had depositions or some of them had expert reports, some had    09:42:35AM conclusions and expert reports.

Q. Do you recall what percentage of the expert reports you submitted were in securities fraud cases?

A. I don't know.    09:43:11AM

Q. Do you know whether it was the majority?

A. I don't know. I work on a lot of different types of things.

Q. In any court or before any    09:43:25AM tribunal has any portion of any of your testimony or opinions been excluded or limited?

A. I had a case where a sentence was taken out of a report in Quebec. I think    09:44:03AM the plaintiffs or the opposing party thought it was a legal conclusion so that sentence was taken out. And I was supposed to testify in a case a couple of weeks ago but the case was at trial and it    09:44:35AM

Page 24

JUNEJA

settled before I got on the stand, but the judge, I had a report that had data that had graphs that went many years in the past through 2028 and he ruled that I    09:44:54AM could only talk about things through 2025. The other years were actually relevant to what I was going to say but he just decided that the jury should only see data through 2025.    09:45:15AM

Q. Anything else?

I think the audio cut out. Did you say no?

A. Yeah.

Q. Do you recall what the sentence    09:45:43AM that was taken out of one of your reports was?

A. I do not. I remember it didn't really add anything to the report.

Q. Do you recall what case that was    09:45:56AM in?

A. Yes, the defendant's name was Hexo and it was, as I said, a case brought in the Province of Quebec.

Q. Do you recall what the nature of    09:46:25AM

Page 25

JUNEJA

the claims were in that case?

A. It was a securities class action.

Q. Do you recall what was the case that you were testifying about earlier    09:46:48AM that you were going to testify at trial in?

A. It was a defamation case brought against CNN by Zachary Young.

Q. Do you have an understanding of    09:47:08AM what this case is about?

A. Yes.

Q. What is that understanding?

A. My understanding is this is a securities fraud case brought against    09:48:24AM Co-Diagnostics and two of its employees by Stadium Capital alleging misrepresentations and omissions with respect to information about the company's prospects.    09:48:45AM

Q. Do you have an understanding of why the alleged misstatements are alleged to be misleading in this case?

A. I have read the complaint and my understanding comes from that, yes.    09:49:10AM

7 (Pages 22 - 25)

Page 26

JUNEJA

Q.   And what is your understanding?

A.   My understanding is that there are three statements or sets of statements that are listed on page 5 -- 4, 5 and 6 of 09:49:35AM my initial report that were allegedly misleading.

Q.   Turn to page 5 of your report. The November 20 --

A.   Yes.                         09:51:29AM

Q.   -- report.  I guess it will be easier if I refer to your initial report, will you understand it to mean your November 20 report and your reply report as the January 10 report?        09:51:39AM

A.   Yes.

Q.   Take a look at the bottom of page 5 in the second statement.  If you look at the third paragraph that starts on page 5 and goes on to page 6 which starts,        09:52:10AM "Furthermore, we are experiencing sizable fluctuations and order patterns from our customers."

A.   Yes.

Q.   Do you know what sizable        09:52:25AM

Page 27

JUNEJA

fluctuations and order patterns from our customers refers to?

MS. YORK-ERWIN:  Objection, form.

THE WITNESS:  Well, the previous   09:52:42AM paragraph is talking about sales of the Logix Smart COVID-19 test so it appears to refer to fluctuations in orders with respect to the test.

BY MR. URIS:                       09:53:07AM

Q.   Right, but do you have any specific understanding as to what fluctuations that statement refers to?

MS. YORK-ERWIN:  Objection, form.

THE WITNESS:  My understanding is  09:53:19AM that in the previous two paragraphs, they are talking about demand for their products in the first quarter of 2022 and particularly about the COVID-19 test sales.               09:53:34AM

BY MR. URIS:

Q.   If you could turn to paragraph 4 of your initial report.

A.   Yes.

Q.   In paragraph 4 you write, "As   09:55:03AM

Page 28

JUNEJA

explained in further detail below, my primary opinions are as follows."

And then 4 a) states, "The alleged misrepresentations were perceived   09:55:12AM as negative news by the market."

Did I read that correctly?

A.   Yes.

Q.   In forming this opinion, did you do an assessment of the company's orders   09:55:31AM for its Logix Smart Tests in the second quarter of 2022 as of May 12, 2022?

A.   I did an assessment of what the company discussed and revealed throughout the class period and immediately after      09:55:58AM with respect to its orders, and also what was discussed by the press and the analysts with respect to those orders.

Q.   I don't think that answered my question which was:  In forming this      09:56:21AM opinion, did you do an assessment of the company's orders for its Logix Smart Tests in the second quarter of 2022 as of May 12, 2022?

A.   Well, as part of my opinion I     09:56:34AM

Page 29

JUNEJA

looked at what the company said about its orders so in that sense, that's part of my opinion and part of what I reviewed.

Q.   In forming this opinion, did you   09:57:05AM do an assessment of any internal sales data or information from Co-Diagnostics?

A.   Again, to the extent that there's sales and internal data feeds into what they are saying, that would have been part 09:57:27AM of what I looked at.

Q.   In forming this opinion, did you do an assessment of the company's orders for its Logix Smart Test in the second quarter of 2022 as of May 12, 2022 beyond   09:57:41AM what the company stated publicly?

A.   I looked at what the company stated publicly and I looked at what was otherwise discussed publicly by market participants and in the news.           09:58:04AM

Q.   Did you look at anything other than what the company stated publicly and what was publicly discussed by market participants and in the news?

MS. YORK-ERWIN:  Objection, form. 09:58:15AM

8 (Pages 26 - 29)

Page 30

JUNEJA

THE WITNESS:  In forming this opinion I looked at all the sources that I list in Appendix 2 of this report.                    09:58:25AM

BY MR. URIS:

Q.  In forming this opinion, did you do an assessment of the company's historical sales of its Logix Smart Tests?

A.  To -- some of the sources that I  09:58:41AM list in this report include the company's filing, public news, press releases, conference calls and so forth.  So to the extent that any of those things were discussed or displayed in any of those      09:59:00AM items, it would have been incorporated in my analysis.

Q.  In forming this opinion, did you do an assessment of the company's historical sales of its Logix Smart Tests  09:59:21AM beyond information that was publicly disclosed?

A.  In forming this opinion, I relied upon the sources that I've listed in my Appendix 2 to the report and in the        09:59:39AM

Page 31

JUNEJA

report.

Q.  So is that a no?

MS. YORK-ERWIN:  Objection, form.

THE WITNESS:  To the extent that  09:59:54AM analysts may be relying upon discussions with management or anything like that, I would have been looking at analyst reports.

BY MR. URIS:                    10:00:09AM

Q.  But you didn't do your own assessment of the company's historical sales of its Logix Smart Test beyond what was publicly disclosed; correct?

MS. YORK-ERWIN:  Objection, form. 10:00:25AM

THE WITNESS:  In order to look at the alleged misrepresentations and look at the market's reaction to the alleged misrepresentations, I relied upon publicly available sources as      10:00:40AM listed in the appendix to my report. That includes analyst reports that may or may not be available readily publicly.

MS. YORK-ERWIN:  Dr. Juneja, do  10:01:22AM

Page 32

JUNEJA

you want a break anytime soon?  It's been almost an hour.

THE WITNESS:  I would like to break every hour if we can.         10:01:30AM

MR. URIS:  Yes, I'm fine breaking here.

THE VIDEOGRAPHER:  Thank you. This is the videographer.  The time is 10:01.  We're going off the record.    10:01:44AM

(Recess taken from 10:01 a.m. to 10:15 a.m.)

THE VIDEOGRAPHER:  We are back on the record.  The time is 10:15.  This begins media file 2.              10:15:55AM

BY MR. URIS:

Q.  Going back to paragraph 4 a) of your initial report, with respect to this opinion, you're not providing an opinion as to whether as of May 12, 2022, demand  10:16:24AM for the Logix Smart Tests had significantly declined; correct?

A.  I'm not providing an opinion as to the factual evidence on whether the demand for the Logix Smart Test had      10:16:54AM

Page 33

JUNEJA

declined by May 12, 2022.  My report does include evidence as to general PCR tests administered in March and April of 2022.

Q.  But you're not providing an      10:17:35AM opinion as to whether as of May 12, 2022, defendants were aware that demand for the Logix Smart Tests had significantly declined; correct?

A.  I'm not providing an opinion as  10:17:50AM to what information defendants had at their disposal as of May 12, 2022 with respect to demand for Logix Smart Tests.

Q.  You're not providing an opinion as to whether as of May 12, 2022, the     10:18:10AM company's sales-to-date for the second quarter of 2022 were far less than what it had seen in prior quarters; correct?

A.  That wasn't something I was asked to do.                      10:18:29AM

Q.  If you could turn to paragraph 4 b) of your initial report, can you read that paragraph out loud or that sentence out loud?

A.  "Informed participants          10:18:47AM

9 (Pages 30 - 33)

Page 34

JUNEJA

interpreted the suspension of quarterly guidance to be negative news and adjusted their future outlook for the company's performance accordingly."          10:18:55AM

Q.   With respect to this opinion, you're not providing an opinion as to whether as of May 12, 2022, demand for the Logix Smart Test had significantly declined; correct?          10:19:30AM

A.   I'm not providing an opinion with respect to the level of demand by May 12, 2022, of the Logix Smart Test specifically.

Q.   And you're not providing an          10:19:48AM opinion as to whether as of May 12, 2022, defendants were aware that demand for the Logix Smart Test had significantly declined; correct?

MS. YORK-ERWIN:  Objection, form. 10:19:57AM

THE WITNESS:  My -- what I was asked to do is to review the alleged misrepresentations and evaluate the market's reaction to the alleged misrepresentations.  The allegations          10:20:24AM

Page 35

JUNEJA

include -- the alleged misrepresentations incorporate reference to the fact that the company's suspending quarterly          10:20:58AM guidance on May 12, 2022, and as part of that review, I'm also looking at how the market interprets statements by the company.  So to the extent that informed participants interpreted the          10:21:22AM suspension of quarterly guidance to be negative news and to take from that information about sales and demand as of that point in time and incorporate that into their understanding and          10:21:40AM discussion, that may incorporate some reference to the situation with respect to sales of the Logix Smart Test.

BY MR. URIS:          10:22:04AM

Q.   You're not providing any specific opinion as to whether as of May 12, 2022, defendants were aware that demand for the Logix Smart Test had significantly declined; correct?          10:22:21AM

Page 36

JUNEJA

A.   I'm not providing an opinion specifically about what facts defendants were aware of with respect to the level of sales of the Logix Smart Test, but I am          10:22:39AM incorporating reference to pleadings, decisions and other documents relevant to this case that refer to what defendants allegedly knew at that point in time.  And I'm also incorporating what they said in          10:23:14AM their public documents and discussions and how the market interpreted those statements.

Q.   With respect to paragraph 4 b) of your initial report, you're not providing          10:23:36AM an opinion as to whether as of May 12, 2022, Co-Diagnostics sales-to-date for the second quarter of 2022 were far less than what it had seen in prior quarters; correct?          10:23:53AM

A.   I'm not specifically providing an opinion about the level of sales of the Logix Smart Test as of the time of the beginning of the class period, but I'm incorporating in my review and analysis          10:24:10AM

Page 37

JUNEJA

what I know from the documents that I'm relying upon in Appendix 2 about information and allegations about what defendants knew at that time.          10:24:30AM

Q.   Could you read paragraph 4 c) out loud?

A.   "Public data and news stories show that the number of COVID-19 PCR tests administered had declined in March and          10:25:06AM April of 2022 and that there was substantial variability in the number of COVID-19 PCR test levels week to week."

Q.   With respect to this opinion, you're not providing an opinion as to          10:25:23AM whether as of May 12, 2022, demand for the Logix Smart test had significantly declined; correct?

MS. YORK-ERWIN:  Objection, form.

THE WITNESS:  I'm not providing a 10:25:41AM specific opinion about the level of demand of the Logix Smart Test as of May 20, 2022 in this paragraph.  I am providing a basis for knowledge that the general number of COVID-19 PCR          10:25:56AM

10 (Pages 34 - 37)

Page 38

JUNEJA

tests administered had declined in March and April of 2022 and that there was substantial variability in the number of COVID-19 PCR test levels     10:26:06AM week to week.

BY MR. URIS:

Q. And you're not providing an opinion as to whether as of May 12, 2022, defendants were aware that demand for the     10:26:18AM Logix Smart Test had significantly declined; correct?

A. As I said earlier in my report, I'm not providing a specific opinion about what defendants knew about the level of     10:26:34AM demand for Logix Smart Tests distinct from what is discussed in the documents and evidence that I'm relying upon for my report.

Q. And you're not providing an     10:26:48AM opinion as to whether as of May 12, 2022, the company's sales-to-date for the second quarter of 2022 were far less than what it had seen in prior quarters; correct?

MS. YORK-ERWIN: Objection, form. 10:27:04AM

Page 39

JUNEJA

THE WITNESS: My opinion goes to answering the questions that I was asked to review and to the extent that that incorporates evidence about what     10:27:18AM was known or allegedly known by defendants in the documents that I reviewed and in the public response to defendants' public discussions, any information about sales at the time of     10:27:42AM May 12, 2022 that would be incorporated in many of those things would be part of what is considered in my opinion.

BY MR. URIS:     10:28:00AM

Q. Turn to paragraph 17 of your initial report.

A. Yes.

Q. Can you please read paragraph 17 out loud?     10:28:54AM

A. "While plaintiff alleges that the above statements misled investors and caused the price of Co-Diagnostics stock to be inflated, a review of analyst commentary and news stories shows that the 10:29:06AM

Page 40

JUNEJA

market perceived the alleged misrepresentations, in conjunction with the cessation of guidance by the defendants, to be negative news and     10:29:14AM interpreted it as indicating a likely decline in future revenues and earnings related to COVID-19 products."

Q. Can you turn to paragraph 20 of your initial report?     10:29:46AM

A. Yes.

Q. Could you read out loud the last full sentence on page 7 of paragraph 20 that starts with "Though the defendants"?

A. "Though the defendants did not     10:30:07AM state that they anticipated lower COVID-19 related revenues in second quarter 2022, the commentary by analysts shows that they understood that to be the likely outcome."

Q. Can you turn to Table 1 of your     10:30:22AM report on page 10?

A. Yes.

Q. This table shows changes in analyst estimates following the May 12, 2022 announcement; is that correct?     10:30:54AM

Page 41

JUNEJA

A. Yes.

Q. And there are three analysts shown in this chart, H.C. Wainwright, Sidoti and Litchfield; is that correct?     10:31:19AM

A. Correct.

Q. And two of the three analysts in this table, H.C. Wainwright and Sidoti didn't adjust their second quarter 2022 revenue estimates; correct?     10:31:33AM

A. Their sales estimates, they didn't adjust.

Q. If analysts understood lower revenues in the second quarter of 2022 to be the likely outcome, why wouldn't they     10:31:56AM have adjusted their estimates downward?

MS. YORK-ERWIN: Objection, form.

THE WITNESS: Well, as I state, they decrease their earnings estimates and if you look at their commentary,     10:32:14AM they are either neutral or negative. They don't always adjust sales numbers if they don't have guidance but ultimately, H.C. Wainwright says they continue to project a gradually     10:32:35AM

11 (Pages 38 - 41)

Page 42

JUNEJA

decreasing demand for COVID-19 testing and Sidoti also says, you know, they are both kind of either negative or uncertain about what is coming in the 10:32:54AM future.

BY MR. URIS:

Q. So you mentioned H.C. Wainwright continuing to project gradually decreasing demands. Do you know whether the 10:33:11AM H.C. Wainwright analyst was already projecting gradually decreasing demand prior to the May 12th announcement?

A. I don't know exactly what wording they would have used in the earlier 10:33:25AM reports, but I know that they revised their earnings estimates down for the second, third and fourth quarters of 2022 after this announcement.

Q. Going back to my initial 10:33:57AM question, so in paragraph 20 of your report you state, "Though the defendants did not state that they anticipated lower COVID-19 related revenues in the second quarter of 2022, the commentary by 10:34:11AM

Page 43

JUNEJA

analysts shows that they understood that to be the likely outcome."

Don't you think that if analysts understood that to be the likely outcome, 10:34:22AM they would have adjusted their second quarter 2022 revenue estimates downward?

