UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STADIUM CAPITAL LLC, on behalf of itself and all others similarly situated,<br><br>                Plaintiff,<br><br>     v.<br><br>CO-DIAGNOSTICS, INC., DWIGHT H. EGAN, and BRIAN L. BROWN,<br><br>                Defendants. | Case No.: 22-cv-6978-AS<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

**LEAD PLAINTIFF'S MOTION FOR
<u>EXCLUSION OF EXPERT TESTIMONY</u>**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES...........................................................................................................ii

I.      PRELIMINARY STATEMENT........................................................................................ 1

II.     LEGAL STANDARDS...................................................................................................... 4

III.    THE TESTIMONY OF DR. THOMAS C. TSAI SHOULD BE PARTIALLY
        EXCLUDED ...................................................................................................................... 6

        a.      Dr. Tsai's Testimony About COVID Test Demand Is Based On Insufficient
                Facts or Data And Does Not Fit The Facts of This Case ....................................... 6

        b.      Dr. Tsai's Opinion That The Alleged Misrepresentations Were Consistent
                With Contemporaneous Facts Supplants The Jury's Role In Applying The
                Law And is Unhelpful ........................................................................................... 9

IV.     THE TESTIMONY OF DR. VINITA JUNEJA SHOULD BE PARTIALLY
        EXCLUDED .................................................................................................................... 11

        a.      Dr. Juneja's Criticisms of Plaintiff's Damages Report Are Derived From
                An Inaccurate Description of the Claims Which Renders Her Opinions
                Irrelevant and Unhelpful ..................................................................................... 11

        b.      Dr. Juneja's Legal Arguments Should Be Stricken.............................................. 14

        c.      Dr. Juneja's Testimony About COVID-19 Test Administration in the U.S.
                Is Outside Her Expertise, Unreliable, And Irrelevant ......................................... 15

V.      CONCLUSION................................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akiro LLC v. House of Cheatham, Inc.*,
946 F. Supp. 2d 324 (S.D.N.Y. 2013) ................................................................ 15

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
137 F. Supp. 2d 147 (E.D.N.Y. 2001) ................................................................ 14

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002) ............................................................................ 1, 14

*Arkansas Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
77 F.4th 74 (2d Cir. 2023) ................................................................................ 4, 14

*Better Holdco, Inc. v. Beeline Loans, Inc.*,
2023 WL 2711417 (S.D.N.Y. Mar. 30, 2023) ...................................................... 9

*Boucher v. U.S. Suzuki Motor Corp.*,
73 F.3d 18 (2d Cir. 1996) ...................................................................................... 5

*Campbell ex rel. Campbell v. Metro. Prop. & Cas. Ins. Co.*,
239 F.3d 179 (2d Cir. 2001) ................................................................................ 13

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) ..................................................................................... *passim*

*E.E.O.C. v. Bloomberg L.P.*,
2010 WL 3466370 (S.D.N.Y. Aug. 31, 2010) .................................................... 16

*Faulkner v. Arista Recs. LLC*,
46 F. Supp. 3d 365 (S.D.N.Y. 2014) .................................................................. 16

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) .......................................................................................... 5, 8

*Hygh v. Jacobs*,
961 F.2d 359 (2d Cir. 1992) .................................................................................. 9

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
2025 WL 354671 (S.D.N.Y. Jan. 30, 2025) ........................................................ 14

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig. (No II) MDL 2502*,
892 F.3d 624 (4th Cir. 2018) ............................................................................... 3

*In re Mirena IUD Prods. Liab. Litig.*,
169 F. Supp. 3d 396 (S.D.N.Y. 2016) ................................................................. 4

*In re Rezulin Prods. Liab. Litig.*,
309 F. Supp. 2d 531 (S.D.N.Y. 2004) ............................................................ 3, 14

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999) ......................................................................................... 5, 6

*LinkCo, Inc. v. Fujitsu Ltd.*,
2002 WL 1585551 (S.D.N.Y. July 16, 2002) ...................................................... 9

*Nimely v. City of New York*,
414 F.3d 381 (2d Cir. 2005) ........................................................................... 6, 10

*Scott v. Chipotle Mexican Grill, Inc.*,
315 F.R.D. 33 (S.D.N.Y. 2016) ........................................................................... 9

