**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STADIUM CAPITAL LLC, on behalf of itself and all others similarly situated, | Case No.: 22-cv-6978-AS |
| Plaintiff, | CLASS ACTION |
| v. | JURY TRIAL DEMANDED |
| CO-DIAGNOSTICS, INC., DWIGHT H. EGAN, and BRIAN L. BROWN, | |
| Defendants. | |

**LEAD PLAINTIFF'S REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF ITS MOTION FOR**
**PARTIAL EXCLUSION OF EXPERT TESTIMONY**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES...................................................................................................ii

I.     PRELIMINARY STATEMENT.................................................................................. 1

II.    DEFENDANTS HAVE FAILED TO ESTABLISH THE ADMISSIBILITY OF
       THE CHALLENGED PORTIONS OF DR. TSAI'S TESTIMONY ................................. 1

       a.    Defendants' Brief Only Confirms the Unreliability and Irrelevance of Dr.
             Tsai's Testimony About Increased Uncertainty of COVID Test Demand in
             the Spring of 2022................................................................................... 1

             i.    Dr. Tsai's Global Demand Opinions Are Not Supported By
                   Information Predominantly Concerning the Americas ............................. 2

             ii.   There is Still No Support For the Opinion that Uncertainty
                   "Increased"................................................................................ 5

       b.    Dr. Tsai's Opinion That The Alleged Misrepresentations Were Literally
             True is Inadmissible ................................................................................. 6

III.   DEFENDANTS HAVE FAILED TO ESTABLISH THE ADMISSIBILITY OF
       THE CHALLENGED PORTIONS OF DR. JUNEJA'S TESTIMONY ........................... 8

       a.    Dr. Juneja's Failure to Recognize the Alleged Misrepresentations
             Encompass Risks to Future Demand Dooms Certain Criticisms of
             Coffman's Opinions................................................................................. 8

       b.    Dr. Juneja's Inadmissible Legal Opinions Contain No Economic Analysis......... 10

       c.    Defendants Do Not Identify Any Economic Opinion Rendered or
             Expertise Needed for Dr. Juneja's Review of Anecdotal U.S. COVID-19
             Information .......................................................................................... 11

IV.    CONCLUSION......................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
137 F. Supp. 2d 147 (E.D.N.Y. 2001), *aff'd*, 303 F.3d 256 (2d Cir. 2002) ................................ 9

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
77 F.4th 74 (2d Cir. 2023) .................................................................................................. 1, 10

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
310 F.R.D. 69 (S.D.N.Y. 2015) ............................................................................................. 11

*Freudenberg v. E*Trade Fin. Corp.*,
712 F. Supp. 2d 171 (S.D.N.Y. 2010) .................................................................................... 10

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) ................................................................................................................. 5

*Hygh v. Jacobs*,
961 F.2d 359 (2d Cir. 1992) ............................................................................................... 7, 10

*In re Mirena IUD Prods. Liab. Litig.*,
169 F. Supp. 3d 396 (S.D.N.Y. 2016) ...................................................................................... 8

*In re Rezulin Prods. Liab. Litig.*,
309 F. Supp. 2d 531 (S.D.N.Y. 2004) ..................................................................................... 12

*In re Zyprexa Prods. Liab. Litig.*,
489 F. Supp. 2d 230 (E.D.N.Y. 2007) ................................................................................... 6, 8

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) ............................................................................................................... 11

*LinkCo, Inc. v. Fujitsu Ltd.*,
2002 WL 1585551 (S.D.N.Y. July 16, 2002) ........................................................................... 6

*Minasian v. Standard Chartered Bank, PLC*,
109 F.3d 1212 (7th Cir. 1997) ................................................................................................. 6

*Nimely v. City of New York*,
414 F.3d 381 (2d Cir. 2005) ..................................................................................................... 7

*Omnicare, Inc. v. Laborers Dist. Council Constr. Industry Pension Fund*,
575 U.S. 175 (2015) ................................................................................................................. 7

*Scott v. Chipotle Mexican Grill, Inc.*,
   315 F.R.D. 33 (S.D.N.Y. 2016) ............................................................................... 7, 10

*State v. Deutsche Telekom AG*,
   419 F. Supp. 3d 783 (S.D.N.Y. 2019) ........................................................................... 5

*Ultra Recs., LLC v. Ultra Int'l Music Publ'g, LLC*,
   2024 WL 4663011 (S.D.N.Y. Nov. 4, 2024) ................................................................. 5

*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991) .................................................................................... 6, 7

**Rules**

Fed. R. Evid. 403 ............................................................................................................. 7

I.        **PRELIMINARY STATEMENT**

Plaintiff respectfully submits this Reply Memorandum of Law in further support of its motion to partially exclude the testimony of Drs. Tsai and Juneja.

