**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STADIUM CAPITAL LLC, on behalf of itself and all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>CO-DIAGNOSTICS, INC., DWIGHT H. EGAN, and BRIAN L. BROWN,<br><br>      Defendants. | Case No.: 1:22-cv-06978-AS<br><br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' REPLY IN FURTHER SUPPORT**
**OF THEIR MOTION FOR SUMMARY JUDGMENT**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Tel. 212-589-4200
Fax. 212-589-4201

*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page**

I.    NO RATIONAL JURY COULD FIND FALSITY.................................................................2

II.   NO RATIONAL JURY COULD FIND MATERIALITY...................................................5

III.  NO RATIONAL JURY COULD FIND SCIENTER. ........................................................6

IV.   THE UNDISPUTED FACTS REBUT THE PRESUMPTION OF RELIANCE................8

V.    NO RATIONAL JURY COULD FIND LOSS CAUSATION. .......................................10

VI.   CONCLUSION...............................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)................................................................................................5, 8

*Arkansas Teachers Retirement Systems v. Goldman Sachs*,
   77 F.4th 74 (2d Cir. 2023) ...........................................................................................9

*Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*,
   477 F.Supp.3d 88 (S.D.N.Y. 2020)...........................................................................11

*Basic, Inc. v. Levinson*,
   485 U.S. 224 (1988)................................................................................................5, 8

*Bazzelle v. Novocure Ltd.*,
   2025 WL 843668 (S.D.N.Y. Mar. 18, 2025) ...............................................................6

*Dalberth v. Xerox Corp.*,
   766 F.3d 172 (2d Cir. 2014).........................................................................................5

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)...................................................................................................10

*F.D.I.C. v. Nat'l Union Fire Ins.*,
   205 F.3d 66 (2d Cir. 2000)...........................................................................................3

*Garber v. Legg Mason, Inc.*,
   537 F.Supp.2d 597 (S.D.N.Y. 2008)..........................................................................10

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
   594 U.S. 113 (2021).....................................................................................................9

*In re Kirkland Lake Gold Ltd. Sec. Litig.*,
   2024 WL 5107289 (S.D.N.Y. Dec. 13, 2024) .............................................................8

*Menorah Mivtachim Ins. v. Sheehan*,
   2024 WL 1613907 (2d Cir. Apr. 15, 2024) .........................................................10, 11

*In re Mylan N.V. Sec. Litig.*,
   666 F.Supp.3d 266 (S.D.N.Y. 2023)............................................................................8

*In re N. Telecom Ltd. Sec. Litig.*,
   116 F.Supp.2d 446 (S.D.N.Y. 2000)............................................................................8

*Olin Corp. v. Lamorak Ins.*,
  332 F.Supp.3d 818 (S.D.N.Y. 2018)............................................................................1

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015)......................................................................................................1

*In re Omnicom Grp. Inc. Sec. Litig.*,
  597 F.3d 501 (2d Cir. 2010).......................................................................................11

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
  573 F.3d 98 (2d Cir. 2009)...........................................................................................6

*Tang Cap. Partners, LP v. BRC Inc.*,
  757 F.Supp.3d 363 (S.D.N.Y. 2024).............................................................................4

*In re Vivendi, S.A. Sec. Litig.*,
  838 F.3d 223, 238 (2d Cir. 2016).................................................................................9

**Rules**

Fed. R. Evid. 801 ...............................................................................................................4

Plaintiff claims Co-Diagnostics' sales leading up to the May 12, 2022 earnings release must have indicated that demand for Logix test[1] "had already plummeted" and full-quarter revenue would be low, and that Defendants must have known this and intended to mislead investors when they failed to say so on May 12. But the undisputed facts disprove this theory:

1. **COVID-test sales were volatile and cyclical, swinging unpredictably between peaks and troughs.** Plaintiff does not genuinely dispute Dr. Tsai's testimony,[2] which provides important context for how a reasonable investor would have understood the challenged statements. 56.1 ¶¶43-107, 243-250; MPSJ-Opp. 9-10; *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 190, 194 (2015).

