**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STADIUM CAPITAL LLC, on behalf of itself and all others similarly situated,<br><br>                    Plaintiff,<br><br>    v.<br><br>CO-DIAGNOSTICS, INC., DWIGHT H. EGAN, and BRIAN L. BROWN,<br><br>                    Defendants. | Case No.: 1:22-cv-06978-AS<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION TO EXCLUDE THE TESTIMONY OF CHAD COFFMAN**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Tel. 212-589-4200
Fax. 212-589-4201

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**Page**

ARGUMENT ..................................................................................................................................2

    I.      Coffman failed to account for or disaggregate confounding information regarding the financial results from May 13 through June 30, 2022. ......................2

    II.     Coffman failed to account for or disaggregate confounding information regarding forward-looking sales and demand. ..........................................................5

    III.   Coffman failed to account for or disaggregate confounding information regarding further delay in the timeline for clinical trials for Co-Diagnostics' new at-home testing platform. ................................................................................8

    IV.   The Court must exclude Coffman's testimony. ......................................................10

CONCLUSION ............................................................................................................................12

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Baker v. SeaWorld Ent., Inc.*,
   423 F.Supp.3d 878 (S.D. Cal. 2019)......................................................................................10

*In re BP p.l.c. Sec. Litig.*,
   2014 WL 2112823 (S.D. Tex. May 20, 2014), *aff'd sub nom. Ludlow v. BP,
   P.L.C.*, 800 F.3d 674 (5th Cir. 2015) ......................................................................................5

*In re DVI, Inc. Sec. Litig.*,
   2010 WL 3522090 (E.D. Pa. Sept. 3, 2010) ..........................................................................11

*In re DVI, Inc. Sec. Litig.*,
   2014 WL 4634301 (E.D. Pa. Sept. 16, 2014) ........................................................................10

*Gross v. GFI Grp., Inc.*,
   310 F.Supp.3d 384 (S.D.N.Y. 2018).......................................................................................11

*Menorah Mivtachim Ins. Ltd. v. Sheehan*,
   2024 WL 1613907 (2d Cir. Apr. 15, 2024) .............................................................................5

*In re Moody's Corp. Sec. Litig.*,
   2013 WL 4516788 (S.D.N.Y. Aug. 23, 2013).........................................................................11

*In re Mylan N.V. Sec. Litig.*,
   666 F.Supp.3d 266 (S.D.N.Y. 2023)......................................................................................4, 6

*In re Perrigo Co. PLC Sec. Litig.*,
   2021 WL 3073976 (S.D.N.Y. July 13, 2021) .........................................................................10

*In re Pfizer Inc. Sec. Litig.*,
   819 F.3d 642 (2d Cir. 2016)..............................................................................................11, 12

*Rooney v. EZCORP, Inc.*,
   330 F.R.D. 439 (W.D. Tex. 2019) ..........................................................................................11

*Shupe v. Rocket Companies, Inc.*,
   752 F.Supp.3d 689 (E.D. Mich. 2024)....................................................................................10

Plaintiff's Opposition ("Opp."; Dkt. #119) misses the point. Defendants' Motion to Exclude ("Mot."; Dkt. #110) established that Mr. Coffman's reports failed to analyze whether any confounding information contributed to Co-Diagnostics' stock price drop on August 12, 2022. The entirety of Coffman's analysis of potentially confounding information is the following statement: "I did not identify any confounding information." Mot. 1. This unsupported conclusion is insufficient to constitute reliable expert testimony under Federal Rule of Evidence 702 or *Daubert*. And Coffman's failure to even attempt to "disaggregate losses caused by non-fraud factors" renders his testimony on loss causation (and inflation and damages) methodologically unsound and unreliable. *Id.*

Plaintiff's Opposition does nothing to address these fundamental flaws. Instead, Plaintiff largely seeks to supplement Coffman's cursory conclusion with Plaintiff's own legal arguments and economic musings as to why the potentially confounding information might not have been confounding. But *Plaintiff's* analysis—even if accepted—does not bear on whether *Coffman's* testimony is sufficient to pass muster under Rule 702 or *Daubert*.

