**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STADIUM CAPITAL LLC, on behalf of itself and all others similarly situated, <br><br>              Plaintiff, <br><br>     v. <br><br> CO-DIAGNOSTICS, INC., DWIGHT H. EGAN, and BRIAN L. BROWN, <br><br>              Defendants. | Case No.: 22-cv-6978-AS <br><br> CLASS ACTION <br><br> JURY TRIAL DEMANDED |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES .................................................................................................. ii

I.      INTRODUCTION ...................................................................................................... 1

II.     ARGUMENT ............................................................................................................. 3

        A.      Defendants Have Failed to Raise an Issue Of Material Fact Regarding
                Falsity ............................................................................................................ 3

        B.      Defendants Have Failed to Raise an Issue Of Material Fact Regarding
                Materiality ..................................................................................................... 7

        C.      Defendants Have Failed to Raise an Issue Of Material Fact Regarding
                Scienter ......................................................................................................... 8

III.    CONCLUSION .......................................................................................................... 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chill v. Gen. Elec. Co.*,
101 F.3d 263 (2d Cir. 1996)..................................................................................... 9

*Dalberth v. Xerox Corp.*,
766 F.3d 172 (2d Cir. 2014)..................................................................................... 8

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
2010 WL 6397500 (S.D. Fla. Aug. 18, 2010).......................................................... 5

*In re Kirkland Lake Gold Ltd. Sec. Litig.*,
2024 WL 5107289 (S.D.N.Y. Dec. 13, 2024) .................................................... 10, 11

*Moshell v. Sasol Ltd.*,
481 F. Supp. 3d 280 (S.D.N.Y. 2020)...................................................................... 4

*S.E.C. v. Platforms Wireless Int'l Corp.*,
617 F.3d 1072 (9th Cir. 2010) ................................................................................ 10

*Stepak v. Aetna Life & Cas. Co.*,
1994 WL 858045 (D. Conn. Aug. 29, 1994) ............................................................ 8

*Tongue v. Sanofi*,
816 F.3d 199 (2d Cir. 2016)..................................................................................... 4

*United States v. Block*,
797 F. App'x 668 (2d Cir. 2020) .............................................................................. 4

I.      **INTRODUCTION**

Defendants have failed to dispute any of the fundamental facts underlying this action: by May 12, 2022 Defendants knew that orders for the Logix test had plummeted to all-time lows. Rather than disclose that demand for the Logix test had rapidly declined, Defendants knowingly concealed that information, misleading investors by telling them that they would cease providing quarterly revenue guidance due to changes in "near term visibility" and "sizable fluctuations in order patterns," while refuting analyst concerns about demand, assuring them in response to the direct question "[s]o with the Logix Smart detection test, *are you already seeing a decline in customer orders*? . . ." that "[i]t's not necessarily a demand issue that we're seeing." ¶¶56-58.[1]

Historically, while each new "wave" of COVID had the potential to boost sales of the Logix test, sales would always settle back down above a consistent baseline: rarely dropping below $4 million in a single month, and *not once* falling below $4 million in consecutive months. ¶¶16-19. But, as explained *infra* at 3-4, starting in February 2022, sales began **_cratering_** to record low levels. These objective (and undisputed) facts demonstrate what defendants already knew: demand had materially declined well before the start of the Class Period.

Faced with this reality, and Defendants' admission that they had access to, monitored, and were aware of the "daily influx of demand" for the Logix test, Defendants' opposition is nothing more than an attempt to rewrite the allegations, the record, and prior holdings of this Court.

*First*, on falsity, Defendants seek to depict *current demand* as essentially meaningless with respect to *potential future demand* and argue that they "genuinely did not see a demand issue" because Logix test sales "were cyclical and swung widely between peaks and troughs based on the rise and fall of new COVID waves". Critically, Defendants ignore that Co-Diagnostics had always

---

[1] All emphasis herein is added unless stated otherwise.

had a consistent level of baseline sales, even between "waves." Moreover, *even if* Defendants had a genuine belief in the Company's "prospects and ***long-term demand*** for its products," they were still required to disclose the undisputed, objective reality that ***current demand*** had plummeted in order to make their statements about current demand and risks to future demand not misleading. ECF No. 42 at 4.

*Second*, Defendants' materiality argument that the market was already aware of "significant uncertainty in the testing market" and "the fact that COVID testing and sales had dropped significantly following Omicron" ignores that, *even if* true, the market was ***not*** already aware that sales of the ***Logix test*** had plummeted—something analysts were *explicitly* asking about.

