**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STADIUM CAPITAL LLC, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CO-DIAGNOSTICS, INC., DWIGHT H. EGAN, and BRIAN L. BROWN,<br><br>Defendants. | Case No.: 22-cv-6978-AS<br><br>CLASS ACTION |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**

# TABLE OF CONTENTS

**Page(s)**


TABLE OF AUTHORITIES ..... iii

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 3

I. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND WARRANTS FINAL APPROVAL ..... 3

A. The Law Favors and Encourages Settlement of Class Action Litigation ..... 3

B. Legal Standards for Final Approval ..... 3

C. Lead Plaintiff and Lead Counsel Have Adequately Represented the Class ..... 5

D. Arm's-Length Negotiations Conducted by Experienced Lead Counsel Favor Approval ..... 6

E. The Relief Provided by the Settlement Is Adequate ..... 8

1. The Complexity, Expense, and Likely Duration of the Litigation Support Approval ..... 9

2. The Risks of Establishing Liability and Damages Support Approval of the Settlement ..... 10

3. Risks of Maintaining Class Action Status through Trial ..... 11

F. The Effective Process for Distributing Relief to the Class ..... 11

G. The Requested Attorneys' Fees Are Reasonable ..... 12

H. The Relief Provided in the Settlement Is Adequate Taking Into Account All Agreements Related to the Settlement ..... 13

I. Application of the Remaining *Grinnell* Factors Supports Approval of the Settlement ..... 13

1. The Inability of Defendants to Withstand a Greater Judgment ..... 13

2. The Reaction of the Class to the Settlement Supports Approval ..... 14

3. The Stage of the Proceedings and the Amount of Information Available to Counsel Support Approval of the Settlement ..... 15

4. The Range of Reasonableness in Light of the Best Possible Recovery and all Attendant Risks Supports Approval ............................. 17

II. THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE.......... 19

III. NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS .......................................................................................... 21

IV. CONCLUSION.................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
No. 07 Civ. 2207(JGK), 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) .............................. 17, 18

*Carson v. Am. Brands, Inc.*,
450 U.S. 79 (1981) .............................................................................................. 10

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ............................................................................... 4, 18

*City of Providence v. Aeropostale, Inc.*,
No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014) .......................... 17

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ........................................................................................ 7

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) ........................................................................................ 4

*Guevoura Fund Ltd. v. Sillerman*,
No. 1:15-cv-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ................................ 8, 9

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ............................................................................ 3, 22

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) .................................................................... 13, 20

*In re AOL Time Warner, Inc. Sec. & "ERI*SA" Litig.,
No. MDL 1500, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ........................................ 13, 15, 18

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000) ...................................................................... 10, 15

*In re Bank of Am. Corp. Sec., Derivative and ERISA Litig.*,
772 F.3d 125 (2d Cir. 2014) ...................................................................................... 21

*In re Barrick Gold Sec. Litig.*,
314 F.R.D. 91 (S.D.N.Y. 2016) ................................................................................... 5

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ................................................................ 11, 14, 19

*In re Citigroup Inc. Sec. Litig.*,
No. 09 MD 2070 (SHS), 2014 WL 2112136 (S.D.N.Y. May 20, 2014) .................................... 3

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
343 F.Supp.3d 394 (S.D.N.Y. 2018) ........ 10, 11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
No. 02–CV–3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ........ 19

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ........ 20

*In re Gilat Satellite Networks, Ltd.*,
No. CV-02-1510, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) ........ 9

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ........ 4, 10, 11, 13

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019) ........ 7

*In re GSE Bonds Antitrust Litig.*,
No. 19- CV-1704 (JSR), 2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019) ........ 8

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ........ 3, 8, 9, 19

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009) ........ 19

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
233 F.R.D. 306 (E.D.N.Y. 2006) ........ 9

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
No. 04 Civ. 8144(CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........ 22

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ........ 20

*In re Merrill Lynch & Co. Rsch. Reports Sec. Litig.*,
246 F.R.D. 156 (S.D.N.Y. 2007) ........ 19, 21

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) ........ 21

*In re MRV Commc'ns, Inc. Derivative Litig.*,
No. CV 08-03800 GAF (MANx), 2013 WL 2897874 (C.D. Cal. June 6, 2013) ........ 7

*In re Nissan Radiator/Transmission Cooler Litig.*,
No. 10 CV 7493(VB), 2013 WL 4080946 (S.D.N.Y. May 30, 2013) ........ 15

*In re PaineWebber Pshps. Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) .......... 14, 19

*In re Patriot Nat'l, Inc. Sec. Litig.*,
828 F. App'x 760 (2d Cir. 2020) .......... 19

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) .......... 5, 8

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) .......... 5

*In re Sony SXRD Rear Projection TV Class Action Litig.*,
No. 06 Civ. 5173(RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008) .......... 9

*In re Veeco Instruments Inc. Sec. Litig.*,
No. 05 MDL 01695(CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) .......... 18

*Khait v. Whirlpool Corp.*,
No. 06-6381 (ALC), 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) .......... 15, 17

*Lewis v. YRC Worldwide Inc.*, No. 1:19-cv-00001-GTS-A,
TB, 2021 WL 4123315 (N.D.N.Y. Sept. 9, 2021) .......... 7