MS. YORK-ERWIN: Objection, form.

THE WITNESS: I think that there are a number of factors that go into 10:34:37AM this and what we see is that on average and individually for some of the analysts, they adjust down not just their second quarter but their third and fourth quarter 2022 numbers. 10:34:51AM So while the timing may have been uncertain, they are responding to this announcement as negative news in terms of 2022 earnings.

BY MR. URIS: 10:35:12AM

Q. I'm referring specifically to your language in paragraph 20 that considers specifically second quarter 2022 revenues, so I'm just asking when two of three analysts in your table did not 10:35:22AM

Page 44

JUNEJA

revise their estimates downward, what basis do you have to say that analysts understood that to be the likely outcome?

MS. YORK-ERWIN: Objection, form. 10:35:33AM

THE WITNESS: I'm saying when you look at my report, what H.C. Wainwright does is lower its earnings estimates for the quarter, as does Litchfield. Sidoti is talking 10:35:50AM about net income slowing as well for the year so they may not have been specific as to the timing, but they are all viewing this as negative news.

BY MR. URIS: 10:36:22AM

Q. Paragraph 20 I was referring to, that sentence in your report indicates or is a statement that analysts understood revenues in the second quarter of 2022 to be the likely outcome; correct? 10:36:36AM

A. Yes.

Q. And two of the three analysts in your Table 1 did not adjust their sales estimates for the second quarter of 2022; correct? 10:37:02AM

Page 45

JUNEJA

A. Yes, analysts don't always update every forecast. In fact, when there's tons of uncertainty, analysts will often not even update an earnings estimate 10:37:12AM because they are kind of waiting to see what happens. So there's some times where analysts will freeze their estimates. There are other times where in an immediate response to a news announcement 10:37:24AM they might adjust one set forecast, but not necessarily be consistent in adjusting every financial indicator. So it's not -- it's pretty common, I think, for analysts to either not update a forecast or to 10:37:41AM update certain forecasts and not others, so you have to look at the analyst report as a whole in terms of what they are saying.

Q. If an analyst has an 10:38:22AM understanding as to a likely outcome with respect to revenue, do you think it's common for that analyst not to update their forecasts to reflect what they believe is a likely outcome? 10:38:41AM

12 (Pages 42 - 45)

Page 46

JUNEJA

MS. YORK-ERWIN:  Objection, form.

THE WITNESS:  I think it's not uncommon for analysts to not update every financial indicator when there is an announcement by a company.  That said, the overall thrust of the analyst reports that we have in this situation is that you have an announcement by a company of higher than expected earnings and revenues, and yet the analysts are either holding things constant or lowering them.

BY MR. URIS:

Q.  Did anything in the analysts' commentary suggest that they understood following the alleged misstatements that as of May 12, 2022, the demand for the Logix Smart Test had significantly declined?

A.  I think the company's main product at the time is the Logix Smart Test and that accounts for the vast majority of their sales and earnings.  And

Page 47

JUNEJA

when the company ceases guidance, the analysts, such as Litchfield, say the company ceased guidance, our only option under the circumstance is to set our estimates at the lower end of expectations, and the quotes on page 8 and 9 and the evidence in Table 1 indicate that the information mix on May 12th is associated with a general decline in expectations for Co-Diagnostics' sales and profitability for the rest of 2022.

Q.  The reasons defendants gave for not providing guidance was because of difficulties forecasting demand going forward; correct?

MS. YORK-ERWIN:  Objection, form.

THE WITNESS:  I think defendants gave a number of reasons and said a lot of different things in terms as to why they were ceasing guidance.

BY MR. URIS:

Q.  Did anything in the analysts' commentary suggest that they understood following the alleged misstatements that

Page 48

JUNEJA

as of May 12, 2022, sales-to-date in the second quarter of 2022 were far less than what the company had seen in prior quarters?

A.  What we see is that the analysts are hearing a suspension of guidance and then commenting as they do as is shown in paragraph 20 of my report and change their earnings estimates for the year in Table 1 of my report and then discussed in paragraph 22, and that indicates that there is a general decline in expectations by informed market participants for Co-Diagnostics' sales and profitability for 2022.

Q.  The commentary you're referring to in paragraph 20 largely concerns uncertainties related to COVID-19 testing demand; correct?

A.  The commentary is about cessation of guidance and also about uncertainties projecting gradually decreasing demand and commentary about the changing nature of testing and monitoring and uncertainty

Page 49

JUNEJA

about how those things will affect sales and revenues and earnings, and ultimately concluding for the majority of the analysts that earnings would be lower for 2022.

Q.  You don't know whether any of these analysts were already projecting gradually decreasing demand prior to May 12?

A.  Well, whatever they were projecting, they changed their projections to make a lower forecast for 2022.

Q.  Other than any changes to their forecasts, is there anything in the analyst commentary that suggests that they understood following the alleged misstatements that as of May 12, 2022, sales for the second quarter of 2022 were far less than what it had seen in prior quarters?

A.  The analysts respond to the company's disclosures with the commentary that's discussed in Section III of my report, and with changes in forecasts for

13 (Pages 46 - 49)

Page 50

JUNEJA

the year in Table 1 of my report and as highlighted in the discussion of that table. And all those things point to the analysts understanding that sales were 10:46:17AM likely to be lower going forward than they had expected before for 2022.

Q. You can turn to Figure 1 on page 12 of your initial report.

A. Yes. 10:47:19AM

Q. This figure shows weekly U.S. PCR tests administered and weekly new COVID cases in the U.S. from March 1, 2021 through September 30, 2022; is that right?

A. Yes. 10:47:41AM

Q. Why did you choose the U.S. for this chart as opposed to some other geography?

A. I think it's indicative of what was going on at the time with COVID 10:48:01AM testing and COVID cases.

Q. Why didn't you choose worldwide data, for example, for this chart?

A. I could have. I think that was just this is meant to be illustrative. 10:48:22AM

Page 51

JUNEJA

Q. Do you have an understanding of who Co-Diagnostics' customers were in 2022?

A. Yes, they sold to many different 10:48:33AM countries, including the U.S.

Q. Do you have an understanding of approximately what percentage of the company's customers were located in the U.S. in 2022? 10:48:51AM

A. I don't recall the exact number or split by sales but I remember seeing something about half. I don't remember what exactly that referred to.

Q. If you could turn to paragraph 26 10:50:03AM of your report.

A. Yes.

Q. Could you read the first sentence of paragraph 26 out loud?

A. "The analysis shows that 10:50:26AM Co-Diagnostics' withdrawal of guidance was interpreted by the market as bad news and as indicating a likely decrease in future earnings performance, and therefore provided the market with a generic version 10:50:38AM

Page 52

JUNEJA

of the information that plaintiff alleges was improperly withheld from the market."

Q. What is your understanding of what plaintiff alleges was improperly 10:50:51AM withheld from the market?

A. My understanding is that if you look at the three alleged misrepresentations that are given in paragraph 60 of my report, that plaintiff 10:51:08AM alleges that they were misleading in terms of information that should have been given to the market about a likely decline in sales for the quarter.

Q. If you take a look at paragraph 10:52:24AM 16 of your report, you note that in the court's motion to dismiss opinion and order, "the court found that at that stage of the litigation, plaintiff had sufficiently alleged that it was 10:52:50AM misleading to describe the situation as fluctuations or to disclose the company's difficulty in forecasting near-term demand without disclosing that demand was already declining rapidly." 10:53:05AM

Page 53

JUNEJA

Do you see that?

A. Yes.

Q. Turn to paragraph 28 of your initial report. Can you read the first 10:53:38AM sentence of paragraph 28 out loud?

A. "Plaintiff implies that Co-Diagnostics should have announced its second quarter 2022 results to date to the market as early as May 12, 2022 and that 10:54:07AM the May 12, 2022 statements were insufficient in terms of content."

Q. Where did you get the understanding that plaintiff implies that Co-Diagnostics should have announced its 10:54:27AM second quarter 2022 results to date as of May 12, 2022?

A. That was my impression from reading the pleadings in this case.

Q. Okay, so that's just your 10:54:46AM impression?

A. Well, that was my understanding from reading the pleadings in this case.

Q. In your initial report you're not challenging that Co-Diagnostics common 10:55:45AM

14 (Pages 50 - 53)

Page 54

JUNEJA

stock traded in an insufficient market; correct?

A. That's not something I did in my initial report, no.          10:56:00AM

Q. In your initial report you're not challenging that Co-Diagnostics' options traded in an insufficient market; correct?

A. I don't have any analysis in my initial report of the efficiency of either   10:56:15AM the common stock or the options of Co-Diagnostics.

Q. In your initial report, you're not challenging that on August 12, 2022, there was a statistically significant   10:56:27AM decline in the stock price; correct?

A. I don't have any commentary in my report, my initial report about the statistical significance of Co-Diagnostics' stock price on August of   10:56:46AM 2022.

MR. URIS: I think this is a good point for a short break, if that works for everyone.

MS. YORK-ERWIN: Okay.          10:57:06AM

Page 55

JUNEJA

THE VIDEOGRAPHER: Thank you. This is the videographer. The time is 10:57. We're going off the record.

(Recess taken from 10:57 a.m. to   10:57:19AM 11:10 a.m.)

THE VIDEOGRAPHER: We are back on the record. The time is 11:10.

BY MR. URIS:

Q. If you could turn to your reply   11:10:13AM report, specifically to paragraph 6. Could you read out loud the first sentence of paragraph 6?

A. "Whether the alleged misrepresentations on May 12, 2022 were   11:10:40AM false or misleading in light of the company's alleged failure to disclose intra-quarter sales numbers at that time is a legal opinion on which I take no position."          11:10:55AM

Q. When you say alleged failure to disclose intra-quarter sales numbers, what are you referring to?

A. I'm referring to Co-Diagnostics sales numbers during the first -- during   11:11:15AM

Page 56

JUNEJA

the second quarter of 2022.

Q. You reviewed the amended complaint in this case; correct?

A. Yes.          11:11:29AM

Q. Can you identify where in the amended complaint plaintiff alleged that defendants needed to disclose intra-quarter sales numbers in order to make the alleged misstatements not   11:11:42AM misleading?

A. I would have to look back at the complaint but my understanding from reading the complaint and reading the various pleadings in this case and the   11:11:54AM judge's order is that the plaintiffs are alleging that the May 12th disclosure was insufficient in that there was information that the company had that it did not disclose about its sales at that time.   11:12:20AM

And I should add to that whether it was the specific number of sales or just the implications of its sales at that time.

(Exhibit 3, consolidated amended   11:13:16AM

Page 57

JUNEJA

complaint, marked for identification.)

BY MR. URIS:

Q. I've introduced what is marked as Exhibit 3 to your deposition. Do you   11:13:19AM recognize this document?

A. Yes.

Q. What is it?

A. It is the consolidated amended class action complaint in this matter.   11:13:46AM

Q. Can you identify where in this complaint plaintiff alleged that defendants needed to disclose intra-quarter sales numbers in order to make the alleged misstatements not   11:13:58AM misleading?

A. It's a lengthy document so I can look through all of it but one example is that in paragraph 6, the complaint talks about the fact that the Logix Smart Test   11:15:01AM sales information is something that they are tracking, defendants are tracking daily and that they failed to disclose that demand had plummeted throughout the quarter, (inaudible) allegations, and I   11:15:27AM

15 (Pages 54 - 57)

Page 58

JUNEJA

can go through the whole complaint, if you'd like.

Q.  In order for defendants to disclose that demand had plummeted, it's not necessarily required that they would disclose specific intra-quarter sales numbers; correct?

A.  Well, what this is is -- again, I can look at the rest of the complaint and the other, pleadings, but what this is indicating is that they had specific numbers and that they should have disclosed more detail about the demand falling over the quarter at that time, which would have been a few weeks into the quarter, several weeks into the quarter.

Q.  If you could turn to paragraph 48 of the complaint.

A.  Yes.

Q.  Can you identify any language in paragraph 48 of the complaint where plaintiff is alleging that defendants needed to disclose intra-quarter sales numbers in order to make the alleged

Page 59

JUNEJA

misstatements not misleading?

A.  Well, what they are saying is that the statements referenced were false and misleading because Co-Dx had experienced a significant falloff and demand for its Logix Smart COVID test and that contrary to the representations, the demand for its tests had already plummeted as of that time.  And then it talks about the revenue for the quarter and the decline in that revenue.

Q.  Okay, so you can't identify any specific language where plaintiff is alleging that defendants needed to disclose intra-quarter sales data; correct?

MS. YORK-ERWIN:  Objection, form.

THE WITNESS:  I can tell you that if you look throughout the complaint, there are a number of times where what plaintiffs are saying is that what makes the misrepresentations misleading is that Co-Dx, Co-Diagnostics was experiencing a

Page 60

JUNEJA

significant falloff in demand for their tests and they did not reveal that falloff, which is essentially revealing that there had been a falloff in their sales numbers.

BY MR. URIS:

Q.  Defendants could have revealed that there was a falloff in their sales numbers without providing the specific numbers; correct?

A.  Well, a falloff would be telling you that the numbers had fallen, so that would be essentially saying something about the numbers and that's repeated a number of places in the complaint.  In paragraph 52 of the complaint again there's a description of the fact that they were experiencing a significant falloff in demand and that demand had plummeted, and then it talks specifically about the revenue amount for the entire quarter and how much the falloff was.  So that to me implies that what would have been corrective as per plaintiffs is some

Page 61

JUNEJA

indication, whether it's a specific number or some kind of order of magnitude or, you know, some kind of impression of the fact that there had been a reduction in sales and prospect for reduction in sales is what plaintiffs are saying wasn't revealed.

Q.  With regard to paragraph 52, even though this statement is no longer in the case, with respect to paragraph 52, do you have an understanding as to whether the discussion of the specific revenue numbers was an allegation in support of the plausibility of the allegation that demand had, in fact, plummeted by that date as opposed to a suggestion that that information needed to be disclosed?

MS. YORK-ERWIN:  Objection, form.

THE WITNESS:  I'm not sure exactly what you're asking but what I can tell you is that even taking out the bits of the allegations that have now been dismissed or dropped that generally speaking throughout the

16 (Pages 58 - 61)

Page 62

JUNEJA

complaint and my understanding of the case from the judge's order and from the work that Mr. Coffman has done, is that plaintiffs are saying that the 11:22:07AM defendants had information from which they should have revealed to the market more than they did about prospective revenue and earnings for Co-Diagnostics. 11:22:32AM

BY MR. URIS:

Q. So is it usually your understanding that the allegations are only that defendants should have revealed more than they did about prospective 11:23:06AM revenue and earnings for Co-Diagnostics?

MS. YORK-ERWIN: Objection to form.

THE WITNESS: No, I think for a complete -- for a more complete 11:23:21AM description of my understanding of the alleged misrepresentation.

MS. YORK-ERWIN: Dr. Juneja, I think we lost you.

THE VIDEOGRAPHER: She locked up 11:23:41AM

Page 63

JUNEJA

for a minute. Let's see if it comes back. Usually it either does that or she'll get dropped. I'm going to go off the record if that's okay. 11:23:54AM

MS. YORK-ERWIN: Sure.

MR. URIS: Yes.

THE VIDEOGRAPHER: The time is 11:23. We're going off the record.

(Discussion off the record.) 11:24:03AM

THE VIDEOGRAPHER: We are back on the record. The time is 11:28. We're continuing media file 3.

BY MR. URIS:

Q. Dr. Juneja, you were in the 11:28:40AM middle of answering a question when the connection went out but I'll just repeat the last question which was: So is it your understanding that the allegations are only that defendants should have 11:28:52AM revealed more than they did about prospective revenue and earnings for Co-Diagnostics?

MS. YORK-ERWIN: Objection to form. 11:29:03AM

Page 64

JUNEJA

THE WITNESS: My understanding is that there -- I don't think you can sum up in one sentence what the allegations are. I think if you look 11:29:21AM at the complaint, it goes into detail about what the alleged misrepresentations are and it goes into detail about what was known by defendants that the plaintiffs feel 11:29:40AM was not appropriately revealed, but the predication is that defendants knew that sales up to the point of the beginning of the class period were at a level that they should have given 11:30:04AM more information about what the implications were of the numbers that they were seeing in terms of sales. And, you know, there's obviously more specific language about all of that in 11:30:26AM the complaint and some of that is summarized in my report.