*Solid 21, Inc. v. Richemont N. Am., Inc.*,
2023 WL 6058614 (S.D.N.Y. Sept. 18, 2023) ................................................ 7, 10

*Thor Equities, LLC v. Factory Mut. Ins. Co.*,
627 F. Supp. 3d 330 (S.D.N.Y. 2022) ............................................................... 14

*Trouble v. Wet Seal, Inc.*,
179 F. Supp. 2d 291 (S.D.N.Y. 2001) ................................................................. 7

*United States v. Amuso*,
21 F.3d 1251 (2d Cir. 1994) .............................................................................. 15

*United States v. Bilzerian*,
926 F.2d 1285 (2d Cir. 1991) .............................................................................. 2

*United States v. Duncan*,
42 F.3d 97 (2d Cir. 1994) .................................................................................... 9

*United States v. Mejia*,
545 F.3d 179 (2d Cir. 2008) .............................................................................. 15

*Velez v. Sony Discos*,
2007 WL 120686 (S.D.N.Y. Jan. 16, 2007) ........................................................ 6

**Rules**

Fed. R. Evid. 401 ............................................................................................... 13

Fed. R. Evid. 403 ................................................................................................... 3, 6, 10

Fed. R. Evid. 702 ......................................................................................................... *passim*

## I.    PRELIMINARY STATEMENT

Defendants cannot satisfy their burden to establish by a preponderance of the evidence that the testimony described below of their two experts, Dr. Thomas C. Tsai and Dr. Vinita Juneja, is admissible. Accordingly, that testimony should be excluded.

Defendants offer the testimony of Dr. Tsai for three purposes: (1) to explain historical patterns of COVID testing demand, (2) to assess any factors that may have impacted the ability to accurately predict COVID testing demand in the Spring and Summer of 2022, and (3) to "offer an opinion as to whether the Alleged Misrepresentations were consistent with [Dr. Tsai's] understanding of the COVID testing market and demand at the time[.]" *See* Ex. A (Expert Report of Thomas C. Tsai, MD, MPH, dated November 20, 2024) at ¶9.[1]  This proffered testimony runs afoul of basic admissibility standards in at least two ways.

***First***, Dr. Tsai offers broad opinions about the market demand for COVID PCR tests, and the factors impacting it, but bases his opinions almost exclusively on data limited to the United States or North and South America. In other words, his conclusion takes an unsupported analytical leap from essentially local data to reach global opinions. *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) ("[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony.").

***Additionally,*** Dr. Tsai's opinion that the alleged misrepresentations accurately described COVID PCR test market demand at the time is patently inadmissible, because "testimony encompassing an ultimate legal conclusion based upon the facts of the case is not admissible, and

---

[1] All references to "Ex. __" are to Exhibits to the Declaration of Jason Uris in Support of Plaintiff's Motion For Exclusion of Expert Testimony, submitted with this brief.

may not be made so simply because it is presented in terms of industry practice." *United States v. Bilzerian*, 926 F.2d 1285, 1295 (2d Cir. 1991) (excluding expert testimony related to the issue of whether the defendant's disclosures complied with legal requirements). Dr. Tsai should thus be precluded from testifying about whether the alleged misrepresentations were misleading.

Defendants offer the testimony of Dr. Vinita Juneja, an economics expert, to "evaluate the market's reaction to the Alleged Misrepresentations" (Ex. B (Expert Report of Vinita Juneja, Ph.D., dated November 20, 2024) at ¶3) and respond to the analyses of Plaintiff's loss causation and damages expert, Chad Coffman, CFA (Ex. C (Reply Report of Vinita Juneja, Ph.D., dated January 10, 2025) at ¶2). However, Dr. Juneja's reports are most remarkable for what they ***do not*** contain: an accurate description of the scope of the claims in this action. Rather, Dr. Juneja posits the unduly narrow and inaccurate view that Plaintiff alleged the misstatements were misleading for "***failing to disclose intra-quarter sales numbers as of May 12, 2022***." Ex. C at ¶7 (emphasis added); *see also*, Ex. B at ¶28 (similar).