As detailed in Plaintiff's opening brief, both of Defendants' experts offer opinions that fail basic admissibility standards—opinions about global COVID-19 testing demand and "increased" uncertainty that are not based on sufficient facts or data or the product of reliable principles and methods, and opinions on loss causation and damages that do not reliably apply principles and methods to the actual facts of this case. Both experts also improperly wade into legal territory, opining on ultimate legal conclusions concerning the falsity of the alleged misrepresentations in Dr. Tsai's report, and whether the alleged corrective disclosure satisfies the *Goldman* test in Dr. Juneja's report. Defendants superficially attempt to counter the methodological flaws and overreach of their experts identified by Plaintiff, but none of their arguments withstand scrutiny.

Perhaps recognizing the infirmity of their arguments, Defendants repeatedly fall back on the tired "weight-not-admissibility" old saw as an excuse for the many inexcusable flaws in their experts' opinions. But a trial judge is the gatekeeper, and the 2023 amendments to Rule 702 reinforce the importance that a court exclude an expert's opinions that do not reflect the reliable application of reliable principles and methods. That is exactly what the Court should do here.

II.       **DEFENDANTS HAVE FAILED TO ESTABLISH THE ADMISSIBILITY OF THE CHALLENGED PORTIONS OF DR. TSAI'S TESTIMONY**

      a.        **Defendants' Brief Only Confirms the Unreliability and Irrelevance of Dr. Tsai's Testimony About Increased Uncertainty of COVID Test Demand in the Spring of 2022**

> ### *i.*      *Dr. Tsai's Global Demand Opinions Are Not Supported By Information Predominantly Concerning the Americas*

Defendants argue that Dr. Tsai cited sufficient international data, but a quick scan of the tables and figures he provides shows the dominance of U.S. or North and South American COVID information throughout his entire report:

- Figure 1: "COVID Variant Sequences *in the U.S.*" Tsai Rep. at 11, ECF No. 106-1;[1]

- Figure 2: "COVID Cases and Deaths Prior to the Class Period *in North and South America*" (*id.* at 12);

- Figure 3: "COVID Cases *in North and South America*" (*id.* at 16);

- Figure 4: "*U.S.* COVID Lab Testing Tracked Cases of COVID Pre-Class Period" (*id.* at 17);

- Figure 5: "COVID Molecular Testing and Vaccination Differed Regionally[;] *Connecticut and Georgia*" (*id.* at 26);

- Table 1: "Spring 2022 Press Coverage on Potential Increase in COVID Cases" quoting news concerning potential developments *in the U.S.* (*id.* at 23), and;

- Table 2: "Public Discussion of Changes in Individual Behaviors Later in the Pandemic" quoting press concerning pandemic fatigue in parts of *the U.S.* (*id.* at 28).

Dr. Tsai admittedly focused on the U.S. because that was his area of expertise: "I was aware of the global patterns for COVID-19 throughout the pandemic, but given my expertise on the U.S. diagnostics industry for COVID-19, focused the report on that." Tsai Dep. at 78:12-16, ECF No.

---

[1] All emphasis in this brief is added unless otherwise indicated.

106-5.[2] Dr. Tsai's lack of expertise in foreign COVID test markets only makes the paucity of non-U.S. COVID data in his report more egregious.

Defendants also argue it's okay to rely so heavily on information regarding the Americas because most of Co-Diagnostics' test sales were in the U.S. and Latin America, and data concerning these areas was representative of global COVID trends. But Company documents show Co-Diagnostics sold more Logix tests in the Middle East than in Latin America, with sales to Saudi Arabia alone at over $29 million, or roughly 18.9% of all sales between 2020 and July 13, 2022. *See* Ex. A to the Declaration of Jason A. Uris in Further Support of Plaintiff's Motion for Exclusion of Expert Testimony ("Uris Decl."), submitted with this brief. Thus, information about COVID-19 developments and patterns in Saudi Arabia (among other countries) is highly relevant to demand for the Logix test.