2. **Logix test sales were likewise volatile and cyclical, and varied enormously and unpredictably week-to-week and month-to-month: some quarters started very low and ended very high, others the opposite, and it was common for just two or three weeks to account for $10-15 million in sales.** 56.1 ¶¶123-33; DX96, DX112.

3. **In spring 2022, it became even harder to predict COVID-test sales, in part due to changing testing, masking, and vaccine policies and practices post-Omicron.** 56.1 ¶¶86-107.

4. **It was widely publicly discussed before May 12 that (i) COVID-test sales had significantly declined post-Omicron and (ii) changing testing, masking, and vaccine policies and practices were creating increased uncertainty in the testing market, but (iii) health officials still expected new variants to drive testing demand.** 56.1 ¶¶68-106, 108-11.

5. **Because of this increased uncertainty, Defendants concluded they could not accurately predict sales and decided not to provide guidance on May 12.** Egan, Brown, and non-Defendant Benson (the employees who prepared the challenged statements) all said this. *Id.* ¶¶139-141, 171, 187-196, 220-222. Plaintiff claims a May 4-10 email chain between Houston, Brown, and Benson, shows "pretext," but this cannot create a genuine fact issue where every witness involved testified the email language did not mean what Plaintiff speculates. *Infra* 4-5, 7-8; 56.1 ¶¶201-221.

6. **Defendants did not view lower sales leading up to May 12 as concerning, indicating lower demand going forward, or predicting low full-quarter revenue.** All Co-Diagnostics witnesses said this, and Plaintiff's speculation about the May 4

---

[1] Defined terms are as in Defendants' previous filings on the parties' cross-motions, incorporated by reference. MSJ (Dkt. #107); MPSJ-Opp. (Dkt. #125); Defs' Resp-56.1 (Dkt. #121).

[2] Expert opinions are "facts" for summary judgment. *See Olin Corp. v. Lamorak Ins.*, 332 F.Supp.3d 818, 837-38 (S.D.N.Y. 2018).

email cannot create a genuine fact issue. 56.1 ¶¶178-186, 137-138, 142-145, 251-254.

7. **Egan, Brown, and Benson testified they believed the statements were true and not misleading.** 56.1 ¶¶235-242, 251-254.

8. **No Defendant sold stock for profit during the class period or personally benefited from the alleged fraud.** 56.1 ¶291.

9. **The market understood the challenged statements as bad news indicating likely decreased earnings, and no evidence shows the challenged statements artificially inflated Co-Diagnostics' stock price.** Dr. Juneja opined that the economic evidence is inconsistent with the challenged statements artificially inflating the stock price; Mr. Coffman opined only on materiality, loss causation, and damages, not price impact. 56.1 ¶¶255-265; DX94 ¶¶2-3, 12; DX95 ¶¶2-3.

10. **The allegedly "corrective" 2Q22 earnings release included far more negative information than existed or could have been disclosed on May 12, and Plaintiff makes no attempt to disaggregate this confounding information.** 56.1 ¶¶269-290.

From just these undisputed, material facts, Defendants are entitled to summary judgment five different ways—on falsity, materiality, scienter, reliance, and loss causation.

## I.    NO RATIONAL JURY COULD FIND FALSITY.

The heart of this case is Plaintiff's claim that the challenged statements "failed to tell 'the whole truth' … by omitting that sales had plummeted." Opp. to MSJ (Dkt. #123; "MSJ-Opp.") 9. This is based on Plaintiff's now-disproved conjecture that low Logix sales leading up to May 12 must have indicated "significantly lower demand … going forward." *Id.* 22.