Plaintiff's other attempts to excuse the fundamental deficiency in Coffman's analysis are equally unavailing. The fact that Coffman is credentialed does not relieve him of his obligations to adequately support his conclusion with "sufficient facts or data," and to demonstrate that it is the "product of reliable principles and methods . . . reliably applied . . . to the facts of the case." Opp. 3, 7. And Plaintiff's argument that Coffman indirectly analyzed some of the potentially confounding effects by controlling for "the effects of market and industry movements" (Opp. 3) is unsupported. Nowhere in Coffman's reports does he identify any potentially confounding information, analyze why it was or was not confounding, or explain if or how any potentially confounding information was rendered not confounding by his efforts to control for industry-wide

1

price movement. These attorney arguments cannot stand in for the analysis Coffman failed to perform (they are also wrong).

Finally, Plaintiff claims that mere disagreement among experts as to whether particular information is confounding goes to the weight, and not admissibility, of an expert's testimony. Opp. 2. That cannot be the case here, however, where Coffman's reports fail to provide *any* analysis of the confounding information as to which "reasonable minds" might agree or disagree. *Id.* He did not "identify[] news, categoriz[e] which news is 'material,' [or] determine[e] whether news should have a certain (albeit rough) magnitude of positive or negative influence on [the stock] price." *Id.* Where, as here, an expert opinion is so entirely lacking in supportive analysis, it is methodologically flawed and unreliable and must be excluded.

Plaintiff does not dispute that if Coffman's loss causation testimony is deemed unreliable, then his testimony on inflation and damages is also necessarily unreliable. Mot. 2-3 & n.2. Accordingly, the Court should exclude Coffman's testimony on loss causation, inflation, and damages in their entirety.

## **ARGUMENT**

### I.    Coffman failed to account for or disaggregate confounding information regarding the financial results from May 13 through June 30, 2022.

Both logic and common sense dictate that full-quarter results are different than intra-quarter results and carry different economic significance. Low sales in the first few weeks of a quarter provide far less negative information than a full-quarter's worth of low sales; the latter is far worse news for a company, and an efficient market will respond to it more negatively, all else being equal. It is also beyond dispute that the full-quarter results Co-Diagnostics announced on August 11 could not have been known, or disclosed, on May 12. On May 12, Defendants did not know: (1) what demand or sales would be for the remainder of 2Q22; or (2) what regulatory and

2

societal developments would occur during that time. Mot. 8-11. Because Defendants could not have known or concealed this information as of May 12, it is non-fraud-related information and is, by definition, confounding. Nowhere in Coffman's reports does he consider whether these post-May 12 sales or developments could constitute confounding information, and that failure alone requires exclusion of his testimony. *Id.*

Plaintiff tries to compensate for this deficiency by citing a couple off-the-cuff comments from Coffman's deposition to support the notion that full-quarter results were not confounding information. But none of this is sufficiently developed or supported to constitute reliable analysis. At deposition, Coffman stated that disclosure of "lower demand" on May 12 would have caused investors to reassess the Company's value both for the rest of 2Q22 and future quarters. Opp. 8-9. But Coffman failed to consider whether the market would have reassessed the Company's value on May 12 to precisely the same degree it did on August 12 after the 2Q22 earnings release. Mot. 11. It defies common sense that the market would have made identical revisions at these very different times—one not yet halfway through the quarter, amidst enormous market uncertainty, the other with a full-quarter of low sales and an additional three months of subsequent events indicating that COVID policies and behaviors had shifted from previous testing patterns. *Id.*[1] Neither Coffman nor Plaintiff provides any factual or economic basis for Coffman's unsupported and illogical conclusion that the 2Q22 results were entirely corrective and nothing about them was confounding.

---

[1] That the full-quarter sales, in hindsight, were "almost exactly double the amount of sales" on May 12, does not mean the market would have predicted the full-quarter earnings announced August 11 (Opp. 9), particularly since the undisputed facts establish there was no usual "pace" for quarterly sales—they varied enormously and unpredictably week-to-week. *See* MSJ 3-5, 13-15; 56.1 ¶¶123-133. Neither Defendants nor the market had any reason to assume sales would follow a consistent pattern throughout the quarter.