*Third*, it is undisputed that Defendants knew and had access to data showing sales of the Logix test (*i.e.*, ***current demand***) had ***plummeted*** to record lows in February, March, April, and the first weeks of May 2022. They saw this terrible sales data "against the backdrop of extensive public discussion of the fact that COVID testing and sales [market-wide] had dropped significantly," (Opp. at 16), when analysts were intently focused on whether those market trends were impacting Defendants' business. These undisputed facts more than suffice to establish Defendants' knowledge or recklessness that their statements were materially misleading. Defendants' vague arguments that the record low sales did not actually indicate a risk to future demand run counter to basic economic principles and common sense. What's more, Defendant Egan's testimony confirms that he knew what the sales were at the time of his statements (¶22) but did not want investors to focus "on a couple of quarters" (*i.e.*, a couple of ***bad*** quarters) (¶23) because there may be a COVID resurgence in the fall and winter (¶46; Pl. Resp. ¶¶180, 254). This only validates his scienter.

Defendants are unable to raise any issue of material fact regarding the elements of falsity, materiality, or scienter and, accordingly, the Court should grant partial summary judgment on these elements to Plaintiff.

## II.    ARGUMENT

### A.    Defendants Have Failed to Raise an Issue Of Material Fact Regarding Falsity

Plaintiff alleges that Defendants' statements about demand for the Logix Test were materially misleading because they failed to disclose that demand for the Logix test had already plummeted. AC ¶48; *see also* ECF No. 42 at 5.  As the Court already held, "[r]eferences to 'near term visibility' and 'fluctuations' imply current or potential volatility, ***not that sales have already cratered***." *Id*.

As established in Plaintiff's opening papers, the undisputed evidence shows that sales had in fact cratered to record low levels well before the start of the Class Period (May 12, 2022).  In February 2022 sales were $3.32 million.  ¶16.  Monthly sales below $4 million were exceedingly rare for Co-Diagnostics—previously occurring ***just twice*** since the Company began selling the Logix test in earnest.  ¶¶16, 19.  In March 2022 sales were even worse: just $2.80 million.  ¶16. Not only had Co-Diagnostics ***never before experienced back-to-back months with sales below $4 million***, but ***only once prior had monthly sales been below $3 million***. ¶17.[2] April 2022 was worse yet: a mere $1.94 million.  ¶16.  At that time, ***Co-Diagnostics had never before experienced monthly sales of less than $2 million***. ¶18; Uris Decl. Ex. 3.[3]  Indeed, March 2022 and April 2022 represented the second-worst and worst months in terms of sales volume, respectively, for the

---

[2] Notably, in that same month, Brown had stated in an email that "[t]hus far in Q4, we have seen slowing sales."  ¶20.

[3] These facts hold true despite the fact that waves of COVID came and went throughout the pandemic.  *See* Opp. at 11 (asserting that Dr. Tsai's testimony "establishes that COVID-test sales were highly volatile, cycling between peaks and troughs ***throughout the pandemic*** . . .", which supports *Plaintiff*).

Company since the Company began selling the Logix test. *Id*. And May 2022 was faring no better – through May 12, sales were a meagre $574,915. ¶16. Consequently, as of May 12, 2022, the Company had earned only ***$2.5 million in Q2 2022***, which was ***less than half its <u>slowest ever pace</u> in any quarter since it began selling the Logix Test***. ¶¶11, 14.[4] These objective facts are completely undisputed. No reasonable juror could find that sales had not in fact plummeted.[5]

In the face of these undisputed facts that prove falsity, Defendants seek to move the goalposts. First, Defendants assert that there is "no evidence . . . showing Defendants were concerned about or motivated by low sales . . . or that [they were] meaningful or in fact ***mattered to Co-Diagnostics***." Opp. at 10. Not only is this assertion wrong (as explained below), but it is irrelevant to the question of whether Defendants' statements were misleading ***to a reasonable investor***. *Moshell v. Sasol Ltd.*, 481 F. Supp. 3d 280, 292 (S.D.N.Y. 2020) ("the relevant audience [is] 'reasonable investor[s]'").[6] Defendants do not argue, nor could they, that a reasonable investor would understand that demand had plummeted from their statements. Indeed, an analyst *explicitly* asked on the May 12, 2022 earnings call "So with the Logix Smart detection test, ***are you already seeing a decline in customer orders***? . . ." ¶58. Brown's response was misleading to a reasonable investor, giving the market the false impression that orders had not in fact already plummeted.

---

[4] Defendants note in passing that Plaintiff did not submit an expert opinion on falsity (Opp. at 10), but the sales numbers "d[o] not require the assistance of an expert to understand." *United States v. Block*, 797 F. App'x 668, 670 (2d Cir. 2020).