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) .......... 10, 13

*Padro v. Astrue*,
No. 11-CV-1788 (CBA)(RLM), 2013 WL 5719076 (E.D.N.Y. Oct. 18, 2013) .......... 17

*Strougo v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003) .......... 9

*Thompson v. Metro. Life Ins. Co.*,
216 F.R.D. 55 (S.D.N.Y. 2003) .......... 4

*Vaccaro v. New Source Energy Partners L.P.*,
No. 15 CV 8954 (KMW), 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) .......... 19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) .......... 3, 4, 18, 21

*Whelan v. Diligent Corp.*,
349 F.R.D. 79 (S.D.N.Y. 2025) .......... 7

*Yang v. Focus Media Holding Ltd.*,
No. 11 Civ. 9051(CM)(GWG), 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) .......... 7

**Statutes**

15 U.S.C. § 78u-4 .................................................................................................................. 21

**Rules**

Fed. R. Civ. P. 23 *et seq.* ......................................................................................... *passim*

**Other Authorities**

Laarni T. Bulan & Eric Tam,
*Sec. Class Action Settlements: 2025 Review and Analysis*, Cornerstone Rsch. (2025)........... 19

Lead Plaintiff Stadium Capital LLC ("Lead Plaintiff"), on behalf of itself and all other members of the Class, respectfully submits this memorandum of law in support of final approval of the proposed Settlement and approval of the proposed Plan of Allocation.[1]

**PRELIMINARY STATEMENT**

Subject to Court approval, Lead Plaintiff has agreed to settle all claims in the Action in exchange for a cash payment of $6.5 million for the benefit of the Class. Lead Plaintiff respectfully submits that the proposed Settlement is an excellent result for the Class and satisfies the standards for final approval under Rule 23 of the Federal Rules of Civil Procedure. As stated in the accompanying Uris Declaration,[2] the Settlement is the result of nearly four years of intensive litigation and represents approximately 30.1-40.6% of the Class's best case damages. As set forth more fully below, this recovery is much higher than the 4-6% recoveries commonly approved by courts in this circuit, and far exceeds the median recovery of 22.9% median recovery from 2016-2024 for similarly-sized securities class actions. ¶ 69.

The Settlement was achieved only after Lead Counsel (i) conducted an extensive investigation into Defendants' allegedly wrongful acts; (ii) drafted a detailed amended complaint; (iii) successfully opposed Defendants' motion to dismiss; (iv) engaged experts to evaluate the

---

[1] All capitalized terms not otherwise defined herein shall have the meanings provided in the Stipulation of Settlement, dated August 14, 2026 (the "Stipulation") (ECF No. 157-1). All citations to "¶ __" herein refer to paragraphs in the Declaration of Jason A. Uris in Support of (1) Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation; and (2) Lead Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Expenses ("Uris Declaration" or "Uris Decl."), filed herewith. Citations to "Ex. __" herein refer to exhibits to the Uris Declaration. Unless otherwise noted, all internal citations and quotations have been omitted and emphasis has been added.

[2] For the sake of brevity in this memorandum of law, the Court is respectfully referred to the Uris Declaration for a detailed description of, among other things: the nature of the claims asserted (¶ 17); the procedural history of the Action and the work performed by Lead Counsel (¶¶ 14-51, 57-58); the Settlement negotiations (¶¶ 52-56); the risks of continued litigation (¶¶ 67-74, 97-101); the Plan of Allocation (¶¶ 75-80); and the Notice program (¶¶ 81-86).

claims and damages; (v) conducted document discovery, including propounding and responding to document requests, and conducted a review and analysis of the more than 546,000 pages of documents produced by Defendants and third parties; (vi) prepared for and took or defended a total of 11 depositions of fact and expert witnesses; (vii) filed a motion for, and obtained, class certification; (viii) successfully opposed Defendants' motion to decertify the Class; (ix) combed through the evidentiary record to successfully obtain summary judgment on materiality and falsity, a very rarely achieved feat for securities fraud plaintiffs, and successfully opposed Defendants' motion for summary judgment; (x) filed a motion to partially preclude the reports and testimonies of Defendants' expert witnesses and successfully opposed Defendants' motion to preclude the report and testimony of Lead Plaintiff's expert witness; (xi) engaged in extensive pre-trial preparations; (xii) briefed an independent and experienced mediator; and (xiii) engaged in a full day mediation session and extensive additional negotiations before reaching an agreement in principle to settle. ¶ 7. Thus, by the time the Settlement was reached, Lead Counsel had developed a solid understanding of the strengths and weaknesses of the case.

The Settlement is a very favorable result, particularly in light of the substantial risks of continued litigation. While Lead Plaintiff and Lead Counsel believe that the claims asserted are meritorious, they recognize the substantial challenges to establishing Defendants' liability, proving classwide damages, and achieving a greater recovery. ¶¶ 67-70. Moreover, these risks are significantly compounded by the financial uncertainty concerning Co-Diagnostics, Inc. ("Co-Dx") and the limited assets available to fund a recovery. ¶¶ 71-73.

The Settlement avoids these risks and the delays of further litigation while providing a substantial, certain, and immediate benefit to the Class in the form of a $6.5 million payment in

cash. In light of these considerations, Lead Plaintiff and Lead Counsel respectfully submit that the Settlement warrants final approval by the Court.