(Exhibit 4, memorandum opinion and order, marked for identification.)

///

Page 65

JUNEJA

BY MR. URIS:

Q. I'm introducing Exhibit 4 which should be available now.

A. Yes. 11:30:46AM

Q. Do you recognize this document?

A. Yes.

Q. What is it?

A. It is a memorandum opinion and order in this case that was filed on 11:31:02AM February 5, '24.

Q. Can you identify where in this order the court held that the alleged misstatements were plausibly misleading for failure to disclose intra-quarter 11:31:15AM sales numbers?

MS. YORK-ERWIN: Objection to form.

THE WITNESS: (Witness perusing document.) 11:31:33AM

Well, there's a discussion about, on page 5 about plausible allegations about demand, about what the company would have known about their earnings partly through the quarter, about 11:32:33AM

17 (Pages 62 - 65)

Page 66

JUNEJA

forecasting the timing of orders, and about -- I'm scrolling through -- about potentially misleading statements about the daily influx of demand and what management would have known about demand and access to that, and I don't think the order is looking to simply summarize all of plaintiffs' allegations, but the order does touch upon what is allegedly misrepresented.

BY MR. URIS:

Q. Can you identify a specific sentence in this order where the court held that the alleged misstatements were plausibly misleading for failure to disclose intra-quarter sales numbers?

MS. YORK-ERWIN: Objection to form.

THE WITNESS: I don't think the order is attempting to put into one sentence what you just stated. I think the order is discussing in general the background, the allegedly misleading statements, the context of

Page 67

JUNEJA

why plaintiffs have sufficiently pled certain misstatements as being potentially misleading. So I think if you read the discussion, you will see some of it. I don't think there's a sentence that states exactly that, but there are sentences that talk about a reasonable investor company's overall demand, affirmations that are allegedly possibly insufficient with respect to demand in terms of what the company knew at the time.

BY MR. URIS:

Q. Turning to paragraph 7 of your reply report. Could you read paragraph 7 out loud?

A. "For purposes of this analysis, I have been asked to assume that the finder of fact will find defendants liable for failing to disclose intra-quarter sales numbers as of May 12, 2022."

Q. Do you have an understanding of why you were asked to assume this even though it wasn't alleged in the complaint?

Page 68

JUNEJA

MS. YORK-ERWIN: Objection to form.

THE WITNESS: Well, my understanding from looking at the complaint, looking at the judge's opinion, looking at other pleadings in this case, looking at Mr. Coffman's work is that plaintiffs are basing their case upon what was allegedly not disclosed in May and what should have been disclosed and what ultimately was disclosed in August, and that that lines up with the lack of a disclosure either specifically or generally about what management knew about their intra-quarter sales numbers as of May 12, 2022.

BY MR. URIS:

Q. Turn to paragraph 19 of your reply report.

A. Yes.

Q. Can you read out loud the second sentence of paragraph 19?

A. "He fails to consider what the

Page 69

JUNEJA

defendants could have possibly known or disclosed as of the alleged misrepresentations date, and Mr. Coffman offers no evidence for his claim that announcing sales-to-date would have the exact same price impact no matter when in the quarter they are disclosed."

Q. Can you identify where in Mr. Coffman's November 20, 2024 report he claimed that a but-for disclosure would need to specifically announce sales-to-date?

A. I think I'll go back and reread Mr. Coffman's report to see if he says that specifically, but I can tell you that generally, what he is doing is looking at what is announced at the end of the class period and that includes all the information about sales at the time of the disclosure, the alleged corrective disclosure. And he is saying that that is an appropriate measure of the impact of any disclosure that would have been predicated on what management knew in May,

18 (Pages 66 - 69)

Page 70

JUNEJA

on May 12th of 2022.

Q.  Are you aware of any place in Mr. Coffman's November 20, 2024 report where he states that a but-for disclosure would need to specifically announce the sales-to-date?    11:39:52AM

MS. YORK-ERWIN:  Objection to form.

THE WITNESS:  I would have to look back at his report and his deposition testimony, but the thrust of his report is that the alleged corrective disclosure in August of 2022 is an appropriate but-for world in terms of what could have been disclosed on May 12, 2022.    11:40:02AM    11:40:17AM

BY MR. URIS:

Q.  With respect to Mr. Coffman's consideration of a hypothetical but-for disclosure, you're not providing an opinion as to whether as of May 12, 2022, demand for the Logix test had significantly declined; correct?    11:40:51AM

MS. YORK-ERWIN:  Objection, form.    11:41:08AM

Page 71

JUNEJA

THE WITNESS:  What I'm finding confusing about that sentence is the two different parts of it.  I'm not offering an opinion as to whether demand for the Logix test had significantly declined by May 12th of 2022, but I understand that that is plaintiffs' allegation.  Again, I think declined is a fast and loose term because it's not clear to me what you mean by the demand for how long, demand since when, demand for which month, demand for which day, projections of demand and so forth, but I think plaintiffs' predicate for this case is that management did not reveal that demand certainly for the quarter was projected to be lower than had been anticipated and that sales should have been projected to be lower than anticipated.  But that's -- I think the first part of your sentence had something to do with Mr. Coffman's report and my opining on something    11:41:29AM    11:41:53AM    11:42:08AM    11:42:36AM    11:42:49AM

Page 72

JUNEJA

relevant to Mr. Coffman's report with respect to that so I think there was a disconnect, but I'm not offering an independent opinion on whether the demand had declined.    11:43:01AM

BY MR. URIS:

Q.  Turn to paragraph 22 of your reply report.  Could you read paragraph 22 out loud?    11:43:51AM

(Witness froze.)

THE VIDEOGRAPHER:  Okay, that was quick.  Going off the record.  The time is 11:44.

(Discussion off the record.)    11:44:20AM

(Lunch recess taken at 12:11 p.m.)

Page 73

JUNEJA

AFTERNOON SESSION

(Time noted: 1:19 p.m.)

VINITA JUNEJA, Ph.D., resumed and testified as follows:    12:46:14PM

THE VIDEOGRAPHER:  Good afternoon.  We're back on the record.  The time is 1:19.  This begins media file 4.

CONTINUED EXAMINATION    01:20:06PM

BY MR. URIS:

Q.  Dr. Juneja, if you could turn to paragraph 22 of your reply report.

A.  Yes.

Q.  Could you read paragraph 22 out loud?    01:20:27PM

A.  "A but-for disclosure on May 12, 2022 would not have caused the same reaction as the information that was disclosed on August 11, 2022, because (1) the announcements would have contained different information regarding 2Q 2022 sales (the first would have been based on sales through May 12, 2022, while the second would have been based on sales    01:20:38PM    01:20:55PM

19 (Pages 70 - 73)

Page 74

JUNEJA

through the end of the quarter), and (2) the pandemic was ongoing and it was not knowable on May 12, 2022, what turn it would take from May to August and how the    01:21:09PM testing requirements would change in response."

Q.  So where you say the announcements would have contained different information regarding second    01:21:29PM quarter 2022 sales, and then the first would have been based on sales through May 12, 2022, while the second would have been based through the end of the quarter, a disclosure on May 12, 2022 could have    01:21:47PM disclosed that defendants were aware of declining demand for and sales of its Logix Smart Tests; correct?

MS. YORK-ERWIN:  Objection, form.

THE WITNESS:  My understanding is    01:22:04PM that defendants had data on their sales up through May 12, 2022.  In terms of what that indicated for demand, that's a much more complicated question in terms of demand for the    01:22:26PM

Page 75

JUNEJA

quarter and demand past the quarter. They could have indicated what the numbers were that they were seeing but the context of what the implications    01:22:44PM of that were is not a straightforward or direct conclusion.

BY MR. URIS:

Q.  A disclosure on May 12, 2022 could have disclosed that defendants were    01:23:09PM aware that Co-Diagnostics sales-to-date for Q2 2022 were far less than what it had seen in prior quarters; correct?

A.  I haven't looked at the sales data of which they were aware through May    01:23:33PM 12, 2022 in comparison to all previous quarters in terms of the same number of days or, you know, second quarter in prior years or anything like that.  I understand that the numbers were lower than they had    01:23:58PM been in many quarters.  So I'm not sure of the exact, you know, comparisons in terms of to every prior month or to prior quarters to that point in the quarter or to prior second quarters.    01:24:23PM

Page 76

JUNEJA

Q.  Okay, but putting aside what the numbers may or may not show, that's something that they could have disclosed; right?    01:24:33PM

MS. YORK-ERWIN:  Objection to form.

THE WITNESS:  I'm sorry, I don't remember your prior question so what is the "that"?    01:24:41PM

MR. URIS:  That Co-Diagnostics sales-to-date for Q2 2022 were far less than what had been seen in prior quarters.

MS. YORK-ERWIN:  Objection to    01:24:51PM form.

BY MR. URIS:

Q.  Let's assume for the purpose of this question that that's true.  Isn't that something that they could have    01:24:55PM disclosed?

A.  If I assume that Co-Diagnostics sales-to-date as of May 12, 2022 were lower what they had been for all prior quarters, whether it's a different quarter    01:25:16PM

Page 77

JUNEJA

or a different year, then those numbers are something that, you know, could have been stated.

Q.  I don't think anyone is disputing    01:25:46PM that those numbers could have been stated. I'm just asking whether or not there's any reason that they couldn't disclose the fact that Co-Diagnostics sales-to-date for Q2 2022 were far less than they had seen    01:26:00PM in prior quarters?

MS. YORK-ERWIN:  Objection to form.

THE WITNESS:  Again, if I take the premise that that's true, that    01:26:07PM those numbers as of May 12, 2022 in terms of sales were lower than they had been in any other quarter if you measure from the beginning of the quarter up to that relative point in    01:26:21PM time of the quarter, then they could have disclosed that what the numbers were and that they were lower.  I think that --

///

20 (Pages 74 - 77)

Page 78

JUNEJA

BY MR. URIS:

Q. Sorry.

A. Sorry, just to complete my answer, I'm not opining on the legality of it but I know that management generally has a duty not to disclose anything that's misleading. Also, I think that they also have a duty to make sure that whatever they disclose is appropriately disclosed -- appropriate disclosure in context of the bigger picture of their expectations and trends and things like that.

Q. But you said they could have disclosed what the numbers were and that they were lower. Isn't it also true that they could have just disclosed that they were lower without disclosing what the numbers were?

MS. YORK-ERWIN: Objection to form.

THE WITNESS: Again, I think management has various duties in terms of what to disclose and what to

Page 79

JUNEJA

disclose in the context of what they know and what their expectations are and not to mislead, and to the extent that they were lower, they could have disclosed that.

BY MR. URIS:

Q. Are you --

A. Within that context.

Q. Are you aware of any reason why defendants could not have disclosed that Co-Diagnostics sales-to-date for Q2 2022 were far less than what they had seen in prior quarters without disclosing the actual numbers?

MS. YORK-ERWIN: Objection to form.

THE WITNESS: Again, I come back to in general, management -- my understanding is management has a duty to disclose certain things but there are other things they don't have a duty to disclose and they do have a duty not to mislead. So to the extent that that piece of information was

Page 80

JUNEJA

something that would not have been misleading in the context of the bigger picture of what expectations were or how volatile things were or what was predictable and what wasn't, they could have stated a number or they could have stated a level, as you are suggesting.

BY MR. URIS:

Q. In paragraph 22 of your reply report where you say, "the pandemic was ongoing and it was not knowable on May 12, 2022, what turn it would take from May to August and how the testing requirements would change in response," couldn't the same thing be said at any point during the pandemic?

A. Well, I think at any point in the pandemic no one knew exactly what was going to happen in terms of number of cases, the number of deaths, severity of illness, how people would respond to vaccinations, when vaccinations would be rolled out, testing requirements,

Page 81

JUNEJA

government funding for testing and so forth. So, you know, one could never predict what the future was, but there were also times where things were rapidly shifting and changing from what they had been in previous months or previous days or previous weeks because of changes like many people having been vaccinated, the development of Omicron, mask mandates being lifted and so forth. So there's certainly unpredictability throughout but there were also changing conditions that people were aware of.

Q. If the defendants announced on May 12, 2022 that they were aware of significantly reduced demand for the Logix Smart Test, wouldn't the market use that information to update its expectations about all future periods, regardless of whether the company explicitly provided updated guidance or not?

MS. YORK-ERWIN: Objection to form.

21 (Pages 78 - 81)

Page 82

JUNEJA

THE WITNESS:  If defendants announced reduced demand and just used those words and said nothing else in addition to what they already said, I 01:32:02PM think it depends on what people's expectations were at that point in time.  It depends on how their expectations would have changed with or without those words, and it depends 01:32:21PM on what their evaluation was in the context of what was going on at the time as to how long that -- what that would imply in terms of any future month, day or week or year. 01:32:33PM

BY MR. URIS:

Q.  If you can turn to paragraph 29 of your reply report.  Could you please read the first two sentences of paragraph 29 out loud? 01:33:24PM

A.  "During the August 11, 2022 conference call, Co-Diagnostics' executives also stated that they expected the at-home PCR device to commence clinical trials soon, noting they 'look 01:33:39PM

Page 83

JUNEJA

forward to announcing soon that we have commenced clinical trials.'  When asked, defendants did not provide an updated timeline, instead stating that they would 01:33:52PM begin clinical trials 'in the near term,' and that they 'will commence when we're highly confident that we have the very best product that we can present to the FDA.'" 01:34:05PM

Q.  Do you recall whether on that call Defendant Egan also said that they were, quote, basically in the last mile of delivery here in terms of being ready for our clinical trials, close quote? 01:34:21PM

A.  I don't recall one way or the other.  I don't remember that was part of the conference call, but I mean if you're representing to me that that's what he said, I would accept that. 01:34:36PM

Q.  Still in paragraph 29 towards the second to last line on the bottom of page 10 where you write, "This delay in the clinical trials was important to the market," do you see that? 01:35:04PM

Page 84

JUNEJA

A.  Yes.

Q.  Other than Sidoti, did any other analysts mention the delay following the August 12, 2022 earnings call? 01:35:15PM

A.  I would have to look back at the analyst reports to see if they did or not.

Q.  Sitting here today are you aware of any other reports which stated that?

A.  I know that Litchfield Hills and 01:35:55PM Sidoti are referred to in this sentence in terms of their commenting on the platform, but I don't recall what else they said in addition to what's quoted here.  I would have to look back at the reports. 01:36:17PM

Q.  And the August 12, 2022 Sidoti note that you're referencing here in footnotes 24 and 26 is titled, quote, 2Q:22 Results Well Below Expectations As Demand For COVID-19 Testing Falls 01:36:47PM Faster-Than-Expected.  Lower Price Target To $5 (From $14); Downgrade Rating to Neutral (From Buy); is that correct?

A.  Yes.

Q.  Do you have an understanding of 01:37:10PM

Page 85

JUNEJA

what an earnings response coefficient is?

A.  Yes.

Q.  What is your understanding?

A.  My understanding is that it's a 01:37:17PM measure of the relation of stock returns to earnings surprises around the time of corporate earnings announcements.

Q.  If you could turn to Table 1 in your reply report on page 16. 01:37:47PM

A.  Yes.

Q.  And in this table you have calculated earnings response coefficients for Co-Diagnostics from the first quarter of 2021 through the second quarter of 01:38:10PM 2023; correct?

A.  Yes, with the exception of the second quarter of 2022 and with the exception of quarters where there was either too small a surprise to calculate 01:38:32PM one according to this methodology.

Q.  Okay, and looking at the first quarter listed in the table, the first quarter of 2021, you show there are an earnings response coefficient of 29.38; 01:39:10PM

22 (Pages 82 - 85)

Page 86

JUNEJA

correct?

A. Correct.

Q. That earnings response coefficient is large enough to explain the full price decline on August 12, 2022; correct?                                     01:39:36PM

MS. YORK-ERWIN: Objection to form.

THE WITNESS: If that were the earnings response coefficient that was applied to the earnings surprise, then that would explain the drop as calculated by Mr. Coffman in the stock price of Co-Diagnostics.                01:39:49PM   01:40:08PM

BY MR. URIS:

Q. In each of the first quarter, second quarter --

A. Sorry, just -- if you just applied that you would get an even bigger number.                                     01:40:22PM

Q. In each of the first quarter, second quarter, third quarter and fourth quarter of 2021 and the first quarter of 2022, Co-Diagnostics had earnings beats;                01:40:43PM

Page 87

JUNEJA

correct?