What Plaintiff alleged, the Court upheld, and Plaintiff's expert analyzed, is the claim that Defendants misrepresented and concealed the fact that demand for its COVID-19 test had already plummeted as of May 12, 2022. *See* Compl. ¶48; ECF No. 42 at 4-5 (upholding allegations that statements were misleading for failing to disclose "that demand was already declining rapidly"); Ex. D (Expert Report of Chad Coffman, CFA, dated November 20, 2024) at ¶12 ("The Complaint alleges that Defendants misled investors by reassuring them that demand for the Logix Smart Test remained strong; and by withdrawing their quarterly guidance, citing an inability to accurately forecast sales and demand for the Company's primary revenue-generating product, when in reality, Defendants publicly admitted to tracking demand daily and were already aware sales had substantially declined compared to recent quarters."). As the Court acknowledged, the alleged

2

misrepresentations implicated "both current demand and risks to future demand." ECF No. 42 at 4.

Dr. Juneja's unduly narrow view of the claims causes her to raise criticisms that simply do not apply. For instance, she considers any information about future demand to be outside the scope of the alleged fraud and criticizes Plaintiff's loss causation and damages analyses for not excluding the impact of such information from damages. *See* Ex. C at ¶¶24-28. Because that impact is part and parcel of the fraudulently-induced inflation, it is properly part of damages too. This, and myriad other criticisms described below, are entirely irrelevant to the claims as properly understood and should be excluded to avoid the risk of confusing the jury. *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 545 (S.D.N.Y. 2004) (excluding expert testimony that was reliable and "marginally relevant" for risk it would prejudice and confuse the jury under Federal Rule of Evidence 403).

Additionally, Dr. Juneja impermissibly testifies on anecdotal evidence supporting her view that there was uncertainty in U.S. COVID-19 testing demand. Ex. B at ¶¶24-25; Ex. C at ¶17. The materials she cites are readily understood by a lay juror, and she provides no relevant expertise in any event. Moreover, the use of only U.S. demand information is irrelevant because a substantial portion of Co-Diagnostics' sales were outside the U.S., and her examination of a small set of materials that simply confirm her view is not a reliable method. "[C]ourts have consistently excluded expert testimony that 'cherry-picks' relevant data . . . because such an approach does not reflect scientific knowledge, is not derived by the scientific method, and is not 'good science.'" *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig. (No II) MDL 2502*, 892 F.3d 624, 634 (4th Cir. 2018) (internal citations and quotations omitted).

3

Finally, Dr. Juneja again exceeds the bounds of her expertise, and of permissible expert testimony, by advising jurors to assess the Alleged Misrepresentations in light of the Second Circuit's opinion in *Arkansas Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 99 (2d Cir. 2023), and positing the legal argument that Plaintiff's evidence violates this ruling. Ex. B at ¶¶27-28. "By definition, expert testimony that 'usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it,' . . . does not 'aid the jury in making a decision'" and should be excluded. *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 413 (S.D.N.Y. 2016) (citations omitted).

For these reasons, as more fully described below, the testimony of both experts should be partially excluded.

## II.    LEGAL STANDARDS

Pursuant to the December 2023 amendments to Rule 702 of the Federal Rules of Evidence, expert opinion testimony is admissible only if "the proponent demonstrates to the court that it is more likely than not that" all of the following conditions are satisfied:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

In the Notes to the 2023 Amendments, the Committee commented that holdings "that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility . . . are an incorrect application of Rules 702 and 104(a)." Fed. R. Evid. 702 (2023 Amendment Notes).

4

When expert evidence is offered, the district court must perform a critical "gatekeeping" role to ensure that the scientific or technical evidence admitted is "not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). *Daubert* prescribes that "***evidentiary reliability*** will be based upon ***scientific validity***[,]" which turns on a determination of whether "the principle support[s] what it purports to show[.]" *Id.* at 590 n.9 (emphasis in original).

The Supreme Court articulated five non-exclusive factors that bear on the question of the admissibility of scientific testimony, which was subsequently extended to non-traditional sciences, including expertise based on observational, clinical, and technical judgments: 1) whether the expert's technique or theory can be or has been tested; 2) whether the expert's technique or theory has been subject to peer review and publication; 3) the known or potential error rate; 4) the existence and maintenance of standards and controls; and 5) whether the technique has gained general acceptance in the relevant scientific community. *Id.* at 593-94; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). In addition, a court should consider whether the expert fails to employ the level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Kumho Tire Co.*, 526 U.S. at 152. Even if a methodology is sound, a court may conclude that "there is simply too great an analytical gap between the data and the opinion offered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

"[E]xpert testimony should be excluded if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison ...." *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (per curiam) (citations and quotation marks omitted). A district court should determine "whether the expert acted reasonably in making assumptions of fact upon which he would base his testimony," but "[a]dmission of expert testimony based on speculative assumptions is an abuse of

5

discretion." *Id.* at 21–22. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire Co.,* 526 U.S. at 157.