Nevertheless, Defendants argue that COVID patterns in the Americas are representative of global trends, citing two sources: Our World in Data webpages concerning COVID hospitalizations and COVID positive tests. Defs.' Opp. 4-5 (ECF No. 126). But the hospitalizations page ***does not include any*** hospitalization data for Latin American countries other than Bolivia,[3] nor does it include Saudi Arabia.[4] So that reference cannot possibly show that "hospitalizations and thus demand for COVID testing" in relevant countries "***mirrors*** the United States" (Defs.' Opp. 5).

Likewise, Defendants' oblique claim that the Our World in Data page with positive COVID

---

[2] Despite recognizing that "close to half of the Company's revenue [] derived from foreign sales", the only other reason identified for focusing on the U.S. was that "[t]his was a U.S based company." *Id*. at 76:14-18; 77:13-19.

[3] The largest Logix test purchasers in Latin America were Mexico ($18.17 million) and Colombia ($6.71 million); Bolivia purchased only $1.02 million. Uris Decl. Ex. A.

[4] *See* Mathieu, Edouard, et. al., "Coronavirus (COVID-19) Hospitalizations," Our World in Data, 2024, retrieved from: https://ourworldindata.org/covid-hospitalizations.

test data shows "positive COVID tests across multiple countries was comparable to the United States" (Defs.' Opp. 4-5) is unhelpful. For countries with significant Logix test purchases, like Saudi Arabia, there are substantial differences in the timing and severity of COVID peaks and troughs:[5]



Dr. Tsai acknowledges that there were "***geographic variations*** over time" with respect to the referenced COVID data. Tsai Dep. 76:7-13. And, according to Dr. Tsai, differences in COVID positive rates ***directly impact demand*** for Logix tests as "COVID testing utilization or demand generally followed the patterns of COVID cases." *Id*. at 61:25-62:4.[6] Thus, "there is simply too great an analytical gap between the data" for COVID in the U.S. and Americas "and the opinion

---

[5] From Mathieu, Edouard, et. al., "Coronavirus (COVID-19) Testing," Our World in Data, 2022, retrieved from: https://ourworldindata.org/coronavirus-testing.

[6] *Id*. at 67:19-22 ("…the broader trend has been that COVID testing utilization for the industry more broadly followed COVID cases."). Plaintiff is not expressing agreement with any of Dr. Tsai's opinions, but for *Daubert* purposes, focuses on ***his*** bases for his opinions to show they are insufficient.

proffered" about global test demand. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *State v. Deutsche Telekom AG*, 419 F. Supp. 3d 783, 788 (S.D.N.Y. 2019) (excluding expert testimony concerning foreign mergers because "[d]espite the apparent similarity between mergers in foreign and domestic markets . . . numerous salient factors . . . may differ significantly and likely yield only an apples-to-oranges comparison.").[7]

### ii.    There is Still No Support For the Opinion that Uncertainty "Increased"

Defendants claim that Dr. Tsai's opinion on increased uncertainty in COVID test demand in the of Spring 2022 is supported by: (1) the difficulty in projecting health impacts of variants; (2) uncertainty regarding the public health response; and (3) shifting public perception of risk. Defs.' Opp. 7. But none of this discussion is a comparative analysis with earlier periods; it does not show *greater* uncertainty in 2022, which is Dr. Tsai's opinion. Moreover, new COVID outbreaks were just as uncertain in 2022 as they were at any other time. Indeed, "public health experts, including the CDC, recognize that 'the evolution of new variants *remains unpredictable,*' *even today*." Tsai Rep. ¶24. If COVID outbreaks were the primary driver of test demand, as Dr. Tsai claims, then there was *always* significant uncertainty in test demand *throughout the pandemic*. He should not be permitted to testify that there was *greater* uncertainty in the Spring of 2022 than previously. *Ultra Recs., LLC v. Ultra Int'l Music Publ'g, LLC*, 2024 WL 4663011, at *3 (S.D.N.Y. Nov. 4, 2024) (Subramanian, J.) (rejecting attempt "to smuggle in" testimony "with no basis in evidence from the marketplace").

In response to this reality, Defendants try to change the subject by touting Dr. Tsai's expertise as a sufficient basis for his opinion. Defs.' Opp. 7-8. But expertise is not a substitute for analysis and support: "a court cannot permit experts to offer credentials rather than analysis."

---

[7] If admitted, Dr. Tsai's testimony should be limited to the COVID PCR test market in the U.S.