The undisputed facts, however, demonstrate that, in context, low sales did not mean what Plaintiff speculates. MSJ 3-5, 13-15; 56.1 ¶¶123-133, 136-141, 144-145, 187-222. Logix sales were highly volatile, cycling unpredictably between high peaks and low troughs; it was common for just two or three weeks in a quarter to see $10-15 million in sales. DX96, DX112; 56.1 ¶¶48, 52, 56-102, 123-136. Co-Diagnostics witnesses uniformly testified that (a) they did not view intra-quarter sales as good indicators of demand trends or predictors of full-quarter results; and (b) when sales dropped post-Omicron and stayed low early in 2Q22, they did not view this as concerning or

indicating a demand problem going forward.[3] *Id.* ¶¶134-141, 144-145, 177-185, 189, 192-193, 251-254; *see also* ¶¶87-88, 92-93, 103, 109. At the same time, however, COVID-testing policies, practices, and personal behaviors were shifting rapidly, making it increasingly difficult to predict sales in spring 2022. 56.1 ¶¶68-104, 108-111,187-196. The testimony demonstrates that this uncertainty and lack of visibility, not concern over sales, drove Defendants' decision not to provide guidance on May 12. *Id.* ¶¶139-141, 144-145, 171, 187-195, 220-222.

Plaintiff offers no facts genuinely disputing any of this. It simply asserts that low quarter-to-date sales must have signaled a demand problem because they were "less than half [Co-Diagnostics'] slowest ever pace" and followed low sales in February and March. MSJ-Opp. 12. This attorney argument cannot create a genuine issue of fact, and all the expert and lay testimony demonstrates that there was no usual "pace" and low sales did not create concern or expectations about full-quarter sales. *Supra* 2-3.

Lacking any genuine factual dispute, Plaintiff tries to manufacture one, but this fails. That Defendants considered intra-quarter sales when preparing guidance is consistent with those sales not being the "key driver" of guidance and not being concerning in spring 2022. 56.1 & Pl's Resp-56.1 (Dkt. #120) ¶¶134, 136, 179-182, 185, 252-54. That Co-Diagnostics previously provided guidance near the midpoint of some quarters (including 4Q21, when sales-to-date were similarly low) is likewise consistent with those facts, and indicates changed market conditions, not low sales, drove Defendants' different approach on May 12. ¶¶136, 138, 145, 185. And regardless of the exact weekly sales, it is undisputed that sales swung so widely and unpredictably that in 1Q21-2Q21, 4Q21, and 1Q22—*4 of the 5 quarters immediately preceding 2Q22*—the three highest

---

[3] Unlike in *F.D.I.C. v. Nat'l Union Fire Ins.*, 205 F.3d 66, 71 (2d Cir. 2000), witnesses here affirmatively testified they were not concerned about sales, not just that they "do not recall." 56.1 ¶138, 144-145, 203.

weeks in the quarter accounted for $11-19 million in sales. ¶¶123-133; DX112, DX96; Defs' Resp-56.1 ¶17. *See also* ¶¶243-250 ("disputing" with argument, not facts, Tsai's testimony that reduced mask mandates, new variants, and lower vaccination rates could increase or decrease infection/testing); MSJ-Opp. 10 (claiming Tsai's testimony is "disputed" by *Daubert* motion).[4]

Plaintiff's only other argument is that certain phrasing by third-party Houston in the May 4 email suggests low sales were the true "impetus" for not providing guidance. No facts support this speculation, and Houston himself testified the language does not mean what Plaintiff posits. When Houston wrote that certain alternatives to providing guidance would indicate "Q2 is off to a slow start" or "you'll likely have a soft quarter or two" (DX106), he was simply guessing as to what might be happening *based on past experiences with other clients*—no one at Co-Diagnostics told him sales were down. 56.1 ¶¶197-198, 201-203, 205-208, 217-219; DX27 at 57:24-58:15, 67:21-70:2 ("[I]t was my inference based on [Brown] asking about quarterly guidance …. [It's] me just assuming …. the language that I chose to use were the inferences based on what I've seen with other clients that are considering pulling quarterly guidance[.]"). Houston testified he had no knowledge of current-quarter sales (56.1 ¶177, 205-208; DX27 at 63:5-7, 64:4-11),[5] and he understood that "reduced visibility," not low sales, led Defendants to ask about alternatives to guidance and drove their decision not to guide.[6] *Id.*; 56.1 ¶¶197-198, 203, 217-19; DX27 at 48:25-50:22 ("[T]hey knew there was reduced visibility, but they were [] trying to get their arms around it[.]"); 59:5-13, 60:7-61:5; 123:15-124:24 (Defendants "never suggested" they were trying to hide