3

Additionally, Coffman never accounted for, and never claimed to account for, the post-May 12 COVID-related developments cited by securities analysts in revising their estimates after the August 11 earnings release. *Id.* 10-11. Importantly, neither Coffman nor Plaintiff contest that these developments represented cofounding information. Instead, Plaintiff argues that Coffman accounted for this confounding information *indirectly* when controlling for the impacts of market-wide phenomena as part of his event study. Opp. 10-11. Even accepting Plaintiff's assertion as true—and Coffman himself makes no such claim—it is undeniable that Coffman did not analyze whether these subsequent developments may have had a unique impact on Co-Diagnostics, which, as Plaintiff repeatedly notes, derived nearly all of its revenue from the Logix test. Opp. 5. That Co-Diagnostics was "entirely" dependent on sales of the Logix test distinguishes it from the Pfizers and Abbotts of the world (with large-diversified product portfolios), and the Company was likely far more sensitive to the impacts of relaxed COVID-testing requirements and recommendations (e.g., the CDC's August 11 announcement relaxing recommendations for schools) and shifts in societal behavior. Mot. 9.

Finally, Plaintiff argues a legal materialization of the risk theory—not discussed anywhere in Coffman's testimony—for what appears to be the proposition that "any share price drop caused by the earnings miss" is attributable to the challenged statements because it was "within the zone of risk concealed" by the challenged statements. Opp. 10-11. But a materialization of the risk theory does not relieve Coffman from having to disaggregate the stock price impact allegedly caused by the challenged statements from potentially confounding factors. *In re Mylan N.V. Sec. Litig.*, 666 F.Supp.3d 266, 288 (S.D.N.Y. 2023) (granting defendants summary judgment due to failure to disaggregate: under "either" a corrective disclosure or materialization of the risk "theory, plaintiffs must provide a sufficient quantum of evidence to permit the court to 'disaggregate' the

4

effects of the challenged statements or omissions from" other "market information"); *aff'd sub nom. Menorah Mivtachim Ins. Ltd. v. Sheehan*, 2024 WL 1613907 (2d Cir. Apr. 15, 2024).

Further, even if the initial risk had been concealed or understated, the stock price impact of the full-quarter results on August 12 must have been greater than the price impact that would have occurred, on Plaintiff's theory, had "the risk" (i.e., the possibility of low full-quarter sales) been disclosed on May 12. "[W]hen the corrective event is the materialization of an understated risk, the stock price movement . . . on the date that the risk materialized[] will not equate to inflation on the date of purchase unless the probability of the risk materializing was 100 percent." *In re BP p.l.c. Sec. Litig.*, 2014 WL 2112823, at *10 (S.D. Tex. May 20, 2014), *aff'd sub nom. Ludlow v. BP, P.L.C.*, 800 F.3d 674 (5th Cir. 2015). Where the probability of materialization of the allegedly concealed risk is less than 100%, "the stock price correction that occurs after the risk materializes will be *larger* than the pre-materialization inflation." *Id.* Whatever risk of lower full-quarter sales or demand might have existed on May 12, it was far less than 100% certain; thus, even on Plaintiff's theory, only a portion of the stock drop on August 12 could be attributed to materialization of the risk as it existed on May 12. Neither Coffman nor Plaintiff provides any analysis as to the probability on May 12 of the allegedly undisclosed risk materializing; instead, Coffman simplistically concludes the entire stock drop is attributable to the alleged fraud because both the allegedly hidden truth and the corrective disclosure broadly concerned "lower demand," as if demand could only exist at two levels, "high" or "low." This is too conclusory to constitute reliable expert analysis and should be excluded on that basis.

## II.    Coffman failed to account for or disaggregate confounding information regarding forward-looking sales and demand.