[5] Defendants repeatedly mischaracterize the alleged omitted information as "quarter-to-date sales as of May 12, 2022". Opp. 10, 17-18. Not only is this characterization overly narrow as demand for the Logix test is broader than just "quarterly sales to date as of May 12", but Plaintiff does not allege that Defendants needed to disclose a particular sales figure as of May 12. *See* Daubert Reply at 9.

[6] Defendants' cases concerning opinion statements are inapposite as the Court found the challenged statements were not opinions. Opp. at 9-10; ECF No. 42 at 5-6. But *even if* they were, "opinions, though sincerely held and otherwise true as a matter of fact, may nonetheless be actionable if the speaker omits information whose omission makes the statement misleading ***to a reasonable investor***." *Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016) (citation omitted).

4

ECF No. 42 at 5.

Moreover, the evidence belies Defendants' assertions that record low quarterly sales to date didn't "matter[] to Co-Diagnostics", and were not "predictive" or "good indicators of broader demand trends" (*i.e. **future demand***).  Opp. at 10-11.[7]  For example, Brown testified that he *would* look at quarterly sales to date in determining guidance. ¶¶26-28; *see also* Pl. Resp. ¶136 (Dwight Egan conceding that he "believe[s] we did [compare the company's results so far in that quarter to the results in that same quarter in the previous year]").[8]  And again, *even if* Defendants' after-the-fact, self-serving assertions that they genuinely "expected sales to swing up again with the next new variant" (Opp. at 12) were true, "it does not tend to negate the falsity of [their] statements [which failed to disclose that sales (*i.e.*, **current demand**) had in fact plummeted]." *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2010 WL 6397500, at *30 (S.D. Fla. Aug. 18, 2010).

Defendants' speculative (and irrelevant) argument that the record low sales leading up to May 12 didn't definitively mean that ***future*** demand couldn't eventually rebound is insufficient to defeat summary judgment.  Defendants' statements "put both ***current demand*** and ***risks to future demand*** on the table." ECF No. 42 at 4.  It is undisputed that ***current demand*** was at all-time lows. Additionally, the dramatic drop in sales indicated a significant ***risk to future demand***.  *See, e.g.,* ECF No. 102, Ex. 12, Co-Diagnostics' 2021 10-K at 13 (acknowledging that the Company's "future success will depend, in part, on the continued market for COVID-19 tests . . ."); Coffman Dep., ECF No. 102-22 at 76:17-23, 82:13-18 (explaining that the market would update its

---

[7] Notably, these arguments say nothing of the record low sales in the preceding months, which Defendants were also aware of.  ¶¶21-29.

[8] Defendants' argument that "no one at Co-Diagnostics was concerned [by the record low sales]" is not supported by the cited self-serving testimony in which Defendants stated only that they did not "feel comfortable" providing guidance at the time.  Opp. at 11-12, 20; *see also* Pl. Resp. ¶138 (testimony that Defendants did not "recall" any concerns at the time).

expectations about the current quarter as well as future quarters following a disclosure of substantially lower demand).

And, while not necessary to prove falsity, the contemporaneous emails with Defendants' IR consultant, Mr. Houston, corroborate that the decision not to provide guidance on May 12, 2022 was a pretext to avoid disclosing that sales of the Logix Test had rapidly declined.  *See* Mot. at 19-20.  Defendants inexplicably assert that "no facts support this reading" of the emails, but all credible undisputed facts support this plain reading.  Opp. at 13.  As Brown conceded, in early May 2022 "we had a call [with Houston] and we discussed where we were [with respect to sales].").  Mot. at 8-9.  It is undisputed that "[f]ollowing up on [that] call," Houston sent an email proposing "[a]lternatives to providing Q2 guidance in the earnings call and release."  *Id*. at 8-9, 19-20.  The email is damning.  Tellingly, as Houston advised for the options that Defendants ultimately rejected: one "would ***tip [their] hand to investors that [they'd] likely have a soft quarter, or two***" and another "***will have a negative impact on the share price***".  ¶¶39-40. Defendants also rejected the option of guiding to a number slightly lower than past quarters "with the hope that [they] come close because [they've] done so before" given the dubious rationale "for guiding to ***such a high number despite the weak start to the quarter***[.]" ¶41.