## ARGUMENT

### I. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND WARRANTS FINAL APPROVAL

#### A. The Law Favors and Encourages Settlement of Class Action Litigation

Public policy favors the settlement of disputed claims among private litigants, particularly in class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("*Visa*") ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'"); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation."). This policy would be well-served by approval of the Settlement of this complex securities class action, which, absent resolution, would consume months and possibly years of additional time of this Court.

#### B. Legal Standards for Final Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class-action settlement must be presented to the Court for approval. The Settlement should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In ruling on final approval of a class settlement, courts in the Second Circuit have held that a court should examine both the negotiating process leading to the settlement, and the settlement's substantive terms. *See Visa*, 396 F.3d at 116; *In re Citigroup Inc. Sec. Litig.*, No. 09 MD 2070 (SHS), 2014 WL 2112136, at *2-3 (S.D.N.Y. May 20, 2014); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012).

Pursuant to the December 1, 2018 amendments to Rule 23(e)(2), a court may approve a settlement as "fair, reasonable, and adequate" after considering the following four factors:

> (A) whether the class representatives and class counsel have adequately represented the class;
>
> (B) whether the proposal was negotiated at arm's length;
>
> (C) whether the relief provided for the class is adequate, taking into account:
>
> i. the costs, risks, and delay of trial and appeal;
>
> ii. the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> iii. the terms of any proposed award of attorneys' fees, including timing of payment; and
>
> iv. any agreement required to be identified under Rule 23(e)(3); and
>
> (D) whether the proposal treats class members equitably relative to each other.

Courts in the Second Circuit also consider the following factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) in evaluating a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 463 (citations omitted), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also Visa*, 396 F.3d at 117. "In finding that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'" *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (quoting *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003)).

As demonstrated herein, the Settlement satisfies the factors set forth in Rule 23(e)(2) and *Grinnell* and, accordingly, final approval is warranted.[3]

### C. Lead Plaintiff and Lead Counsel Have Adequately Represented the Class

In determining whether to approve a class action settlement, the court should consider whether the "class representatives and class counsel have adequately represented the class." Rule 23(e)(2)(A). *See also In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 99 (S.D.N.Y. 2016) (noting that "the adequacy requirement 'entails inquiry as to whether: 1) plaintiffs' interests are antagonistic to the interest of other members of the class and 2) plaintiffs' attorneys are qualified, experienced and able to conduct the litigation'").

Lead Plaintiff and Lead Counsel have adequately represented the Class. Lead Plaintiff, like all other members of the Class, acquired securities of Co-Dx during the Class Period, when its value was allegedly artificially inflated by false and misleading statements and omissions. Thus, the claims of the Class and Lead Plaintiff would prevail or fail in unison, and the common objective of maximizing recovery from Defendants aligns the interests of Lead Plaintiff and all members of the Class. *See, e.g.*, *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

---

[3] The Advisory Committee Notes to the 2018 amendments to the Federal Rules of Civil Procedure indicate that the factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the Court of Appeals, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) Advisory Comm. Notes to 2018 Amendments. Indeed, "[t]he Court understands the new Rule 23(e) factors to add to, rather than displace, the Grinnell factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). Accordingly, Lead Plaintiff will discuss the fairness, reasonableness, and adequacy of the Settlement principally in relation to the four factors set forth in Rule 23(e)(2), and will also discuss the application of relevant, non-duplicative factors traditionally considered by the Second Circuit.

Further, Lead Plaintiff was an active and informed participant in the litigation and, among other things, (i) regularly communicated with Lead Counsel regarding the posture and progress of the Action; (ii) received all significant pleadings and motions filed in the Action; (iii) received or discussed significant decisions in the Action; (iv) consulted with Lead Counsel throughout the extended mediation negotiations; and (v) evaluated and approved the proposed Settlement. *See* ¶ 8.

Additionally, throughout the Action, Lead Plaintiff had the benefit of the advice of knowledgeable counsel well-versed in shareholder class action litigation and securities fraud cases. During the course of the litigation, Lead Counsel developed a deep understanding of the facts of the case and the merits of the claims. ¶ 7. Moreover, Lead Counsel is highly qualified and experienced in securities litigation, as set forth in its firm resume (*see* Ex. 2-A) and was able to successfully conduct the litigation against skilled opposing counsel. Accordingly, the Class has been, and remains, well represented.

### D. Arm's-Length Negotiations Conducted by Experienced Lead Counsel Favor Approval

In weighing approval of a class-action settlement, the Court must consider whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). The Settlement resulted from extensive, arm's length negotiations conducted by experienced counsel for all parties after engaging in targeted discovery, with the assistance of the independent mediator Jed Melnick of JAMS ADR. The Settling Parties each submitted written statements to Mr. Melnick, briefing him on relevant facts and legal issues, and a full-day remote mediation took place on October 18, 2024. ¶¶ 9, 52. The mediation briefs and session discussed the Parties' respective views regarding the merits of the Action, including the evidence adduced, Defendants' defenses, and issues relating to damages. *Id*. Although the Parties were unable to reach an agreement in the initial mediation

session, after further negotiations that spanned over a period of twenty-one months, they agreed in principle to settle this Action as to all Defendants and all claims for the Settlement Amount. ¶¶ 52-56.