A. I know they had an earnings beat in the first quarter of 2022. I would have to look back. There's a surprise. So if there's a beat in that regard, yes.                01:41:03PM

Q. Do you think the market was likely to be particularly sensitive in the second quarter of 2022 since it was the company's first miss after a series of large earnings beats?                01:41:26PM

MS. YORK-ERWIN: Objection to form.

THE WITNESS: I don't have a view on what you mean by particularly sensitive. I think the market would be paying attention as they would pay attention in any quarter.                01:41:41PM

BY MR. URIS:

Q. Do you think after a company has a long series of consecutive earnings beats, the market may to some extent expect the company to perform similarly in subsequent quarters?                01:42:07PM

A. I think it depends on the                01:42:26PM

Page 88

JUNEJA

circumstances of the quarter and the company and the industry and everything else that's going on, total mix of information.                01:42:40PM

Q. Turn to paragraph 58 of your reply report on page 23.

A. Yes.

Q. Could you read paragraph 58 out loud, please.                01:43:21PM

A. "Mr. Coffman's reliance on bids and asks to estimate the inflation that dissipated on August 12, 2022 following the alleged corrective disclosure also leads to flawed and unreliable results. Mr. Coffman appears to rely on bids (i.e., a quote offering to buy the option) and asks (i.e., a quote offering to sell the option) rather than actual trade prices for this analysis. By relying on the midpoint of the bid and ask, and not actual trading prices, Mr. Coffman's analysis calculates theoretical changes in prices even though no trading occurred."                01:43:32PM   01:43:44PM

Q. Do you have an understanding of                01:44:16PM

Page 89

JUNEJA

what a VIX is?

A. Yes.

Q. What is your understanding?

A. It's an index that represents volatility.                01:44:25PM

Q. Do you know who calculates the VIX?

A. No, I'm not certain.

Q. You're not aware of whether the Chicago Board Options Exchange calculates the VIX?                01:44:39PM

A. That sounds right.

Q. Do you know whether the Chicago Board Options Exchange uses bid-ask midpoints to calculate the VIX?                01:45:35PM

A. I don't know for sure.

Q. Using transaction prices could create timing issues; correct?

MS. YORK-ERWIN: Objection to form.                01:46:22PM

THE WITNESS: Well, it depends on what you're using transaction prices for and how you're using them.

///

23 (Pages 86 - 89)

Page 90

JUNEJA

BY MR. URIS:

Q. If you are looking at the movement of options prices, for example, wouldn't the use of transaction prices     01:46:51PM create a timing issue if there were no transactions on the date that you're looking at?

MS. YORK-ERWIN: Objection to form.     01:47:01PM

THE WITNESS: It depends on what your purpose is in looking at options pricing are. It depends on which -- what context you're looking at options prices and what you're trying to do     01:47:17PM with the options prices and for which series of options and for which issuer.

BY MR. URIS:

Q. Turn to paragraph 64 of your     01:47:42PM reply report.

A. Yes.

Q. Can you read out loud the last sentence of paragraph 64?

A. "An analysis of damages may need     01:48:12PM

Page 91

JUNEJA

to take into account offsets, i.e., benefits from sales at inflated prices."

Q. Isn't the question of whether netting gains is necessary a legal issue?     01:48:28PM

A. Well, I think the question of whether or not to net gains against losses may be a legal issue, but economists typically will provide the finders of fact with information when they are calculating     01:48:54PM damages that conceptually explain how a damage should be calculated, as well as how to go about doing that and in the context what might be relevant.

Q. The question of netting does not     01:49:11PM impact the calculation of damages per damaged shares; correct?

A. Well, if somebody has a claim as to what their damages are and an economist is opining upon that, then what the     01:49:45PM damages are for the shares that are bought and sold by a particular entity or individual, then netting might be a relevant consideration.

Mr. Uris, I should tell you that     01:50:04PM

Page 92

JUNEJA

I'm told the Internet is back up so if there's any issue, we can switch back over to that if we need.

Q. I don't think your most recent     01:50:20PM answer quite answered my question but my question was with -- the question of netting doesn't impact the calculation of damages for damaged shares that were purchased during the class period;     01:50:41PM correct?

A. If you have an individual that or entity that purchases shares during a class period and sells those shares during a class period, depending on the pattern     01:50:59PM of purchases and sales and depending upon the inflation at issue, there can be times where netting is relevant. It depends on what the calculation is of inflation per share.     01:51:22PM

Q. To the extent netting is necessary, that could be handled as part of the claims process; correct?

A. Well, I think again, now you're getting into some legal considerations but     01:51:42PM

Page 93

JUNEJA

to the extent that a calculation is needed, benefits versus losses to any claimant, some of that may be manageable in the claims process, some of it     01:51:59PM depending on what the -- again, the pattern is of holdings, purchases and shares for any individual or entity and the pattern of inflation, it could be something where an economist can help the     01:52:16PM finder of fact with those determinations.

MR. URIS: I think this is a good point for a break, if that works for everyone.

THE VIDEOGRAPHER: Thank you.     01:52:36PM This is the videographer. The time is 1:52. We're going off the record.

(Recess taken from 1:52 p.m. to 2:09 p.m.)

THE VIDEOGRAPHER: We are back on     02:09:16PM the record. The time is 2:09. We're continuing media file 4.

MR. URIS: I have no further questions at this time.

MS. YORK-ERWIN: And I don't have     02:09:44PM

24 (Pages 90 - 93)

Page 94

JUNEJA

any redirect so no questions.

THE VIDEOGRAPHER:  Thank you very much.  The time is 2:09.  We're going off the record.  This ends media file   02:09:55PM 4 and that concludes today's testimony.

MS. YORK-ERWIN:  And we would like to read and sign.

(Time noted:  2:10 p.m.)        02:10:12PM

Page 96

JUNEJA

---------------- I N D E X ---------------

WITNESS        EXAMINATION BY      PAGE

VINITA JUNEJA    MR. URIS        5

----------------- EXHIBITS ---------------

EXHIBIT NUMBER    DESCRIPTION       PAGE

Exhibit 1, expert report of Vinita    8 Juneja, Ph.D.

Exhibit 2, reply report          9

Exhibit 3, consolidated amended      56 complaint

Exhibit 4, memorandum opinion and     64 order

Page 95

JUNEJA

C E R T I F I C A T E

STATE OF NEW YORK    )

    : ss.

COUNTY OF NASSAU    )

I, CATHI IRISH, a Registered Professional Reporter, Certified Realtime Reporter, and Notary Public within and for the State of New York, do hereby certify:

That VINITA JUNEJA, Ph.D., the witness whose deposition is hereinbefore set forth, was duly sworn by me and that such deposition is a true record of the testimony given by the witness.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 20th day of February, 2025.

_____

CATHI IRISH, RPR, CRR, CLVS

Page 97

Genevieve G. York-Erwin, Esq.

gyorkerwin@bakerlaw.com

February 20, 2025

RE:   Stadium Capital LLC v. Co-Diagnostics, Inc., Et Al. 2/7/2025, Vinita Juneja , PhD (#7130219)

The above-referenced transcript is available for review.

Within the applicable timeframe, the witness should read the testimony to verify its accuracy. If there are any changes, the witness should note those with the reason, on the attached Errata Sheet.

The witness should sign the Acknowledgment of Deponent and Errata and return to the deposing attorney. Copies should be sent to all counsel, and to Veritext at cs-ny@veritext.com.

Return completed errata within 30 days from receipt of testimony.

If the witness fails to do so within the time allotted, the transcript may be used as if signed.

Yours,

Veritext Legal Solutions

25 (Pages 94 - 97)

Page 98

Stadium Capital LLC v. Co-Diagnostics, Inc., Et Al.

Vinita Juneja , PhD (#7130219)

E R R A T A   S H E E T

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

_____  _____

Vinita Juneja , PhD                      Date

Page 99

Stadium Capital LLC v. Co-Diagnostics, Inc., Et Al.

Vinita Juneja , PhD (#7130219)

ACKNOWLEDGEMENT OF DEPONENT

I, Vinita Juneja , PhD, do hereby declare that I have read the foregoing transcript, I have made any corrections, additions, or changes I deemed necessary as noted above to be appended hereto, and that the same is a true, correct and complete transcript of the testimony given by me.

_____  _____

Vinita Juneja , PhD                      Date

*If notary is required

SUBSCRIBED AND SWORN TO BEFORE ME THIS

_____ DAY OF _____, 20___.

_____

NOTARY PUBLIC

26 (Pages 98 - 99)

Veritext Legal Solutions

212-267-6868                    www.veritext.com                    516-608-2400

**[& - 22]**                                                                                    Page 1

| & | | | |
|---|---|---|---|
| **&**  3:4,12 5:3 | 49:10,18 50:9 | 37:3 74:2 | 48:16 49:6,13 |
| **1** | 53:10,11,17 | 96:11 | 49:18,19 50:7 |
| **1**  4:6 8:6,10 | 54:14 55:15 | **2/7/2025**  97:5 | 50:14 51:4,10 |
| 40:20 44:23 | 67:22 68:18 | **20**  8:18 10:4 | 53:9,10,11,16 |
| 47:8 48:10 | 70:17,22 73:17 | 12:25 21:12 | 53:17 54:14,21 |
| 50:2,8,13 | 73:24 74:4,13 | 22:9 26:9,14 | 55:15 56:2 |
| 73:20 85:9 | 74:15,22 75:9 | 37:23 40:9,13 | 67:22 68:18 |
| 96:9 | 75:16 76:23 | 42:21 43:22 | 70:2,15,17,22 |
| **10**  10:5,12 | 77:16 80:13 | 44:16 48:9,18 | 71:8 73:18,20 |
| 17:13,13,15,15 | 81:16 84:5,16 | 69:10 70:4 | 73:22,24 74:4 |
| 19:12,14,15 | 86:6 88:13 | 97:3 99:15 | 74:11,13,15,22 |
| 22:6,8 26:15 | **12:11**  72:17 | **2000**  14:15 | 75:9,12,16 |
| 40:21 83:23 | **12th**  42:13 47:9 | **2019**  17:13,17 | 76:12,23 77:10 |
| **10022**  3:8 | 56:17 70:2 | **2020**  18:16 | 77:16 79:12 |
| **10111**  3:15 | 71:7 | 19:4 | 80:14 81:16 |
| **10:01**  32:10,11 | **14**  8:19 19:25 | **2021**  50:13 | 82:21 84:5,16 |
| **10:15**  32:12,14 | 84:22 | 85:15,24 86:24 | 85:18 86:6,25 |
| **10:57**  55:4,5 | **150**  13:22 | **2022**  17:13,17 | 87:4,9 88:13 |
| **11**  19:12,24 | **16**  52:16 85:10 | 18:16 19:4 | **2023**  85:16 |
| 73:20 82:21 | **17**  39:16,19 | 27:19 28:12,12 | **2024**  8:18 10:4 |
| **11:10**  55:6,8 | **19**  27:7,20 37:9 | 28:23,24 29:15 | 12:13 13:2 |
| **11:23**  63:9 | 37:13,25 38:5 | 29:15 32:20 | 15:5 21:12 |
| **11:28**  63:12 | 40:8,16 42:2 | 33:2,4,6,12,15 | 69:10 70:4 |
| **11:44**  72:14 | 42:24 48:19 | 33:17 34:8,13 | **2025**  1:16 2:7 |
| **12**  28:12,24 | 68:20,24 84:20 | 34:16 35:6,22 | 4:4 10:5,12 |
| 29:15 32:20 | **1:19**  73:3,8 | 36:17,18 37:11 | 24:6,10 95:23 |
| 33:2,6,12,15 | **1:52**  93:17,18 | 37:16,23 38:3 | 97:3 |
| 34:8,12,16 | **2** | 38:9,21,23 | **2028**  24:5 |
| 35:6,22 36:16 | **2**  9:7,10 15:4 | 39:11 40:17,25 | **20th**  95:22 |
| 37:16 38:9,21 | 15:11,12 16:8 | 41:9,14 42:18 | **22**  1:7 4:13 |
| 39:11 40:24 | 16:11 17:10 | 42:25 43:7,15 | 48:12 72:8,9 |
| 46:19 48:2 | 19:15,25 30:4 | 43:19,23 44:19 | 73:13,15 80:11 |
| | 30:25 32:15 | 44:24 46:19 | 84:19 |
| | | 47:12 48:2,3 | |

**[23 - allegedly]**

**23** 88:7
**24** 65:11 84:18
**26** 51:15,19 84:18
**27** 9:18,20
**28** 53:4,6
**29** 82:17,20 83:21
**29.38** 85:25
**2:09** 93:19,21 94:4
**2:10** 94:10
**2q** 73:22 84:19

**3**

**3** 13:2,8,10 56:25 57:5 63:13 96:12
**30** 50:14 97:16
**38th** 3:7

**4**

**4** 26:5 27:22,25 28:4 32:17 33:22 36:14 37:6 64:23 65:3 73:9 93:22 94:6 96:14
**45** 3:14
**48** 58:18,22

**5**

**5** 26:5,5,8,18,19 65:11,22 84:22

96:4
**50** 22:11
**5027** 95:24
**52** 60:17 61:9 61:11
**56** 96:12
**58** 88:6,9

**6**

**6** 26:5,20 55:11 55:13 57:19
**60** 52:10
**64** 90:20,24 96:14
**6978** 1:7 4:13

**7**

**7** 1:16 2:7 4:4 17:9 40:13 67:15,16
**7130219** 97:5 98:2 99:2

**8**

**8** 18:13 47:7 96:9
**800** 3:6

**9**

**9** 18:25 47:8 96:11
**9:05** 2:8 4:5

**a**

**a.m.** 2:8 4:5 32:11,12 55:5 55:6

**above** 39:22 97:6 99:7
**accept** 83:20
**access** 17:19 66:7
**account** 91:2
**accounts** 46:24
**accuracy** 97:9
**accurate** 13:8 13:11
**acknowledge...** 99:3
**acknowledg...** 97:12
**action** 25:3 57:10 95:18
**actual** 79:15 88:19,22
**actually** 24:7
**add** 24:19 56:21
**addition** 19:22 82:5 84:14
**additions** 99:6
**adjust** 41:9,12 41:22 43:13 44:23 45:11
**adjusted** 34:3 41:16 43:6
**adjusting** 45:12
**administer** 5:14
**administered** 33:4 37:10

38:2 50:12
**affect** 49:2
**affirmations** 67:10
**afternoon** 73:7
**ago** 11:15 23:25
**agree** 4:21
**al** 4:9,10 97:4 98:1 99:1
**allegation** 61:14,15 71:9
**allegations** 34:25 37:4 57:25 61:23 62:13 63:19 64:5 65:22 66:10
**alleged** 25:22 25:22 28:5 31:17,19 34:22 34:24 35:2 40:2 46:18 47:25 49:17 52:8,20 55:14 55:17,21 56:7 56:10 57:12,15 58:25 62:22 64:7 65:13 66:15 67:25 69:3,21 70:13 88:14
**allegedly** 26:6 36:9 39:6

**[allegedly - aware]**                                    Page 3

66:11,24 67:11
68:10
**alleges** 39:21
52:2,5,11
**alleging** 25:17
56:17 58:23
59:15
**allotted** 97:19
**amended** 56:3
56:7,25 57:9
96:12
**amount** 60:22
**analysis** 17:4
17:21 30:17
36:25 51:20
54:9 67:18
88:20,23 90:25
**analyst** 31:9,22
39:24 40:24
42:11 45:17,20
45:23 46:8
49:16 84:7
**analysts** 28:18
31:6 40:18
41:3,7,13 43:2
43:4,13,25
44:3,18,22
45:2,4,8,14
46:4,12,16
47:3,23 48:6
49:5,8,22 50:5
84:4
**analyzed** 16:15

**announce**
69:12 70:6
**announced**
53:8,15 69:18
81:15 82:3
**announcement**
40:25 42:13,19
43:18 45:10
46:6,10
**announcements**
73:21 74:9
85:8
**announcing**
69:6 83:2
**answer** 6:16,24
7:10 19:11
78:5 92:6
**answered**
28:19 92:6
**answering** 6:15
7:6 39:3 63:16
**anticipated**
40:16 42:23
71:20,22
**anytime** 32:2
**appearances**
4:23
**appearing** 2:12
**appears** 27:8
88:16
**appended** 99:7
**appendix** 15:4
15:11,12 16:8
16:10 17:10