Even where a party offers relevant and reliable expert testimony, such testimony may nevertheless be excluded under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see also Velez v. Sony Discos*, 2007 WL 120686, at *5 (S.D.N.Y. Jan. 16, 2007). The Supreme Court has advised that "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (citation omitted); *accord Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (Rule 403 plays a "uniquely important role…in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations.").

The burden is on the proponent of the evidence to demonstrate that their proffered expert testimony satisfies these standards by a preponderance of the evidence. Fed. R. Evid. 702.

## III.    THE TESTIMONY OF DR. THOMAS C. TSAI SHOULD BE PARTIALLY EXCLUDED

### a.    Dr. Tsai's Testimony About COVID Test Demand Is Based On Insufficient Facts or Data And Does Not Fit The Facts of This Case

The bulk of Dr. Tsai's report addresses COVID-related developments and policies in the United States which he claims support the opinion that it was "increasingly difficult to accurately predict demand for COVID PCR tests over the summer [of 2022] and for the rest of the year." Ex. A ¶14. Although Dr. Tsai relies almost exclusively on information about COVID developments in

6

the U.S. or North and South America as support for his opinions,[2] he acknowledges the fact that Co-Diagnostics operated globally, with "close to half of the Company's revenue [] derived from foreign sales." ECF No. 33 at 21; Ex. E (Transcript of the Remote Videotaped Deposition of Thomas C. Tsai, MD MPH, dated February 6, 2025) at 77:13-19 (recalling U.S. customers comprised "about 50 percent" of Co-Diagnostics' COVID test purchasers). Dr. Tsai further admits that his report focused on U.S. data because his "expertise [is] on the U.S. diagnostics industry for COVID-19[.]" *Id*. at 78:14-16.

His opinions about increasing difficulty in predicting COVID test demand should be excluded because there is "a fundamental misfit between" his data (U.S. COVID tests and cases) "and the use they are put to in [Dr. Tsai]'s report" (global COVID test demand). *Solid 21, Inc. v. Richemont N. Am., Inc.*, 2023 WL 6058614, at *5 (S.D.N.Y. Sept. 18, 2023) (Subramanian, J.), citing *Trouble v. Wet Seal, Inc.*, 179 F. Supp. 2d 291, 302 (S.D.N.Y. 2001) (expert testimony "must not only have a reliable foundation but also be relevant in that it 'fits' the facts" of the case (quoting *Daubert*, 509 U.S. at 591–592)). Indeed, there is no way to tell from his report whether and how factors impacting international demand for Co-Diagnostics' COVID tests (such as the timing and severity of COVID surges in foreign countries and foreign countries' relevant policy responses) would have affected Co-Diagnostics' ability to predict demand for its tests. Given the Company's

---

[2] For instance, in his discussion of the irregularity of COVID surges, Dr. Tsai relies on a spate of media and CDC commentaries on "What Could Lie Ahead for the US" in 2022 and data on the seasonality of COVID cases in North and South America. *See generally*, Ex. A at ¶¶24-25 and accompanying footnotes. *See also*, Tsai Report Figures 1 and 2, relaying U.S. COVID variant information and North and South America cases and death data. Even when his sources provide multiple-country data, as, for instance, in the sources for his table on "U.S. COVID Lab Testing Cases of COVID Pre-Class Period," (*id*. at Figure 4), Dr. Tsai inexplicably omits any of the international data, which is unquestionably relevant to a case that includes both domestic and international sales and demand.

significant international sales, international demand-related data could significantly alter the "uncertain" view of demand based on U.S. data alone.

Instead of providing an analysis of international data, Dr. Tsai simply assumed that the international market was not subject to any meaningful differences in factors that impact demand. The Court should find that "there is simply too great an analytical gap between the data and the opinion proffered" and exclude this unreliable opinion testimony. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); Fed. R. Evid. 702(1) (expert opinions must be based on sufficient facts or data).