*LinkCo, Inc. v. Fujitsu Ltd.*, 2002 WL 1585551, at *4 (S.D.N.Y. July 16, 2002) (internal quotation omitted); *Minasian v. Standard Chartered Bank, PLC,* 109 F.3d 1212, 1216 (7th Cir. 1997) (emphasizing "how vital it is that judges not be deceived by the assertions of experts who offer credentials rather than analysis"). Moreover, Defendants cite his experience in a position that did not begin until June 2022 (Tsai Rep. ¶2) as "support for his opinion that it was more difficult to predict demand in ***spring 2022***" given what he "witnessed firsthand." Defs.' Opp. 7-8.

Defendants also incorrectly argue that Plaintiff merely disagrees with Dr. Tsai's conclusions, but the problems are with his (lack of) methodology and support. The lack of any comparative analysis of factors impacting demand in earlier periods renders his opinion on ***relative uncertainty*** unreliable. Dr. Tsai's anecdotal references regarding uncertainty in the Spring of 2022 fall far short of the rigor required for expert opinion testimony. *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 284 (E.D.N.Y. 2007) ("Anecdotal evidence and 'generalized assumptions' are inadequate bases for an expert report.").

### b. Dr. Tsai's Opinion That The Alleged Misrepresentations Were Literally True is Inadmissible

Defendants posit a number of meritless arguments to try to save Dr. Tsai's testimony on the ultimate legal issue of whether the alleged misrepresentations are materially false and misleading. First, they argue that the testimony is admissible because Dr. Tsai did not use the terms "false and misleading." Defs.' Opp. 9-10. But expert testimony on legal conclusions is inadmissible even if it doesn't invoke the express terms of the applicable statute: "testimony encompassing an ultimate legal conclusion based upon the facts of the case is not admissible, and may not be made so simply because it is presented in terms of industry practice." *United States v. Bilzerian*, 926 F.2d 1285, 1295 (2d Cir. 1991). In *Bilzerian*, the Second Circuit upheld exclusion of expert testimony about securities industry practices intended as evidence of the defendant's

6

good faith "because it related directly to the issue of whether [defendant]'s actual 13D disclosures complied with the legal requirements." *Id.* Similarly, here, Dr. Tsai's testimony that the alleged misrepresentations are true is being offered because Defendants claim it "is squarely relevant to and helpful in evaluating whether Defendants' statements on May 12, 2022, were false or misleading in context, and whether Defendants acted with scienter." Defs.' Opp. 1. This testimony "directly to the issue of whether [Defendants] . . . complied with the legal requirements" is inadmissible. *Id.*; *see also*, *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 48–49 (S.D.N.Y. 2016) (precluding expert from "testifying about what conclusions should be drawn from the evidence he has gathered").

Moreover, "[e]ven if a jury were not misled into adopting outright a legal conclusion proffered by an expert witness, the testimony would remain objectionable by communicating a legal standard—explicit or implicit—to the jury." *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992). Dr. Tsai's opinion that Defendants' statements were literally true implies an incorrect legal standard because "literal accuracy is not enough: An issuer must as well desist from misleading investors by saying one thing and holding back another". *Omnicare, Inc. v. Laborers Dist. Council Constr. Industry Pension Fund*, 575 U.S. 175, 192 (2015). Regardless of whether Defendants' allegedly pretextual reasons for pulling guidance accurately described some aspects of the market environment, they can still be materially false and misleading under the law based on the information that Defendants were "holding back." *Id.* Dr. Tsai's testimony risks misconstruing and confusing this legal standard. *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (under FRE 403, expert testimony "may be excluded if its probative value is substantially outweighed by the danger of . . . confusion of the issues").

Defendants question how testimony can be both a legal conclusion on an ultimate issue

*and* unhelpful or irrelevant (Defs.' Opp. 11), but a legal conclusion is unhelpful "[b]y definition" because it "***does not aid the jury in making a decision; rather, it undertakes to tell the jury what result to reach***, and thus attempts to substitute the expert's judgment for the jury's[.]" *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 413 (S.D.N.Y. 2016) (internal quotations omitted). It is also unhelpful here because Dr. Tsai does not know what ***Defendants*** knew and cannot testify as to whether their statements were consistent with ***their*** knowledge. *See* Pl.'s Mot. 10, ECF No. 105; Defs.' Opp. 11 (conceding Dr. Tsai does not opine on Defendants' knowledge). And it is unhelpful because a layperson is fully capable of determining whether the alleged misrepresentations are consistent with the record evidence. *See Zyprexa*, 489 F. Supp. 2d at 283 ("In inquiring into the potential helpfulness of the proffered expert testimony, the court decides whether it concerns matters requiring assistance to the kind of people expected to sit on the jury.").