---

[4] Moving to exclude "do[es] not create a genuinely disputed fact." *Tang Cap. Partners, LP v. BRC Inc.*, 757 F.Supp.3d 363, 373 (S.D.N.Y. 2024).

[5] Brown's testimony that he may have discussed *guidance* with Houston (DX21 at 89:4-20) does not contradict Houston's clear memory that they did not discuss sales and that Houston never had any visibility into current-quarter sales.

[6] Houston's and Benson's *understandings* are not hearsay. *See* Fed. R. Evid. 801.

low sales). Brown and Benson said the same thing: lack of visibility, not sales, caused them to ask Houston about potential alternatives and was the reason Defendants did not provide guidance. 56.1 ¶¶187-188, 194-96, 204, 215, 220; ¶¶188, 192 (Egan).

In the face of this unanimous evidence showing the one "fact" Plaintiff points to does not mean what Plaintiff speculates, no rational jury could find for Plaintiff on falsity. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (no genuine issue of material fact where evidence is "so one-sided that one party must prevail").

## II.    NO RATIONAL JURY COULD FIND MATERIALITY.

Plaintiff does not dispute that the market already knew on May 12 that COVID-test sales had decreased post-Omicron, and changing testing policies and practices were creating significant uncertainty. Plaintiff instead notes that the market did not already know Co-Diagnostics' recent sales had been low. MSJ-Opp. 13. That is true, but not the point; the question is whether this omitted information was *material*—would it have "significantly altered the total mix of information" for a reasonable investor. *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988).

It would not have. Logix sales varied so dramatically week-to-week that recent low sales were not predictive. *Supra* 2-4. Disclosing them would not have provided any more economically meaningful information than the challenged statements themselves, which the market took as bad news indicating likely decreased future earnings. 56.1 ¶¶256-264.[7] Disclosing recent low sales would have communicated essentially the same thing to a reasonable investor in the industry. *See Dalberth v. Xerox Corp.*, 766 F.3d 172, 183, 186-88 (2d Cir. 2014).

---

[7] Coffman agrees the analysts viewed the challenged statements as bad news indicating likely lower sales (56.1 ¶264); *Plaintiff's* disagreement with Dr. Juneja's analysis of analyst reports cannot create a genuine issue on this economic-expert question.

### III.    NO RATIONAL JURY COULD FIND SCIENTER.

Nor does Plaintiff offer any probative evidence that Dwight Egan or Brown[8] made the challenged statements intending to deceive investors or with a recklessness so severe it "approximat[ed] actual intent." *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009). To the contrary, the undisputed evidence overwhelmingly demonstrates Defendants' good faith. MSJ 16-19; MPSJ-Opp. 19-26. Egan and Brown testified that the challenged statements truthfully described their understandings of the market and Logix-test demand on May 12, their reasons for not providing guidance, and their confidence about long-term demand. 56.1 ¶¶139-140, 165, 187-193, 214-215, 221, 235-238, 251-254, 278. Every other witness, including Houston,[9] backed this up. 56.1 ¶¶138-139, 141, 145, 175, 194-198, 203-206, 209, 216-220, 239-250; ¶243 (Tsai: statements "were consistent with my own understanding of the COVID testing market and demand at that time, as well as how public health officials and industry participants publicly spoke about COVID testing and demand in Spring 2022.").[10] Moreover, Egan and Brown personally gained nothing from the purported fraud, making scienter particularly improbable. 56.1 ¶291; MSJ 18-19.[11]

Plaintiff does not genuinely dispute these material facts. Rather, Plaintiff relies on the same unsupported speculation it did for falsity: that (1) sales data demonstrates recklessness because low sales were "clear and objective indications of a demand problem"; and (2) certain phrases in

---

[8] The Opposition does not argue any other individual's mental state can be imputed to Co-Diagnostics for these purposes. *See* MSJ 17 n.4; Defs' MPSJ-Opp. 19 n.6.