Lower sales (or demand) as of May 12 is not the same thing as the inability to provide forward-looking guidance on August 11. Yet Plaintiff attempts to argue that Co-Diagnostics'

August 11 announcement that it would not provide forward-looking guidance is not confounding information because: (1) it repeated the Company's May 12 announcement that it could not provide guidance, and thus was not new or confounding; and (contradictorily) (2) it was part of the corrective, fraud-related information because, according to Plaintiff, the decision not to provide guidance on August 11 was the result of the "lower demand" Defendants purportedly failed to disclose on May 12. Opp. 12-14. Plaintiff is wrong on both fronts.

First, the principle that repetition of previously disclosed information cannot cause a stock price impact applies to situations where the previously disclosed information has not changed and was only later repeated in a way that conveyed no new material information. *See, e.g., In re Mylan*, 666 F.Supp.3d at 326 (disclosures that merely "repackage[] existing information" and do not "disclose[] anything 'new'" cannot support loss causation). That is not the case here. Co-Diagnostics' August 11 statements, expressing uncertainty about future sales and demand and stating that they again would not provide guidance, did not communicate exactly the same information as similar statements on May 12. Rather, the Company's continued inability to forecast, after a full-quarter of poor sales and three additional months of shifting COVID policies and behaviors communicated more strongly negative information than similar words in May. Mot. 12. The additional disclosure of Co-Diagnostics' lack of visibility going forward on August 11 reflected new conditions that did not exist on May 12, and was likely perceived by investors as indicating longer-term visibility issues going forward. This is why analysts further revised their estimates downwards on August 11 due to lack of guidance, even after they had previously lowered estimates following the May 12 announcement. *Id*. In an efficient market, analysts would not have lowered their estimates on August 11 if the Company was merely repeating previously disclosed

6

information. Opp. 12-13. The economic evidence clearly demonstrates that investors perceived the August 11 announcement not to provide guidance as new and material information. Mot. 12-13.

Second, the August 11 announcement that Co-Diagnostics could not forecast sales and would not provide guidance is not fraud-related information. According to Coffman, the lower sales and demand allegedly concealed on May 12 was revealed in the August 11 announcement of quarterly sales. Mot. 4. That information is backward-looking and, according to Coffman, corrective. However, the Company's August 11 announcement that it would not provide guidance *going forward* incorporated additional factors, including developments that occurred after May 12. *Supra* 5-6. Indeed, analysts indisputably viewed the allegedly corrective full-quarter financial results and the Company's decision not to provide guidance on August 11 as two *distinct* pieces of negative information that separately informed their decision to reduce estimates for the Company's stock price. Mot. 12 (Sidoti: "Based on the 2Q:22 results and factoring in the lack of visibility regarding near-term demand for COVID-19 testing, we lower 2022 [] estimate[s]"; Litchfield: "The company provided no guidance"). Nevertheless, Coffman did not even attempt to analyze whether the Company's August 11 statements describing market uncertainty and announcing that it would not provide guidance constituted confounding information.

Finally, Coffman's off-the-cuff deposition testimony cannot make up for the deficiencies in his reports. Plaintiff argues Coffman "did not consider any future demand-related information confounding" because "disclosure of the lower demand for a company's flagship product" and "acknowledgment that it was going to impact future quarters as well is not a confounding distinct economic message that . . . wouldn't have been derived from the disclosure of lower demand." Opp. 14. Once again, Coffman's theory is based on the assumption that a May 12 disclosure of "lower demand" would have caused a stock price drop to exactly the same extent that it dropped

following the August 11 announcement of disappointing 2Q22 results and continued uncertainty, exacerbated by subsequent market developments, that made it impossible to provide guidance. Mot. 12-13. This is pure speculation, with no economic evidence or analysis to back it up. It defies logic and common sense that the market's reaction to subsequent events, in changed conditions, could somehow be attributed to the challenged statements.