Defendants argue that the subsequent emails reflect their efforts "to identify and articulate the factors that best described the uncertainty driving th[e] decision" to pull guidance, Opp. at 14, but it is clear that "uncertainty" was not in the driver's seat.  *Brown's own language* reveals that the post-hoc workshopping of the public rationale was just to identify a ***convincing*** pretext. Having decided to "***lean into*** [the option of pulling guidance completely]" Brown did not ask what factors Houston thought were actually causing any uncertainty for Co-Diagnostics, but specifically "the reasoning ***that would be presented best?***" ¶42. Indeed it was Defendants, not their IR

6

consultant, who could speak to what factors, if any, were actually impacting Co-Diagnostics.

Moreover, Defendants' efforts to paint the cited factors as potentially going either way ignore the dispositive and undisputed fact that Defendant Brown himself told investors that based on those factors, they "don't expect demand for COVID-19 testing [to] go away in 2022". ¶53; *see also* ¶¶47-52. Dwight Egan likewise testified that the Company made an effort to "emphasize [the] theme" that COVID was not going away, so Defendants' current argument that the factors could suggest less COVID infection runs face-first into the contemporaneous evidence. ¶51.

Finally, Defendants' argument that "the analyst reports following the May 12 earnings release show that the market understood the challenged statements as indicating a likely *decrease* . . . in 2Q22 revenue . . ." is belied by the record. Opp. at 15. Not only do Defendants ignore that analysts were already projecting gradually decreasing demand for COVID-19 testing, but more importantly, two of three analysts' Q2 2022 revenue estimates *remained unchanged* following the May 12, 2022 earnings call. *See* Pl. Resp. ¶256.

## B. Defendants Have Failed to Raise an Issue Of Material Fact Regarding Materiality

Defendants argue that "the backdrop of extensive public discussion of the fact that COVID testing and sales had dropped significantly following Omicron and . . . significant uncertainty in the testing market" somehow undercuts materiality. Opp. at 16. This "backdrop" *strengthens* Plaintiff's claim of materiality. What the market didn't know, but was deeply concerned with, was whether and to what extent Co-Diagnostics was experiencing that same decline in sales for the Logix test. ¶58. Thus, Defendants' statements misrepresented and concealed highly material information from investors.

Defendants also argue that a truthful disclosure would not have altered the "total mix of information" because "the market took from the challenged statements . . . that full-quarter results

7

could end up lower than past quarters." Opp. at 17.  As explained *supra* at 7, this is wrong.  But even if the market understood that "uncertainty" could mean potentially reduced future demand, that is not a substitute for a truthful disclosure that **current demand** had already plummeted (indicating a significantly heightened risk to future demand as well).  *See* Pl. Resps. ¶¶256, 257 (Litchfield noting "variability [] hamper[ing] precise forecasts" while "hop[ing] for some upside").[9]

Additionally, Defendants' tired assertion that "there was no consistent pattern within or between quarters" is incorrect.  Opp. at 18.  Defendants concede that "COVID demonstrates a certain degree of seasonality" (¶51), and as explained *supra* at 3-4, throughout the pandemic Co-Diagnostics had always had a consistent baseline level of Logix test sales.  As Seth Egan conceded, from February through May 12, 2022, "**sales had never been that low for that long**." Pl. Resp. ¶123.

Finally, Defendants' suggestion that the stock price drop following the 2Q22 earnings release does not "suggest materiality" (Opp. at 18) because it was in response to full-quarter results and "other negative news" is wrong because low sales and demand for the second half of Q2 2022 is not confounding, and there was no "other negative news".  *See* ECF No. 123 at 24-27.

C.      **Defendants Have Failed to Raise an Issue Of Material Fact Regarding Scienter**

Given Defendants' admitted knowledge of, and access to, facts and information contradicting their public statements, Defendants are forced to argue that their knowledge of the sales data "cannot show recklessness because . . . Logix test sales varied so much week-to-week and month-to-month that there was no reason to believe . . . [the data] indicated a demand issue."

---

[9] Defendants' authorities are inapposite because it is undisputed that investors here were unaware that Logix test sales had plummeted, whereas in those cases, "[t]he investing public had access to th[e allegedly undisclosed] information". *Dalberth v. Xerox Corp.*, 766 F.3d 172, 186 (2d Cir. 2014); *Stepak v. Aetna Life & Cas. Co.*, 1994 WL 858045, at *12 (D. Conn. Aug. 29, 1994) (same).

Opp. at 22.  This is simply wrong.  As explained *supra* at 3-4, by numerous objective measures ***current demand*** had plummeted to record lows well before the start of the Class Period.  These are undisputed facts, and Defendants' naked, self-serving and vague assertion that the sales data did not "indicate[] a demand issue" is either a blatant attempt to dodge the reality that ***current demand*** had plummeted or "[a]n egregious refusal to see the obvious." *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 269 (2d Cir. 1996).  Indeed, their May 12 pivot to comment that there was "not necessarily a demand issue" in response to a question about whether Defendants were "already seeing a ***decline in [sales]***" misleadingly suggested they had ***not*** seen a dramatic decline in sales, which was patently false.