The use of an independent mediator, Mr. Melnick, further supports the conclusion that the Settlement achieved was free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019) (noting that "a mediator's involvement in settlement negotiations can help demonstrate their fairness"); *Whelan v. Diligent Corp.*, 349 F.R.D. 79, 85 (S.D.N.Y. 2025) (factor weighed in favor of approval where the parties "negotiat[ed] the Settlement through arm's-length negotiations with the assistance of a private mediator from JAMS.").

Indeed, multiple courts have found that Mr. Melnick's assistance as mediator "strongly supports a finding that negotiations were conducted at arm's[-]length and without collusion." *Yang v. Focus Media Holding Ltd.*, No. 11 Civ. 9051(CM)(GWG), 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014); *see also, e.g.*, *Lewis v. YRC Worldwide Inc.*, No. 1:19-cv-00001-GTS-ATB, 2021 WL 4123315, at *3 (N.D.N.Y. Sept. 9, 2021) (approving settlement based, in part, on "the involvement of respected and experienced mediators" including Mr. Melnick); *In re MRV Commc'ns, Inc. Derivative Litig.*, No. CV 08-03800 GAF (MANx), 2013 WL 2897874, at *5 (C.D. Cal. June 6, 2013) (approving settlement mediated by Mr. Melnick and finding "every indication that the negotiations and mediation were conducted at arm's length and were in no way collusive.").

Finally, in evaluating the Settlement, the Court should consider the judgment of Lead

Counsel. *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-cv-07192-CM, 2019 WL 6889901, at *6 (S.D.N.Y. Dec. 18, 2019) ("Where '[c]ounsel for plaintiff is able and experienced, particularly in the specific area with which these actions are concerned,' . . . counsel's 'judgment is entitled to great weight.'") (internal quotations omitted).[4] Here, Lead Counsel is a leading securities class action litigation firm with decades of experience in the practice area, and was well-informed of the risks and merits of the case prior to reaching the proposed Settlement.[5] Accordingly, Lead Counsel's judgment that the Settlement is in the best interest of the Class should be given considerable weight.

### E. The Relief Provided by the Settlement Is Adequate

In determining whether a class action settlement is "fair, reasonable, and adequate," the Court must consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal," as well as other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). "This inquiry overlaps significantly with a number of *Grinnell* factors, which help guide the Court's application of Rule 23(e)(2)(C)(i)." *In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2019 WL 6842332, at *2 (S.D.N.Y. Dec. 16, 2019) (Rakoff, J.). Indeed, "[t]his assessment implicates several *Grinnell* factors, including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *In re Payment Card*, 330 F.R.D. at 36.

---

4 *See also, IMAX*, 283 F.R.D. at 189 ("great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

5 *See* Ex. 2-A (Kaplan Fox firm resume).

### 1. The Complexity, Expense, and Likely Duration of the Litigation Support Approval

"[I]n evaluating the settlement of a securities class action, federal courts, including this [c]ourt, have long recognized that such litigation is notably difficult and notoriously uncertain." *IMAX*, 283 F.R.D. at 189. In fact, "[s]ecurities class actions are generally complex and expensive to prosecute," *In re Gilat Satellite Networks*, *Ltd.*, No. CV-02-1510, 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007), and thus "readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation," *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006).

This case was no exception. Without the Settlement, the Parties faced the certainty that litigating this Action through trial and appeals would be time-consuming and expensive. *Sillerman*, 2019 WL 6889901, at *7 (the "substantial time and expense that would be involved in continuing to prosecute the Action through trial and the inevitable post-trial motions and appellate proceedings . . . would have added significantly to the time and expense of this Action and, even if Lead Plaintiff[s] [were] ultimately successful, delayed by years any recovery to the Class"); *In re Sony SXRD Rear Projection TV Class Action Litig.*, No. 06 Civ. 5173(RPP), 2008 WL 1956267, at *6 (S.D.N.Y. May 1, 2008) ("Not only would Plaintiffs spend substantial sums in litigating this case through trial and appeals, it could be years before class members saw any recovery, if at all"). Moreover, this litigation involved multiple complex legal and factual issues, including issues regarding loss causation and damages that would have required substantial expert testimony. *See* ¶¶ 38-40, 68, 73.

Here, the Settlement provides a substantial cash benefit to the Class without the risk and delays of continued litigation. *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("…if a shareholder or class member was willing to assume all the risks of [Litigation]…the

passage of time would introduce yet more risks…and would, in light of the time value of money, make future recoveries less valuable than this current recovery."); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ("Settlement at this juncture results in a substantial and tangible present recovery, without the attendant risk and delay of trial.").

### 2. The Risks of Establishing Liability and Damages Support Approval of the Settlement

In assessing this factor, the Court is not required to "decide the merits of the case or resolve unsettled legal questions," *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981), or to "foresee with absolute certainty the outcome of the case," *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 177 (S.D.N.Y. 2000). "[R]ather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Glob. Crossing*, 225 F.R.D. at 459.

While Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants have merit, they also recognize that there were considerable risks in pursuing the Action through trial and beyond. With respect to liability, Defendants would have strenuously challenged scienter. Specifically, Defendants would have argued, among other things, that: (i) they acted in good faith and believed in the long-term demand for the Logix Test; and (ii) Lead Plaintiff cannot point to a specific motive to defraud because Defendants did not sell Co-Dx shares during the Class Period. ¶¶ 21, 68. While Lead Plaintiff prevailed on certain of these issues in part at the motion to dismiss stage, it would face different standards and a more fully developed record at trial, and thus faced the risk of "an unfavorable outcome at trial, and lengthy appeals even if [Lead] Plaintiff[] prevailed. Such risks could limit recovery, or eliminate it altogether," and thus these "inherent risks" support approval of the Settlement. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F.Supp.3d 394, 412 (S.D.N.Y. 2018).

Defendants also had substantial arguments regarding loss causation and damages that, if accepted in whole or in part at trial or on appeal, could dramatically reduce or eliminate the Class's recovery. Specifically, Defendants and their expert argued that the stock drop following Defendants' August 11, 2022 disclosure could not be attributed to the alleged fraud because that disclosure announced new developments including disappointing full-quarter results and continued uncertainties and delays. In light of this, "[a] costly and lengthy battle of the experts" would have been required to address these disputes. *In re Facebook*, 343 F. Supp. 3d at 412; *see also In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 268 (S.D.N.Y. 2012) (citation omitted) ("In addition, damages would be subject to a battle of the experts, with 'the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount Plaintiffs' losses.'"). The litigation therefore presented substantial risk that, even if Plaintiffs prevailed on liability, their damages could have been severely curtailed. The Settlement here allows Class Members to recover a substantial sum of money while avoiding continued lengthy litigation that faced significant challenges.

#### 3. Risks of Maintaining Class Action Status through Trial

Even if Plaintiffs prevailed at trial, these significant risks would have persisted through the inevitable appeals. And although Lead Plaintiff was successful in obtaining class certification, "there could be a risk of decertification at a later stage." *Glob. Crossing*, 225 F.R.D. at 460.

### F. The Effective Process for Distributing Relief to the Class

Rule 23(e)(2)(C)(ii) instructs courts to consider whether the relief provided to the class is adequate in light of the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."

Here, the Settlement will be distributed with the assistance of an experienced claims administrator. *See, generally*, ¶¶ 75-86. The Claims Administrator will employ a well-tested

protocol for the processing of claims in a securities class action. Namely, a potential class member will submit, either by mail or online using the Settlement website, the Court-approved Claim Form. Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determine each eligible claimant's *pro rata* portion of the Net Settlement Fund. ¶ 78; *see* Stip. ¶ 20. Claimants will be notified of any defects or conditions of ineligibility and be given an opportunity to contest the rejection of their claims. ¶ 79. Lead Plaintiff's claim will be reviewed in the same manner. Any claim disputes that cannot be resolved will be presented to the Court for a determination. *Id*.

After the Settlement reaches its Effective Date (Stip. at ¶ 31) and the claims process is completed, Lead Plaintiff will seek Court approval to distribute the Net Settlement Fund. If approval is granted, Authorized Claimants will be issued payments as described in the Stipulation (at ¶ 8). If there are unclaimed funds or stock after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a further distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses). Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions. At this point, if there are unclaimed funds, Lead Plaintiff will request Court approval of a *cy pres* beneficiary. Ex. 1-A at p. 10 (¶ 55).

### G. The Requested Attorneys' Fees Are Reasonable

As discussed in the accompanying memorandum seeking an award of attorneys' fees, the proposed attorneys' fees of 33 1/3% of the Settlement Fund is reasonable in light of the efforts of Lead Counsel, the significant risks, and the favorable results achieved in the litigation. Moreover, the fact that approval of attorneys' fees is entirely separate from approval of the Settlement and

neither Lead Plaintiff nor Lead Counsel may terminate the Settlement based on the Court's ruling on attorneys' fees militates in favor of finding the Settlement fair and reasonable.

### H. The Relief Provided in the Settlement Is Adequate Taking Into Account All Agreements Related to the Settlement

Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement between the Parties in connection with the proposed Settlement. On August 14, 2026, the Parties entered into the Stipulation and a confidential Supplemental Agreement (the "Supplemental Agreement"). ¶¶ 55-56. The Supplemental Agreement gives Defendants the right to terminate the Settlement if valid requests for exclusion from persons and entities entitled to be members of the Class exceed an amount agreed to by the Parties. It is standard in securities class actions to keep the Supplemental Agreement confidential to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement, to the detriment of the Class. The Supplemental Agreement and the Stipulation are the only agreements concerning the Settlement entered into by the Parties.

### I. Application of the Remaining *Grinnell* Factors Supports Approval of the Settlement

#### 1. The Inability of Defendants to Withstand a Greater Judgment

Courts find that "[t]his factor typically weighs in favor of settlement where a greater judgment would put the defendant at risk of bankruptcy or other severe economic hardship." *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006); *see also Glob. Crossing*, 225 F.R.D. at 460 (defendants' bankruptcy meant that "without the proposed settlement, class members might well receive far less than the settlement would provide to them, even if they could prevail on their claims"); *Maley*, 186 F. Supp. 2d at 365 (in light of the company's "dire financial condition, it is unlikely that the Company could withstand a substantial judgment," making a greater recovery than the settlement difficult); *In re*

*Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 427 (S.D.N.Y. 2001) (crediting "serious question as to the ability of the Defendants to withstand a greater judgment").