19:15,25 30:4
30:25 31:21
37:3
**applicable** 97:8
**applied** 86:12
86:20
**appropriate**
69:23 70:15
78:11
**appropriately**
64:11 78:10
**approximately**
13:18 22:2
51:8
**april** 33:4
37:11 38:3
**aside** 76:2
**asked** 13:12
18:22 33:19
34:22 39:4
67:19,24 83:3
**asking** 43:24
61:21 77:7
**asks** 88:12,18
**assessment**
28:10,13,21
29:6,13 30:8
30:19 31:12
**assisted** 14:16
**associated**
47:10
**associates** 5:9
**assume** 7:10
67:19,24 76:18

76:22
**attached** 97:11
**attempting**
66:21
**attended** 10:13
10:15
**attending** 10:8
**attention** 87:17
87:18
**attorney** 4:25
97:13
**attorneys** 3:5
3:13
**audibly** 6:16
**audio** 24:12
**august** 54:14
54:20 68:13
70:14 73:20
74:5 80:15
82:21 84:5,16
86:6 88:13
**available** 5:23
8:10 9:10
17:16 18:17
19:4 20:3
31:20,23 65:4
97:6
**avenue** 3:6
**average** 43:12
**aware** 6:10
20:21 33:7
34:17 35:23
36:4 38:10
70:3 74:16

**[aware - change]**                                                      Page 4

75:11,15 79:10 81:14,16 84:8 89:10

**b**

**b** 33:22 36:14
**back** 13:5 32:13,17 42:20 55:7 56:12 63:3,11 69:14 70:11 73:7 79:18 84:6,15 87:5 92:2,3 93:20
**background** 66:24
**bad** 51:22
**baker** 3:12 5:6 12:19
**bakerlaw.com** 97:2
**based** 10:7 17:3 73:23,25 74:12 74:14
**basically** 83:13
**basing** 68:9
**basis** 37:24 44:3
**beat** 87:3,6
**beats** 86:25 87:11,22
**beginning** 36:24 64:14 77:19

**begins** 32:15 73:8
**behalf** 1:5 5:3,7 14:20,24 21:8 21:23
**believe** 45:25
**benefits** 91:3 93:3
**best** 8:24 9:23 83:9
**beyond** 29:15 30:21 31:13
**bid** 88:21 89:15
**bids** 88:11,16
**bigger** 78:12 80:4 86:20
**bits** 61:23
**blood** 95:18
**board** 89:11,15
**bottom** 8:21 26:17 83:22
**bought** 91:21
**break** 7:3,7 32:2,5 54:23 93:13
**breaking** 32:6
**breaks** 12:2
**brian** 1:10
**bring** 11:24
**brought** 24:23 25:8,15
**brown** 1:10
**bunch** 15:23

**buy** 84:23 88:17

**c**

**c** 3:2 21:11 37:6 95:2,2
**calculate** 85:20 89:16
**calculated** 85:13 86:14 91:12
**calculates** 88:23 89:7,11
**calculating** 91:10
**calculation** 91:16 92:8,19 93:2
**call** 18:15 82:22 83:12,18 84:5
**called** 5:17
**calls** 30:13
**capital** 1:5 4:9 25:17 97:4 98:1 99:1
**carefully** 15:20 16:3,6
**case** 1:7 4:13 10:6,11 14:17 14:21,25 15:22 16:22 20:16,20 20:24 21:3,8 21:11,22 23:19

23:24,25 24:20 24:23 25:2,4,8 25:11,15,23 36:8 53:19,23 56:4,15 61:11 62:3 65:10 68:8,10 71:17
**cases** 22:3,14 22:19,22 23:9 50:13,21 80:22
**cathi** 1:21 2:13 4:16 95:7,25
**caused** 39:23 73:18
**ceased** 47:4
**ceases** 47:2
**ceasing** 47:21
**certain** 45:16 67:3 79:21 89:9
**certainly** 71:18 81:12
**certified** 2:15 4:15 95:8
**certify** 95:10,16
**cessation** 40:4 48:21
**challenging** 53:25 54:7,14
**change** 7:17 48:9 74:6 80:16 98:4,7 98:10,13,16,19

**[changed - conference]** Page 5

changed   14:13
  49:12 82:9
changes   9:2,25
  40:23 49:14,25
  81:8 88:23
  97:10 99:6
changing   48:24
  81:6,13
chart   41:4
  50:17,23
chicago   89:11
  89:14
choose   50:16
  50:22
christopher
  3:20 4:14
circumstance
  47:5
circumstances
  88:2
citations   15:9
cite   17:2,7
cited   19:20
  20:5
citing   19:8
claim   69:5
  91:18
claimant   93:4
claimed   69:11
claims   25:2
  92:23 93:5
clarify   7:13
class   5:4 25:3
  28:15 36:24

57:10 64:14
  69:18 92:10,14
  92:15
clean   6:14
clear   71:11
clinical   82:25
  83:3,6,15,24
close   83:15
clvs   1:21 95:25
cnn   25:9
coefficient   85:2
  85:25 86:5,11
coefficients
  85:13
coffman   62:4
  69:4 86:14
  88:16
coffman's   10:8
  10:14,17 11:7
  12:6 68:8
  69:10,15 70:4
  70:19 71:24
  72:2 88:11,22
colleagues
  10:25 11:20
collected   18:20
come   79:18
comes   25:25
  63:2
coming   42:5
commence
  82:24 83:7
commenced
  83:3

commentary
  39:25 40:18
  41:20 42:25
  46:17 47:24
  48:17,21,24
  49:16,23 54:17
commenting
  48:8 84:12
common   45:14
  45:23 53:25
  54:11
communicate
  7:21
communicated
  21:6
company   28:14
  29:2,16,17,22
  35:9 46:6,10
  47:2,4 48:4
  56:19 65:23
  67:13 81:21
  87:20,23 88:3
company's
  25:19 28:10,22
  29:13 30:8,11
  30:19 31:12
  33:16 34:4
  35:5 38:22
  46:22 49:23
  51:9 52:22
  55:17 67:9
  87:10
comparison
  75:16

comparisons
  75:22
complaint
  25:24 56:4,7
  56:13,14 57:2
  57:10,12,19
  58:2,10,19,22
  59:20 60:16,17
  62:2 64:6,21
  67:25 68:6
  96:13
complete   62:20
  62:20 78:4
  99:8
completed
  97:16
complicated
  74:24
conceptually
  91:11
concerns   48:18
concludes   94:6
concluding
  49:4
conclusion
  23:22 75:7
conclusions
  23:6
conditions
  81:13
conference
  30:13 82:22
  83:18

**[confident - day]**                                                          Page 6

| | | | |
|---|---|---|---|
| **confident** 83:8 | **context** 66:25 | **corrections** | **customers** |
| **confusing** 71:3 | 75:5 78:12 | 99:6 | 26:23 27:3 |
| **conjunction** | 79:2,9 80:3 | **corrective** | 51:3,9 |
| 40:3 | 82:12 90:14 | 60:25 69:21 | **cut** 24:12 |
| **connecticut** | 91:14 | 70:14 88:14 | **cv** 1:7 4:13 |
| 1:15 | **continue** 41:25 | **correctly** 28:7 | 14:12 |
| **connection** | **continued** | **counsel** 4:22 | |
| 13:12 15:6 | 73:10 | 5:12 6:22,24 | **d** |
| 19:17 63:17 | **continuing** | 7:21 10:19,21 | **d** 96:2 |
| **consecutive** | 42:9 63:13 | 11:8,10 15:22 | **daily** 57:23 |
| 87:21 | 93:22 | 16:18,19 17:7 | 66:5 |
| **consider** 17:15 | **contrary** 59:8 | 20:23 97:14 | **damage** 91:12 |
| 18:21 68:25 | **conversations** | **count** 22:5 | **damaged** 91:17 |
| **consideration** | 11:9 16:24 | **countries** 51:6 | 92:9 |
| 70:20 91:24 | **copies** 12:4,8 | **county** 95:5 | **damages** 90:25 |
| **considerations** | 13:4 18:5 | **couple** 11:15 | 91:11,16,19,21 |
| 92:25 | 97:14 | 23:24 | 92:9 |
| **considered** | **corporate** 85:8 | **course** 7:18 | **data** 24:3,9 |
| 15:6,15 16:3,6 | **correct** 31:14 | **court** 1:2 4:11 | 29:7,9 37:8 |
| 19:17 39:13 | 32:22 33:9,18 | 4:16 5:13 6:17 | 50:23 59:16 |
| **considers** 43:23 | 34:10,19 35:25 | 23:15 52:18 | 74:21 75:15 |
| **consistent** | 36:20 37:18 | 65:13 66:14 | **date** 4:3 10:9 |
| 45:12 | 38:12,24 40:25 | **court's** 52:17 | 33:16 36:17 |
| **consolidated** | 41:5,6,10 | **covid** 27:7,20 | 38:22 48:2 |
| 56:25 57:9 | 44:20,25 47:16 | 37:9,13,25 | 53:9,16 61:16 |
| 96:12 | 48:20 54:3,8 | 38:5 40:8,16 | 69:4,6,13 70:7 |
| **constant** 46:13 | 54:16 56:4 | 42:2,24 48:19 | 75:11 76:12,23 |
| **consulting** | 58:8 59:17 | 50:13,20,21 | 77:9 79:12 |
| 13:25 14:4 | 60:11 70:24 | 59:7 84:20 | 90:7 98:24 |
| **contained** | 74:18 75:13 | **create** 89:19 | 99:12 |
| 73:21 74:9 | 84:23 85:16 | 90:6 | **david** 11:21 |
| **content** 53:12 | 86:2,3,7 87:2 | **crr** 1:21 95:25 | **day** 7:18 71:14 |
| **contents** 8:23 | 89:19 91:17 | **cs** 97:15 | 82:15 95:22 |
| 9:22 | 92:11,23 99:8 | | 99:15 |

**[days - director]** Page 7

**days** 11:15 75:18 81:7 97:16

**deaths** 80:22

**decided** 24:9

**decisions** 36:7

**declare** 99:4

**decline** 40:7 47:10 48:13 52:13 54:16 59:12 86:6

**declined** 32:22 33:2,9 34:10 34:19 35:25 37:10,18 38:2 38:12 46:21 70:24 71:7,10 72:6

**declining** 52:25 74:17

**decrease** 41:19 51:23

**decreasing** 42:2,9,12 48:23 49:9

**deemed** 99:6

**defamation** 25:8

**defendant** 83:12

**defendant's** 24:22

**defendants** 1:10 3:13 5:7

6:22 7:21 14:21,25 16:17 16:19 21:8 33:7,11 34:17 35:23 36:3,8 37:5 38:10,15 39:7,9 40:5,14 40:15 42:22 47:13,18 56:8 57:13,22 58:4 58:23 59:15 60:8 62:6,14 63:20 64:10,12 67:20 69:2 74:16,21 75:10 79:11 81:15 82:2 83:4

**defense** 20:23

**definitely** 22:7

**delay** 83:23 84:4

**delivery** 83:14

**demand** 27:17 32:20,25 33:7 33:13 34:8,12 34:17 35:13,23 37:16,22 38:10 38:16 42:2,12 46:19 47:15 48:20,23 49:9 52:23,24 57:24 58:5,14 59:7,9 60:2,20,20 61:15 65:23

66:6,7 67:10 67:12 70:23 71:6,12,13,13 71:14,15,18 72:6 74:17,24 74:25 75:2 81:17 82:3 84:20

**demands** 42:10

**depending** 92:15,16 93:6

**depends** 82:6,8 82:10 87:25 89:22 90:11,13 92:18

**deponent** 97:13 99:3

**deposing** 97:13

**deposition** 1:13 2:10 4:7 6:21 10:8,14,15,17 11:4,11 12:2,3 22:14 57:5 70:12 95:12,14

**depositions** 23:4

**describe** 52:21

**description** 13:8,11 60:18 62:21 96:8

**detail** 28:2 58:14 64:6,9

**determinations** 93:11

**development** 81:10

**device** 82:24

**diagnostics** 1:9 4:10 17:12 18:14 19:3 20:15,19 25:16 29:7 36:17 39:23 47:11 48:15 51:3,21 53:8,15,25 54:7,12,20 55:24 59:25 62:10,16 63:23 75:11 76:11,22 77:9 79:12 82:22 85:14 86:15,25 97:4 98:1 99:1

**different** 13:20 14:5 15:17 23:14 47:20 51:5 71:4 73:22 74:10 76:25 77:2

**differently** 15:18

**difficult** 15:17

**difficulties** 47:15

**difficulty** 52:23

**direct** 75:7

**director** 14:8 14:10

**[disclose - employee]** Page 8

**disclose** 52:22 55:17,22 56:8 56:20 57:13,23 58:5,7,24 59:16 65:15 66:17 67:21 77:8 78:7,10 78:25 79:2,21 79:23

**disclosed** 30:22 31:14 58:14 61:18 68:11,12 68:13 69:3,8 70:17 73:20 74:16 75:10 76:4,21 77:22 78:11,16,18 79:6,11

**disclosing** 52:24 78:19 79:14

**disclosure** 56:17 68:14 69:11,21,22,24 70:5,14,21 73:17 74:15 75:9 78:11 88:14

**disclosures** 49:23

**disconnect** 72:4

**discuss** 10:20

**discussed** 10:18 11:7 18:23

28:14,17 29:19 29:23 30:15 38:17 48:11 49:24

**discussing** 66:23

**discussion** 17:6 35:16 50:3 61:13 63:10 65:21 67:5 72:15

**discussions** 16:21 31:7 36:11 39:9

**dismiss** 52:17

**dismissed** 61:24

**displayed** 30:15

**disposal** 33:12

**disputing** 77:5

**dissipated** 88:13

**distinct** 38:16

**distinction** 15:13

**district** 1:2,3 4:11,12

**document** 8:13 8:14 9:11,13 17:6 57:6,17 65:6,20

**documents** 11:5 16:16

17:25 36:7,11 37:2 38:17 39:7

**doing** 17:21 69:17 91:13

**dow** 19:5

**downgrade** 84:22

**downward** 41:16 43:7 44:2

**dr** 4:8 5:22 21:11 31:25 62:23 63:15 73:12

**draft** 17:2 21:19

**drafting** 16:6 18:8

**drop** 86:13

**dropped** 61:24 63:4

**duly** 5:17 95:13

**duties** 78:24

**duty** 78:7,9 79:20,23,24

**dwight** 1:9

**dx** 59:5,24

**e**

**e** 3:2,2 5:16 73:2,2,4 95:2,2 96:2 98:3,3,3

**earlier** 25:5 38:13 42:15

**early** 53:10

**earnings** 18:15 40:7 41:19 42:17 43:19 44:9 45:5 46:11,25 48:10 49:3,5 51:24 62:9,16 63:22 65:24 84:5 85:2,7,8,13,25 86:4,11,12,25 87:3,11,21