Additionally, Dr. Tsai offers no basis for his repeated claim that it was "***increasingly*** difficult" in the Spring of 2022 to accurately predict demand for COVID-19 PCR tests. Ex. A at ¶14; *see also*, *id*. at ¶25 ("By Spring 2022, experts recognized that predicting the precise timing and severity of future waves was ***increasingly*** difficult."). Although he posited explanations of why there was uncertainty in the U.S. market in 2022, he gave no factual support for the contention that that uncertainty was any ***greater than*** it had been in 2020, when the world was first confronted with the unknown scourge of COVID-19, or in 2021, when new COVID-19 variants were proliferating and there were divergent and shifting public policies at local, state, and federal levels. And even if there were policy developments in 2020 or 2021 and/or COVID-19 variants or surges that bode well for test demand, none of that was necessarily clear ***before*** each specific development occurred; it is only apparent after the fact. Thus, Dr. Tsai's hindsight-biased assessment gives no valid indication of the degree of uncertainty that existed in 2020 or 2021. Without any sufficient factual support, Dr. Tsai's statements of "increased" uncertainty are "precisely the type of opinion evidence that is connected to existing evidence only by the *ipse dixit* of the expert and therefore

inadmissible under Rule 702 and *Daubert*." *Better Holdco, Inc. v. Beeline Loans, Inc.*, 2023 WL 2711417, at *17 (S.D.N.Y. Mar. 30, 2023) (citing cases).

> **b.** **Dr. Tsai's Opinion That The Alleged Misrepresentations Were Consistent With Contemporaneous Facts Supplants The Jury's Role In Applying The Law And is Unhelpful**

Dr. Tsai impermissibly attempts to instruct the jury that the alleged misrepresentations were not false. He states in unequivocal terms: "In my opinion, Co-Dx's Alleged Misstatements regarding the uncertainty in forecasting demand for COVID tests were consistent with statements made by health policy experts as well as my own understanding of COVID molecular testing at the time." Ex. A ¶45; *see also, id*. at ¶13 ("[M]y opinion is that Co-Diagnostics' statements on May 12, 2022 about its decision not to provide guidance for its Q2 2022 results and the reasons why were consistent with my own understanding of the COVID testing market and demand at that time, as well as how public health officials and industry participants spoke about COVID testing and demand in Spring 2022.").

It is the sole province of the jury to decide that legal question. "[N]o expert may supplant the role of counsel in making argument at trial, and ***the role of the jury [in] interpreting the evidence***." *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 48 (S.D.N.Y. 2016) (internal quotation omitted) (emphasis added); *see also*, *LinkCo, Inc. v. Fujitsu Ltd.*, 2002 WL 1585551, at *2 (S.D.N.Y. July 16, 2002) (rejecting expert report because it "'does no more than counsel for [plaintiff] will do in argument, i.e., propound a particular interpretation of [defendant]'s conduct'").

Dr. Tsai's testimony merely "undertakes to tell the jury what result to reach" on the question of the falsity of the alleged misstatements, and thus "attempts to substitute the expert's judgment for the jury's." *United States v. Duncan,* 42 F.3d 97, 101 (2d Cir. 1994) (emphasis omitted); *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992) (finding expert testimony inadmissible

that police officer's conduct was not "justified under the circumstances" and was "totally improper"); *Solid 21, Inc.*, 2023 WL 6058614, at *7 (excluding testimony about what advertisements are potentially infringing because an expert "is not permitted to offer legal conclusions").[3]

Moreover, such testimony is unhelpful. The issue here is whether Defendants' statements accurately reflected **what Defendants knew** at the time they made the statements, not whether they comported with Dr. Tsai's view of the market. But Dr. Tsai admitted that he "would only be speculating on what they [Defendants] knew at the time." Ex. E at 71:13-15; *id*. at 74:19-22 ("...I don't have specific knowledge of what the defendants knew or didn't know at the time beyond the documents that were available to me."); *id*. at 69:13-17 ("I'm not a – I do not run a COVID diagnostics company so I don't know all of the internal details that may have contributed to variations in their sales patterns[.]"). And, given that the question about the falsity of the alleged misstatements largely turns on an understanding of Co-Diagnostics' sales data and trends, Dr. Tsai admitted that he is not a financial analyst or accountant (*id*. at 65:18-19) and "I'm not an expert in the specifics of the sales of Co-Diagnostics specifically" (*id*. at 70:5-7). For these reasons, his opinions about Defendants' alleged misrepresentations being consistent with contemporaneous information should be excluded. *See* Fed. R. Evid. 702(a) (expert's opinion must "help the trier of fact to understand the evidence or to determine a fact in issue"); *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (under Federal Rule of Evidence 403, expert testimony "may be excluded if its probative value is substantially outweighed by the danger of . . . confusion of the issues").