### III.   DEFENDANTS HAVE FAILED TO ESTABLISH THE ADMISSIBILITY OF THE CHALLENGED PORTIONS OF DR. JUNEJA'S TESTIMONY

#### a.   Dr. Juneja's Failure to Recognize the Alleged Misrepresentations Encompass Risks to Future Demand Dooms Certain Criticisms of Coffman's Opinions

Defendants argue that Dr. Juneja's opinions based on the failure "to disclose intra-quarter sales numbers as of May 12, 2022" is correctly keyed to Plaintiff's claims because Plaintiff's references to "demand" clearly meant "sales." Defs.' Opp. 13-14. Defendants' subsequent extended exposition of instances where Plaintiff referred to "sales" rather than "demand" is a whole lot of spilled ink over nothing. The plummeting sales of Logix tests reflected plummeting demand, so Plaintiff has used the terms interchangeably at times—as have Defendants.[8] Defendants entirely miss the point of Plaintiff's argument.

---

[8] *See* ECF No. 114-20 at 4, 6 (August 11, 2022 earnings call referring interchangeably to "lower volumes" and "lower demand" for Logix test); ECF No. 114-25 (referring to ability to monitor "the daily influx of demand for our tests" – an obvious reference to the daily sales).

8

The point is that Dr. Juneja's assumption ignores that Defendants allegedly misrepresented and concealed a heightened risk to *future* demand, in addition to current demand. The dramatic drop in sales in the months leading up to May 12, 2022 was evidence not only that performance for the first half of Q2 was bad, but that full quarter and future performance would likely be much worse than investors expected. *See* Pl.'s Mot. 2, 11-12. Defendants' statements thus concealed material information concerning "both current demand and risks to future demand". ECF No. 42 at 4-5.

Dr. Juneja's assumption, contrary to the allegations, this Court's ruling, and the evidence, that the alleged misrepresentations did *not* conceal a material risk to post-May 12, 2022 Logix test demand (or sales) causes her to reach fatally flawed opinions that any information in the corrective disclosure on that subject is outside the alleged fraud and must be disaggregated. *See* Pl.'s Mot. 12-13. Likewise, her refusal to accept that Plaintiff is not claiming Defendants should have disclosed the exact intra-quarter sales numbers causes her to reach irrelevant opinions about the propriety of such a disclosure and constant dollar inflation. *Id*. These opinions "do[] not fit the facts of the case, [are] not helpful to the trier of fact, and, thus, [are] inadmissible." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 137 F. Supp. 2d 147, 163 (E.D.N.Y. 2001), *aff'd,* 303 F.3d 256 (2d Cir. 2002); *see also*, Pl.'s Mot. 11-14; Juneja Reply Rep. ¶¶4, 13-16, 18-19, 43-45, ECF No. 106-3.[9]

Defendants argue that even with corrected assumptions that "incorporate[] the concept of declining demand," nothing "compels the conclusion" that a truthful demand disclosure on May

---

[9] Defendants note that two of Dr. Juneja's criticisms are not implicated by the issues raised here. Defs.' Opp. 16. Plaintiff does not seek exclusion of those opinions (concerning ERC analysis (Juneja Reply Rep. ¶¶33-42) and analysts' reaction on May 13, 2022 (Juneja Rep. ¶¶18-23, ECF No. 106-2)).

12, 2022 would have "given investors exactly the same information . . . as the full-quarter results." Defs.' Opp. 15. But Plaintiff does not have to prove that an earlier truthful disclosure would give investors "exactly the same information"; the Second Circuit does not "require[] a precise match" between the alleged misrepresentation and the corrective disclosure. *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 98 (2d Cir. 2023). Indeed, "[i]t may frequently be the case that what is *corrective* about a 'corrective disclosure' is situated among details which, in the aggregate, make for a somewhat more specific back-end disclosure." *Id.*; *see also, Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 202 (S.D.N.Y. 2010) (a corrective disclosure need not be a "'mirror image' tantamount to a confession of fraud."). To the extent Dr. Juneja's opinions are based on, or convey, an incorrect legal standard regarding the requirements for corrective disclosures, they are also inadmissible on those grounds. *Hygh*, 961 F.2d at 364.