[9] Houston testified Brown and Egan did not "suggest to [him] at any time that [they] were trying to hide low sales numbers." DX27 at 123:15-124:24; 56.1 ¶¶203, 205-208, 217-19; *supra* 4-5.

[10] Dr. Tsai's opinions pertain to *all* remaining challenged statements. DX29 at 31:5-23, 37:2-46:20.

[11] Stock sales to cover taxes from vesting RSUs are not a personal benefit. *Bazzelle v. Novocure Ltd.*, 2025 WL 843668, at *22 (S.D.N.Y. Mar. 18, 2025).

the May 4 email chain suggest Defendants' decision not to provide guidance "was a pretext to avoid disclosing that sales [] had rapidly declined." MSJ-Opp. 14-17. This speculation fares no better in the scienter context.

First, as detailed above, Plaintiff is wrong about what recent sales on May 12 signified. *Supra* 2-4; MPSJ-Opp. 21-23. Sales in February and March were not "abnormally low" given exceptionally high sales during Omicron. 56.1 ¶¶137-38; DX24 at 57:22-60:19. And the mere fact that intra-quarter sales were lower than at previous quarterly midpoints was not meaningful: because sales came in unpredictable fits and starts, there was no expected midpoint baseline below which sales signaled a problem. 56.1 ¶¶123-136, 138, 180-181. Egan and Brown testified they were not concerned about low sales on May 12 and did not view them as indicating a meaningful risk to future demand or full-quarter results. 56.1 ¶¶192-193, 251-254.[12] Plaintiff was free to—but could not—submit expert or other evidence showing the significance of low sales numbers.

Plaintiff's "pretext" argument is equally meritless. As detailed above, every witness involved in the May 4-10 email chain said the language at issue did not mean what Plaintiff speculates and that Defendants were not trying to hide low sales. *Supra* 4-5; MPSJ-Opp. 23-25. Plaintiff contends "the pretext is revealed" when Brown asks Houston for his "thoughts for the reasoning that would be presented best" if Co-Diagnostics is going to "pull guidance completely, citing uncertainty in the market[.]" MSJ-Opp. 16; DX108. But Houston testified that the Defendants already "knew there was reduced visibility"; Brown's follow-up simply sought advice on how best to explain that reduced visibility. DX27 at 50:9-17; 56.1 ¶¶187-199, 212. No facts

---

[12] Egan's testimony that "sales were what they were" is consistent with this—he did not view sales on May 12 as concerning or important. DX23 at 105:18-112:15. And while Egan referenced health experts' expectations of a COVID resurgence by fall or winter 2022, this was not to the exclusion of potential earlier waves. *See id.* at 84:18-85:4; MPSJ-Opp. 25-26; 56.1 ¶47, 109.

indicate otherwise, and Plaintiff's unsupported speculation cannot create a genuine issue of fact where all the evidence contradicts Plaintiff's theory. *See Anderson*, 477 U.S. at 252; *In re N. Telecom Ltd. Sec. Litig.*, 116 F.Supp.2d 446, 465 (S.D.N.Y. 2000).

Finally, Plaintiff objects that Defendants' undisputed lack of motive is irrelevant because Plaintiff argues recklessness. But Plaintiff must prove severe recklessness by a preponderance of all the evidence. The fact that Defendants did not personally gain anything from the alleged fraud makes it far more likely they acted in good faith. MSJ 18-19. No rational jury could find scienter as to Egan or Brown. *See In re Mylan*, 666 F.Supp.3d 266, 295 (S.D.N.Y. 2023); *In re Kirkland*, 2024 WL 5107289, at *10 (S.D.N.Y. Dec. 13, 2024).