**III.    Coffman failed to account for or disaggregate confounding information regarding further delay in the timeline for clinical trials for Co-Diagnostics' new at-home testing platform.**

Finally, Coffman also failed to consider or disaggregate the price effect of Co-Diagnostics' August 11 announcement that clinical trials for its next big product, an at-home PCR testing platform, had been further delayed. Plaintiff asserts that "Defendants simply disagree with Coffman's conclusion . . . that this news was not 'value relevant confounding news so there was no need to disaggregate.'" Opp. 14. But this again misses the point—Coffman's conclusory testimony that "there was not any value relevant confounding news" (DX22 72:23-73:1) does not say whether he considered this particular potentially confounding information at all, much less offer any analysis or evidence with respect to it. Nowhere does Coffman mention, let alone analyze, whether the additional delay in development of the Company's upcoming flagship product may have constituted confounding information. Instead, Plaintiff attempts to superimpose its own theories as to why this information was not confounding onto Coffman's silence. Plaintiff's legal argument cannot substitute for the analysis Coffman failed to perform, and this deficiency renders Coffman's opinions unreliable. Mot. 15-16.

In any case, Plaintiff's novel arguments have no merit. Plaintiff claims that vaguely optimistic comments from Mr. Egan on August 11 that the at-home platform was "in the last mile" of development and clinical trials were "not far away" show the announcement was not bad news (Opp. 14-15), but Plaintiff does not genuinely dispute that this represented a departure from the

Company's May 12 statement that it expected trials to commence by August 2022. Defs' 56.1 ¶¶279-280. Regardless, none of Mr. Egan's comments bear on how the *market* perceived the announcement or whether it constituted potentially confounding information.

The securities-analyst reports are the best available evidence on those issues, and they demonstrate that the market perceived news regarding the at-home platform's development as material, and news of its delay as negative. Analysts consistently discussed the platform's development in their reports following Company earnings releases, describing it as a driver of "sales ramping over the ensuing quarters" and "a major new growth vehicle for the company" beyond the Logix test. Mot. 13-14. And, as Plaintiff concedes, at least one analyst characterized the further-extended timeline announced August 11 as a "delay." Opp. 15. Moreover, the fact that the trials had been "repeatedly pushed back" only made the August 11 announcement more concerning against the backdrop of a full-quarter of low Logix test sales. Accepting Plaintiff's theory that Co-Diagnostics had "only one significant source of revenues—the Logix Smart test," and that investors learned on August 11 of both the disappointing 2Q22 sales and that the future prospects for the Logix test were uncertain or underwhelming, investors would have attributed *more* significance to information that the Company was further delaying its next major revenue-driver. Opp. 16. Indeed, as Coffman testified regarding the Logix test—disclosures regarding a company's "flagship product" would result in "the market . . . updat[ing] its expectations." Opp. 14. Analysts understood the platform to be the Company's *next* "flagship product." Plaintiff's baseless characterization of the clinical-trial delay as a "minor piece of information" (Opp. 16) is belied by the market evidence and, in any event, *Coffman* never concluded or opined that this information was "minor." Mot. 15-16.

9

Finally, Plaintiff asserts that whether the delay in development of the at-home platform constituted confounding information is an issue for the trier of fact. Opp. 16. That cannot be so where, as here, Coffman's testimony fails to mention or analyze this potentially confounding information *at all*—that methodological failure renders his opinions unreliable and inadmissible. Mot. 15-16.

### IV.     The Court must exclude Coffman's testimony.

Ultimately, Plaintiff's argument boils down to the assertion that Coffman's conclusory statement that he considered potentially confounding information and concluded there was none constitutes a reliable expert opinion. This is wrong: under well-established case law, this single, conclusory sentence in Coffman's report is simply not enough to establish that his conclusion was based on "sufficient facts or data," or that it was the "product of reliable principles and methods" that were "reliably applied" to the facts of the case. *Supra* 1-2.