Defendants also argue that "it was expected that sales would be significantly lower after a period of very high sales like those seen during Omicron". Opp. at 22.  But even following periods of high sales, sales rarely dipped below $4 million in a single month (and ***never*** did so in back-to-back months). ¶¶17-19.  Any implication that the persistent, record low sales leading up to May 12 were "expected" is pure fantasy and unsupported by the record.  *See* Pl. Resp. ¶137 (only cited testimony concerning any expectation of an *extended* period of low sales related to *one* specific customer that actually canceled part of their order "because it [was] harder to sell than [they] thought.").

Defendants also argue that since they did not view record low sales as "concerning" or "out of the ordinary" "it makes no sense, then, that Defendants would seek to 'hide'" that information. Opp. at 23.  But if that were true, then why did Brown not fulsomely answer the analyst's question as to whether Co-Diagnostics was already seeing a decline in customer orders for the Logix test? Defendants hid that information because, contrary to their current litigation posture, record low

9

sales *were* concerning and *were* out of the ordinary.[10] No reasonable juror could believe Defendants' asserted belief which rests on the demonstrably false characterization of 3.5 months of record-low sales as "[not] out of the ordinary."

Defendants argue that the contemporaneous emails with Houston do not show "low sales were the real reason for pulling guidance" because Brown testified that the decision "was driven by increased volatility in orders and increased market uncertainty". Opp. at 24. But the only supposed "volatility in orders" Brown identified was the increase in sales due to Omicron followed by record low sales. Pl. Resp. ¶139. This spike was similar to previous waves, not new "volatility."

Defendants further argue that "Brown and Egan each credibly testified that they believed their statements on May 12, 2022 were true and not misleading[.]" Opp. at 19-20. But "[i]f such a self-serving assertion could be viewed as controlling, there would never be a successful prosecution or claim for fraud." *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1095 (9th Cir. 2010). Nor does their similar assertion "that they remained confident . . . about the Company's prospects and long-term demand for its products" carry the day. Opp. at 20; *id.* at 25 (similar).[11] This assertion does not even contest that Defendants were aware that ***current demand and sales*** had plummeted. Indeed, "[w]hen the defendant is aware of the facts that made the statement misleading, 'he cannot ignore the facts and plead ignorance of the risk.'" *Platforms Wireless*, 617 F.3d at 1094.[12] As such, Defendants' decision to obscure that sales were down by

---

[10] Mr. Houston's unremarkable testimony that Defendants never ***explicitly told him*** they were "trying to hide low sales" does not undermine the strong evidence of scienter. Opp. at 23.

[11] Dr. Tsai's purportedly corroborating testimony is irrelevant because Plaintiff does not allege that Defendants' statements were misleading because the identified factors were false. *See* ECF No. 123 at 10.

[12] *Kirkland* is inapposite where statements about "*internal* growth" were found not misleading for omitting facts about defendant's M&A plans to acquire a specific company where the court found,

mid-May 2022 by simply declining to offer quarterly guidance and offering vague assurances regarding "fluctuations," "timing," and "near term visibility" rendered the statements intentionally misleading.

Finally, Defendants' Class Period transactions do not "cut[] strongly against scienter." *See* ECF No. 123 at 17.

## III.    CONCLUSION

For all of these reasons, and the reasons set forth in Plaintiff's opening bring, the Court should grant Plaintiff's motion for partial summary judgment.

Dated: May 30, 2025

**KAPLAN FOX & KILSHEIMER LLP**

*/s/  Jason A. Uris*
Frederic S. Fox
Donald R. Hall
Jason A. Uris
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
*ffox@kaplanfox.com*
*dhall@kaplanfox.com*
*juris@kaplanfox.com*

*Lead Counsel for Lead Plaintiff and the Class*

---

*inter alia*, that defendant "was not actively considering the acquisition" when the statements were made. *In re Kirkland Lake Gold Ltd. Sec. Litig.*, 2024 WL 5107289, at \*5 (S.D.N.Y. Dec. 13, 2024).

11

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief contains 3,500 words and complies with the type-volume limitation of Local Civil Rule 7.1(c) of the Local Rules of United States District Courts for the Southern and Eastern District of New York. I also certify that this brief complies with the typeface and type style requirements of Local Civil Rule 7.1(b)(1)(2)(3).

*/s/ Jason A. Uris*
Jason A. Uris