Here, Lead Plaintiff and Lead Counsel understood that, even if they were able to overcome the significant risks described above, they would still face the risk that Co-Diagnostics would be unable to satisfy any judgment due to its weakened financial condition and limited—and wasting—insurance. *See* ¶¶ 71-72. Lead Plaintiff and Lead Counsel believe there was a very substantial risk that, even if Lead Plaintiff prevailed on all issues through a lengthy litigation and secured a verdict at trial, the Class might not be able to recover on that judgment. Accordingly, this factor weighs in favor of final approval of the Settlement.

### 2. The Reaction of the Class to the Settlement Supports Approval

The second factor considered is the reaction of the class to a proposed settlement. *See, e.g.*, *In re Bear Stearns Cos.*, 909 F. Supp. 2d at 266-67. Indeed, "the absence of object[or]s may itself be taken as evidencing the fairness of a settlement." *In re PaineWebber Pshps. Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

In accordance with the Preliminary Approval Order, to date a total of 17,839 Notice Packets have been mailed to potential Class Members and nominees. Ex. 1 ¶ 8. On September 4, 2026, all of the important documents in this Action including, among others, the Notice, Claim Form, and Summary Notice, were posted on the website designated for this Action, www.co-diagnosticssecuritieslitigation.com. *Id.* ¶ 10. Additionally, the Summary Notice was published on September 14, 2026 in the national edition of *Investor's Business Daily* and over the *PR Newswire*. *Id.* ¶ 9. Consistent with the drafts reviewed and approved by the Court, the long-form Notice and the Summary Notice included (i) a summary of the terms of the Settlement; (ii) Lead Counsel's reasons for recommending the Settlement; (iii) the date of the Settlement Hearing; (iv) information on how to obtain more information on the case and the Settlement; and (v) an explanation of Class

Members' rights to object or exclude themselves. *See* Exs. 1-A, 1-B.

Although the deadline set by the Court for Class Members to object to the Settlement has not yet passed, to date Lead Counsel is aware of no objections. *See* Ex. 1 ¶ 12. If any objections are timely received, Lead Counsel will address them in its reply papers to be filed with the Court on December 1, 2026.

**3. The Stage of the Proceedings and the Amount of Information Available to Counsel Support Approval of the Settlement**

For this factor, the "relevant inquiry . . . is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *AOL Time Warner*, 2006 WL 903236, at *10. "The pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 WL 2025106, at *6 (E.D.N.Y. Jan. 20, 2010). "The parties need not 'have engaged in extensive discovery' as long as 'they have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the settlement.'" *AOL Time Warner*, 2006 WL 903236, at *10 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176); *see also In re Nissan Radiator/Transmission Cooler Litig.*, No. 10 CV 7493(VB), 2013 WL 4080946, at *7 (S.D.N.Y. May 30, 2013) (even where "the parties have not engaged in extensive discovery," this factor weighs in favor of approval after "plaintiffs conducted an investigation prior to commencing the action" and consulted with experts).

This factor is also easily satisfied here. At the time of settlement, Lead Counsel had vigorously litigated this Action for nearly four years. Uris Decl. ¶ 6. These efforts began with the filing of the initial complaint (and subsequent consolidated amended complaint) and Lead Plaintiff's successful opposition to Defendants' motion to dismiss.

Following the Court's decision on Defendants' motion, Lead Counsel immediately began extensive discovery efforts, including vigorous discovery negotiations. Lead Counsel reviewed and analyzed over 63,000 documents from Defendants and relevant third parties totaling over 544,900 pages. *Id.* ¶¶ 27, 31. Lead Counsel also extensively consulted with experts to ensure their full understanding of these documents and the issues in the case, including experts on the issues of materiality, loss causation, and damages. *Id.* ¶ 94.

Lead Counsel also extensively prepared for and took the depositions of eight fact witnesses, Defendants' two experts, and defended the depositions of Lead Plaintiff and its market efficiency and damages expert. *Id.* ¶¶ 37, 40.

Lead Counsel also engaged in extensive summary judgment and *Daubert* briefing that defeated Defendants' motions and resulted in key victories for Lead Plaintiff's case that dramatically improved Lead Plaintiff's settlement posture. Specifically, Defendants moved for summary judgment on the elements of falsity, materiality, scienter, reliance, and loss causation, and filed *Daubert* motions to exclude Plaintiff's loss causation and damages expert, which Plaintiff vigorously and successfully opposed with lengthy submissions attaching numerous exhibits from the extensive discovery record. Lead Plaintiff moved for summary judgment on the elements of falsity, materiality, and scienter, and filed a *Daubert* motion to exclude Defendants' experts. *Id.* ¶¶ 46-49. The Court granted Plaintiff's summary judgment motion on the key elements of falsity and materiality—a rare victory for securities fraud plaintiffs that effectively defeated one of Defendants' main defenses in the case. While the Court denied Plaintiff's *Daubert* motion, it stated that in its motions *in limine* Lead Plaintiff may reassert any portion of its *Daubert* motion that it thinks remains live. *Id.* ¶ 49.