**easier** 26:12

**eastern** 4:5

**economic** 5:8 13:25 14:4

**economics** 21:4

**economist** 91:19 93:10

**economists** 91:8

**efficiency** 54:10

**egan** 1:9 83:12

**either** 41:21 42:4 45:15 46:12 54:10 63:3 68:15 85:20

**employee** 20:15 20:15,19,20

**[employees - failure]** Page 9

employees 25:16
ends 94:5
engagement 13:24 15:3
entire 60:22
entity 91:22 92:13 93:8
equivalent 14:14
errata 97:11,13 97:16
erwin 3:16 5:5 5:6 11:19,19 18:2 20:7 27:4 27:14 29:25 31:4,15,25 34:20 37:19 38:25 41:17 43:8 44:5 46:2 47:17 54:25 59:18 61:19 62:17,23 63:6 63:24 65:17 66:18 68:2 70:8,25 74:19 76:6,15 77:12 78:21 79:16 81:24 86:8 87:12 89:20 90:9 93:25 94:8 97:1
erwin's 12:15

esq 3:9,16 97:1
essentially 14:6 60:4,14
estimate 45:5 88:12
estimates 40:24 41:10,11,16,19 42:17 43:7 44:2,9,24 45:8 47:6 48:10
et 4:9,10 97:4 98:1 99:1
evaluate 34:23
evaluation 82:11
evidence 17:4 32:24 33:3 38:18 39:5 47:8 69:5
evidentiary 23:2
exact 51:11 69:7 75:22
exactly 42:14 51:14 61:21 67:7 80:20
examination 5:20 73:10 96:3
examined 5:18
example 50:23 57:18 90:4
exception 85:17,19

exchange 89:11 89:15
excluded 23:17
executives 82:23
exhibit 8:5,6,10 8:11 9:6,7,10 56:25 57:5 64:23 65:3 96:8,9,11,12,14
exhibits 12:5 96:7
expect 7:17 87:23
expectations 47:7,11 48:13 78:13 79:3 80:4 81:20 82:7,9 84:19
expected 46:11 50:7 82:23 84:21
experienced 59:6
experiencing 26:21 59:25 60:19
expert 8:6 12:23 21:4,7 21:10,23 22:15 23:5,6,8 96:9
explain 86:5,13 91:11

explained 28:2
explaining 16:22
explanation 20:2
explicitly 81:22
express 10:5
extent 15:7 19:19 20:4 29:8 30:14 31:5 35:9 39:4 79:4,24 87:22 92:21 93:2

**f**

f 73:2 95:2
fact 35:4 45:3 57:20 60:18 61:4,16 67:20 77:9 91:9 93:11
factiva 19:5
factors 43:10
facts 36:3
factset 17:14,16 18:17
factual 17:3 32:24
failed 57:23
failing 67:21
fails 68:25 97:18
failure 55:17 55:21 65:15

66:16
**fallen** 60:13
**falling** 58:15
**falloff** 59:6
60:2,4,6,9,12
60:20,23
**falls** 84:20
**false** 55:16 59:4
**familiar** 6:3
**far** 33:17 36:18
38:23 48:3
49:20 75:12
76:12 77:10
79:13
**fast** 71:10
**faster** 84:21
**fda** 83:10
**february** 1:16
2:7 4:4 65:11
95:22 97:3
**feeds** 29:9
**feel** 64:10
**figure** 16:13
50:8,11
**file** 32:15 63:13
73:9 93:22
94:5
**filed** 4:11 21:20
21:23 65:10
**filing** 21:17
30:12
**filings** 18:11
**financial** 45:13
46:5

**find** 67:20
**finder** 67:19
93:11
**finders** 91:9
**finding** 71:2
**fine** 32:6
**finish** 6:15 7:5
**firm** 12:15,16
12:18
**first** 15:10
27:18 51:18
53:5 55:12,25
71:23 73:23
74:11 82:19
85:14,22,23
86:17,22,24
87:4,10
**five** 22:23
**flawed** 88:15
**floor** 3:7
**fluctuations**
26:22 27:2,8
27:13 52:22
**following** 40:24
46:18 47:25
49:17 84:4
88:13
**follows** 5:19
28:3 73:5
**footnoted**
18:11
**footnotes** 84:18
**forecast** 45:3
45:11,15 49:13

**forecasting**
47:15 52:23
66:2
**forecasts** 45:16
45:24 49:15,25
**foregoing** 99:5
**form** 6:22
17:13 18:2
20:7 27:4,14
29:25 31:4,15
34:20 37:19
38:25 41:17
43:8 44:5 46:2
47:17 59:18
61:19 62:18
63:25 65:18
66:19 68:3
70:9,25 74:19
76:7,16 77:13
78:22 79:17
81:25 86:9
87:13 89:21
90:10
**former** 20:15
20:19
**forming** 28:9
28:20 29:5,12
30:2,7,18,23
**forth** 13:5
30:13 71:15
81:3,11 95:13
**forward** 47:16
50:6 83:2

**found** 52:18
**four** 22:23
**fourth** 42:18
43:15 86:23
**fox** 3:4 5:3
**fraud** 23:9
25:15
**freeze** 45:8
**friday** 1:16
**froze** 72:11
**full** 5:24 40:13
86:6
**funding** 81:2
**further** 10:7
28:2 93:23
95:16
**furthermore**
26:21
**future** 34:4
40:7 42:6
51:23 81:4,20
82:14

**g**

**g** 3:16 97:1
**gains** 91:5,7
**general** 13:17
21:2 33:3
37:25 47:10
48:13 66:24
79:19
**generally** 61:25
68:15 69:17
78:6

generic 51:25
genevieve 3:16
  5:5 97:1
geography
  50:18
getting 92:25
given 52:9,12
  64:15 95:15
  99:9
go 4:19 6:4
  13:5 15:24
  17:9 43:10
  58:2 63:4
  69:14 91:13
goes 26:20 39:2
  64:6,8
going 4:3 8:4
  9:5 13:3 24:8
  25:6 32:10,17
  42:20 47:15
  50:6,20 55:4
  63:4,9 72:13
  80:21 82:12
  88:4 93:17
  94:4
good 4:2 54:22
  73:6 93:12
government
  81:2
gradually
  41:25 42:9,12
  48:23 49:9
graphs 24:4

greenwich 1:15
ground 6:4
guess 13:22
  15:10 17:23
  26:11
guidance 34:3
  35:6,11 40:4
  41:23 47:2,4
  47:14,21 48:7
  48:22 51:21
  81:22
gyorkerwin
  97:2

**h**

h 1:9 98:3
h.c. 41:4,8,24
  42:8,11 44:8
half 51:13
hand 95:22
handled 92:22
hanlon 3:20
  4:14
happen 80:21
happens 45:7
head 6:18
hear 6:17
hearing 23:2
  48:7
held 65:13
  66:15
help 93:10
hereinbefore
  95:12

hereto 99:7
hereunto 95:21
hexo 24:23
higher 46:10
highlighted
  50:3
highly 83:8
hills 84:10
historical 30:9
  30:20 31:12
hold 19:11 20:2
holding 46:13
holdings 93:7
home 82:24
hostetler 3:12
  5:6 12:19
hour 11:17
  32:3,5
hours 13:14,18
  13:19
husband 21:2
hypothetical
  70:20

**i**

i.e. 88:16,18
  91:2
identification
  8:8 9:8 57:2
  64:24
identify 56:6
  57:11 58:21
  59:13 65:12
  66:13 69:9

iii 49:24
illness 80:23
illustrative
  50:25
immediate
  45:10
immediately
  28:15
impact 69:7,23
  91:16 92:8
implications
  56:23 64:17
  75:5
implies 53:7,14
  60:24
imply 82:14
important
  83:24
impression
  53:18,21 61:4
improperly
  52:3,5
inaudible 57:25
inc.'s 18:15
include 17:18
  30:11 33:3
  35:2
included 16:7
includes 22:25
  31:22 69:19
including 11:6
  51:6
income 44:11

| | | | |
|---|---|---|---|
| **incorporate** 35:3,14,16 | **inflation** 88:12 92:17,19 93:9 | **interpreted** 34:2 35:10 36:12 40:6 51:22 | **january** 9:17 10:5,12 19:14 19:15 21:17 26:15 |
| **incorporated** 4:10 16:3,15 30:16 39:12 | **influx** 66:5 | **interprets** 35:8 | **jason** 3:9 5:2 |
| **incorporates** 39:5 | **information** 16:18 25:19 29:7 30:21 | **intra** 55:18,22 56:9 57:14 58:7,24 59:16 65:15 66:17 67:21 68:17 | **jones** 19:5 |
| **incorporating** 36:6,10,25 | 33:11 35:13 37:4 39:10 47:9 52:2,12 | | **judge** 24:3 |
| **independent** 72:5 | 56:18 57:21 61:18 62:6 64:16 69:20 | **introduce** 8:4 9:5 | **judge's** 56:16 62:3 68:6 |
| **index** 89:5 | 73:19,22 74:10 79:25 81:19 88:5 91:10 | **introduced** 57:4 | **juneja** 1:14 2:11 4:8 5:22 6:1,2 7:1 8:1,7 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1,25 32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1 50:1 51:1 52:1 53:1 54:1 55:1 56:1 57:1 58:1 59:1 60:1 61:1 62:1,23 63:1 63:15 64:1 65:1 66:1 67:1 68:1 69:1 70:1 |
| **indicate** 47:8 | **informed** 33:25 35:10 48:14 | **introducing** 65:3 | |
| **indicated** 74:23 75:3 | **initial** 26:6,12 27:23 32:18 33:22 36:15 | **investor** 67:9 | |
| **indicates** 44:17 48:12 | 39:17 40:10 42:20 50:9 | **investors** 39:22 | |
| **indicating** 40:6 51:23 58:12 | 53:5,24 54:5,6 54:10,13,18 | **irish** 1:21 2:13 4:17 95:7,25 | |
| **indication** 61:2 | **insufficient** 53:12 54:2,8 56:18 67:11 | **issue** 90:6 91:5 91:8 92:3,17 | |
| **indicative** 50:19 | | **issuer** 90:18 | |
| **indicator** 45:13 46:5 | | **issues** 89:19 | |
| **individual** 91:23 92:12 93:8 | **intended** 19:18 | **item** 17:9 18:4 18:13,25 | |
| **individually** 43:12 | **interested** 95:19 | **items** 18:23 19:12,24 30:16 | |
| **industry** 21:2 88:3 | **internal** 29:6,9 | **ivelina** 3:21 5:7 11:20 | |
| **inflated** 39:24 91:3 | **internet** 92:2 | **j** | |
| | **interpret** 15:18 | **j** 5:16,16 73:4,4 | |

| | | | |
|---|---|---|---|
| 71:1 72:1 73:1 73:12 74:1 75:1 76:1 77:1 78:1 79:1 80:1 81:1 82:1 83:1 84:1 85:1 86:1 87:1 88:1 89:1 90:1 91:1 92:1 93:1 94:1 95:1 95:11 96:1,4 96:10 97:5 98:2,24 99:2,4 99:12 | 75:18,22 77:3 78:6 79:3 81:3 84:10 87:3 89:7,14,17 **knowable** 74:4 80:13 **knowledge** 8:24 9:23 37:24 **known** 39:6,6 64:9 65:24 66:7 69:2 | **level** 34:12 36:4 36:22 37:21 38:15 64:15 80:8 **levels** 37:13 38:5 **liable** 67:20 **lifted** 81:11 **light** 55:16 **likely** 40:6,19 41:15 43:3,5 44:4,20 45:21 45:25 50:6 51:23 52:13 87:8 | **llc** 1:5 4:9 97:4 98:1 99:1 **llp** 3:4,12 **located** 51:9 **locked** 62:25 **logix** 27:7 28:11,22 29:14 30:9,20 31:13 32:21,25 33:8 33:13 34:9,13 34:18 35:18,24 36:5,23 37:17 37:22 38:11,16 46:20,23 57:20 59:7 70:23 71:6 74:18 81:18 |
| **jury** 24:9 | **ks** 17:13,15 | **limited** 23:18 | **long** 11:16 14:9 71:12 82:13 87:21 |
| **k** | **l** | **line** 83:22 98:4 98:7,10,13,16 98:19 | |
| **kaplan** 3:4 5:2 **kept** 22:4 **kilsheimer** 3:4 5:3 **kind** 15:23 17:3 42:4 45:6 61:3 61:4 **knew** 36:9 37:5 38:15 64:13 67:13 68:16 69:25 80:20 **know** 7:4,13 14:23 15:20,21 22:5 23:10,11 23:13 26:25 37:2 42:3,10 42:14,16 49:7 61:4 64:19 | **l** 1:10 **lack** 68:14 **language** 43:22 58:21 59:14 64:20 **large** 86:5 87:11 **largely** 48:18 **late** 12:12 **lawsuit** 8:2 **lead** 5:3 **leads** 88:15 **legal** 4:15 23:22 55:19 91:5,8 92:25 97:23 **legality** 78:5 **lengthy** 57:17 | **lines** 68:14 **list** 16:13 30:4 30:11 **listed** 19:19 20:9,11 26:5 30:24 31:21 85:23 **listening** 5:10 **litchfield** 41:5 44:10 47:3 84:10 **litigation** 21:24 52:19 **little** 13:23 | **longer** 61:10 **look** 9:12 13:3 13:16 14:12 15:23 16:13 26:17,18 29:21 31:16,18 41:20 44:7 45:17 52:8,15 56:12 57:18 58:10 59:20 64:5 70:11 82:25 84:6,15 87:5 **looked** 16:2 17:21 29:2,11 |

29:17,18 30:3 75:14
**looking** 31:9 35:7 66:8 68:5 68:6,7,8 69:17 85:22 90:3,8 90:12,14
**loose** 71:10
**losses** 91:7 93:3
**lost** 62:24
**lot** 13:20 23:13 47:20
**loud** 33:23,24 37:7 39:20 40:12 51:19 53:6 55:12 67:17 68:23 72:10 73:16 82:20 88:10 90:23
**lower** 40:16 41:13 42:23 44:8 47:6 49:5 49:13 50:6 71:19,21 75:20 76:24 77:17,23 78:17,19 79:5 84:21
**lowering** 46:13
**lunch** 72:16

**m**

**made** 99:5

**magnitude** 61:3
**main** 46:22
**majority** 23:12 46:25 49:4
**make** 49:13 56:10 57:15 58:25 78:9
**makes** 59:23
**making** 5:22
**manageable** 93:4
**management** 31:7 66:6 68:16 69:25 71:17 78:6,24 79:19,20
**managing** 14:8 14:10
**mandates** 81:10
**march** 33:4 37:10 38:3 50:13
**marked** 8:7 9:7 57:2,4 64:24
**market** 28:6 29:19,23 35:8 36:12 40:2 48:14 51:22,25 52:3,6,13 53:10 54:2,8 62:8 81:18 83:25 87:7,16

87:22
**market's** 31:18 34:24
**markings** 12:7
**marriage** 95:18
**mask** 81:10
**materials** 15:5 15:12,13,14,19 16:5,10 18:20 19:16 20:9
**matter** 4:8 8:18 9:17 11:2,6 12:11,23 13:15 57:10 69:7 95:20
**matters** 11:8
**mean** 16:20 20:25 26:13 71:12 83:18 87:15
**means** 6:17
**meant** 50:25
**measure** 69:23 77:19 85:6
**media** 4:6 32:15 63:13 73:8 93:22 94:5
**meeting** 11:13
**meetings** 11:10
**members** 18:21
**memorandum** 64:23 65:9 96:14

**mention** 84:4
**mentioned** 42:8
**met** 21:6
**methodology** 85:21
**middle** 63:16
**midpoint** 88:21
**midpoints** 89:16
**mile** 83:13
**minute** 63:2
**mislead** 79:4,24
**misleading** 25:23 26:7 52:11,21 55:16 56:11 57:16 59:2,5,24 65:14 66:4,16 66:25 67:4 78:8 80:3
**misled** 39:22
**misrepresent...** 62:22
**misrepresent...** 25:18 28:5 31:17,19 34:23 34:25 35:3 40:3 52:9 55:15 59:23 64:8 69:4
**misrepresented** 66:11
**misstatements** 25:22 46:18

47:25 49:18 56:10 57:15 59:2 65:14 66:15 67:3

**mix** 47:9 88:4

**monitoring** 48:25

**month** 71:14 75:23 82:15

**months** 81:7

**morning** 4:2

**motion** 52:17

**movement** 90:4

**n**

**n** 3:2 5:16,16 73:2,2,2,4,4 96:2

**name** 4:14 5:25 12:17 24:22

**nassau** 95:5

**national** 5:8

**nature** 24:25 48:24

**near** 52:23 83:6

**necessarily** 45:12 58:6

**necessary** 91:5 92:22 99:6

**need** 6:16 7:3 15:24 69:12 70:6 90:25 92:4

**needed** 18:7 56:8 57:13 58:24 59:15 61:18 93:3

**negative** 28:6 34:3 35:12 40:5 41:21 42:4 43:18 44:14

**nera** 11:2 13:25 14:3,10,16,23

**net** 44:11 91:7

**netting** 91:5,15 91:23 92:8,18 92:21

**neutral** 41:21 84:23

**never** 81:3

**new** 1:3 2:17 3:8,8,15,15 4:12,18 50:12 95:3,10

**news** 19:2 28:6 29:20,24 30:12 34:3 35:12 37:8 39:25 40:5 43:18 44:14 45:10 51:22

**nodding** 6:18

**notary** 2:16 5:18 95:9 99:13,19

**note** 4:19 52:16 84:17 97:10

**noted** 73:3 94:10 99:7

**notes** 12:7

**noticing** 4:24

**noting** 82:25

**november** 8:18 10:4 12:25 15:4 19:23 21:12 26:9,14 69:10 70:4

**number** 4:6,13 17:9 18:13 37:9,12,25 38:5 43:10 47:19 51:11 56:22 59:21 60:16 61:2 75:17 80:7,21 80:22 86:21 96:8

**numbers** 41:22 43:15 55:18,22 55:25 56:9 57:14 58:8,13 58:25 60:6,10 60:11,13,15 61:13 64:17 65:16 66:17 67:22 68:17 75:4,20 76:3 77:2,6,16,22 78:16,20 79:15