---

[3] Indeed, Defendants' other expert, Dr. Juneja, agrees that "[w]hether the Alleged Misrepresentations on May 12, 2022 were false or misleading . . . is a legal opinion" on which she therefore took no position. Juneja Reply ¶6.

**IV.    THE TESTIMONY OF DR. VINITA JUNEJA SHOULD BE PARTIALLY EXCLUDED**

**a.    Dr. Juneja's Criticisms of Plaintiff's Damages Report Are Derived From An Inaccurate Description of the Claims Which Renders Her Opinions Irrelevant and Unhelpful**

Dr. Juneja's reports mischaracterize the allegations in this case, from which she opines on a host of supposed flaws in Plaintiff's materiality, loss causation, and damages analyses. Because none of these criticisms address Plaintiff's actual claims, they are all irrelevant and should be excluded.

Specifically, Dr. Juneja states that she was "asked to assume that the finder of fact will find Defendants liable for ***failing to disclose intra-quarter sales numbers as of May 12, 2022***" (Ex. C at ¶7),[4] rather than evaluating Plaintiff's claims, upheld by the Court, that the alleged misrepresentations concealed material information that "***demand was already declining rapidly***" at that time. ECF No. 42 at 5 (emphasis added); *see also, id*. at 4 (finding the alleged misrepresentations "***put both current demand and risks to future demand on the table***") (emphasis added). Indeed, the Complaint ¶48 explicitly states that the Alleged Misrepresentations were false or misleading because they failed to disclose that "demand for [Co-Diagnostics'] Logix Smart COVID-19 Test had already plummeted, and . . . Defendants' positive statements about the demand for its Logix Smart COVID-19 Test lacked a reasonable basis." And Plaintiff's expert, Mr. Coffman, repeatedly, emphatically testified that in his analyses, "I'm not suggesting that [Defendants] had to disclose a particular sales figure. I'm assuming they had to reveal that there was substantially reduced demand, and that [the test's] sales were far less than what [the Company]

---

[4] Similarly, in her opening report, Dr. Juneja misleadingly asserts that Plaintiff is arguing "that Co-Diagnostics should have announced its 2Q 2022 results to date to the market as early as May 12, 2022 and that the May 12, 2022 statements were insufficient in terms of content." Ex. B at ¶28.

had seen in prior quarters." Ex. F (Transcript of the Remote Videotaped Deposition Via Zoom of Chad Coffman, dated January 28, 2025) at 69:25-70:4.

Ignoring the allegations that formed the basis of Mr. Coffman's analysis, Dr. Juneja proceeds from her straw man to claim that several of Plaintiff's expert's analyses are unreliable. First, she claims Plaintiff's materiality analysis is flawed because it "fails to consider what reasonably could have been disclosed at the time of the Alleged Misrepresentations" (Ex. C at ¶4), explaining that "disclosing Co-Diagnostics' exact sales through May 12, 2022 is not the same as telling the market what Co-Diagnostics' exact sales through June 30, 2022 were and what the sales through August 12, 2022 were" (*id*. at ¶16). *See also, id*. at ¶¶13-16, ¶¶18-19.[5] Of course, this is meaningless as Plaintiff does not claim that Defendants' statements were misleading because they failed to disclose specific sales figures, but rather, because they misrepresented and failed to disclose that demand for their key product was down substantially, which had implications for future demand as well.