### b.    Dr. Juneja's Inadmissible Legal Opinions Contain No Economic Analysis

Defendants contend that Dr. Juneja merely references caselaw as a "guidepost" for her "economic analysis comparing the alleged misrepresentations to the alleged corrective disclosures." But there is no economic analysis whatsoever in the paragraphs Plaintiff seeks to exclude (Juneja Rep. ¶¶27-28, ECF No. 106-2); rather, they read like the closing paragraphs of a legal brief, arguing that caselaw compels a conclusion that "a disclosure by Co-Diagnostics of its actual sales figures through approximately May 12, 2022 would have been a 'disclosure with far greater detail than the alleged misrepresentations'", in violation of *Goldman*, 77 F.4th at 99. Juneja Rep. ¶28.[10] This "expert opinion on what [the evidence] means for the plaintiffs' case is impermissible." *Scott*, 315 F.R.D. at 48–49 (striking expert testimony that "reads more like lawyer's argument" concerning uniformity of evidence related to class certification).

---

[10] Again, Plaintiff does not allege that Co-Diagnostics needed to disclose its actual sales figures. *See* Pl.'s Mot. at 11 (quoting Coffman testimony).

####        c.        Defendants Do Not Identify Any Economic Opinion Rendered or Expertise Needed for Dr. Juneja's Review of Anecdotal U.S. COVID-19 Information

Defendants argue it is within Dr. Juneja's expertise to review "economically relevant, publicly available data," but fail to identify any ***economic opinions*** she is giving that justify rehashing information Dr. Tsai reviewed. Specifically, citing U.S. COVID testing data, Dr. Juneja concludes "there is substantial variation in the number of PCR tests performed on a weekly basis" and that "it was public knowledge that fewer PCR COVID-19 tests were being administered [in May 2022] than had been in January and February of 2022." Juneja Rep. ¶25; *id*. at ¶4(c). Likewise, in her reply report, Dr. Juneja quotes five news articles purportedly discussing uncertainty in COVID test demand and then simply quotes the Tsai Report conclusion that it was increasingly difficult to predict COVID test demand. Juneja Reply Rep. ¶17. None of these basic observations apply any discernible economic principles or methods or offer any insight beyond what can be gleaned from Dr. Tsai's report.

Defendants also weakly assert that Dr. Juneja's opinions are reliable, citing *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 87 (S.D.N.Y. 2015), in which the court admitted an ***event study***—which is undisputedly a reliable methodology ***that Dr. Juneja did not perform***—as support for Dr. Juneja's anecdotal and self-serving recitation of five articles here. *See* Defs.' Opp. 19; *id*. at 19-20 (referencing Coffman's event study, which included a complete review of Factiva news in the Class Period). This is precisely Plaintiff's point: Dr. Juneja did nothing even remotely approximating the thorough search and review of public news sources that an economist practicing in the field would do. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (courts' gatekeeping function is "to make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field").

Defendants also argue these are not "improper lay opinion[s]," citing a case that is plainly inapposite because it involved a "complicated morass" of information. Defs.' Opp. 19. Here, a layperson is equally capable of comprehending articles by *The New York Times* and observing from the testing data that fewer tests were administered in May 2022 than January 2022. Such "simple inferences drawn from uncomplicated facts that serve only to buttress [a party's] theory of the case" are not the proper subject of expert testimony. *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (excluding expert testimony on the regulatory history of a diabetes drug).

Finally, Defendants' arguments that there is no harm in Dr. Juneja's reliance on solely U.S. data and information for opinions about global test demand fail for the same reasons as described *supra* Section II.a.i, concerning Dr. Tsai's Report.

## IV.    CONCLUSION

For all the foregoing reasons, the indicated portions of testimony of Dr. Tsai and Dr. Juneja should be excluded.

Dated:  May 30, 2025

Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

*/s/ Jason A. Uris*

Frederic S. Fox
Donald R. Hall
Jason A. Uris
800 Third Avenue, 38th Floor
New York, NY 10022
Tel: (212) 687-1980
Fax: (212) 687-7714
ffox@kaplanfox.com
dhall@kaplanfox.com
juris@kaplanfox.com

*Lead Counsel for Lead Plaintiff and the Class*

12

**CERTIFICATION OF COMPLIANCE**

The undersigned certifies that, in accordance with Rule 7.1 of the Local Rules of the United States District Courts of the Southern and Eastern Districts of New York, dated January 2, 2025, and Rule 8.C. of the Individual Practices in Civil Cases of Judge Subramanian dated March 14, 2025, this memorandum complies with all formatting requirements set forth therein and contains 3,489 words (including footnotes but excluding the cover page, table of contents, table of authorities, signature blocks, and this certification of compliance).

*/s/ Jason Uris*
Jason Uris