## IV.    THE UNDISPUTED FACTS REBUT THE PRESUMPTION OF RELIANCE.

"Any showing that severs the link between the alleged misrepresentation and [] the price received (or paid) … rebut[s] the presumption of reliance." *Basic*, 485 U.S. at 248.

Here, there was no front-end price impact: Dr. Juneja opined that the economic evidence is inconsistent with the challenged statements artificially inflating Co-Diagnostics' stock price, and Plaintiff does not genuinely dispute this. 56.1 ¶¶256-65; DX92 ¶29; DX94 ¶¶2-4 & DX95 ¶¶2-3.

Plaintiff argues that the challenged statements' inflationary effect can be seen in the "back-end" price drop on August 12 under a price-maintenance theory. Again, because Coffman did not opine on price impact, Plaintiff offers no expert evidence for this technical argument.[13] Even on a price-maintenance theory, however, inferring front-end impact from back-end movement requires a far closer match between challenged statements and corrective disclosures than exists here. *See*

---

[13] Coffman's event study measures the statistical significance of abnormal returns on August 12; it does not demonstrate price impact.

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 594 U.S. 113, 123 (2021). Plaintiff argues the "concealed information" (i.e., low sales) was not "generic," but the correct question is whether the genericness of the *challenged statements* (discussing uncertain market conditions and decision not to provide guidance) matches the specificity of the alleged corrective disclosure (full-quarter 2Q22 results). *See Arkansas Teachers Retirement Systems v. Goldman Sachs*, 77 F.4th 74, 98-103 (2d Cir. 2023). It does not (MSJ 21-22). A truthful substitute for the *challenged statements* at their same level of genericness would have sounded much like the statements themselves: "Sales-to-date are lower than in previous quarters, but they have not been good predictors of full-quarter results in the past, and there is so much market uncertainty that we can't accurately predict full-quarter results and don't feel comfortable providing guidance."[14] No evidence suggests that truthful substitute disclosure on May 12 would have resulted in the same stock drop seen after the disappointing full-quarter results announced August 11, and Dr. Juneja's analysis shows it would not have. MSJ 20-22.[15]

All this rebuts the presumption of reliance. Because Stadium cannot prove individual reliance (56.1 ¶¶40-42), Defendants are entitled to summary judgment, and the class must be decertified.

---

[14] Plaintiff argues the truthful substitute had to state sales were so low "it indicated significantly lower demand … going forward" (MSJ-Opp. 22), but this is not what sales indicated on May 12. *Supra* 2-4. Moreover, Plaintiff's off-and-on assertion that low "demand" not "sales" was the "hidden truth" is contrary to how Plaintiff has argued its case (*see* Dkt. #126, 13-15) and factually unsupported—sales are the only non-public fact Plaintiff claims indicated lower demand.

[15] In *Vivendi*, unlike here, numerous internal documents showed defendants discussing serious financial problems. 838 F.3d 223, 238 (2d Cir. 2016).

## V.      NO RATIONAL JURY COULD FIND LOSS CAUSATION.

Plaintiff relies entirely on Coffman's methodologically flawed and unreliable opinions to prove loss causation; if the Court grants Defendants' motion to exclude Coffman's opinions, it must grant the MSJ as well. Dkt. #110.

Even if the Court does not exclude Coffman, no reasonable jury could find loss causation. To start, the disappointing 2Q22 results did not reveal the allegedly hidden truth that "sales had plummeted" as of May 12. MSJ-Opp. 9; MSJ 23-26. Rather, the 2Q22 results revealed a full-quarter of disappointing aggregate sales based on subsequent developments—negative information that did not exist on May 12. *See id.*; *Garber v. Legg Mason, Inc.*, 537 F.Supp.2d 597, 617 (S.D.N.Y. 2008).