Plaintiff cites a handful of cases where Coffman's testimony was not excluded, but none support consideration of Coffman's cursory conclusions here. In both *In re Perrigo Co. PLC Sec. Litig.*, 2021 WL 3073976 (S.D.N.Y. July 13, 2021) and *In re DVI, Inc. Sec. Litig.*, 2014 WL 4634301 (E.D. Pa. Sept. 16, 2014), Coffman specifically analyzed other potentially confounding information. *See Perrigo*, No. 19-cv-00070 (S.D.N.Y. Apr. 1, 2021), Dkt. #233-1 (Coffman Report), ¶65 & n.60; Dkt. #233-3 (Coffman Report) ¶¶47-50; *DVI*, 2:03-cv-05336 (E.D. Pa. Sept. 23, 2013), Dkt. #873-3 (Coffman Report) ¶¶47-56. Similarly, in *Baker v. SeaWorld Ent., Inc.*, 423 F.Supp.3d 878, 904 (S.D. Cal. 2019), the court concluded that "Coffman explain[ed] the steps he took to disaggregate other company-specific information." Indeed, Coffman's report in that case included an entire section identifying and analyzing potentially confounding information. *SeaWorld*, 3:14-cv-02129 (S.D. Cal. Sept. 13, 2019), Dkt. #443-1 (Coffman Report) ¶¶101-129. And Coffman's testimony in *Shupe v. Rocket Companies, Inc.*, 752 F.Supp.3d 689 (E.D. Mich.

2024) and *Rooney v. EZCORP, Inc.*, 330 F.R.D. 439 (W.D. Tex. 2019) concerned the different issues of market efficiency and damages for class certification.

By contrast, courts have found Coffman's testimony unreliable where, as here, he did not attempt to disaggregate fraud and non-fraud losses. *See In re Moody's Corp. Sec. Litig.*, 2013 WL 4516788, at *12 (S.D.N.Y. Aug. 23, 2013) (rejecting Coffman's naked conclusion that entirety of stock price drop was attributable to the allegedly corrective information as "factually unsupported"); *Gross v. GFI Grp., Inc.*, 310 F.Supp.3d 384, 398 (S.D.N.Y. 2018) (rejecting Coffman's conclusion that "no additional confounding news was revealed" because it "ignored" other potentially confounding information); *In re DVI, Inc. Sec. Litig.*, 2010 WL 3522090, at *9 (E.D. Pa. Sept. 3, 2010) (similar).

Finally, *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642 (2d Cir. 2016), is not to the contrary. There, the Second Circuit grappled with whether that expert was required to disaggregate the inflationary effects of statements by third-party entities during the class period from the challenged statements of the defendant company itself. *Id.* 654-55, 661. The plaintiffs' theory of the case was that, because the company's statements concealed the same information as the third-party statements, the company was liable for the full extent of the alleged losses; in those circumstances, the Second Circuit held it was an abuse of discretion to exclude the expert's testimony for failure to disaggregate the inflationary effects of the third-party statements. *Id.* ("We emphasize that our decision is a narrow one."). None of the facts and case theories that drove the outcome in *Pfizer* are applicable here. Notably, the Second Circuit upheld the district court's exclusion of the expert's "single sentence" testimony related to a separate aspect of the corrective disclosure analysis because the expert "proffered no explanation of [its] analytical basis" and "failed to show it was

11

the product of reliable principles and methods reliably applied." *Id.* 662. The same holds for Coffman's testimony here.

**CONCLUSION**

For the reasons in the Motion and here, Coffman's testimony on loss causation, inflation, and damages should be excluded in its entirety.

Dated: May 30, 2025          Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:    */s/ Douglas W. Greene*
Douglas W. Greene (*pro hac vice*)
dgreene@bakerlaw.com
Genevieve G. York-Erwin
gyorkerwin@bakerlaw.com
Zachary R. Taylor
ztaylor@bakerlaw.com
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212.589.4200

Marissa A. Peirsol (*pro hac vice*)
mpeirsol@bakerlaw.com
200 S. Civic Center Dr.
Columbus, OH 43215
Telephone: 614.462.2656

*Attorneys for Defendants*

12

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(C)**

Pursuant to Hon. Subramanian's Individual Practices Rule 8(C) and Local Civil Rule 7.1(c), I hereby certify that on May 30, 2025, I electronically filed the foregoing Defendants' Reply in Further Support of Their Motion to Exclude the Testimony of Chad Coffman. As measured by the word processing system used to prepare it, the memorandum has a word count of 3,499 and complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

BAKER & HOSTETLER LLP

By:    */s/ Douglas W. Greene*

Douglas W. Greene