Finally, Lead Counsel also submitted detailed mediation statements with numerous exhibits based on the factual record in the case, reviewed Defendants' mediation submissions and prepared rebuttal points and presentations to the arguments raised therein, and participated in a formal day-long mediation session involving extensive negotiations before Mr. Melnick, a neutral and highly respected mediator. In sum, Plaintiff's Counsel spent 4,626.30 hours investigating, litigating, and zealously advocating for the positive resolution of this Action, which directly resulted in the outstanding Settlement for the Class.

Thus, Lead Plaintiff and Lead Counsel have "obtained sufficient information to be able to intelligently assess the strengths and weaknesses of the case and appraise settlement proposals." *Padro v. Astrue*, No. 11-CV-1788 (CBA)(RLM), 2013 WL 5719076, at *6 (E.D.N.Y. Oct. 18, 2013); *see also Whirlpool*, 2010 WL 2025106, at *6 (factor supported approval where parties informally exchanged information and participated in mediation, which "allowed them to further explore the claims and defenses"). Accordingly, the substantial amount of information developed provided Lead Plaintiff and Lead Counsel with a well-informed basis for their belief that the Settlement is highly favorable to the Class, and this factor supports approval of the Settlement.

#### 4. The Range of Reasonableness in Light of the Best Possible Recovery and all Attendant Risks Supports Approval

Finally, courts consider the range of reasonableness in light of both the best possible recovery and litigation risks, assessing "not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case." *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014); *see also Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207(JGK), 2010 WL 3119374, at *4 (S.D.N.Y. Aug. 6, 2010) (consideration whether "it provides a 'substantial recovery' in light of the relevant circumstances and does not 'compare the terms of

the [s]ettlement with a hypothetical ... measure of a recovery that might be achieved' through trial." (quoting *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115809, at *11 (S.D.N.Y. Nov. 7, 2007)). To do so, courts "consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Grinnell*, 495 F.2d at 462. "[T]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455; *see also Sanofi-Aventis*, 2010 WL 3119374, at *4.

When weighed against the risks of continued litigation, the proposed $6.5 million Settlement Fund value is a significant result. In light of the unpredictability of pre-trial motion practice, a lengthy and complex trial, and the inevitable appellate process that would follow with the risk of reversal, the Settlement falls squarely within the "range of reasonableness." *Visa*, 396 F.3d at 119 ("there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion") (citation omitted). Moreover, factoring in the present time value of money against these litigation risks and delays further supports finding the Settlement within the range of reasonableness. *See AOL Time Warner*, 2006 WL 903236, at *13 ("the benefit of the Settlement will…. be realized far earlier than a hypothetical post-trial recovery").

The Settlement also provides a very favorable recovery in strictly economic terms. Based on Lead Plaintiff's consulting expert's estimate of aggregate damages, the Settlement Amount represents a recovery of approximately 30.1-40.6% of the Class's best case damages—a percentage that is well above the commonly approved recovery range in this circuit of 6% or less.

*See, e.g.*, *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 762 (2d Cir. 2020) (affirming district court's approval of settlement representing 6.1% of the class's maximum potentially recoverable damages); *Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *6 (S.D.N.Y. Dec. 14, 2017) (approving settlement representing 6.5% of the maximum recoverable damages and noting that the settlement amount is "in line with other settlements in securities class actions"); *In re Merrill Lynch & Co. Rsch. Reports Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (approving settlement that was "between approximately 3% and 7% of estimated damages"). It also substantially exceeds the 22.9% median recovery from 2016-2024 for similarly-sized securities class actions. *See* Laarni T. Bulan & Eric Tam, *Securities Class Action Settlements: 2025 Review and Analysis*, CORNERSTONE RESEARCH, at 20 (2025), https://www.cornerstone.com/wp-content/uploads/2026/02/Securities-Class-Action-Settlements-2025-Review-and-Analysis.pdf.

Thus, by all applicable measures, the Settlement is an excellent recovery for the Class and well within the range of reasonableness.

## II. THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

The Court should approve a plan for allocating settlement proceeds if it is fair, reasonable, and adequate. *See IMAX*, 283 F.R.D. at 192; *In re Bear Stearns*, 909 F. Supp. 2d at 270. A plan of allocation satisfies this standard as long as it has a "rational basis." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02–CV–3400 (CM)(PED), 2010 WL 4537550, at *21 (S.D.N.Y. Nov. 8, 2010); *see also In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 497 (S.D.N.Y. 2009). Generally, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable. Plans of allocation, however, need not be "tailored to the rights of each plaintiff with mathematical precision." *In re PaineWebber*, 171 F.R.D. at 133.

Courts "look primarily to the opinion of counsel" in evaluating a plan of allocation. *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011); *see also, In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010) ("In determining whether a plan of allocation is fair, courts give substantial weight to the opinions of experienced counsel."); *In re Am. Bank Note Holographics*, 127 F. Supp. 2d at 429-430 ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel. . . . As with other aspects of settlement, the opinion of experienced and informed counsel is entitled to considerable weight."). Here, Lead Counsel developed the Plan of Allocation in consultation with Lead Plaintiff's damages expert and submits that the Plan of Allocation provides a fair and reasonable method to allocate the Net Settlement Fund among Class Members. ¶¶ 75-80.