**ny** 97:15

**o**

**o** 73:2,2,2

**oath** 5:14 6:6

**object** 6:22

**objection** 18:2 20:7 27:4,14 29:25 31:4,15 34:20 37:19 38:25 41:17 43:8 44:5 46:2 47:17 59:18 61:19 62:17 63:24 65:17 66:18 68:2 70:8,25 74:19 76:6,15 77:12 78:21 79:16 81:24 86:8 87:12 89:20 90:9

**obviously** 16:21 64:19

**occurred** 88:24

**october** 12:12

**offering** 71:5 72:4 88:17,18

**offers** 69:5

**offsets** 91:2

**okay** 13:4,6 53:20 54:25 59:13 63:5 72:12 76:2

85:22
**omicron** 81:10
**omissions** 25:18
**ones** 18:24 19:8 19:9 20:5,11
**ongoing** 74:3 80:13
**opining** 71:25 78:5 91:20
**opinion** 28:9,21 28:25 29:4,5 29:12 30:3,7 30:18,23 32:19 32:19,23 33:6 33:10,14 34:6 34:7,11,16 35:22 36:2,16 36:22 37:14,15 37:21 38:9,14 38:21 39:2,14 52:17 55:19 64:23 65:9 68:7 70:22 71:5 72:5 96:14
**opinions** 10:6,7 10:9 23:17 28:3
**opposed** 15:14 23:3 50:17 61:17
**opposing** 23:21

**option** 47:4 88:17,19
**options** 54:7,11 89:11,15 90:4 90:12,14,16,17
**order** 6:13 26:22 27:2 31:16 52:18 56:9,16 57:14 58:4,25 61:3 62:3 64:24 65:10,13 66:8 66:10,14,21,23 96:15
**orders** 27:9 28:10,16,18,22 29:3,13 66:2
**outcome** 40:19 41:15 43:3,5 44:4,20 45:21 45:25 95:19
**outlook** 34:4
**overall** 46:7 67:9
**own** 31:11

**p**

**p** 3:2,2
**p.m.** 72:17 73:3 93:18,19 94:10
**page** 8:19,21 9:18,19 15:11 26:5,8,17,19,20 40:13,21 47:7

50:8 65:22 83:22 85:10 88:7 96:3,8 98:4,7,10,13,16 98:19
**pandemic** 74:3 80:12,18,20
**paper** 13:4
**paragraph** 13:2,8,10 26:19 27:6,22 27:25 32:17 33:21,23 36:14 37:6,23 39:16 39:19 40:9,13 42:21 43:22 44:16 48:9,12 48:18 51:15,19 52:10,15 53:4 53:6 55:11,13 57:19 58:18,22 60:17 61:9,11 67:15,16 68:20 68:24 72:8,9 73:13,15 80:11 82:17,19 83:21 88:6,9 90:20 90:24
**paragraphs** 27:16
**part** 28:25 29:3 29:4,10 35:6 39:13 71:23 83:17 92:22

**participants** 2:12 29:20,24 33:25 35:10 48:14
**particular** 91:22
**particularly** 27:19 87:8,15
**parties** 4:21 95:17
**partly** 65:25
**partner** 14:3
**parts** 71:4
**party** 7:25 21:24 23:21
**past** 24:5 75:2
**pattern** 92:15 93:7,9
**patterns** 26:22 27:2
**pay** 87:17
**paying** 87:17
**pcr** 33:3 37:9 37:13,25 38:5 50:12 82:24
**penalty** 6:7
**pending** 7:5
**people** 15:18 80:23 81:9,14
**people's** 82:6
**perceived** 28:5 40:2
**percentage** 23:7 51:8

perform 87:23
performance 34:5 51:24
performed 10:10
period 28:15 36:24 64:14 69:19 92:10,14 92:15
periods 81:20
perjury 6:7
personally 13:15 19:9
perusing 8:14 9:13 65:19
ph.d. 1:14 2:11 5:16 8:7 73:4 95:11 96:10
phd 97:5 98:2 98:24 99:2,4 99:12
picture 78:12 80:4
piece 79:25
place 70:3
places 60:16
plaintiff 1:7 3:5 5:4 39:21 52:2 52:5,10,19 53:7,14 56:7 57:12 58:23 59:14
plaintiffs 23:21 56:16 59:22

60:25 61:7 62:5 64:10 66:9 67:2 68:9 71:9,16
platform 84:12
plausibility 61:15
plausible 65:22
plausibly 65:14 66:16
plaza 3:14
pleadings 36:6 53:19,23 56:15 58:11 68:7
please 4:23,25 5:14,24 6:14 7:3,12 39:19 82:18 88:10
pled 67:2
plummeted 57:24 58:5 59:9 60:21 61:16
point 35:14 36:9 50:4 54:23 64:13 75:24 77:20 80:17,19 82:7 93:13
portion 23:16
position 55:20
possibly 67:11 69:2

potentially 66:4 67:4
predicate 71:16
predicated 69:25
predication 64:12
predict 81:4
predictable 80:6
premise 77:15
prepare 10:16 11:3,11
prepared 10:13 10:14
present 3:19 11:18 83:9
press 18:15 28:17 30:12
pretty 45:14
previous 27:5 27:16 75:16 81:7,7,8
previously 14:19,24
price 39:23 54:16,20 69:7 84:21 86:6,15
prices 88:19,22 88:24 89:18,23 90:4,5,15,16 91:3
pricing 90:13

primary 28:3
prior 21:16,22 33:18 36:19 38:24 42:13 48:4 49:9,20 75:13,18,23,23 75:25 76:9,13 76:24 77:11 79:14
proceed 5:15
process 92:23 93:5
product 46:23 83:9
products 27:18 40:8
professional 2:14 95:8
profitability 47:12 48:15
project 41:25 42:9
projected 71:19,21
projecting 42:12 48:23 49:8,12
projections 49:12 71:15
prospect 61:6
prospective 62:9,15 63:22
prospects 25:20

**provide** 5:23 83:4 91:9
**provided** 51:25 81:22
**providing** 7:22 32:19,23 33:5 33:10,14 34:7 34:11,15 35:21 36:2,15,21 37:15,20,24 38:8,14,20 47:14 60:10 70:21
**province** 24:24
**public** 2:16 5:18 30:12 36:11 37:8 39:8,9 95:9 99:19
**publicly** 29:16 29:18,19,22,23 30:21 31:14,20 31:24
**purchased** 92:10
**purchases** 92:13,16 93:7
**purpose** 12:20 13:9 76:18 90:12
**purposes** 67:18
**put** 66:21
**putting** 76:2

**q**
**q2** 75:12 76:12 77:10 79:12
**qs** 17:13,15
**quarter** 27:18 28:12,23 29:15 33:17 36:18 38:23 40:17 41:9,14 42:25 43:7,14,15,23 44:9,19,24 48:3 49:19 52:14 53:9,16 55:18,22 56:2 56:9 57:14,25 58:7,15,17,17 58:24 59:11,16 60:23 65:15,25 66:17 67:21 68:17 69:8 71:19 74:2,11 74:14 75:2,2 75:18,24 76:25 77:18,20,21 85:14,15,18,23 85:24 86:17,18 86:22,23,23,24 86:24 87:4,9 87:18 88:2
**quarterly** 34:2 35:5,11
**quarters** 33:18 36:19 38:24

42:18 48:5 49:21 75:13,17 75:21,24,25 76:14,25 77:11 79:14 85:19 87:24
**quebec** 23:20 24:24
**question** 7:4,6 7:9,11,12 15:17 28:20 42:21 63:16,18 74:25 76:9,19 91:4,6,15 92:6 92:7,7
**questions** 6:15 6:23 39:3 93:24 94:2
**quick** 72:13
**quite** 92:6
**quote** 83:13,15 84:18 88:17,18
**quoted** 84:14
**quotes** 47:7

**r**
**r** 3:2 73:2 95:2 98:3,3
**rapidly** 52:25 81:5
**rather** 88:19
**rating** 84:22
**reaction** 31:18 34:24 73:19

**read** 21:10,14 25:24 28:7 33:22 37:6 39:19 40:12 51:18 53:5 55:12 67:5,16 68:23 72:9 73:15 82:19 88:9 90:23 94:9 97:9 99:5
**readily** 31:23
**reading** 53:19 53:23 56:14,14
**ready** 83:14
**really** 24:19
**realtime** 2:15 95:8
**reason** 6:10 77:8 79:10 97:11 98:6,9 98:12,15,18,21
**reasonable** 67:9
**reasons** 47:13 47:19
**recall** 11:13,16 11:18 12:10,17 22:2,21 23:7 24:15,20,25 25:4 51:11 83:11,16 84:13
**receipt** 97:17
**recent** 92:5

**recess** 32:11 55:5 72:16 93:18

**recognize** 8:13 9:11 57:6 65:6

**record** 4:3,20 4:24 5:25 6:14 7:23 32:10,14 55:4,8 63:5,9 63:10,12 72:13 72:15 73:7 93:17,21 94:5 95:14

**recorded** 4:7

**redirect** 94:2

**reduced** 81:17 82:3

**reduction** 61:5 61:6

**refer** 26:12 27:8 36:8

**reference** 17:20 18:6 35:4,17 36:6

**referenced** 59:4 97:6

**references** 15:9

**referencing** 84:17

**referred** 19:20 51:14 84:11

**referring** 10:24 10:25 19:14 43:21 44:16

48:17 55:23,24

**refers** 27:3,13

**reflect** 10:9 45:24

**refresh** 8:11

**regard** 61:9 87:6

**regarding** 19:3 73:22 74:10

**regardless** 81:21

**registered** 2:14 95:7

**related** 40:8,17 42:24 48:19 95:17

**relating** 19:3

**relation** 85:6

**relative** 77:20

**releases** 18:15 30:12

**relevant** 24:7 36:7 72:2 91:14,24 92:18

**reliance** 88:11

**relied** 15:12,14 15:25 17:25 19:22 30:23 31:19

**rely** 16:18,24 18:14,20 19:2 88:16

**relying** 17:5,6 18:10 31:6

37:3 38:18 88:20

**remember** 22:24 24:18 51:12,13 76:9 83:17

**remote** 1:13 2:10

**repeat** 63:17

**repeated** 60:15

**reply** 9:7 26:14 55:10 67:16 68:21 72:9 73:13 80:11 82:18 85:10 88:7 90:21 96:11

**report** 8:6,17 8:20,23 9:3,7 9:16,19,22 10:2,4,5,12 12:24 13:2,7 13:13 15:5,6,9 16:7 17:2,8 18:8,12,21 19:8,15,16,17 19:20,21,23 20:5 21:10,15 21:17,20,23 23:20 24:3,19 26:6,8,11,12,14 26:14,15 27:23 30:5,11,25 31:2,21 32:18

33:2,22 36:15 38:13,19 39:17 40:10,21 42:22 44:7,17 45:17 48:9,11 49:25 50:2,9 51:16 52:10,16 53:5 53:24 54:5,6 54:10,13,18,18 55:11 64:22 67:16 68:21 69:10,15 70:4 70:11,13 71:25 72:2,9 73:13 80:12 82:18 85:10 88:7 90:21 96:9,11

**reported** 1:20

**reporter** 2:14 2:15 4:16 5:13 6:17 95:8,9

**reports** 11:6,7 12:4,6 20:4 22:15 23:5,6,8 24:16 31:9,22 42:16 46:8 84:7,9,15

**representations** 59:8

**representing** 83:19

**represents** 89:5

**required** 58:6 99:13

**[requirements - see]** Page 20

| | | | |
|---|---|---|---|
| **requirements** 74:6 80:15,25 | **returns** 85:6 | **rockefeller** 3:14 | 77:9,17 79:12 91:3 92:16 |
| **reread** 69:14 | **reveal** 60:3 71:18 | **rolled** 80:25 | **saying** 29:10 44:6 45:19 |
| **research** 5:9 17:14,16 18:17 | **revealed** 28:14 60:8 61:8 62:7 62:14 63:21 64:11 | **room** 7:14 | 59:3,22 60:14 61:7 62:5 |
| **respect** 13:7,10 18:4,13,25 | **rpr** 1:21 95:25 | 69:22 |
| 19:24 25:19 | **ruled** 24:5 | **says** 15:12 |
| 27:9 28:16,18 | **revealing** 60:5 | **rules** 6:5 | 41:24 42:3 |
| 32:18 33:13 | **revenue** 41:10 | 69:15 |
| 34:6,12 35:18 | 43:7 45:22 | **s** | **screen** 13:6 |
| 36:4,14 37:14 | 59:11,12 60:22 | **s** 3:2 73:2,2,2 | **scrolling** 66:3 |
| 45:22 61:11 | 61:13 62:9,16 | 98:3 | **sec** 17:12 |
| 67:12 70:19 | 63:22 | **sales** 27:6,20 | **second** 26:18 |
| 72:3 | **revenues** 40:7 | 29:6,9 30:9,20 | 28:11,23 29:14 |
| **respond** 49:22 | 40:17 41:14 | 31:13 33:16 | 33:16 36:18 |
| 80:23 | 42:24 43:24 | 35:13,18 36:5 | 38:22 40:17 |
| **responding** | 44:19 46:11 | 36:17,22 38:22 | 41:9,14 42:18 |
| 43:17 | 49:3 | 39:10 41:11,22 | 42:24 43:6,14 |
| **response** 39:8 | **review** 11:25 | 44:23 46:25 | 43:23 44:19,24 |
| 45:10 74:7 | 34:22 35:7 | 47:11 48:2,15 | 48:3 49:19 |
| 80:16 85:2,13 | 36:25 39:4,24 | 49:2,19 50:5 | 53:9,16 56:2 |
| 85:25 86:4,11 | 97:7 | 51:12 52:14 | 68:23 73:25 |
| **rest** 47:12 | **reviewed** 10:18 | 55:18,22,25 | 74:10,13 75:18 |
| 58:10 | 11:5 15:20 | 56:9,20,22,23 | 75:25 83:22 |
| **results** 53:9,16 | 16:14 18:7,22 | 57:14,21 58:7 | 85:15,18 86:18 |
| 84:19 88:15 | 18:24 19:7,10 | 58:24 59:16 | 86:23 87:9 |
| **resumed** 73:5 | 20:3,6,9,10 | 60:6,9 61:5,6 | **section** 49:24 |
| **retained** 12:11 | 29:4 39:8 56:3 | 64:13,18 65:16 | **securities** 23:9 |
| 12:14,21,22 | **reviewing** 18:9 | 66:17 67:21 | 25:3,15 |
| 13:9 14:20,24 | **revise** 44:2 | 68:17 69:6,13 | **see** 21:19 24:9 |
| 21:7 | **revised** 42:16 | 69:20 70:7 | 43:11 45:6 |
| **return** 97:13,16 | **right** 15:11 | 71:20 73:23,24 | 48:6 53:2 63:2 |
| | 27:11 50:14 | 73:25 74:11,12 | 67:5 69:15 |
| | 76:5 89:13 | 74:17,22 75:11 | |
| | | 75:14 76:12,23 | |