Dr. Juneja also contends that Plaintiff's loss causation and damages analysis: (1) overstates damages because the alleged corrective disclosure revealed full quarter sales numbers which could not have been disclosed on May 12, 2022 (Ex. C at ¶¶20-23); (2) fails to account for the impact of purportedly "confounding information" on August 11, 2022 that Defendants expected lower demand for the foreseeable future (*id*. at ¶¶24-28); and (3) inappropriately uses constant dollar

---

[5] At paragraph 19, Dr. Juneja speciously asserts that Plaintiff's expert "offers no evidence for his claim that announcing sales-to-date would have the exact same price impact no matter when in the quarter they are disclosed." But this is not Plaintiff's expert's claim. Rather, he analyzed the claim that "decreased demand for the Company's flagship product was adversely impacting Co-Diagnostics' revenue and expected revenue" throughout the Class Period. Juneja Reply at ¶13 (quoting Coffman Rep. at ¶79).

inflation, which does not account for the dollar amount of sales on May 12, 2022 (*id.* at ¶¶43-45).[6]

None of these purported flaws apply to Mr. Coffman's correctly-specified analysis. Specifically,

(1) and (2) do not apply because the news Dr. Juneja claims must be excluded from loss causation

and damages ***is part of the alleged fraud***. If Defendants had disclosed what Plaintiff alleges was

concealed on May 12, 2022—that sales had "already cratered" (ECF No. 42 at 5) or that current

sales were down so substantially as to signal future demand concerns—then investors would have

anticipated the dramatically lower sales reported at the end of the quarter and the reduced demand

going forward.[7] Likewise, because the alleged fraud is not premised on the failure to disclose a

particular dollar figure of sales on May 12, 2022, the "failure" to adjust the fraudulent inflation

based on that sales value is of no import to loss causation or damages.  Rather, because the nature

of the allegedly concealed information (that test demand was significantly down by the start of the

Class Period) did not change throughout the period, there was no reason to adjust the amount of

fraudulent inflation in share prices during that time.

Dr. Juneja's testimony on these points therefore fails "to make the existence of any fact

that is of consequence to the determination of [loss causation or damages] more probable or less

probable than it would be without the evidence," *Campbell ex rel. Campbell v. Metro. Prop. &

Cas. Ins. Co.*, 239 F.3d 179, 184 (2d Cir. 2001) (quoting Fed. R. Evid. 401) and should be

excluded. "*Daubert's* second criterion of 'fit' is essentially a requirement of relevance."

---

[6] *See also, id.* at ¶68: "Mr. Coffman's finding that alleged inflation was constant and did not depend on what sales numbers could have been disclosed contradicts Plaintiff's allegation that the Alleged Misrepresentations were misleading due to the omission of intra-quarter sales, and further demonstrates the unreliability of Mr. Coffman's methodology."

[7] As Mr. Coffman aptly explained, "[T]he market upon hearing the demand for the product was substantially lower than expected and had been in prior periods would use that information to update its expectations about future periods as well regardless about whether [Defendants] explicitly said anything about future periods or not." Ex. F at 76:17-23.

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 137 F. Supp. 2d 147, 163 (E.D.N.Y. 2001), *aff'd*, 303 F.3d 256 (2d Cir. 2002). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (internal quotation marks omitted); *see also*, *Thor Equities, LLC v. Factory Mut. Ins. Co.*, 627 F. Supp. 3d 330, 339 (S.D.N.Y. 2022) (excluding testimony where expert's model did not answer the relevant question).

> **b.        Dr. Juneja's Legal Arguments Should Be Stricken**

In the conclusion of her opening report, at paragraphs 27-28, Dr. Juneja offers pure legal argument which should be entirely stricken. For instance, Dr. Juneja posits that "[w]hether the Company's statements on May 12, 2022 effectively disclosed what Plaintiff claims was hidden can be viewed in light of what the Second Circuit has held: [quoting *Arkansas Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 99 (2d Cir. 2023)]." Ex. B at ¶27. Not only are experts prohibited from instructing the jury on what law to apply, but Dr. Juneja is an expert in economics, not the law. She lacks any legal education or degree and is not qualified to opine on applicable legal standards. "Expert testimony that strays outside the expert's area of qualified expertise must be excluded." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2025 WL 354671, at *3 (S.D.N.Y. Jan. 30, 2025). And even if she were so qualified, Dr. Juneja cannot supplant the Court's role in supplying the law, or the jury's in applying it. *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 541 ("[I]n deciding whether the proposed testimony will be helpful to the fact-finder, courts in this Circuit analyze the testimony to determine whether it 'usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it.'"). Thus, Dr. Juneja's legal opinions should be stricken.