But even if 2Q22 results were "corrective," Plaintiff cannot prove loss causation without "disaggregat[ing] those losses caused by [confounding information]." *Menorah Mivtachim Ins. v. Sheehan*, 2024 WL 1613907, at *2 (2d Cir. Apr. 15, 2024) (affirming summary judgment); *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 343 (2005). Coffman made no attempt to do so (Dkt. #110 at 7-16), notwithstanding obvious confounding news on August 11: (i) sales from May 13 through June 30; (ii) statements expressing uncertainty about future sales and demand; and (iii) delay of Co-Diagnostics' at-home platform's development. 56.1 ¶¶266-280, 289-90.

These are *subsequent*, negative Co-Diagnostics-specific developments that did not exist and could not have been hidden on May 12.[16] Plaintiff argues sales from May 13 through June 30 are nonetheless corrective because the challenged statements described future demand as merely uncertain when "demand had already plummeted" (MSJ-Opp. 25), but, again, no facts support this

---

[16] Even assuming Coffman "remov[ed] the price effects of market and industry movements" (MSJ-Opp. 24), that cannot account for these Co-Diagnostics-specific announcements.

(*supra* 2-3). Nor did August 11 statements expressing uncertainty about future sales communicate exactly the same information as similar statements on May 12: Defendants' continued inability to forecast, after a full-quarter of poor sales and three additional months of shifting COVID policies and practices (including CDC's August 11 relaxation of school-testing recommendations), communicated more strongly negative information than similar words in May. 56.1 ¶286. Indeed, securities-analyst Sidoti specifically identified 2Q22 results and forward-looking uncertainty as *separate* reasons for reducing estimates. 56.1 ¶282. Finally, analysts' consistent coverage of the at-home platform shows they saw it as important to Co-Diagnostics' future. 56.1 ¶¶36-39; DX6; Dkt. #110, at 10-15. News that these clinical trials were further delayed was even more important after a full quarter of weak Logix sales, as evidenced by analysts' questions on August 11. DX77 at 9-10.

Dr. Juneja's opinion that these were confounding information is not genuinely disputed: Coffman's single sentence stating he "did not identify any confounding information" is too conclusory to create a genuine issue of fact. MSJ 25; 56.1 ¶¶287-90; *Atlantica Holdings, Inc. v. Sovereign Wealth Fund*, 477 F.Supp.3d 88, 111 (S.D.N.Y. 2020). Plaintiff's failure to disaggregate requires summary judgment for Defendants. *Id.*; *Menorah*, 2024 WL 1613907, at *2.

## VI.    CONCLUSION

Each of these five elements independently requires dismissal of Plaintiff's §10(b) and §20(a) claims.[17] The Court should grant the MSJ and enter judgment for Defendants.

Dated: May 30, 2025                                        Respectfully submitted,
New York, New York

**BAKER & HOSTETLER LLP**

---

[17] *In re Omnicom*, 597 F.3d 501, 514 n.6 (2d Cir. 2010).

11

12

By:    */s/ Douglas W. Greene*
       Douglas W. Greene (*pro hac vice*)
       dgreene@bakerlaw.com
       Genevieve G. York-Erwin
       gyorkerwin@bakerlaw.com
       Marissa Peirsol (*pro hac vice*)
       mpeirsol@bakerlaw.com
       45 Rockefeller Plaza
       New York, NY 10111
       Telephone: 212.589.4200

*Attorneys for Defendants*

12

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(C)**

Pursuant to Hon. Subramanian's Individual Practices Rule 8(C) and Local Civil Rule 7.1(c), I hereby certify that on May 30, 2025, I electronically filed the foregoing Defendants' Reply in Further Support of Their Motion for Summary Judgment. As measured by the word processing system used to prepare it, the memorandum has a word count of 3,498 and complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

BAKER & HOSTETLER LLP

By:     */s/ Douglas W. Greene*
       Douglas W. Greene