The proposed Plan of Allocation was developed in consultation with Lead Plaintiff's damages expert and is consistent with Lead Plaintiff's theory of damages under the Exchange Act. In developing the Plan of Allocation, Lead Plaintiff's damages expert considered the amount of artificial inflation allegedly present in Co-Diagnostics' common stock and call options (or deflation for put options) throughout the Class Period that was purportedly caused by the alleged fraud. ¶ 78. Inflation and deflation tables were created and included in the Notice as part of the Plan of Allocation, which will be utilized by the Claims Administrator in calculating Recognized Loss Amounts for claimants based on the transactional information provided in their claim forms. *Id.* The Claims Administrator will use the Recognized Loss Amounts to determine each eligible claimant's Recognized Claim and pro rata share of the Net Settlement Fund. *Id.* Thus, the Plan of Allocation provides a means for distributing the Net Settlement Fund to Class Members that is rationally tied to Lead Plaintiff's theories of liability and damages, which supports approval. *See*

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is presumptively reasonable."). Moreover, there have been no objections to date to the proposed Plan of Allocation. ¶ 66.

In sum, the proposed Plan of Allocation, developed in consultation with Lead Plaintiff's damages expert, was designed to fairly and rationally allocate the Net Settlement Fund among Authorized Claimants. Accordingly, Lead Counsel respectfully submits that the proposed Plan of Allocation is fair and reasonable and should be approved.

## III. NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

Notice to class members of a settlement satisfies Rule 23(e) and due process where it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Visa*, 396 F.3d at 114 (discussing Rule 23(e)(1)); *see also In re Bank of Am. Corp. Sec., Derivative and ERISA Litig.*, 772 F.3d 125, 133 n.5 (2d Cir. 2014) (similar notice plan sufficient). Notice need not be perfect or received by every class member, but instead be reasonable under the circumstances. *See* Fed. R. Civ. P. 23(e)(1)(B) ("The court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal."); *Visa*, 396 F.3d at 114. Notice is adequate if the average class member understands the terms of the proposed settlement and the options the class member has. *See In re Merrill Lynch*, 246 F.R.D. at 166.

The Court-approved Notice satisfies Rule 23(e) and due process, as well as the specific requirements of Rule 23(c)(2)(B) and the PSLRA, 15 U.S.C. § 78u-4(a)(7), by apprising Class Members of important information including, among other things, the following: (i) a detailed explanation of the Action and the claims asserted; (ii) the definition of the Class; (iii) the amount

of the Settlement; (iv) a description of the Plan of Allocation; (v) an explanation of the reasons why the Settlement is proposed; (vi) a statement indicating the attorneys' fees and costs that will be sought; (vii) a description of Class Members' right to opt out or to object, including the deadlines and process for doing so; and (viii) notice of the binding effect of a judgment on Class Members. *See generally*, Ex. 1-A.

Moreover, the Notice has been widely distributed to Class Members in accordance with the plan approved in the Preliminary Approval Order. Specifically, the Court-approved claims administrator, RG/2, began mailing copies of the Notice Packet to potential Class Members on September 8, 2026. ¶ 84. As of November 3, 2026, RG/2 had mailed a total of 17,839 copies of the Notice Packet by first-class mail to potential Class Members and nominees. *Id*. In addition, RG/2 published the Summary Notice in *Investor's Business Daily* and over the *PR Newswire* on September 14, 2026. ¶ 85. Copies of the Notice, Claim Form, Stipulation, and Complaint were made available on the Settlement website maintained by RG/2 beginning on September 4, 2026. ¶ 61.

This combination of individual notification by mail, publication in a national newspaper focusing on investors, and dissemination over the internet using a wire service and dedicated website provided "the best notice. . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *Advanced Battery Techs.*, 298 F.R.D. at 182-83; *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *12-*13 (S.D.N.Y. Dec. 23, 2009).

## IV. CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant its motion for final approval of the Settlement and Plan of Allocation.

Dated: November 3, 2026 **KAPLAN FOX & KILSHEIMER LLP**

*/s/ Jason A. Uris*
Frederic S. Fox
Donald R. Hall
Jason A. Uris
Clara Abramson
800 Third Avenue, 38th Floor
New York, NY 10022
Tel: (212) 687-1980
Fax: (212) 687-7714
ffox@kaplanfox.com
dhall@kaplanfox.com
juris@kaplanfox.com
cabramson@kaplanfox.com

*Lead Counsel for Lead Plaintiff and the Class*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that, in accordance with Rule 7.1 of the Local Rules of the United States District Courts of the Southern and Eastern Districts of New York, dated January 2, 2026, and Rule 8.C. of the Individual Practices in Civil Cases of Judge Subramanian dated May 11, 2026, this memorandum complies with all formatting requirements set forth therein and contains 7,086 words (including footnotes but excluding the cover page, table of contents, table of authorities, signature blocks, and this certification of compliance).

*/s/ Jason A. Uris*
Jason A. Uris

**CERTIFICATE OF SERVICE**

I, Jason A. Uris, hereby certify that, on November 3, 2026, I caused the foregoing to be served on all counsel of record by filing the same with the Court using the CM/ECF system which will send electronic notices of the filing to all counsel of record.

*/s/ Jason A. Uris*
Jason A. Uris