| | | | |
|---|---|---|---|
| 83:25 84:7 | **served** 21:11,20 | **significant** | **solutions** 97:23 |
| **seeing** 51:12 | **set** 18:24 45:11 | 54:15 59:6 | **somebody** |
| 64:18 75:4 | 47:5 95:12,22 | 60:2,19 | 91:18 |
| **seen** 33:18 | **sets** 26:4 | **significantly** | **soon** 32:2 82:25 |
| 36:19 38:24 | **settled** 24:2 | 32:22 33:8 | 83:2 |
| 48:4 49:20 | **several** 58:17 | 34:9,18 35:24 | **sorry** 76:8 78:3 |
| 75:13 76:13 | **severity** 80:22 | 37:17 38:11 | 78:4 86:19 |
| 77:10 79:13 | **shaking** 6:18 | 46:20 70:24 | **sort** 15:19 |
| **selected** 16:11 | **share** 8:11 | 71:7 81:17 | **sounds** 89:13 |
| **sell** 88:18 | 92:20 | **similarly** 1:6 | **sourced** 19:21 |
| **sells** 92:14 | **shares** 91:17,21 | 87:23 | **sources** 30:3,10 |
| **send** 15:22 | 92:9,13,14 | **simply** 66:9 | 30:24 31:20 |
| **senior** 14:8,9 | 93:8 | **sitting** 84:8 | **southern** 1:3 |
| **sense** 13:17 | **she'll** 63:4 | **situated** 1:6 | 4:12 |
| 16:23 29:3 | **sheet** 97:11 | **situation** 35:17 | **speaking** 61:25 |
| **sensitive** 87:8 | **shifting** 81:6 | 46:9 52:21 | **specific** 17:24 |
| 87:16 | **short** 54:23 | **sizable** 26:21 | 18:24 19:7,9 |
| **sent** 16:17 | **show** 15:5 | 26:25 | 20:5 27:12 |
| 97:14 | 19:16 37:9 | **slightly** 14:5 | 35:21 37:21 |
| **sentence** 23:19 | 76:3 85:24 | **slowing** 44:11 | 38:14 44:13 |
| 23:23 24:15 | **shown** 41:4 | **small** 85:20 | 56:22 58:7,12 |
| 33:23 40:13 | 48:8 | **smart** 27:7 | 59:14 60:10 |
| 44:17 51:18 | **shows** 39:25 | 28:11,22 29:14 | 61:2,13 64:20 |
| 53:6 55:12 | 40:18,23 43:2 | 30:9,20 31:13 | 66:13 |
| 64:4 66:14,22 | 50:11 51:20 | 32:21,25 33:8 | **specifically** |
| 67:7 68:24 | **sidoti** 41:5,8 | 33:13 34:9,13 | 18:9 20:11 |
| 71:3,23 84:11 | 42:3 44:10 | 34:18 35:18,24 | 34:14 36:3,21 |
| 90:24 | 84:3,11,16 | 36:5,23 37:17 | 43:21,23 55:11 |
| **sentences** 67:8 | **sign** 94:9 97:12 | 37:22 38:11,16 | 60:21 68:15 |
| 82:19 | **signature** 8:20 | 46:20,23 57:20 | 69:12,16 70:6 |
| **september** | 9:19 95:24 | 59:7 74:18 | **spent** 13:15 |
| 50:14 | **signed** 97:19 | 81:18 | **split** 51:12 |
| **series** 87:10,21 | **significance** | **sold** 51:5 91:22 | **ss** 95:4 |
| 90:17 | 54:19 | | |

**[stadium - terms]**

**stadium** 1:5 4:9
25:17 97:4
98:1 99:1
**staff** 14:16
20:18,23
**stage** 52:18
**stand** 24:2
**started** 6:5
**starting** 4:24
**starts** 26:19,20
40:14
**state** 2:16 4:23
5:24 40:16
41:18 42:22,23
95:3,10
**stated** 29:16,18
29:22 66:22
77:4,6 80:7,8
82:23 84:9
**statement**
26:18 27:13
44:18 61:10
**statements**
26:4,4 35:8
36:13 39:22
53:11 59:4
66:5,25
**states** 1:2 28:4
67:7 70:5
**stating** 83:5
**statistical**
54:19
**statistically**
54:15

**stock** 39:23
54:2,11,16,20
85:6 86:14
**stories** 19:2
37:8 39:25
**straightforward**
75:6
**stuff** 15:23
**submission**
10:11
**submit** 12:23
**submitted** 8:17
9:16 12:5
22:15 23:8
**subscribed**
99:14
**subsequent**
10:11 87:24
**substantial**
37:12 38:4
**sufficiently**
52:20 67:2
**suggest** 46:17
47:24
**suggesting** 80:9
**suggestion**
61:17
**suggests** 49:16
**sum** 64:4
**summarize**
66:9
**summarized**
64:22

**support** 61:14
**supposed** 23:24
**sure** 13:21
14:11 21:18
23:3 61:20
63:6 75:21
78:9 89:17
**surprise** 85:20
86:12 87:5
**surprises** 85:7
**suspending**
35:5
**suspension**
34:2 35:11
48:7
**switch** 92:3
**sworn** 5:18
95:13 99:14
**systems** 17:14
17:17 18:17

**t**

**t** 5:16 73:2,4
95:2,2 98:3,3
**tabak** 11:21
**table** 40:20,23
41:8 43:25
44:23 47:8
48:10 50:2,4
85:9,12,23
**take** 7:6 9:12
26:17 35:12
52:15 55:19
74:5 77:14

80:14 91:2
**taken** 4:8 23:20
23:23 24:16
32:11 55:5
72:16 93:18
**talk** 20:18 24:6
67:8
**talked** 20:14,22
**talking** 16:2,12
27:6,17 44:10
**talks** 57:19
59:10 60:21
**target** 84:21
**team** 10:22,23
11:8 17:19
18:7,22,23
19:6 20:2,8
**tell** 6:7 14:12
17:24 59:19
61:22 69:16
91:25
**telling** 60:12
**term** 52:23
71:11 83:6
**terms** 43:18
45:18 47:20
52:11 53:12
64:18 67:12
70:16 74:23,25
75:17,22 77:17
78:24 80:21
82:14 83:14
84:12

| | | | |
|---|---|---|---|
| **test** 27:7,9,20 29:14 31:13 32:25 34:9,13 34:18 35:19,24 36:5,23 37:13 37:17,22 38:5 38:11 46:20,24 57:20 59:7 70:23 71:6 81:18 **testified** 5:19 22:18,23,25 73:5 **testify** 6:11 22:13 23:24 25:6 **testifying** 21:7 25:5 **testimony** 5:23 7:22 23:17 70:12 94:7 95:15 97:9,17 99:8 **testing** 42:2 48:19,25 50:21 74:6 80:15,25 81:2 84:20 **tests** 28:11,22 30:9,20 32:21 33:3,8,13 37:9 38:2,16 50:12 59:9 60:3 74:18 | **thank** 5:11,22 32:8 55:2 93:15 94:3 **theoretical** 88:23 **thing** 80:17 **things** 13:21 16:2,14,23 17:5,19 18:6 19:22 23:14 24:6 30:14 39:12 46:13 47:20 49:2 50:4 78:13 79:21,22 80:5 81:5 **think** 11:12,17 12:12 15:2,16 16:20,25 20:25 21:16 22:6,12 23:20 24:12 28:19 43:4,9 45:14,22 46:3 46:22 47:18 50:19,24 54:22 62:19,24 64:3 64:5 66:8,20 66:23 67:4,6 69:14 71:10,16 71:23 72:3 77:5,24 78:8 78:23 80:19 82:6 87:7,16 87:20,25 91:6 | 92:5,24 93:12 **third** 3:6 26:19 42:18 43:15 86:23 **thomas** 21:11 **thought** 23:22 **three** 26:4 41:3 41:7 43:25 44:22 52:8 **thrust** 46:7 70:12 **time** 4:4,5,22 7:22 13:21 14:13 22:25 32:9,14 35:14 36:9,23 37:5 39:10 46:23 50:20 55:3,8 55:18 56:20,24 58:15 59:10 63:8,12 67:13 69:20 72:14 73:3,8 77:21 82:8,13 85:7 93:16,21,24 94:4,10 97:18 **timeframe** 97:8 **timeline** 83:5 **times** 22:24 45:7,9 59:21 81:5 92:17 **timing** 43:16 44:13 66:2 89:19 90:6 | **title** 14:7 **titled** 84:18 **titles** 14:5,13 **today** 4:4,16 5:10,24 6:8,11 7:15 11:25 84:8 **today's** 6:21 11:4,11 94:6 **told** 20:25 92:2 **tons** 45:4 **took** 6:6 **total** 88:4 **touch** 66:10 **towards** 8:20 83:21 **tracking** 57:22 57:22 **trade** 88:19 **traded** 54:2,8 **trading** 88:22 88:24 **transaction** 89:18,23 90:5 **transactions** 90:7 **transcript** 97:6 97:19 99:5,8 **transcripts** 18:16 **trends** 78:13 **trial** 22:18,23 23:2,3,25 25:6 |

**trials** 82:25 83:3,6,15,24
**tribunal** 23:16
**true** 8:24 9:23 15:21 19:12 20:2 76:19 77:15 78:17 95:14 99:8
**truth** 6:7
**truthfully** 6:11 6:25
**try** 7:13 17:2
**trying** 90:15
**tsai** 21:11
**turn** 8:19 9:18 12:25 26:8 27:22 33:21 39:16 40:9,20 50:8 51:15 53:4 55:10 58:18 68:20 72:8 73:12 74:4 80:14 82:17 85:9 88:6 90:20
**turning** 67:15
**two** 12:4 25:16 27:16 41:7 43:24 44:22 71:4 82:19
**types** 23:14
**typically** 91:9

**u**

**u** 5:16 73:4
**u.s.** 4:11 50:11 50:13,16 51:6 51:10
**ultimately** 41:24 49:3 68:12
**uncertain** 42:5 43:17
**uncertainties** 48:19,22
**uncertainty** 45:4 48:25
**unclear** 7:12
**uncommon** 46:4
**under** 6:6 47:5
**understand** 6:6 6:25 7:11,20 26:13 71:8 75:19
**understanding** 25:10,13,14,21 25:25 26:2,3 27:12,15 35:15 45:21 50:5 51:2,7 52:4,7 53:14,22 56:13 61:12 62:2,13 62:21 63:19 64:2 67:23 68:5 74:20

79:20 84:25 85:4,5 88:25 89:4
**understood** 7:10 40:19 41:13 43:2,5 44:4,18 46:17 47:24 49:17
**unit** 4:6
**united** 1:2
**unpredictabil...** 81:12
**unreliable** 88:15
**update** 45:2,5 45:15,16,23 46:4 81:19
**updated** 81:22 83:4
**uris** 3:9 5:2,2 5:21 8:4,9 9:5 9:9 18:3 20:13 27:10,21 30:6 31:10 32:6,16 35:20 38:7 39:15 42:7 43:20 44:15 46:15 47:22 54:22 55:9 57:3 60:7 62:11 63:7,14 65:2 66:12 67:14 68:19 70:18 72:7

73:11 75:8 76:11,17 78:2 79:7 80:10 82:16 86:16 87:19 90:2,19 91:25 93:12,23 96:4
**use** 11:25 81:18 90:5
**used** 42:15 82:3 97:19
**uses** 89:15
**using** 89:18,23 89:24
**usually** 62:12 63:3

**v**

**v** 5:16 73:4 97:4 98:1 99:1
**vaccinated** 81:9
**vaccinations** 80:24,24
**variability** 37:12 38:4
**various** 56:15 78:24
**vast** 46:24
**velikova** 3:21 5:8 11:20
**verify** 97:9
**veritext** 4:17 97:14,23

**[veritext.com. - zachary]**

**veritext.com.** 97:15
**version** 51:25
**versus** 4:9 93:3
**video** 4:7,20
**videoconfere...** 2:13
**videographer** 3:20 4:2,15 5:11 32:8,9,13 55:2,3,7 62:25 63:8,11 72:12 73:6 93:15,16 93:20 94:3
**videotaped** 1:13 2:10
**view** 87:14
**viewing** 44:14
**vinita** 1:14 2:11 4:8 6:2 8:7 95:11 96:4,9 97:5 98:2,24 99:2,4,12
**vix** 89:2,8,12 89:16
**volatile** 80:5
**volatility** 89:6
**vs** 1:8

**w**

**wainwright** 41:4,8,24 42:8 42:11 44:8

**waiting** 45:6
**want** 32:2
**way** 17:24 83:16 95:19
**week** 37:13,13 38:6,6 82:15
**weekly** 50:11 50:12
**weeks** 23:25 58:16,17 81:8
**went** 24:4 63:17
**whereof** 95:21
**withdrawal** 51:21
**withheld** 52:3,6
**witness** 5:17 8:14 9:13 20:8 27:5,15 30:2 31:5,16 32:4 34:21 37:20 39:2 41:18 43:9 44:6 46:3 47:18 59:19 61:20 62:19 64:2 65:19,19 66:20 68:4 70:10 71:2 72:11 74:20 76:8 77:14 78:23 79:18 82:2 86:10 87:14 89:22 90:11 95:11,15

95:21 96:3 97:8,10,12,18
**wording** 42:14
**words** 82:4,10
**work** 6:19 7:7 10:10,18 11:2 12:22 13:20 14:17 16:4,15 23:13 62:4 68:9
**working** 13:25
**works** 54:23 93:13
**world** 70:15
**worldwide** 50:22
**write** 27:25 83:23

**x**

**x** 96:2

**y**

**yeah** 24:14
**year** 9:17 44:12 48:10 50:2 77:2 82:15
**years** 24:4,7 75:19
**york** 1:3 2:17 3:8,8,15,15,16 4:12,18 5:5,6 11:19 12:15 18:2 20:7 27:4 27:14 29:25

31:4,15,25 34:20 37:19 38:25 41:17 43:8 44:5 46:2 47:17 54:25 59:18 61:19 62:17,23 63:6 63:24 65:17 66:18 68:2 70:8,25 74:19 76:6,15 77:12 78:21 79:16 81:24 86:8 87:12 89:20 90:9 93:25 94:8 95:3,10 97:1
**young** 25:9

**z**

**zachary** 25:9

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

Page 98

Stadium Capital LLC v. Co-Diagnostics, Inc., Et Al.

Vinita Juneja , PhD (#7130219)

E R R A T A   S H E E T

PAGE 13   LINE 22   CHANGE "but I would guess somewhere between 100 and 115 or"

REASON transcription error

PAGE 23   LINE 4   CHANGE "whether all of those had depositions or whether some"

REASON transcription error

PAGE 23   LINE 5   CHANGE "had just expert reports and others just had no report and some had"

REASON transcription error

PAGE 23   LINE 6   CHANGE "depositions and expert reports."

REASON transcription error

PAGE 24   LINE 4   CHANGE "had graphs that went from many years in the"

REASON transcription error

PAGE 29   LINE 9   CHANGE "sales and internal data that feeds into what"

REASON transcription error

_____        March 19, 2025

Vinita Juneja , PhD                                    Date

Page 99

Stadium Capital LLC v. Co-Diagnostics, Inc., Et Al.

Vinita Juneja , PhD (#7130219)

E R R A T A   S H E E T

PAGE 43___ LINE 14___ CHANGE "just their second quarter but also their"
_____

REASON transcription error

PAGE 44___ LINE 18___ CHANGE "is a statement that analysts
understood lower"

REASON transcription error

PAGE 45___ LINE 11___ CHANGE "they might adjust one set of
forecasts, but"

REASON transcription error

PAGE 48___ LINE 10___ CHANGE "earnings estimates for the year
as shown in Table 1"

REASON transcription error

PAGE 54___ LINE 18___ CHANGE "report, my initial report, about the"
_____

REASON transcription error

PAGE 64___ LINE 12___ CHANGE "the predicate is that defendants"
_____

REASON transcription error

_____    March 19, 2025
Vinita Juneja , PhD                          Date

Page 100

Stadium Capital LLC v. Co-Diagnostics, Inc., Et Al.

Vinita Juneja , PhD (#7130219)

ACKNOWLEDGEMENT OF DEPONENT

I, Vinita Juneja , PhD, do hereby declare that I have read the foregoing transcript, I have made any corrections, additions, or changes I deemed necessary as noted above to be appended hereto, and that the same is a true, correct and complete transcript of the testimony given by me.

_____        March 19, 2025

Vinita Juneja , PhD                                Date

*If notary is required

SUBSCRIBED AND SWORN TO BEFORE ME THIS

____19th____ DAY OF ____March____, 20__25__.


_____

NOTARY PUBLIC


CAMERON A LAW
Notary Public - State of New York
NO. 01LA0005384
Qualified in Kings County
My Commission Expires Apr 10, 2027