14

### c.    Dr. Juneja's Testimony About COVID-19 Test Administration in the U.S. Is Outside Her Expertise, Unreliable, And Irrelevant

Section III.B. of Dr. Juneja's opening report and paragraph 17 of the Juneja Reply Report present scattershot U.S. COVID-19 testing data and media commentary to support her claim that "[p]redicting the demand for COVID-19 tests for Q2 2022 was especially difficult given the changing nature of the pandemic and various regulatory requirements." Ex. C at ¶17. This testimony should be excluded on at least three grounds: (1) it is outside Dr. Juneja's expertise in economics; (2) there is no methodology, much less any reliable one, to her anecdotal references; and (3) her consideration of U.S. testing alone is irrelevant because it ignores the source of roughly 50% of Co-Diagnostics sales, international COVID-19 testing.

The testing and COVID case data presented are from public sources (Department of Health and Human Services for U.S. testing data and World Health Organization for U.S. case data) which require no expertise for a layperson to understand and, in any event, Dr. Juneja lacks any relevant expertise. Ex. B at ¶25. "Testimony is properly characterized as 'expert' only if it concerns matters that the average juror is not capable of understanding on his or her own." *United States v. Mejia*, 545 F.3d 179, 194 (2d Cir. 2008); *see also United States v. Amuso*, 21 F.3d 1251, 1263 (2d Cir. 1994) ("A district court may commit manifest error by admitting expert testimony where the evidence impermissibly mirrors the testimony offered by fact witnesses, or the subject matter of the expert's testimony is not beyond the ken of the average juror.").

Moreover, Dr. Juneja "employs no discernible technique or methodology at all; rather," she simply reviews selective public data and news stories "in the same manner as would an ordinary lay juror." *Akiro LLC v. House of Cheatham, Inc.*, 946 F. Supp. 2d 324, 332 (S.D.N.Y. 2013) (excluding expert testimony which "simply dresses up [defendant]'s view of the underlying factual evidence in expert garb"). Instead of conducting a fulsome review of media commentary,

Dr. Juneja merely cited five publications from the period of May 10, 2022 to August 11, 2022 that support her claim of uncertainty about COVID-19 testing demand. Ex. C ¶17; *see also*, Ex. C Appendix 2 (listing under "Other" the five articles she reviewed). This testimony should be excluded "because the methodology behind expert analysis should be made to produce results, not to justify the results already reached." *Faulkner v. Arista Recs. LLC*, 46 F. Supp. 3d 365, 383 (S.D.N.Y. 2014); *see also, E.E.O.C. v. Bloomberg L.P.*, 2010 WL 3466370, at *17 (S.D.N.Y. Aug. 31, 2010) ("To ignore contradictory testimony in order to arrive at a desired conclusion highlights the unreliability of [expert's] methodology.").

Finally, even if it were reliable (it is not), Dr. Juneja's testimony is unhelpful because it only addresses demand uncertainty in roughly half of Co-Diagnostics' sales: it is impossible to understand the full demand picture from anecdotal U.S. information alone. International COVID-19 testing, policies, and trends may make the implications for test demand more certain than the incomplete picture presented by Dr. Juneja. There is simply no way to know from the incomplete data Dr. Juneja and Defendants present, and it therefore cannot "aid the jury in resolving a factual dispute" in this case. *Daubert*, 509 U.S. at 591.

## V.    CONCLUSION

For all the foregoing reasons, the indicated testimony of Dr. Tsai and Dr. Juneja should be excluded.

Dated:  March 21, 2025

Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

*/s/ Jason A. Uris*
Frederic S. Fox
Donald R. Hall
Jason A. Uris
800 Third Avenue, 38th Floor
New York, NY 10022
Tel: (212) 687-1980

16

Fax: (212) 687-7714
ffox@kaplanfox.com
dhall@kaplanfox.com
juris@kaplanfox.com

*Lead Counsel for Lead Plaintiff and the Class*

17

**CERTIFICATION OF COMPLIANCE**

The undersigned certifies that, in accordance with Rule 7.1 of the Local Rules of the United States District Courts of the Southern and Eastern Districts of New York, dated January 2, 2025, and Rule 8.C. of the Individual Practices in Civil Cases of Judge Subramanian dated March 14, 2025, this memorandum complies with all formatting requirements set forth therein and contains 5,243 words (including footnotes but excluding the cover page, table of contents, table of authorities, signature blocks, and this certification of compliance).

*/s/ Jason A. Uris*
Jason A. Uris

18